**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NAVCOM TECHNOLOGY, INC. and DEERE & COMPANY,<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>OKI ELECTRIC INDUSTRY CO., LTD. And DOES ONE THROUGH TEN, inclusive,<br><br>　　　　　　Defendants. | Case No.: 5:12-CV-04175-EJD<br><br>**ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Nos. 97, 100, 102, 131]** |

　　　　Presently before the Court are four motions filed in the above-captioned case: a Motion for Leave to Amend filed by NavCom Technology, Inc. ("NavCom") and Deere & Company ("Deere") (collectively, "Plaintiffs"), a Motion for Summary Judgment filed by Plaintiffs, and two Motions for Summary Judgment filed by Oki Electric Industry Co., Ltd. ("Defendant"). The Court found these matters appropriate for decision without oral argument pursuant to Local Civil Rule 7–1(b), and previously vacated the corresponding hearing dates. Having fully reviewed the parties'

1

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  briefings, the Court DENIES Plaintiffs' Motion for Leave to Amend.  The three Motions for

2  Summary Judgment, which seek to resolve a number of issues specific to this action, are

3  GRANTED IN PART AND DENIED IN PART.

4  **I.  BACKGROUND**

5       This action arises from the alleged breach of a contract between NavCom and Defendant

6  ("the Agreement") under which Defendant was obligated to develop or design a radio frequency

7  application-specific integrated circuit ("RF ASIC") to be included in NavCom's products.

8  Defendant was to sell the RF ASIC to NavCom following the successful completion of the

9  Development Phase described in the Agreement.

10      The Agreement was executed in December 2005.  The parties worked together to complete

11  a technical specification for the RF ASIC chips.  During the design process, the specification

12  underwent several revisions.  In April 2007, Defendant delivered a number of prototypes which

13  failed under testing.  A second set of prototype chips was delivered in early 2008, but those chips

14  failed as well.

15      NavCom became concerned that the project would not succeed and proceeded to develop

16  an alternate solution described as the "discrete solution."  By the summer of 2007, NavCom

17  committed to developing the discrete solution parallel to the work with Defendant on the

18  Agreement.

19      On July 8, 2008, Defendant gave written notice that it was terminating the Agreement.

20  Plaintiffs went to market using the discrete solution in place of the RF ASICs Defendant was to

21  provide under the Agreement, which resulted in higher costs to Plaintiffs.  On June 22, 2012,

22  Plaintiffs filed the instant action asserting a single claim for breach of contract.

23  **II.  LEGAL STANDARD**

24      **a.  Motion for Leave to Amend**

25      Federal Rule of Civil Procedure 16(b) provides that the district court must issue a

26  scheduling order that limits the time to join other parties, amend the pleadings, complete discovery,

27  and file motions.  Fed. R. Civ. P. 16(b)(1)-(3).  Once in place, "[a] schedule may be modified only

28

United States District Court
For the Northern District of California

for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" requirement of Rule 16 primarily considers the diligence of the party seeking the amendment. Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992). "The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension." Id. (internal citation and quotation marks omitted).

Good cause may be found to exist where the moving party shows, for example, that it: (1) diligently assisted the court in recommending and creating a workable scheduling order, see In re San Juan Dupont Plaza Hotel Fire Litig., 111 F.3d 220, 228 (1st Cir. 1997), (2) is unable to comply with the deadlines contained in the scheduling order due to issues not reasonably foreseeable at the time of the scheduling order, see Johnson, 975 F.3d at 609, and (3) was diligent in seeking an amendment once the party reasonably knew that it could not comply with the scheduling order, see Eckert Cold Storage, Inc. v. Behl, 943 F. Supp. 1230, 1233 (E. D. Cal. 1996); see also Jackson v. Laureate, Inc., 186 F.R.D. 605, 608 (E. D. Cal. 1999). "If [the] party was not diligent, the inquiry should end." Johnson, 975 F.2d at 609. If the court finds that there is good cause to modify the schedule, the court then turns to Rule 15(a) to determine whether the amendment sought should be granted. Jackson, 186 F.R.D. at 607 ("As the Ninth Circuit explained in [Johnson], once the district court has filed a pretrial scheduling order pursuant to Rule 16 which establishes a timetable for amending pleadings, a motion seeking to amend pleadings is governed first by Rule 16(b), and only secondarily by Rule 15(a).")

### b. Motion for Summary Judgment

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

1     If the moving party meets this initial burden, the burden then shifts to the non-moving party

2     to go beyond the pleadings and designate specific materials in the record to show that there is a

3     genuinely disputed fact.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The court must regard as

4     true the opposing party's evidence, if supported by affidavits or other evidentiary material.

5     Celotex, 477 U.S. at 324.  However, the mere suggestion that facts are in controversy, as well as

6     conclusory or speculative testimony in affidavits and moving papers, is not sufficient to defeat

7     summary judgment.  See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).

8     Instead, the non-moving party must come forward with admissible evidence to satisfy the burden.

9     Fed. R. Civ. P. 56(c); see also Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550

10    (9th Cir. 1990).

11     A genuine issue for trial exists if the non-moving party presents evidence from which a

12    reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

13    material issue in his or her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986);

14    Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991).  Conversely, summary judgment must

15    be granted where a party "fails to make a showing sufficient to establish the existence of an

16    element essential to that party's case, on which that party will bear the burden of proof at trial."

17    Celotex, 477 U.S. at 322.

18    **III. DISCUSSION**

19     In this Order, the Court will first address Plaintiffs' Motion for Leave to Amend. It will

20    then turn to the three Motions for Summary Judgment.

21          **a.  Plaintiffs' Motion for Leave to Amend**

22               **i.  Rule 16(b)**

23     Since such an observation is critical to framing this analysis, the Court notes at the outset

24    that a scheduling order setting a deadline for amendments to the pleadings was issued in

25    November, 2012.  Accordingly, the Court's initial task is to determine whether Plaintiffs have

26    shown good cause under Rule 16(b).  Plaintiffs contend that they have shown good cause because

27    their claim for fraud depends on facts they "could not have known until after the deadline for

28

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

amendments to the pleadings established in the Court's scheduling order."  However, there are

facts in the record that suggest that Plaintiffs knew at least some of the facts they are now using to

support their fraud claim as early as 2006.  Because Plaintiffs base their good cause argument on

facts they allege they could not have known prior to 2013, and because an inability to comply with

the scheduling order can support a finding of good cause, the Court finds it appropriate to compare

the facts discovered in 2013 with the facts Plaintiffs possessed prior to 2013.

>    Plaintiffs make the following allegations to support their claim for fraud:

1)    When Plaintiffs selected Defendant for the Agreement, Plaintiffs were given the impression that a design firm named Peregrine would take a substantial role in the project.

2)    Defendant repeatedly told Plaintiffs that Peregrine would be doing the design work if Defendant were awarded the contract, and Defendant understood that Plaintiffs were relying on Defendant's representations regarding Peregrine's involvement in the project.  Defendant made the representations regarding Peregrine intentionally to induce Plaintiffs into selecting Defendant for the contract.

3)    Plaintiffs would not have selected Defendant for the project if Peregrine had not been doing the design work.

4)    Defendant actually knew that Peregrine would take only a minor role in the project and that another firm named ACCO would be doing the design work.  Peregrine's role would be limited to oversight.  Defendant did not disclose these details to Plaintiffs.

>    There is evidence in the record suggesting that Plaintiffs had many of these facts in their

possession earlier than 2013.  In the declaration of Jacob Makhinson, who was employed by

Plaintiff NavCom as a Senior RF Engineer between 2005 and 2008, Makhinson testifies that he

attended a design review meeting in France with ACCO, Peregrine, and Oki in July 2006.  Docket

No. 116 ¶ 7.  At the meeting, Makhinson learned "that ACCO was doing all of the circuit-design

work that we had been told that Peregrine would be doing prior to the execution of the Agreement.

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

It quickly became clear that Peregrine knew very little about the circuit design for the project, and that Peregrine's role was limited to overseeing the project."  Id.

In 2013, NavCom, through discovery, obtained an email between Oki employees dated August 10, 2005 which contained the following statement: "I heard that we are using a French RF design team, along with Peregrine.  Did this alarm NavCom in your last concall?"  Docket No. 134, Ex. 11.  According to NavCom, that was the point in time when Plaintiffs "knew that Oki's representations regarding Peregrine's role in the project were intentional and designed to induce NavCom into entering into the Agreement."  Docket No. 134, Pl.'s Brief ISO Mot. Leave to Amend at 7.

In addition, on August 8, 2013, NavCom took the deposition of Dr. Ron Reedy, Peregrine's Chief Technology Officer.  Id.  Dr. Reedy testified that Peregrine's only role in the project was to provide oversight and that he did not remember any request by Defendant that Peregrine conduct the design work.  Id.  According to NavCom, it was only after Dr. Reedy's deposition that NavCom "now had information both that Oki's representations regarding Peregrine's role in the project were false, and that those representations were intentional, permitting them to plead a claim for fraud.  Id.

The Court is not convinced that the facts contained in the August 10, 2005 email between Oki employees were so significant that it was only upon discovery of these facts that Plaintiffs became able to plead a fraud claim.  First, Plaintiffs, through Mr. Makhinson, knew as early as 2006 that Peregrine would have only a limited role in the project based on the meeting in France.[1] Dr. Reedy's testimony serves only to reinforce that fact and contains no factual information that was not already revealed to Plaintiffs during the July 2006 meeting in France.  Second, while the August 10, 2005 email might suggest that Defendant's representations regarding Peregrine's role

---

[1]As a general rule, an agent has a duty to disclose material matters to his or her principal, and the actual knowledge of the agent is imputed to the principal.  In re Marriage of Cloney, 91 Cal. App. 4th 429, 439 (2001).  Mr. Makhinson was employed as NavCom's Senior RF Engineer and attended the July 2006 meeting in France to discuss the subject matter of the Agreement.  Mr. Makhinson was acting as NavCom's employee and performing duties related to his employment when he attended this meeting.  Thus, any knowledge gained by Mr. Makhinson at this meeting was imputed to NavCom.

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    were intentional and designed to induce NavCom into entering the agreement, the Court is not

2    convinced that this email was essential to NavCom's ability to plead fraud.

3         In California, a claim of fraud has five elements: (1) the defendant made a false

4    representation as to a past or existing material fact; (2) the defendant knew the representation was

5    false at the time it was made; (3) in making the representation, the defendant intended to deceive

6    the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and (5) the

7    plaintiff suffered resulting damages.  Lazar v. Super. Ct., 12 Cal. 4th 631, 638 (1996); Ali v.

8    Humana, Inc., 2010 WL 2376972, at *5 (E.D. Cal. June 22, 2012).  Under Rule 9(b), a plaintiff

9    who alleges fraud "must state with particularity the circumstances constituting the fraud," but may

10   "aver[ ] generally" the state of mind animating the fraud. Fed. R. Civ. P. 9(b).  The pleading must

11   "be specific enough to give defendants notice of the particular misconduct . . . so that they can

12   defend against the charge and not just deny that they have done anything wrong."  Sanford v.

13   Memberworks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (quoting Kearns v. Ford Motor Co., 567

14   F.3d 1120, 1124 (9th Cir. 2009)); Neubronner v. Milken, 6 F.3d 666, 671–72 (9th Cir. 1993) ("A

15   pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that the

16   defendant can prepare an adequate answer from the allegations.") (internal quotations omitted);

17   Odom v. Microsoft Corp., 486 F.3d 541, 553 (9th Cir. 2007) (recognizing that "plaintiffs may aver

18   scienter generally, just as the rule states-that is, simply by saying that scienter existed") (internal

19   quotation omitted).  To avoid dismissal, the complaint must describe the time, place, and specific

20   content of the false representations and identify the parties to the misrepresentations.  Kearns, 567

21   F.3d at 1124.

22        The facts discovered in 2013 are new only so far as they speak to Defendant's state of mind

23   or Defendant's alleged intent to fraudulently induce Plaintiffs into selecting Defendant for the

24   contract.  However, because scienter may be alleged "simply by saying that scienter existed,"

25   Plaintiffs could have pleaded fraud whether or not they had the new facts in their possession.

26   Thus, the Court finds that Plaintiffs could have pleaded fraud within the deadlines set by the

27   scheduling order.

28

7

United States District Court
For the Northern District of California

1   Accordingly, the Court finds that Plaintiffs have not shown good cause under Rule 16(b)

2   and therefore shall not modify the scheduling order to permit Plaintiffs leave to amend their

3   complaint.

4   **ii.  Rule 15**

5   Even if the Court had found that Plaintiffs have shown good cause, the Rule 15 factors

6   weigh against granting Plaintiffs leave to amend.

7   As the Ninth Circuit and others have held, it is the consideration of prejudice to the

8   opposing party that carries the greatest weight.  See DCD Programs, Ltd. v. Leighton, 833 F.2d

9   183, 185 (9th Cir. 1987).  The party opposing amendment carries the burden of showing prejudice.

10  Id. at 87.

11  Defendant argues that it will be prejudiced because it would have conducted additional

12  discovery if it had known of Plaintiffs' fraud claim before discovery closed.  Plaintiffs argue that

13  Defendant did, in fact, already take some fraud-related discovery.  Defendant sent three requests

14  for admission asking Plaintiffs to admit that Defendant did not commit fraud and to admit that

15  Plaintiffs had not asserted that Defendant committed fraud.  Plaintiffs denied these requests for

16  admission and blame Defendant for choosing not follow up with additional discovery such as

17  asking Plaintiffs to state the basis for its denials.

18  Defendant also contends that it would have conducted additional discovery of former Oki

19  employees had it known it was facing a claim for fraud.  According to Defendant, the three

20  employees are no longer directly within Defendant's posession, custody, or control.  Defendant

21  describes the three employees as "central figures involved in the NavCom RF ASIC development

22  project on Oki Semiconductor's behalf and having direct knowledge of the issues in Plaintiffs'

23  motion."  The employees were involved in discovery either because Plaintiffs took depositions of

24  them (with Defendant's counsel representing them) or because they helped prepare Defendant's

25  witness for deposition.  Defendant does not identify what information it hopes to retrieve from

26  these employees through discovery.

27

28

8

1    A need to reopen discovery and therefore delay the proceedings supports a finding of

2    prejudice from a delayed motion to amend the complaint.  Lockheed Martin Corp. v. Network

3    Solutions, Inc., 194 F.3d 980, 986 (9th Cir. 1999) (citing Solomon v. North Am. Life & Cas. Ins.

4    Co., 151 F.3d 1132, 1139 (9th Cir. 1998).  Under these circumstances, the Court finds that the

5    prejudice to Defendant would be significant.  In granting Plaintiffs' request, the Court would be

6    required to modify its scheduling order which would disrupt Defendant's trial preparations.  The

7    parties would likely need to engage in a new round of briefing to address Plaintiffs' new fraud

8    claim.  Additional discovery may need to be taken by both parties.

9    Thus, the Court finds that Defendant has carried its burden of showing prejudice under Rule

10   15, which further supports denial of Plaintiffs' motion.

11              **b.  The three Motions for Summary Judgment**

12   Having denied Plaintiffs' request to add a fraud claim, the Court next turns to Plaintiffs'

13   remaining claim for breach of contract.  Through their three motions for summary judgment, the

14   parties have requested the Court to make a number of rulings relevant to the breach of contract

15   claim.  Specifically, the motions are:

16        1)   Defendant's motion for summary judgment on the following issues: whether Plaintiffs

17             failed to state a claim for breach of contract, and whether the contract that is the subject

18             of this lawsuit was rescinded or abandoned by mutual consent (Docket No. 100).

19        2)   Defendant's motion for summary judgment on the following issues: whether Plaintiffs'

20             requested damages are precluded by the express terms of the contract, whether Plaintiff

21             Deere failed to state a claim (Docket No. 102).

22        3)   Plaintiffs' motion for summary judgment regarding Defendant's affirmative defenses

23             (Docket No. 97).

24   The Court will begin by deciding the first motion, then proceed to deciding the second and

25   third motions concurrently.

26

27

28

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1

### i.   The first Motion for Summary Judgment (Docket No. 100)

2        Defendant's first Motion for Summary Judgment requests that the Court dismiss Plaintiffs'

3   breach of contract claim because it fails to state a claim.  This motion also requests that the Court

4   find that the subject contract was rescinded or abandoned.

5        Between 2005 and 2008, Defendant was engaged in the development of radio frequency

6   ("RF") application specific integrated circuits ("ASICs") for use in Plaintiffs' products.

7   Development of the ASICs began when the parties entered into a Development and Purchase

8   Agreement ("the original Agreement") on or about December 14, 2005.  The original Agreement

9   concerned the development of a three-chip integrated circuit ("IC") chipset referred to as "Version

10  19."

11       Defendant's requests center around two separate points in time during this relationship,

12  during which the parties performed acts which either amended, abandoned, or rescinded the

13  Agreement.  The first occurred in November 2006, when Defendant stopped development of

14  Version 19 and began the development of a different three-chip IC chipset referred to as "Version

15  25."  Defendant contends that on this date, the parties rescinded or abandoned the original

16  Agreement for the development of Version 19 and entered into a new Agreement for the

17  development of Version 25.  Plaintiffs contend that the original Agreement was amended rather

18  than terminated.

19       The second relevant point in time is May 2008, when development for the three-chip

20  chipset ceased and development for a redesigned RF ASIC including four chips commenced.

21  Again, Defendant contends that when this event occurred, the Agreement for Version 25 was

22  rescinded or abandoned and replaced with a new Agreement for the four-chip chipset, while

23  Plaintiff contends that the Agreement was amended.

24       These two points in time are relevant for two reasons.  First, Defendant contends that when

25  Plaintiffs pleaded breach of contract Plaintiffs made reference only to the Agreement for the

26  development of Version 19.  Defendant reasons that because the Agreement for Version 19 ceased

27  in November 2006 when development on Version 25 began, Plaintiffs' claim for breach of contract

28

10

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    fails to state a claim either because of the statute of limitations or because the alleged breach

2    occurred in 2008 and that a contract cannot be breached after it ceases to exist.  Second, Defendant

3    makes essentially the same argument with respect to May 2008, when development for Version 25

4    ceased and was replaced by development for a four-chip chipset.

5          Under Federal Rule of Civil Procedure 8(a), a "short and plain statement of the claim"

6    suffices.  The forms appended to the Federal Rules of Civil Procedure note that "plaintiff may set

7    forth the contract verbatim in the complaint or plead it, as indicated, by exhibit, or plead it

8    according to its legal effect."  Fed. R. Civ. P. Official Form 3, 12; see also 5 Charles Alan Wright

9    & Arthur R. Miller, Federal Practice & Procedure § 1235 (2004).  These forms are declared to be

10   sufficient by Federal Rule of Civil Procedure 84.

11         Here, regardless of whether there were three separate contracts, or one contract modified

12   twice, Plaintiffs have alleged sufficient facts to plead the contract according to its legal effect, and

13   enough to enable Defendant to understand and respond to Plaintiffs' claim.  See Securimetrics, Inc.

14   v. Hartford Cas. Ins. Co., 2005 WL 1712008, at *2 (N.D. Cal. July 21, 2005).  The Court has

15   reviewed the several briefs and motions submitted by Defendant and has found nothing to indicate

16   that Defendant was unable to understand or respond to Plaintiff's claim.  Furthermore, Defendant's

17   strongest defenses in this action are based upon specific provisions in the Agreement that limit

18   liability and grant Defendant a right to terminate the contract.  That Defendant was able to make

19   these arguments demonstrates that Defendant had little difficulty understanding Plaintiffs' claim,

20   identifying the contract at issue, and preparing its defenses.

21         The Court at this time declines to rule on whether the legal effect of the changes to the

22   Agreement in November 2006 and May 2008 was to amend, rescind, or abandon the Agreement.

23   Notwithstanding Defendant's potential rescission or abandonment defenses, Plaintiffs have pleaded

24   sufficient facts to state a plausible cause of action for breach of contract and Defendant had notice

25   of the claim as well as which contract was at issue.

26         Accordingly, Defendant's first motion for summary judgment (Docket No. 100) is

27   DENIED.

28

11

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

1

**ii.   The second and third Motions for Summary Judgment**

2     The second and third Motions for Summary Judgment raise a number of overlapping issues.

3 For organizational purposes, the Court will begin this section of the opinion by resolving some of

4 these issues before proceeding to a discussion of each individual motion.

5     **1.   Whether Defendant had a right to terminate the Agreement**

6     In July 2008, Defendant provided notice of termination of the Agreement to Plaintiffs.

7 Defendant asserts that the Agreement provided it with the right to terminate the Agreement.

8 Plaintiffs deny that Defendant had this right and argue that even if it did, Defendant breached

9 because Defendant did not terminate the Agreement according to its terms.

10     Defendant relies primarily on this language from the Agreement:

11     **1.0 TERM.** The term of this Agreement for purposes of ASIC (Applications Specific

12     Integrated Circuit) development and purchase order placement shall commence with the

13     date first written above and continue until December 31, 2006.  This Agreement shall

14     automatically renew for successive one (1) year periods until Buyer or Seller terminates the

15     Agreement with at least three (3) months written notice prior to the expiration of any then

16     current term.

17     Reading this language literally, Section 1.0 of the Agreement appears to expressly provide a

18 right to terminate the Agreement for both Buyer and Seller (Plaintiff NavCom and Defendant,

19 respectively).  Plaintiffs set forth several arguments to contend that this language did not grant

20 Defendant the right to terminate.

21     Plaintiffs first direct the Court's attention to Section 2.7, which states:

22     2.7 Termination During Development Phase.  Buyer may terminate this Agreement for its

23     convenience during the Development Phase upon written notice to Seller.  Upon such

24     termination, Buyer agrees to pay Seller all reasonable NRE charges which have become due

25     and payable and all charges for work completed.

26     Section 1.0 is a general provision that does not address termination during the Development

27 Phase, while Section 2.7 specifically addresses termination during the Development Phase and

28

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    expressly grants the right to terminate only to Buyer.  Reading the two sections together, Plaintiffs

2    argue that because only Section 2.7 is specific to the Development Phase, it and only it governs the

3    parties' rights to terminate during the Development Phase.  Furthermore, Section 2.7 is the only

4    provision that deals with termination prior to the end of a term (presumably, Plaintiffs refer to the

5    "terms" defined by Section 1.0).

6            Plaintiffs also point to Schedule C of the Agreement, which indicates that the estimated

7    time for development and turnaround of Engineering Prototypes was approximately ten months

8    from the "sign-off of this Agreement."  Plaintiffs further assert that "[t]he ten-month estimate is

9    consistent with the one-year, initial term of the Agreement, and the expectation that Oki would

10   create Engineering Prototypes within the first term.  Once the development process was completed

11   and once Plaintiffs were placing orders for the RF ASIC chipset, either party could choose not to

12   renew the Agreement at the end of a one-year period, provided it gave three months notice to the

13   other party.  At that stage, and on three months' notice, the parties would be able to guarantee their

14   supply or demand for the remainder of a term, and NavCom would have a sufficient time to secure

15   an alternative source for RF ASICs in the event of an Oki-initiated termination."  Docket No. 99,

16   Pl.'s Memo ISO Mot. Partial Sum. J. at 12 (internal citations omitted).

17           The Court is therefore faced with an issue of contract interpretation and proceeds according

18   to the following principles.

19           The goal of contract interpretation is to give effect to the parties' mutual intent.  Cal. Civ.

20   Code § 1636; Bank of the West v. Superior Court, 2 Cal. 4th 1254, 1264 (1992); Southern Pac.

21   Transp. v. Santa Fe Pac. Pipelines, Inc., 74 Cal. App. 4th 1232, 1240 (1999).  "It is the outward

22   expression of the agreement, rather than a party's unexpressed intention, which the court will

23   enforce."  Winet v. Price, 4 Cal. App. 4th 1159, 1166 (1992).  When parties dispute the meaning of

24   language in a contract, "the court must decide whether the language is 'reasonably susceptible' to

25   the interpretations urged by the parties."  Badie v. Bank of Am., 67 Cal. App. 4th 779, 798 (1998).

26   Contract interpretation is a question of law unless the interpretation turns upon the credibility of

27   extrinsic evidence.  Id. at 799.

28

13

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1    In determining whether the contract is reasonably susceptible to a party's interpretation, the

2    court looks at the language of the document itself.  Id.  Where contractual language is clear and

3    explicit, it governs.  Bank of the West, 2 Cal. 4th at 1264.  In addition, the court may consider parol

4    evidence, "not to vary or modify the terms of the agreement but to aid the court in ascertaining the

5    true intent of the parties [citation], not to show that the parties meant something other than what

6    they said but to show what they meant by what they said."  Denver D. Darling, Inc. v. Controlled

7    Env'ts Constr., Inc., 89 Cal. App. 4th 1221, 1236 (2001) (internal quotations omitted).

8        A contract that is capable of more than one reasonable interpretation is ambiguous.  Badie,

9    67 Cal. App. 4th at 798.  When a court is "[f]aced with contract language that is reasonably

10   susceptible to more than one meaning, certain general rules of contract interpretation come into

11   play to aid the court in resolving the ambiguity."  Southern Pac., 74 Cal. App. 4th at 1240.  First,

12   the words of a contract are understood in their ordinary and popular sense unless the parties ascribe

13   a technical or special meaning.  Id.  The court must "determine the ultimate construction to be

14   placed on the ambiguous language by applying the standard rules of interpretation" to give effect to

15   the parties' mutual intent.  Badie, 67 Cal. App. 4th at 798.  Further, the court can consider the

16   circumstances under which a contract was negotiated, including its object, nature, and subject

17   matter.  Cal. Civ. Code § 1647.  Courts must interpret contractual language in a manner which

18   gives force and effect to every provision, and not in a way which renders some clauses nugatory,

19   inoperative or meaningless.  New York Life Ins. Co. v. Hollender, 38 Cal. 2d 73, 81–82 (1951).

20       Here, Defendant's interpretation prevails.  The Court begins by considering whether the

21   contract is reasonably susceptible to the parties' interpretations.  Section 1.0 expressly grants

22   Defendant the right to terminate the Agreement, subject to the term regarding three months' notice.

23   Plaintiffs point to Section 2.7 in an attempt to highlight an inconsistency in the contract.  When a

24   general and particular provision are inconsistent, the latter is paramount to the former.  Cal. Civ.

25   Proc. Code § 1859.  However, these two sections are not inconsistent.  Section 2.7 expressly grants

26   only Buyer the right to terminate during the Development Phase.  This is not inconsistent with

27   Section 1.0's grant of termination rights to both parties throughout each term of the contract.

28

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

Section 2.7 allows Buyer to terminate "for its convenience" during the Development Phase and does not require a three month notice period.  Section 2.7 therefore grants Buyer a stronger termination right during the Development Phase than either party would otherwise have throughout the life of the Agreement.  Nothing in Section 2.7's language suggests that it was intended to nullify Defendant's termination rights during the Development Phase.

As for Schedule C, it does nothing to help Plaintiffs.  The Court finds no connection between the ten month estimate in Schedule C and the parties' termination rights.  Finally, Plaintiffs point to an email dated May 31, 2008, wherein one of Defendant's employees stated that the Agreement has no option for Defendant to cancel.  However, because this is parol evidence that would tend to show that the parties "meant something other than what they said," the Court cannot consider it.  Denver D. Darling, 89 Cal. App. 4th at 1236.

Accordingly, the Court finds that Defendant had the right to terminate the Agreement subject to the notice requirement described in Section 1.0.

### 2.   Whether Defendant breached the Agreement

Plaintiffs' next contention is that, even if Defendant did have the right to terminate, Defendant nevertheless breached the Agreement because Defendant failed to terminate according to the Agreement's terms.  According to Plaintiffs, Section 1.0 required Defendant to have provided three months' advance notice prior to termination.  Plaintiffs allege that Defendant simply terminated the Agreement immediately, violating the three months' advance notice requirement.

Defendant does not deny that it terminated the Agreement without providing the required notice.  The record shows that Defendant provided notice of termination through an email sent on July 8, 2008.  Docket No. 99, Ex. 20.  Nothing in the record indicates that Defendant continued working after the email was sent.  On a motion for summary judgment, after the moving party meets its initial burden of demonstrating the absence of a triable issue of fact, the burden then shifts to the non-moving party.  Celotex, 477 U.S. at 324.  Having not denied that it failed to provide the required timely notice, Defendant has not met its burden.

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

Thus, the Court finds that Defendant breached the Agreement.  This finding shall be limited to the purposes of this motion.  Fed. R. Civ. P. 56(e)(2).

### 3.  Damages

Through their motions, the parties disagree over whether Plaintiffs' estimated damages are recoverable.  Plaintiffs seek damages consisting of the following three components:

1) The amounts NavCom paid to Oki pursuant to the terms of the Agreement (a first payment of $300,000 and a second payment of $120,000).

2) The internal expenses incurred by NavCom associated with the Agreement, which would include items such as the cost to attend meetings with Defendant, estimated at $174,000 by Plaintiffs' damages expert.

3) The difference between NavCom's costs to go to market "with the discrete solution necessitated by Oki's breach, and a reasonable estimate of what their costs would have been had Oki not breached the Agreement and instead delivered the cheaper RF ASICs."  Docket No. 99-4, Pl.'s Memo ISO Mot. Partial Sum. J. at 14.

The parties dispute whether these damages items are precluded by the Agreement. Specifically, the Agreement contains a Limitation of Liability Clause ("the Limitation Clause") which reads:

**16.0 LIMITATION OF LIABILITY.**  Notwithstanding any other provisions in this Agreement, neither party shall be liable with respect to its obligations under this Agreement for consequential, exemplary, special, or incidental damages, including, without limitation, lost profits, even if it has been advised of the possibility of such damages, except in the case of fraud; malicious, willful, or intentional tortious acts; breaches of confidentiality; obligations to indemnify under these Terms and Conditions; violation of either party's intellectual property rights; or claims arising out of or relating to personal injury and/or death.

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

### a.   Whether the alleged fraud renders the Limitation Clause unenforceable

As a threshold matter, Plaintiffs assert that Defendant's alleged fraudulent conduct places each of Plaintiffs' claimed damages items outside the scope of the Limitation Clause, both by the Limitation Clause's express language and by the public policy against allowing parties to contract out of liability for fraud.  Plaintiffs refer to Defendant's alleged misrepresentations regarding Peregrine's and ACCO's roles in the project, as discussed elsewhere in this Order.

Plaintiffs did not plead a fraud claim in their Complaint, and as discussed above, the Court shall not grant Plaintiffs leave to add a fraud claim.  However, Plaintiffs argue that even when a plaintiff pleads only breach of contract and does not assert a tort cause of action, a court may refuse to enforce a limitation of liability provision if it will serve to insulate a party from damages resulting from its own fraudulent acts.  See Civic Ctr. Drive Apartments Ltd. P'ship v. Sw. Bell Video Servs., 295 F. Supp. 2d 1091, 1106 (N.D. Cal. 2003) (citing Cal. Civ. Code § 1668, which provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law.")

Thus, under both California law and the language of the Limitation Clause itself, the Limitation Clause is unenforceable if enforcement of the Limitation Clause would exempt Defendant from responsibility for its own fraud.  Here, however, the Limitation Clause will not exempt Defendant from liability for fraud because Plaintiffs waived the alleged fraud by continuing to perform the contract even after Plaintiffs discovered that alleged misrepresentations had been made by Defendant.  Plaintiffs learned of Defendant's alleged misrepresentations regarding Peregrine's and ACCO's involvement in the project as early as July 2006.  Plaintiffs continued to perform until Defendant allegedly breached the contract when it gave Plaintiffs notice of termination in July 2008.  Even in cases where a party has been fraudulently induced to make either a contract of sale or purchase, it follows that if, after full knowledge of the fraud or deceit, he goes forward and executes it notwithstanding such fraud, the damage which he thereby sustains is

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

1    voluntarily incurred.  Commodity Credit Corp. v. Rosenberg Bros. & Co., 243 F.2d 504, 512 (9th

2    Cir. 1957).

3          The Court's next task is to apply the Limitation Clause to each of Plaintiffs' claimed item

4    of damages.

**b.  The first and second claimed items of damages**

6          Plaintiffs' first item of claimed damages is for the amounts NavCom paid to Oki pursuant

7    to the terms of the Agreement (a first payment of $300,000 and a second payment of $120,000,

8    labeled as "Development Charges" under Schedule C of the Agreement).  Plaintiffs' second item of

9    claimed damages is for $174,000, representing the internal expenses incurred by NavCom

10   throughout the period the Agreement was active.  Defendant contends that these damages are

11   expressly precluded by the Limitation Clause because they are either consequential, exemplary,

12   special, or incidental damages.  Plaintiffs, to the contrary, assert that these damages are general (or

13   direct) damages, which are not expressly precluded by the Limitation Clause.

14         These damages cannot properly be characterized as general or direct damages.  Damages

15   awarded to an injured party for breach of contract seek to approximate the agreed-upon

16   performance.  Lewis Jorge Const. Mgmt., Inc. v. Pomona Unified Sch. Dist., 34 Cal. 4th 960, 967

17   (2004) (internal citations and quotations omitted).  The goal is to put the plaintiff "in as good a

18   position as he or she would have occupied" if the defendant had not breached the contract.  Id.

19         Contractual damages are of two types—general damages (sometimes called direct damages)

20   and special damages (sometimes called consequential damages).  Id. at 968.  General damages are

21   often characterized as those that flow directly and necessarily from a breach of contract, or that are

22   a natural result of a breach.  Cal. Civ. Code § 3300 (damages "which, in the ordinary course of

23   things, would be likely to result" from breach).

24         These first and second items of damages are unrecoverable as general damages because

25   they do not flow directly and necessarily from a breach of contract, and are not a natural result of a

26   breach.  Lewis Jorge, 34 Cal. 4th at 968.  Unlike in a typical contract for the sale of goods where

27   the plaintiff provides payment in advance and the buyer breaches by failing to deliver the goods as

28

18

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    promised, this is a contract for the development and production of a new product where the parties,

2    in the express terms of the contract, contemplate a multi-step Development Phase under which a

3    product design would (and did) undergo a series of revisions.  The Development Charges and the

4    internal expenses incurred by NavCom were incurred during the Development Phase, and the

5    Development Charges are described in Schedule C as "includ[ing] one occurrence of each of the

6    actions itemized above.  Repetition of any of these steps will result in additional development

7    charges."  In other words, the Development Charges were paid in exchange for the performance of

8    the actions referenced in Schedule C of the Agreement.  Plaintiffs incurred internal expenses in

9    order to allow Defendant to perform the actions referenced in the Agreement.  Plaintiffs do not

10   argue that the Defendant failed to perform those actions.  Both sides acknowledge that they worked

11   with each other for a period of several years and that Defendant did in fact produce a number of

12   prototypes that were ultimately rejected by Plaintiffs.

13        Here, Defendant breached the contract when it failed to provide timely notice of

14   termination.  However, Plaintiffs' first and second claimed items of damages are expenditures

15   incurred in exchange for Defendant's performance of the actions described in the Agreement, and

16   Defendant did perform those actions.  Allowing Plaintiffs to recover the first and second claimed

17   items of damages would place Plaintiffs in a better position than they would otherwise have

18   occupied because they would have received Defendant's performance in exchange for no cost to

19   Plaintiffs.

20        Accordingly, the Court finds that Plaintiffs are barred by law from recovering the first and

21   second claimed items of damages.

22                           **c.   The third claimed item of damages**

23         Defendant categorizes this item of damages as "lost profits" within the meaning of the

24   Clause, which would render them unrecoverable.  Plaintiffs advance three arguments in rebuttal: 1)

25   Plaintiffs' claimed damages are not "lost profits," rather, Plaintiffs are claiming "cover" damages

26   pursuant to the Uniform Commercial Code ("UCC"), 2) even if Plaintiffs' claimed damages are

27

28

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

**United States District Court**
For the Northern District of California

1   "lost profits" rather than "cover," they are a species of lost profits different from the lost profits

2   precluded by the Clause, and 3) the damages are "increased costs" rather than "lost profits."

3         **i.   Whether the damages are recoverable as cover**

4         Cover is defined under the UCC as making in good faith, and without unreasonable delay,

5   any reasonable purchase goods in substitution for those due from the seller.  <u>See</u> Cal. Com. Code §

6   2712; <u>KGM Harvesting Co. v. Fresh Network</u>, 36 Cal. App. 4th 376, 380 (1995).  According to

7   Plaintiffs, in this case, Plaintiffs' implementation of the more expensive discrete solution is "cover"

8   for Defendant's failure to provide what was promised under the Agreement.

9         The parties disagree whether the Agreement is a contract for services or a contract for a sale

10  of goods, which would determine whether or not the UCC applies.  The Court finds that the

11  Agreement, at least at the point in time when it was terminated, is a contract for services.

12        The UCC applies to "transactions in goods."  Cal. Com. Code § 2102.  "Goods" are defined

13  in the Code as "all things (including specially manufactured goods) which are movable at the time

14  of identification to the contract for sale . . ."  Cal. Com. Code § 2105.  The UCC does not apply to

15  transactions involving service.  Complications arise when the transaction involves both goods and

16  services.  The courts have held application of the UCC in these instances turns on the "essence" of

17  the agreement.  <u>Filmservice Laboratories, Inc. v. Harvey Bernhard Enterprises, Inc.</u>, 208 Cal. App.

18  3d 1297, 1305 (1989); <u>RRX Industries, Inc. v. Lab-Con, Inc.</u>, 772 F.2d 543, 546 (9th Cir. 1985).

19  The court discerns what is the predominant factor-whether the thrust is the rendition of service with

20  goods incidentally involved or whether the transaction is a sale of goods with labor incidentally

21  involved.  <u>United States ex rel. Bartec Industries, Inc. v. United Pacific Co.</u>, 976 F.2d 1274, 1277

22  (9th Cir. 1992).

23        In <u>TK Power, Inc. v. Textron, Inc.</u>, 433 F. Supp. 2d 1058, 1061 (N.D. Cal. 2006), the court

24  analyzed a contract for the development and production of high frequency on-board battery

25  chargers for electric golf carts.  TK was approached by Textron as one of several potential vendors

26  to develop the product.  <u>Id.</u> at 1060.  TK was charged with developing a product that "represented

27  new technology that had not been previously incorporated into this context."  <u>Id.</u>  TK was to

28   

        20

**United States District Court**
For the Northern District of California

1

2

provide prototypes for laboratory testing, and once those prototypes tested succesfully, TK would then undertake the mass production of approximately 75,000 units per year.  Id.

3

4

5

6

The court found that the essence of the contract was for service, not goods, because most of the price Textron had paid up to the point of the lawsuit was for development of the prototypes.  Id. at 1062.  The court found that Textron was bargaining more for TK's "knowledge, skill, and ability" than it was for the actual material goods.  Id.

7

8

9

10

11

The court, and the parties, agreed that the UCC would have applied to the production and sale of the mass produced chargers.  Id. at 1063.  Where the parties differed was whether the UCC should apply to the entirety of the contract, or whether the court should segregate the contract such that the common law would apply to the development portion of the contract and the UCC to the production portion of the contract.  Id.

12

13

14

15

16

17

The TK Power court concluded that the latter position was correct, considering three factors: 1) whether the non-goods aspect of the transaction is clearly distinct and easily separable from the goods aspect, 2) whether the alleged performance or non-performance pertains solely to the non-goods aspect of the transaction, and 3) whether it makes sense to apply the UCC to the non-goods aspect of the transaction and whether applying non-UCC law accords with the parties' intent.

18

19

20

21

22

23

24

25

26

27

This Court finds the TK Power court's analysis instructive to the instant case and accordingly finds that the Agreement is segregable, that the Agreement never proceeded past the development phase, and that the development phase portion of the Agreement is governed by the common law.  The Agreement is clearly divided into a Development Phase and a Production Phase, and the Production Phase was not to commence until the Development Phase was completed.  During the Development Phase, Plaintiffs bargained for Defendant's knowledge, skill, and ability more than they bargained for the actual material goods.  Plaintiffs have thus far made to Defendant a first payment of $300,000 and a second payment of $120,000, in accordance with Schedule C of the Agreement.  Both payments are labeled "Development Charges."  The parties agree that the Production Phase never commenced.  Under these circumstances, the Court finds that

28

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

1   the contractual relationship, at least up to the point where it ended and this lawsuit began, is more

2   appropriately viewed as a services contract than a goods contract.

3          Having determined that the relationship between the parties is a services contract and that

4   the UCC does not apply, the Court finds that this item of damages is not recoverable as cover under

5   the UCC.

6                          **ii.   Whether the damages are otherwise recoverable**

7          Plaintiffs next contention is that, even if its third item of damages is more appropriately

8   characterized as "lost profits" rather than "cover," it is still not barred by the Limitation Clause

9   because the Limitation Clause does not expressly preclude recovery of general damages and that, at

10  least here, the lost profits Plaintiffs seek are lost profits as a measure of general damages rather

11  than lost profits as a measure of consequential damages.  Plaintiffs also argue that this item of

12  damages should not be characterized as "lost profits" because they are actually "increased costs."

13         However, regardless of how these damages are characterized, Plaintiffs may not recover

14  them because they were not proximately caused by the breach.  Under contract principles, the non-

15  breaching party is entitled to recover only those damages, including lost future profits, which are

16  proximately caused by the specific breach.  See, e.g., Metzenbaum v. R.O.S. Associates, 188 Cal.

17  App. 3d 202, 211 (1986); Brandon & Tibbs v. George Kevorkian Accountancy Corp., 226 Cal.

18  App. 3d 442, 457 (1990).  Or, to put it another way, the breaching party is only liable to place the

19  non-breaching party in the same position as if the specific breach had not occurred.  St. Paul Fire &

20  Marine Ins. Co. v. Am. Dynasty Surplus Lines Ins. Co., 101 Cal. App. 4th 1038, 1061 (2002).

21         Plaintiffs' damages expert calculated Plaintiffs' damages as the increased costs that

22  Plaintiffs would have endured over a multiple year period, estimated at several million dollars.[2]

23  Docket No. 104, Ex. 4, Expert Report.  However, Defendant's breach was that it failed to provide

24  the required three months' notice prior to termination.  The Court has little difficulty concluding

25  that the breach in this case is not the proximate cause of several years' worth of increased costs.

26

27

28
_____

[2] The Court describes the Expert Report vaguely because its contents are sealed.

22

United States District Court
For the Northern District of California

1    Plaintiffs' damages calculation might be appropriate if Defendant's breach was a breach of

2    a legally binding commitment to provide several years' worth of product to Plaintiffs.  In this

3    hypothetical scenario, Defendant would have guaranteed both that it would succeed in developing

4    an acceptable prototype, and that it would continue providing the product for a multiple year

5    period.  Nothing in the Agreement, or elsewhere in the record, indicates that Defendant made such

6    a promise, and the Agreement's grant of termination rights to both sides certainly weighs heavily

7    against such a finding.

8    It is certainly plausible that Plaintiffs suffered some amount of damages as a proximate

9    result of Defendant's breach (losing the benefit of three months to prepare for Defendant's

10   termination, for example), but not nearly to the extent described in Plaintiffs' Expert Report.  Thus,

11   the Court finds that Plaintiffs' third item of claimed damages is not recoverable as a matter of law.

12   **4.  Application to second and third Motion for Summary Judgment**

13   Having made the conclusions of law described above, the Court shall now apply them to

14   each individual Motion for Summary Judgment and shall also discuss the remainder of the issues

15   presented by each motion.

16   **a.  Defendant's Motion  for Summary Judgment (Docket No.**

17   **102)**

18   This Motion for Summary Judgment requests that the Court make the following rulings: 1)

19   that NavCom is precluded from claiming the three items of damages discussed in the parties'

20   briefs, and 2) that Deere is dismissed with prejudice from the action for failing to state a claim

21   upon which relief can be granted.

22   In the discussion above, the Court found that Plaintiffs are indeed precluded by law from

23   recovery of the three items of damages at issue.  Accordingly, the Court GRANTS Defendant's

24   Motion for Summary Judgment to the extent it seeks to preclude the three items of damages.

25   Next, Defendant argues that Deere should be dismissed with prejudice because its damages

26   are precluded under the Agreement.  Although the Court agrees with Defendant that the damages

27

28

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

United States District Court
For the Northern District of California

1  thus far requested by Plaintiffs are unrecoverable, this does not mean that any other potential item

2  of damages is also unrecoverable.

3  According to the parties, Deere's participation in the action is based upon a third-party

4  beneficiary theory. A contract, made expressly for the benefit of a third person, may be enforced

5  by him at any time before the parties thereto rescind it. Cal. Civ. Code § 1559. The parties' briefs

6  discuss a number of cases in which plaintiffs were or were not found to be third-party beneficiaries

7  who could sue to enforce a contract.

8  The parties' cases, however, all seem to contemplate a scenario under which the third-party

9  beneficiary was suing under a contract to which it was not directly a party, but also where the

10  direct party was absent from the suit and the third-party beneficiary was suing alone. Here, all of

11  the direct parties to the Agreement (NavCom and Oki) are present. There do not appear to be any

12  rights that Deere may enforce that NavCom may not, or vice versa, so it would appear that Deere's

13  claims rise and fall with NavCom's.

14  At this time, the issue of whether Deere is or is not a party to the action appears to be

15  irrelevant. The Court therefore DENIES Defendant's Motion for Summary Judgment to the extent

16  that it seeks to dismiss Deere from this action.

17              **b.  Plaintiffs' Motion for Summary Judgment (Docket No.**

18                    **97)**

19  Plaintiffs' Motion for Summary Judgment requests that the Court dismiss a number of

20  Defendant's affirmative defenses.

21              **i.  Defendant's Ninth Affirmative Defense (Statute of**

22                    **Limitations**

23  This affirmative defense asserts that Plaintiffs filed their breach of contract claim after the

24  expiration of the statute of limitations for a breach of contract. In California, a breach of contract

25  claim must be brought within four years of the date of breach. Cal. Civ. Proc. Code § 337. As

26  discussed above, Defendant breached when it terminated the Agreement on July 8, 2008 without

27

28

24

United States District Court
For the Northern District of California

1  providing three months' notice.  Plaintiffs filed their complaint on June 22, 2012, which is within

2  the four-year statute of limitations.

3  Accordingly, Plaintiffs' request to dismiss Defendant's Ninth Affirmative Defense is

4  GRANTED.

5  **ii.   Defendant's Sixth Affirmative Defense (Right to**

6  **Terminate)**

7  As discussed above, Defendant had a right to terminate the contract.  Plaintiffs' request to

8  dismiss this defense is DENIED.

9  **iii.   Defendant's Fifth Affirmative Defense (Failure to**

10  **Mitigate)**

11  Mitigation of damages is a question of fact.  Royal Thrift & Loan Co. v. Cnty. Escrow, Inc.,

12  123 Cal. App. 4th 24, 37, 20 Cal. Rptr. 3d 37, 47 (2004).  Plaintiffs' request to dismiss this defense

13  is DENIED.

14  **iv.   Defendant's Seventh Affirmative Defense**

15  **(Limitation of Liability Clause)**

16  As discussed above, the Limitation of Liability Clause is enforceable.  Plaintiffs' request to

17  dismiss this defense is DENIED.

18  **v.   Defendant's Second, Third, and Fourth**

19  **Affirmative Defenses (Waiver, Estoppel, and**

20  **Unclean Hands)**

21  At this time it appears unnecessary to address these defenses and the parties' briefs spend

22  little time discussing them.  Plaintiffs' request to dismiss these defenses is DENIED.

23  **vi.   Defendant's Eighth Affirmative Defense (Lack of**

24  **Standing)**

25  Defendant's lack of standing defense is based upon Deere's alleged third-party status.  For

26  the reasons discussed above, this issue does not need to be resolved at this time.  Plaintiffs' request

27  to dismiss this defense is DENIED.

28

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART
AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT

**IV.   CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion for Leave to Amend (Docket No. 131) is DENIED.  Defendant's Motion for Summary Judgment (Docket No. 100) is DENIED. Defendant's Motion for Summary Judgment (Docket No. 102) is GRANTED IN PART and DENIED IN PART.  Plaintiffs' Motion for Summary Judgment (Docket No. 97) is GRANTED IN PART and DENIED IN PART.

**IT IS SO ORDERED**

Dated: March 11, 2014

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-CV-04175-EJD
ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND; GRANTING IN PART AND DENYING IN PART THE MOTIONS FOR SUMMARY JUDGMENT