NAGASHIMA & HASHIMOTO
MARC R. LABGOLD (*pro hac vice*)
mlabgold@labgoldlaw.com
PATRICK J. HOEFFNER (*pro hac vice*)
phoeffner@labgoldlaw.com
12007 Sunrise Valley Drive, Suite 110
Reston, Virginia  20191
Telephone: 877-401-8855
Facsimile:  877-401-8855

NAGASHIMA & HASHIMOTO
TAKAAKI NAGASHIMA (*pro hac vice*)
nagashima@nandhlaw.com
Hirakawa-cho, KS Bldg., 2nd Floor
2-4-14, Hirakawa-cho, Chiyoda-ku
Tokyo 102-0098 Japan
Telephone: +81-3-3239-5750
Facsimile:  +81-3-3239-8538

MAKMAN & MATZ LLP
DAVID A. MAKMAN (SBN 178195)
ROBERT C. MATZ  (SBN 217822)
655 Mariner's Island Blvd. Suite 306
San Mateo, California  94404
Telephone: 650-242-1560
Facsimile:  650-242-1547

Attorneys for Defendant
Oki Electric Industry Co., Ltd

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NAVCOM TECHNOLOGY, INC.; and DEERE & COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>OKI ELECTRIC INDUSTRY CO., LTD.; and DOES ONE through TEN inclusive,<br><br>Defendants. | Case No. 5:12-cv-04175 EJD<br><br>**DEFENDANT OKI ELECTRIC INDUSTRY CO. LTD'S BENCH BRIEF REGARDING ITS MOTION FOR JUDGMENT AS A MATTER OF LAW MADE IN OPEN COURT**<br><br>Judge:  Honorable Edward J. Davila<br>Court: Courtroom 4, San Jose |

# TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.   LEGAL STANDARD ........................................................................................ 1

III.  ARGUMENT ..................................................................................................... 2

      A.   Where's the Breach? .............................................................................. 2

      B.   Plaintiffs Have Failed To Prove Any Harm Arising
           From Any Alleged Breach ..................................................................... 4

      C.   Plaintiffs Cannot Show Breach of Section 1.0,
           or Harm Proximately Caused by The Alleged
           Breach of Section 1.0 ............................................................................ 8

      D.   Plaintiffs Have Failed To Prove Any Breach of
           Section 2.2, Including Failing To
           Prove Any Harm Proximately Caused
           By The Alleged Breach Of Section 2.2 ................................................. 9

      E.   Plaintiffs Have Failed To Prove Any Breach of
           Section 2.6, Including Failing To Prove
           Any Harm Proximately Caused By The
           Alleged Breach Of Section 2.6 ............................................................ 14

      F.   Plaintiffs Have Failed To Prove Any Breach of
           Section 2.8, Including Failing To Prove
           Any Harm Proximately Caused By
           The Alleged Breach Of Section 2.8 ..................................................... 15

      G.   Plaintiffs Have Failed to Prove Any Harm In Fact ............................. 19

      H.   Plaintiffs' Unjust Enrichment Claim Is
           Unsupportable Under California Law ................................................... 21

      I.   Deere Is Not An Intended Third Party Beneficiary .............................. 23

      J.   Section 16.0 Precludes Plaintiffs' Damages ....................................... 24

IV.   CONCLUSION ................................................................................................ 25

1

## TABLE OF AUTHORITIES

2 **Cases** **Page**

3

4 *Acoustics, Inc. v. Trepte Constr. Co.*,
  14 Cal. App. 3d 887 (Cal. Ct. App. 1971) ............................................................. 1

5
  *Brandon & Tibbs*,
6   226 Cal. App. 3d 442 ........................................................................................ 6, 14

7 *Brinton v. Bankers Pension Servs., Inc.*,
  76 Cal. App. 4th 550 (1999) ................................................................................ 23
8

9 *Brothers v. Hewlett-Packard Co.*,
  No. C-06-02254 RMW, 2007 WL 485979 (N.D. Cal. Feb. 12, 2007) .................. 17
10
  *Byrd v. Maricopa County Sheriff's Dep't*,
11   629 F.3d 1135 (9th Cir. 2011)................................................................................ 1

12 *Citri-Lite Co. v. Cott Beverages, Inc.*,
  721 F. Supp. 2d 912 (E.D. Cal. 2010).................................................................... 7
13

14 *Citrilite Co., Inc. v. Cott Beverages, Inc.*,
  1:07-CV-01075, 2011 WL 284915 (E.D. Cal. Jan. 25, 2011) ................................. 7
15

16 *Consolidated World Investments, Inc. v. Lid Preferred Ltd.*,
  9 Cal. App. 4th 373 (1993) ............................................................................... 2, 14
17
  *Dunkel v. eBay Inc.*, No. 5:12–CV–01452–EJD,
18   2013 WL 415584 (N.D. Cal. January 31, 2013) .................................................... 21

19 *Durell v. Sharp* Healthcare,
  108 Cal. Rptr. 3d 682 (Cal. App. 2010)................................................................ 21
20

21 *Federal Deposit Insurance Corp. v. Dintino*,
  167 Cal.App.4th 333 (Cal. App. 2008) ................................................................. 21
22

23 *Graham-Sult v. Clainos,* Civ. No. 4:10-cv-04877-CW,
  2014 WL 444153 (9th Cir.  2013 December 27, 2013) ......................................... 21
24

25 *Garcia v. Truck Ins. Exch.*,
  36 Cal. 3d 426 (1984) .......................................................................................... 23
26

27 *Griffin v. Beresa*,
  143 Cal. App. 2d 299 (Cal. App. 3 Dist. 1956) ...................................................... 9

28

OKI ELECTRIC'S BENCH BRIEF REGARDING
ITS MOTION FOR JUDGMENT AS A MATTER
OF LAW MADE IN OPEN COURT

*Honda v. Reed*,
    156 Cal.App.2d 536 (Cal. App. 2 Dist., 1958)............................................................................ 9

*Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*,
    3:11-CV-01576-H-RBB, 2012 WL 2861160 .......................................................... 17

*Jolly v. Eli Lilly & Co.*,
    44 Cal. 3d. 1103 (Cal. 1988)............................................................................. 4, 7

*Jones v. Aetna Cas. & Sur. Co.*,
    26 Cal. App. 4th 1717 (1994) ........................................................................... 23

*Lamle v. Mattel, Inc.*,
    394 F.3d 1355 (Fed. Cir. 2005)........................................................................... 9

*Lucas v. Hamm*,
    56 Cal. 2d 583 (1961) ..................................................................................... 23

*Martin v. U-Haul Co. of Fresno*,
    204 Cal. App. 3d 396 (Cal. Ct. App. 1988) ................................................... 5, 6, 7

*McCreary v. Mercury Lumber Distributors*,
    124 Cal.App.2d 477 (Cal. App. 3 Dist. 1954)................................................... 8, 9

*Melchior v. New Line Prods., Inc.*,
    106 Cal.App.4th 779 (Cal. Ct. App. 2003)........................................................ 21

*Neverkovec v. Fredericks*,
    74 Cal. App. 4th 337 (1999) ............................................................................ 23

*Otworth v. Southern Pac. Transportation Co.*
    166 Cal.App.3d 452 (1985)............................................................................... 22

*Prakashpalan v. Engstrom, Lipscomb & Lack*,
    223 Cal. App. 4th 1105 (2014), *as modified on denial of reh'g* (Feb. 27, 2014).................... 21

*Rice v. Sunbeam Prods., Inc.*, No. CV 12-7923-CAS-(AJW),
    2013 WL 146270 (C.D. Cal. Jan 7, 2013) ....................................................... 17

*Schertzinger v. Williams*,
    17 Cal. Rptr 719 (Cal. App. 4 Dist. 1962) ......................................................... 9

*Shaffer v. Debbas*,
    17 Cal. App. 4th 33 (1993) ................................................................................ 6

*Thrifty Payless, Inc. v. Mariners Mile Gateway*, LLC,
    185 Cal. App. 4th 1050 (2010) .......................................................................... 6

OKI ELECTRIC'S BENCH BRIEF REGARDING
ITS MOTION FOR JUDGMENT AS A MATTER
OF LAW MADE IN OPEN COURT

1

*In re Toyota Corp Unintended Acceleration Litig.*,
       754 F. Supp. 2d 1145 (C.D. Cal. 2010) ........................................................ 17, 21

2

3

*Troyk v. Farmers Grp., Inc.*,
       171 Cal. App. 4th 1305 (2009) ................................................................... 2, 4

4

*Valle de Oro Bank v. Gamboa*,
       26 Cal. App. 4th 1686 (1994) ......................................................................... 6

5

6

7

**Other Authorities**

8

California Civil Code section 1439.................................................................... 14

9

California Civil Code Section 1549..................................................................... 2

10

California Civil Code section 1559.................................................................... 23

11

California Civil Code Section 3300..................................................................... 2

12

California Civil Code Section 3358.................................................................... 13

13

CAL. CODE CIV. PROC. 338............................................................................... 21

14

FED. R. CIV. P. 50(a)................................................................................... 1, 25

15

FED. R. CIV. P. 50(a)(1)................................................................................... 1

16

Witkin, Summary of Cal. Law, Contracts, §791 ................................................. 1, 19

17

18

19

20

21

22

23

24

25

26

27

28

OKI ELECTRIC'S BENCH BRIEF REGARDING
ITS MOTION FOR JUDGMENT AS A MATTER
OF LAW MADE IN OPEN COURT

1

## I.     INTRODUCTION

2      Pursuant to FED. R. CIV. P. 50(a), Defendant Oki Electric Industry Co., Ltd. ("Oki

3  Electric") moves for judgment as a matter of law on all of Plaintiffs' claims.  Oki Electric moved

4  for the requested relief at the close of Plaintiffs' case-in-chief and, pursuant to the Court's

5  permission and guidance (Trial Transcript ("Tr.") at 1260:9-1263:2), submits this brief in support

6  of its motion, to be heard at 8:30 a.m., on May 5, 2014, in Courtroom 4, located at 280 South

7  First Street, San Jose, California.[1]  Plaintiffs NavCom Technology, Inc. ("NavCom") and Deere

8  & Company ("Deere"; collectively, "Plaintiffs") have (1) failed to meet their burden of proof that

9  Oki Electric is liable for any alleged breach of contract, and (2) failed to prove that any alleged

10  breach proximately caused damages that are recoverable by either Navcom or Deere.  "Judgment

11  as a matter of law is appropriate when the evidence presented at trial permits only one reasonable

12  conclusion."  *Byrd v. Maricopa County Sheriff's Dep't*, 629 F.3d 1135, 1138 (9th Cir. 2011).

13  Because "a reasonable jury would not have a legally sufficient evidentiary basis" to find for either

14  Plaintiff on any of their claims, the Court should enter judgment in Oki Electric's favor on all of

15  Plaintiffs' claims.  FED. R. CIV. P. 50(a)(1).

## II.    LEGAL STANDARD

16

17      Under California law, the essential elements of a cause of action for breach of contract

18  are:

19          (1) the existence of a valid contract between the parties;

20          (2) Plaintiff's performance, unless excused;

21          (3) Defendant's unjustified or unexcused failure to perform a current obligation;

            (4) Plaintiff had the ability to perform; and

22          (5) harm to Plaintiff caused by the breach.

23  *See*, 1, Witkin, Summary of Cal. Law (9th Ed. 1987), Contracts, §791; *see also*, *Acoustics, Inc. v.*

24  *Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (Cal. Ct. App. 1971).  "Implicit in the element of

25

_____

26  [1]   This motion is based on the points and authorities below, as well as all of Defendant's prior
pleadings and papers on file in this case, including but not limited to all points and authorities
27  raised in Docket Nos. 100, 102, 111, 150, 185, 195, 196, 200, 202, 203, 216, and 238, each of
which is incorporated herein by reference, the evidence admitted at trial, and upon any such other
28  matters as may be presented to the Court at the time of hearing on this motion.

damage is that the defendant's breach caused the plaintiff's damage." *Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1352 (2009); *Consolidated World Investments, Inc. v. Lid Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1993) ("Where Defendant's duty to perform under the contract is conditioned on the happening of some event, the Plaintiff must prove the event transpired."). California Civil Code Section 1549 provides: "A contract is an agreement to do or not to do a specified thing." *See also*, California Civil Code Section 3300.

## III.   ARGUMENT

### A.   Where's the Breach?

Plaintiffs' arguments relating to breach have varied throughout this action, but their only *current* allegations of breach relate to Sections 1.0 of the Agreement and Sections 2.2, 2.6, and 2.8 of the Terms and Conditions of the Agreement ("Terms & Conditions"). Plaintiffs "confirmed" this at trial, when they represented to the Court that their allegations of breach include only that Oki Semiconductor breached Section 1.0 by failing to provide the requisite 3-month notice, and that Oki Semiconductor breached what Plaintiffs' vaguely identified as "continuing obligations" under Sections 2.2, 2.6, and 2.8 of the Terms and Conditions of the Agreement by terminating the Agreement:

> **The Court:**  So let me ask you, what is the breach there? Is the breach the untimely breach?
>
> **Mr. Schuman:**  The breach, your honor, is the failure to deliver the working prototypes which was a continuing obligation. After they delivered those chips that we all know did not work in April 2007, after they tried unsuccessfully to remedy those problems into 2008, and, indeed, the new proposal, new design to meet the specification in four chips leads to a letter in April of 2008 that we will use best efforts under the contract to fix all of the problems with this design, is an assurance that they're going to be using their best efforts, which they were obligated to do in the contract to deliver working prototypes that met the specification.
>
> **The Court**:  So your breach -- excuse me. Your breach is 2.6?
>
> **Mr. Schuman**:   2.6 is the warranty that the engineering prototypes they deliver will meet the specifications.
>
> 2.8 is the warranty that is the provision that says we will repair or replace those that do not. And that was a ***continuing obligation***, and Oki's conduct actually shows that they understood that was a ***continuing obligation*** until they decided for money reasons to quit in July of 2008.

2

So there was a continuing obligation under this contract to deliver working engineering prototypes and to repair or replace those that did not meet the specification, and they were actually doing that. Their conduct supports our interpretation of the agreement.

And as the court knows, that is a relevant canon of interpretation.

**The Court**:   So your breaches are 2.6 -- I just want to be clear, if you can reference me the paragraphs in the contract. Is it 2.2, 2.6, 2.8.

**Mr. Schuman**:   2.2, 2.6, and 2.8.

**The Court**:   Those are the breaches.

**Mr. Schuman**:   Yes, your honor. And, of course, now that the court has ruled 1.0 trumps 2.7, we have the additional breach of 1.0 at least obligating them to at least finish a term. And they sent a termination letter in July of 2008, and they did not finish the 2008 term.

And as we know, there was a design on the table and a design was supposed to remedy the problems, and they should have been continuing through 2008 to deliver those working prototypes.

*See,* Tr. at 731:22-734:17 (emphasis added).

Each and every one of Plaintiffs' theories of breach rests on the fact that Oki Semiconductor terminated the Agreement, but the Court has ruled that Oki Semiconductor had a right to terminate. Even when pressed by the Court, as shown above, Plaintiffs were unable to articulate ***any*** breach that does not stem from Oki Semiconductor's termination of the Agreement. All of the breaches that Plaintiffs assert stem from the termination letter, including: Oki Semiconductor's alleged failure to meet the notice requirement when terminating (Section 1.0); Oki Semiconductor's termination before, allegedly, meeting its obligation to use "reasonable best efforts" to conform to the estimated development schedule; and Oki Semiconductor's termination prior to meeting its alleged obligations under §§ 2.6 and 2.8 to deliver working prototypes.

This is confirmed by Plaintiffs' position during the summary judgment briefing in this case. Plaintiffs moved for summary judgment on Oki Electric's statute of limitations affirmative defense, and in that motion they represented "there is no evidence that Plaintiffs' claim for breach of contract accrued prior to July 8, 2008, when Oki delivered its notice of termination to NavCom." Dkt. No. 99-3, at 8:21-23.   According to Plaintiffs, they were entitled to summary judgment on the statute of limitations defense because "Oki did not provide notice of termination until July 8, 2008.   It is that termination that NavCom contends was wrongful and not permitted

by the Agreement." *Id.* at 9:14-16.   In fact, NavCom *specifically refuted* Oki Electric's suggestions that other conduct by Oki Semiconductor might have, *arguendo*, resulted in a breach. *Id.* at 8-10.

Moreover, when Plaintiffs' witness Paul Galyean testified at trial that certain conduct occurring in March of 2008 might have been considered a breach (Tr. 473:6-16), Plaintiffs' counsel "corrected" him on his error during a pause in his testimony, and Dr. Galyean volunteered a repudiation of his previous testimony during re-cross.  (Tr. at 534:7-536:4).

**B.   Plaintiffs Have Failed to Prove Any Harm Arising From Any Alleged Breach**

Plaintiffs have failed to show any harm arising from any alleged breach by Oki Semiconductor.  Under California law, a plaintiff must show "that the defendant's breach caused the plaintiff's damage" in order to state a cause of action for breach of contract.  *Troyk*, 171 Cal. App. 4th at 1352.  Plaintiffs cannot do so.  To avoid being precluded by the applicable four-year statute of limitations, any alleged breach must have accrued later than June 22, 2008.  *Jolly v. Eli Lilly & Co.*, 44 Cal. 3d. 1103, 1109 (Cal. 1988) ("An action accrues on the date of injury.").  It is undisputed that, even assuming Oki Semiconductor had fully performed through December 31, 2008, NavCom would not have received functioning prototypes or designs for functioning prototypes, because as of March of 2008, the evidence demonstrates that the parties had understood and agreed that the ***earliest*** the prototypes of the 4-chip design would have been available was July of 2009.  (*See, e.g.,* PX-56 (annotations added below); Tr. at 1003:24-1004:3).



Figure 1  Revised RF ASIC Schedule

1    Thus, as of June 21, 2008, there was no breach and the parties were in agreement that

2    prototypes would arrive in July of 2009.   On July 8, 2008, NavCom received Oki's letter

3    providing notice of termination and, Plaintiffs allege, the agreement was terminated by no later

4    than that date – *i.e.,* **July 8, 2008**.[2]

5    California law restricts damages for the termination of an agreement containing a right of

6    termination clause to the damages that would have accrued during the notice period.  *Martin v. U-*

7    *Haul Co. of Fresno*, 204 Cal. App. 3d 396, 409 (Cal. Ct. App. 1988) ("The specific rule that a

8    termination clause limits recoverable damages to the notice period is consistent with the general

9    requirement that contract damages are limited to those foreseeable by the parties at the time of

10    contracting.").   Thus, even assuming *arguendo* that there was a failure to comply with the notice

11    period of the termination clause, the proper measure of damages under Plaintiffs' theory is the

12    difference between (1) the position that NavCom was in during the 3-months following

13    termination and (2) the position that NavCom **would have been in** absent the alleged breach.   The

14    unrefuted evidence demonstrates that NavCom and Oki Semiconductor had agreed that even if

15    performance were not interrupted by the termination, no prototypes would have been prepared

16    until **July of 2009 at the earliest**.   Thus, Plaintiffs' position 3-months following the termination,

17    or even on December 31, 2008, as Plaintiffs now contend, would have been **exactly the the same**

18    as it was on July 2008.   Arguably, Plaintiff was in a **better** position having received the earlier

19

20

21

22

23    [2]    The parties disagree regarding the import of this letter and the length of the termination period
24    under the Agreement.  Oki Electric's position is that it provided written notice of termination at
      least as early as February 21, 2008 (DX-1169; 392:11-393:12), indicating that an all-layer
25    redesign would be required, and by no later than March 26, 2008, when "it was clear to
      everybody that a significant redesign was going to be required"  (Tr. at 1140:6-13; Plaintiffs'
26    30(b)(6) testimony at 105:12-16).  Plaintiffs' position is that the July 8, 2008 letter represents a
      unilateral termination of the Agreement without notice, and that the Agreement provides for a
27    right of termination with 90 days notice prior to the end of the current term (contrary to the
      Court's Order, Dkt. No. 199 at 23:8-11), in which case a proper termination would not have been
28    effective until December 31, 2008.

1   notice as it provided additional time to secure an alternate vendor had it chosen to do so.[3]

2   Plaintiffs have adduced no evidence to the contrary during trial.  Plaintiffs have failed to show

3   any harm caused by Oki Semiconductor's alleged breach, and Oki Electric respectfully requests

4   judgment as a matter of law on that basis.

5        In their motion to clarify the Court's ruling on summary judgment (Dkt. No. 228),

6   Plaintiffs attempt to distinguish *Martin*, and argue that "[i]f the jury finds for Plaintiffs on these

7   other breach theories, Plaintiffs' damages for Oki's summarily adjudicated breach of Section 1.0

8   are not limited to remaining term of the Agreement." *Id.* at 5:1-9.  This is incorrect as a matter of

9   law.  First, *Martin* is a thoroughly-reasoned, published opinion that examines the precedent under

10  California law and comes to a conclusion, after 14 pages of analysis, that damages are limited to

11  the notice period of a termination clause, and that "awarding the wronged party damages which

12  exceed those attributable to the [termination period] immediately following the breach would

13  place that party in a better position than that resulting if the breaching party had performed in

14  accordance with the terms of the agreement." *Martin*, 204 Cal. App. 3d at 411.  Plaintiffs rest

15  their hopes for distinguishing *Martin* on a single unpublished opinion that states in a footnote, as

16  dicta, without analysis, that "[t]he rule of *Martin* . . . applies in cases in which the termination of

17  the contract is itself the breach," and not in any other cases.  This footnote, however, has since

18  been contradicted by at least one subsequent, also unpublished, case, and by Northern District of

19  California decisions applying California law.  *See Thrifty Payless, Inc. v. Mariners Mile Gateway*,

20  LLC, 185 Cal. App. 4th 1050, 1064 (2010) ("[Plaintiff] argues that even if [Defendant] had the

21  right to terminate the lease, it is entitled to damages because of the antecedent defaults . . . .

22  Liability for default, however, does not persist after a valid termination under the lease—if it did,

---

23  [3]    The evidence proves that NavCom made the business decision not to secure another vendor,

24  thereby assuming any risk of alleged future harm.  "A Plaintiff may not recover for damages
     avoidable through . . . reasonable exertion." *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th

25  1686, 1691 (1994); *see also Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal.
     App. 3d 442, 460 (Cal. Ct. App. 1990) (a plaintiff must do "everything reasonably possible to

26  negate his own loss"); *Shaffer v. Debbas*, 17 Cal. App. 4th 33, 41 (1993) (holding that avoidable

27  damages are unrecoverable).  Not only did Plaintiffs fail to prove they mitigated their damages,
     the evidence demonstrates they made the decision not to do so, but instead allowed the alleged

28  damages to accrue.  (*See, e.g.*, Tr. 454:3-8; 456:15-457:10; 1152:2-11; 1185:1-5).

it would be as if there were no valid termination." (citing *Martin*)); *see also Citrilite Co., Inc. v. Cott Beverages, Inc.*, 1:07-CV-01075, 2011 WL 284915 (E.D. Cal. Jan. 25, 2011) ("Plaintiff's purported exception would swallow the *Martin* rule, as an aggrieved party could avoid the rule simply by asserting that some antecedent breach of a contract obligation, such as a breach of the covenant of good faith and fair dealing, caused their adversary to exercise a termination option."); *Citri-Lite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912, 937 (E.D. Cal. 2010) (holding that a termination clause limited damages to a 60-day period following cancellation, and holding that speculative lost royalty payments out until 2015 were too remote to be recoverable).

Second, even if one assumes *arguendo* that Plaintiffs are correct and the *Martin* rule only applies when the alleged breach stems from the termination itself, that does not limit the rule's effect in this case.  Here, as described above, every theory of breach alleged by Plaintiffs is premised on the ***termination itself***.  Due to the statute of limitations, Plaintiffs and Oki Electric agree that the parties ***had not breached as of June 21, 2008***.  If they had, the statute of limitations for such breaches would have begun to accrue at the time of the breach, thereby barring recovery due to Plaintiffs choice to delay filing suit until June 22, 2012.  *See Jolly*, 44 Cal. 3d at 1109 ("An action accrues on the date of injury.").  Plaintiffs have presented evidence of only two relevant events that occurred between June 22, 2008 and July 8, 2008: first, a June 30, 2008 email whereby Oki Semiconductor provided its notice of termination of its participation in the project (PX-165; Tr. at 1218:6-1219:15), and second, the July 8, 2008 letter sent in response to Navcom's request for formal notice and clarification of the June 30 email (Tr. at 1218:9-1219:15; PX-165).  Even Plaintiffs agree, in their own summary judgment briefs, that "there is no evidence that Plaintiffs' claim for breach of contract accrued prior to July 8, 2008, when Oki delivered its notice of termination to NavCom." Dkt.  No. 99-3, at 8:21-23.  Therefore, the *Martin* doctrine applies, and any possible claim for Plaintiffs' damages is properly limited to the 3-month notice period.

Nonetheless, even if Plaintiffs' damages were not limited to the notice period, Plaintiffs have failed, as a matter of law, to show any breach of sections 1.0, 2.2, 2.6, and 2.8, nor any "unjust enrichment" by Oki Semiconductor.

1

### C.   Plaintiffs Cannot Show Breach of Section 1.0, or Harm Proximately Caused by The Alleged Breach of Section 1.0

Section 1.0 of the Amended Agreement provides that either party may terminate the agreement with 90 days notice, as the Court found. (*See, e.g.*, Dkt. No. 199 at 15, 22).  Plaintiffs cannot show breach of § 1.0 of the Amended Agreement.  Oki Semiconductor provided repeated notice to NavCom that it intended to stop work on the contract. On February 21, 2008, Oki Semiconductor provided notice that it would not be performing under the contract (*i.e.,* not making Version 25), because an "[a]ll-layer redesign [was] needed."  (DX-1169; Tr. at 392:11-393:12.).  By March 26, 2008, "it was clear to everybody that a significant redesign was going to be required," and NavCom had agreed to stop Version 25 development.  (*See, e.g.*, Tr. at 1140:6-13; Plaintiffs' 30(b)(6) testimony at 105:12-16, Tr. at 1069:24-1070:9).  Subsequent to that notice, the parties agreed that a 4-chip solution was required.  (*See, e.g.,* DX-1055)  Then they began negotiations relating to the price and schedule of the new 4-chip project.  (Tr. at 1209:23-1211:25; DX-1065.)  At this point, both parties recognized that the new design would require a new agreement.  (*See, e.g.,* DX-1051; DX-1053; DX-1054).  By May 15, there was agreement that the 4-ship would be pursued.  (*Id.*)  Thus, Oki Semiconductor had provided notice to NavCom of the termination of the Amended Agreement as of February 21, 2008, such that the 90 days had run by the time that NavCom alleges Oki Semiconductor stopped work on July 8, 2008.

In the alternative, even if Oki Semiconductor did not provide notice of the termination under § 1.0, the conduct of the parties between February 21, 2008 and July 8, 2008 proves as a matter of law that the Amended Agreement had been abandoned or rescinded.  It is well established under California law that a rescission (or abandonment) of a contract may be implied from the acts of the parties and may be accomplished by the repudiation of the contract by one of the parties with the acquiescence of the other party in that repudiation.  *McCreary v. Mercury Lumber Distributors*, 124 Cal.App.2d 477, 486 (Cal. App. 3 Dist., 1954).  In *McCreary*, one party sent a notice of rescission, but the other party alleged they had not received it.  Thereafter, they entered negotiations in an attempt "either for a new contract or a modification of the old one." *Id. at* 481.  No new contract or amendment, however, was ever executed.  *Id.* at 482.  The Court

ruled that it was **not** necessary for the parties to state that they mutually rescind the contract; instead, rescission may be proved by other words and acts, including for example the negotiation of a new contract. *Id.; Honda v. Reed*, 156 Cal.App.2d 536 (Cal. App. 2 Dist., 1958) ("Abandonment of a contract may be implied from the acts of the parties in negotiating for a new and different contract concerning the same property or subject matter."). The negotiation of the new contract is sufficient to create a rescission; whether the parties reach agreement on a new contract is immaterial. *Honda* at 536

California and Federal Courts have consistently relied upon the *McCreary* case from issuance to the present. *See, e.g.*, *Griffin v. Beresa*, 143 Cal. App. 2d 299 (Cal. App. 3 Dist. 1956) (finding that a contract was rescinded by mutual abandonment); *Schertzinger v. Williams*, 17 Cal. Rptr 719 (Cal. App. 4 Dist. 1962) (finding that a contract was rescinded by mutual abandonment); *Lamle v. Mattel, Inc.*, 394 F.3d 1355, 1360 (Fed. Cir. 2005). The conduct of the parties as described above evidences that the Amended Agreement had been abandoned as set forth in *McCreary*, including that the parties (1) agreed not to complete the 3-chip design from Version 25 of the specification as included in the Amended Agreement, (2) agreed that a new design was required, (3) settled on a new 4-chip design, and (4) agreed that a new agreement was required. Thus, § 1.0 was either met by Oki Semiconductor's February 21, 2008 notice, or the agreement was terminated by abandonment or rescission under the rule of *McCreary*.

Finally, as described above, even if Oki Semiconductor had breached and failed to provide notice under the notice provision of the right to terminate, NavCom has failed to prove any damages accruing during the notice period.

### D. Plaintiffs Have Failed To Prove Any Breach of Section 2.2, Including Failing To Prove Any Harm Proximately Caused By The Alleged Breach Of Section 2.2

As a matter of law, Plaintiffs failed to prove any breach of Section 2.2 of the Terms & Conditions and, even if *arguendo* they could, they have failed to prove any harm stemming from an alleged breach of Section 2.2 of the Terms & Conditions. Section 2.2 reads:

OKI ELECTRIC'S BENCH BRIEF REGARDING ITS MOTION FOR JUDGMENT AS A MATTER OF LAW MADE IN OPEN COURT

1
2

2.2 Development Schedule.  Schedule C, attached hereto and incorporated herein, contains the Estimated Development Time and the Engineering Prototype Turnaround Time (Delivery). Seller agrees to conform to such schedule on a reasonable best efforts basis.

3

(PX-125, Terms & Conditions § 2.2, OKI_LW_008264).  Schedule C of the Agreement sets forth

4

an "Estimated Development Time and Estimated Engineering Prototype Turnaround Time" of

5

"10 months from the *sign-off* of this Agreement." (*Id*. at OKI_LW_8262; emphasis added).[4]

6

Section 2.2 of the Terms & Conditions on its face is directed to the "Development

7

Schedule" and, as such, any alleged breach of Section 2.2 *per se* must be based upon some

8

alleged failure to comply with an obligation pertaining to the schedule.  Plaintiffs take the

9

position that "10 months from the sign-off" means ten months from the signing of the initial

10

Agreement in December of 2005.  Ten months from December of 2005 would be October of

11

2006.  If the breach occurred at that point, then any recovery is blocked by the 4-year statute of

12

limitations, which would have accrued by October 2010 – 20 months prior to the filing of suit.

13

Further, the only evidence admitted on the subject was the testimony of Paul Galyean who at trial

14

confirmed his prior 30(b)(6) testimony provided on behalf of both Plaintiffs that the 10 month

15

period was merely an estimate, and agreed that there were "no guarantees as to what the time of

16

delivery of anything would be." (Tr. at 352:7-353:12).  In fact, he "understood . . . it was not a

17

guarantee, it was an estimate," and that Oki Semiconductor did not breach when it did not provide

18

chips in that timeframe, because Oki Semiconductor "w[as] not obligated to provide [the chips] in

19

ten months." (*Id.*)

20

It is axiomatic that, if there was no "obligation" for Oki Semiconductor to provide the

21

samples in 10-months, any alleged failure to do so cannot give rise to a breach.  Additionally,

22

23
24
25
26
27
28

---

[4]   Defendant notes that the term "sign-off" is different than the execution date of the agreement as evidenced by the language on the same page of Schedule C, which requires the first payment be made "at the time of signing this Agreement."  Defendant contends the "sign-off" was in reference to the parties having "signed off" on the finalized specification for the RF ASIC to be prepared. This is wholly consistent with the use of the term "sign-off" in the Parties' agreement for the development of the Digital ASIC, which Oki Electric established at trial was negotiated simultaneously with the RF ASIC agreement.  (*See, e.g.*, DX-1079 at OKI_LW_0026769; Tr. 343:5-435:13).  Obviously, it was not possible to prepare a chipset corresponding to the Version 19 chipset since it was, as the evidence proves, incomplete. (*See, e,g,,* Tr. 218:17-24).

OKI ELECTRIC'S BENCH BRIEF REGARDING ITS MOTION FOR JUDGMENT AS A MATTER OF LAW MADE IN OPEN COURT

Plaintiffs' own expert, Phillip Ward, unequivocally testified that it was "very typical" for there to be many changes during the life of a project like this. (Tr. at 645:25-646:21). And, in fact, the RF ASIC project experienced *fewer* changes than a "typical" project, because the RF ASIC project started from a "bread board" design, while other projects may start from the beginning. (*Id.*; *see also* Tr. at 668:14-669:20 (agreeing that the number of revisions was "typical"); 670:13-16). Nor was it unusual to have 25 versions of the specification. (Tr. at 646:12-21).

Even more so, however, any such alleged breach was rendered moot because the parties subsequently entered into a new reintegrated Amended Agreement on November 29, 2006, in which any obligation to develop an RF ASIC corresponding to Version 19 of the Specification, was replaced and superseded by the obligation to develop an RF ASIC corresponding to Version 25 of the Specification. (DX-1004; Tr. 363:7-364:6). The unrebutted evidence proves that as of the entry of the Amended Agreement, the Amended Agreement was the operative agreement and Version 25 was the operative Specification. (*Id.*) Thus, the reintegrated Amended Agreement replaced the prior agreement and obviated any possible breaches of it.[5]

The next relevant period of time is between the entry of the Amended Agreement and March 26, 2008 when, according to Plaintiffs' corporate testimony, the parties agreed that "a significant redesign was going to be required." (*See, e.g.,* Tr. at 392:5-20, 408:23-409:20; Galyean 30(b)(6) at 105:12-16). If, *arguendo*, the 10 month period that Plaintiffs allege was breached ran from the signing of the Amended Agreement, that period would have expired in September 2007. Any breach as of that date would again be precluded by the statute of limitations, and Plaintiffs, again, have represented that they are not asserting any breach as of that time period. During this time period, the first and second sets of samples were delivered. Dr. Galyean testified at trial that the delivery of the first set of flawed samples was not a breach. (Tr. at 353:7-12). Additionally, Dr. Galyean testified at trial and as Plaintiffs' corporate representative that the second set of samples was never intended to be functional. (Tr. 389:8-14; Galyean 30(b)(6) at 59:12-60:11). Thus, no breach occurred as a result of the delivery of those

---

[5]   Defendant incorporates its positions and argument on the issue of novation as set forth in Docket No. 100, in their entirety. (*See, e.g., Id.* at 1, 4).

1   samples.  Regardless, even if the delivery of the first or second set of samples did result in a

2   breach, any recovery by NavCom would be prohibited by the statute of limitations.

3          Finally, Dr. Galyean testified at trial that Oki Semiconductor's conduct during March of

4   2008 was not considered a breach.  (Tr. at 534:7-536:4; DX-1022).  Because Dr. Galyean sought

5   the advice of Deere's legal counsel at that time, NavCom would have been on notice of any

6   breach had it occurred.  (*Id.*)  Thus, no breach of Section 2.2 could have occurred between

7   November 29, 2006 and March 26, 2008.

8          The next possible time period for a breach of § 2.2 is between March 26, 2008, when the

9   parties agreed that a major redesign was required (and effectively rescinded or abandoned the

10  Version 25 agreement), and May 15, 2008, when NavCom decided to proceed with the 4-chip

11  design.  (DX-1055).  During this period, the evidence produced at trial indicates that the parties

12  were occupied negotiating what form the newly-redesigned chips would take. (*See, e.g.,* Tr. at

13  427:15-429:18; 1210:1-1211:25).  By this point, as described above with respect to the alleged

14  breach of Section 1.0 of the Amended Agreement, the parties had agreed not to make the Version

15  25 chips that were the subject of the agreement, and NavCom had excused Oki Semiconductor

16  from any obligation to develop the three-chip design embodied by Version 25 and the Amended

17  Agreement.  Thus, no breach could have occurred during this period, and even if it had, Plaintiffs

18  would be prohibited from asserting it by the 4-year statute of limitations.

19         The final relevant period is between May 15, 2008, when the parties agreed on the four-

20  chip design, and July 8, 2008, when Plaintiffs allege that the Agreement was summarily

21  terminated by Oki Semiconductor.  First, it is clear that, by this point, the parties had agreed to

22  rescind or abandon the Amended Agreement and pursue a new agreement for a four-chip

23  solution.  Mr. Knight testified at trial that as of May 15, 2008, NavCom had "agreed that the four

24  chip design would be" the design.  (Tr. at 243:5-13; DX-1055).  Mr. Wilson likewise agreed that

25  as of May 15, 2008, the parties had agreed to make the four-chip design rather than the Version

26  25 design.  (Tr. at 1001:10-1002:17; DX-1055).  According to Mr. Wilson's testimony, the

27  agreement would have needed to be amended, and a new specification was needed for the chips –

28  but that specification was never drawn up. *Id.*  Dr. Galyean also agreed that the parties had agreed

OKI ELECTRIC'S BENCH BRIEF REGARDING
ITS MOTION FOR JUDGMENT AS A MATTER
OF LAW MADE IN OPEN COURT

1   that the four-chip design would be pursued, that the Version 25 design would not be made, and

2   that the specification needed to be changed to reflect the four-chip design.  (*See, e.g.*, Tr. at

3   412:17-413:4; DX-1055; Tr. at 1069:4-23).   Oki Semiconductor worked out a cost for the

4   development of the four-chip design, and on May 30, 2008, it presented a proposal to NavCom to

5   split the development costs of the new design.  (DX-1065; Tr. at 428:18-429:4).   NavCom

6   rejected Oki Semiconductor's proposal, and made no counteroffer.  (Tr. at 429:15-18; Tr. at

7   1211:12-25).   Thus, the Amended Agreement to develop Version 25 was mutually abandoned by

8   no later May 15, 2008 and, at a minimum, Oki Semiconductor's obligation to make Version 25

9   had been excused by mutual agreement of the parties.  The parties never agreed upon nor entered

10  into any new or amended contract for the development of the 4-chip design.

11       Second, the parties agree that no breach had occurred as of June 21, 2008, and nothing

12  changed with regard to Oki Semiconductor's duties under § 2.2 during the period between June

13  22, 2008 and July 8, 2008.  Thus, no breach of § 2.2 could have occurred.  Nor have Plaintiffs

14  shown that Section 2.2 operates as a "continuing obligation" at all; instead, it is apparent from the

15  text that to the extent any breach occurred, it was time-based, and must have occurred prior to

16  May 15, 2008.  Thus, any alleged breach of Section 2.2 is time-barred by the statute of limitations

17       Finally, Plaintiffs have made no effort to explain and have provided no evidence to show

18  any harm that is proximately caused by the alleged breach of Section 2.2.  To the contrary, the

19  evidence conclusively proves that by no later than July 7, 2007, Navcom had already decided to

20  launch the Gen 5 products with the so-called "discrete solution."  (*See, e.g.,* DX-1011; DX-1013

21  at NAV0061764 ("RF ASIC delayed – proved discrete design will be used for production."); Tr.

22  at 367:20-369:3).  As such, Plaintiffs have failed to prove how any of their alleged $13 million

23  dollars in lost profit damages -- occurring in 2009 through 2015 -- are proximately caused by the

24  alleged breach of § 2.2. California Civil Code Section 3358 provides: "No person can recover a

25  greater amount in damages for the breach of an obligation, than he could have gained by the full

26  performance thereof on both sides."  "The damages awarded should, insofar as possible, place the

27  injured party in the same position it would have held had the contract properly been performed,

28  but such damage may not exceed the benefit which it would have received had the promisor

performed." *Brandon & Tibbs*, 226 Cal. App. 3d at 468 (internal citations omitted.).  Given that standard, Plaintiffs were in the same place on July 8, 2008 as they were on July 7, 2007 and, as such, the only events that could have caused those facts, had occurred by July 2007.

Accordingly, Oki Electric respectfully requests that the Court issue judgment as a matter of law that Plaintiffs have not proven any breach of Section 2.2 of the Terms & Conditions including, *inter alia*, their failure to prove any harm arising from such alleged breach.

### E. Plaintiffs Have Failed To Prove Any Breach of Section 2.6, Including Failing To Prove Any Harm Proximately Caused By The Alleged Breach Of Section 2.6

As a matter of law, Plaintiffs failed to prove any breach of Section 2.6 of the Terms & Conditions and, even if *arguendo* they could, they have failed to prove any harm stemming from an alleged breach of Section 2.6.  Section 2.6 of the Terms & Conditions reads:

> 2.6 Delivery of Engineering Prototypes.  Engineering Prototypes will be delivered after Buyer's written approval in accordance with the Engineering Prototype turnaround time specified in Schedule C. Notwithstanding the foregoing, Engineering Prototypes shall not be delivered unless Seller is in receipt of all NRE payments due up to the point of Engineering Prototype manufacturing.

(PX-125, Terms & Conditions § 2.6, OKI_LW_008265).  Schedule C of the Agreement sets forth an "Estimated Development Time and Estimated Engineering Prototype Turnaround Time" of "10 months from the *sign-off* of this Agreement."  (*Id*. at OKI_LW_8262).[6]

Section 2.6 of the Amended Agreement provides that "Engineering Prototypes will be delivered after ***Buyer's written approval*** in accordance with the Engineering Prototype turnaround time specified in Schedule C." (emphasis added).  NavCom has made no allegation, and offered no evidence, that it provided "Buyer's written approval" for delivery of the engineering prototypes.  The plain language of Section 2.6 states that "Buyer's written approval" is a condition precedent to any alleged performance by Oki Semiconductor. "Where Defendant's duty to perform under the contract is conditioned on the happening of some event, the Plaintiff must prove the event transpired." *Consol. World Investments, Inc. v. Lido Preferred Ltd.*, 9 Cal. App. 4th 373, 380 (1992); *see also*, California Civil Code section 1439.  On this basis alone,

---

[6]  *See*, footnote 4, *supra*.

1   Plaintiffs have failed to prove the existence of any breach of Section 2.6 of the Amended
2   Agreement.

3       Furthermore, Plaintiffs' newly alleged theory of breach of § 2.6 is apparently premised
4   upon what it characterizes as a "continuing obligation" under this contract to use "best efforts" to
5   deliver working engineering prototypes.  (*See, e.g.*, Tr. at 731:23-734:17).  Section 2.6, however,
6   provides no indication that it is a "continuing obligation"; its language indicates the opposite – the
7   prototypes "will be delivered in accordance with the . . . turnaround time specified in Schedule
8   C."

9       Section 2.6 provides only an estimated time frame for the delivery of engineering
10  prototypes – the "best efforts" pertains to using the best efforts to meet the time estimates
11  provided in Schedule C and says nothing to any "best efforts" or "continuing obligation" to
12  deliver prototype chips.  Thus, Plaintiffs' Section 2.6 theory of breach are subject to the same
13  failures of proof identified *supra* with respect to Section 2.2, each of which is incorporated as if
14  fully restated here.  In either instance, assuming *arguendo* that Section 2.6 was breached, it
15  necessarily had to have been breached before June 22, 2008, and Plaintiffs' claim is time-barred
16  by the accrual of the statute of limitations.

17      Accordingly, Oki Electric respectfully requests that the Court issue judgment as a matter
18  of law that Plaintiffs have not proven any breach of Section 2.6 of the Terms & Conditions
19  including, *inter alia*, their failure to prove any harm arising from such alleged breach.

20      **F.    Plaintiffs Have Failed To Prove Any Breach of Section 2.8, Including Failing To
             Prove Any Harm Proximately Caused By The Alleged Breach Of Section 2.8**

21      As a matter of law, Plaintiffs failed to prove any breach of Section 2.8 of the Terms &
22  Conditions and, even if *arguendo* they could, they have failed to prove any harm stemming from
23  an alleged breach of Section 2.6.  Section 2.6 of the Terms & Conditions reads:
24

25      2.8 Warranty on Engineering Prototypes.  Seller warrants that the Engineering
        Prototypes delivered pursuant to Section 2.0 (Development Phase) of the Terms
26      and Conditions shall, at the time of delivery, be free and clear of all liens and
        encumbrances and free from defects in materials or workmanship, shall conform
27      to Product Specifications listed in Schedule A, or such other specifications
        approved in writing by Seller and Buyer.
28

1
2
3
4
5
6
7
8

**THIS WARRANTY APPLIES ONLY TO ENGINEERING PROTOTYPES AND SHALL EXTEND DIRECTLY TO BUYER AND NOT TO BUYER'S CUSTOMERS AND IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES EXPRESS OR IMPLIED INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. BUYER'S REMEDY FOR BREACH OF ANY WARRANTY UNDER THIS SECTION OF THE TERMS AND CONDITIONS SHALL BE LIMITED TO REPAIR OR REPLACEMENT AT SELLER'S OPTION**.  Further, Seller shall in no event be obligated hereunder for any labor cost incidental to the replacement of any defective Engineering Prototypes. Notwithstanding the foregoing, Seller assumes no liability or responsibility whatsoever for the unauthorized use of Engineering Prototypes.

9

(PX-125, Terms & Conditions § 2.6, OKI_LW_008265).  Schedule C of the Agreement sets forth

10

an "Estimated Development Time and Estimated Engineering Prototype Turnaround Time" of

11

"10 months from the *sign-off* of this Agreement."  (*Id*. at OKI_LW_8262).[7]

12

Plaintiffs have failed to prove that this section was breached, and even if they could, they

13

have failed to show that any alleged breach resulted in proximate harm.  First, Section 2.8

14

specifies a timeframe of "at the time of delivery."  The undisputed evidence in the record proves

15

the first set of chips was delivered in April 2007.  (*See, supra*).  Thus, any alleged breach of this

16

section would begin to accrue at the time of delivery – *i.e.,* April 2007 – and, therefore, any claim

17

would be time-barred by no later than April 2011.[8]

18

The second set of prototypes was delivered in December 2007. (*See, supra*).  Thus, any

19

alleged breach of this section would begin to accrue at the time of delivery – *i.e.,* December 2007

20

– and, therefore, any claim would be time-barred by no later than December 2011.[9]  Plaintiffs

21

have failed to show that Section 2.8 created a "continuing obligation."

22

Moreover, Plaintiffs' Section 2.8 defense fails as a matter of law, because well before

23

June 22, 2008 (the 4-year trigger for the complaint), the parties had abandoned/rescinded the

24

---

[7]   *See*, footnote 4, *supra*.

25
26

[8]   The evidence in the record on this point was elicited from Plaintiffs' own witness Paul Galyean, who testified that the failure of the first chips was not a breach. (Tr. at 365:11-365:17).

27
28

[9]   The evidence in the record on this point was again elicited from Plaintiffs' own witness Paul Galyean, who testified that the second set of chips was never intended to be functional.  (Tr. at 389:3-14).

OKI ELECTRIC'S BENCH BRIEF REGARDING ITS MOTION FOR JUDGMENT AS A MATTER OF LAW MADE IN OPEN COURT

1    Amended Agreement, and NavCom had excused any obligation for Oki Semiconductor to make a

2    three-chip solution conforming to Version 25 of the specification. (*See supra*).   Even if Oki

3    Semiconductor did have an obligation to "repair or replace" the defective Version 25 chips, by no

4    later than March 26, 2008, the parties had recognized that redesign would be required and they

5    mutually agreed to abandon the development of Version 25.   (*See, supra*).   As such, by no later

6    than May 15, 2008, Oki Semiconductor was not obligated to replace the Version 25 chips because

7    the parties had, beyond any reasonable doubt, agreed to pursue the 4-chip design.   Thus, Oki

8    Semiconductor was excused from performing under the contract (*i.e.,* excused of any obligation

9    to develop the Version 25 chipset covered by the Amended Agreement) and, because the parties

10   had not prepared, much less agreed to, a new specification, it was impossible for Oki

11   Semiconductor to perform; the Amended Agreement called for chips conforming to Version 25,

12   but the parties had agreed not to make Version 25. Had Oki Semiconductor proceeded to make

13   the four-chip solution without an agreement, it still would not have met its supposed obligations

14   under the Amended Agreement since the only obligation under the Amended Agreement was

15   limited to the Version 25 design.   Thus, there could not have been a breach of § 2.8.[10]

16        Plaintiffs' claim that if the unspecified and ethereal breach had not occurred and Oki

17   Semiconductor had provided working chips, Plaintiffs could have taken those chips to another

18   foundry, also fails as a matter of law.   The Court has already found that the parties never entered

19   the "Production Phase."   Dkt. No. 199 at 21.   Plaintiffs admit that the project was terminated

20   during the Development Phase.   Dkt. No. 99-3 at 2.   Plaintiffs' theory of taking some hypothetical

21   replacement engineering prototypes to another foundry is pure speculation for the reasons the

22   Court has already stated in its prior Orders (Docket Nos. 199 and 231).   Yet, even if Plaintiffs'

23   fantasies are indulged and they are allowed *arguendo* to pretend without proof that all of the

24   ─────────────────────

25   [10]   Additionally, Plaintiffs have failed to present any evidence that the failure of the chips was
     due to defects in materials or workmanship as opposed to design defects. *See In re Toyota Corp*
26   *Unintended Acceleration Litig.*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010); *see Rice v.*
     *Sunbeam Prods., Inc.*, No. CV 12-7923-CAS-(AJWx), 2013 WL 146270, at *12 (C.D. Cal. Jan 7,
27   2013); *Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*, 3:11-CV-01576-H-RBB, 2012 WL
     2861160, at *5 (S.D. Cal. Feb. 13, 2012); *Brothers v. Hewlett-Packard Co.*, No. C-06-02254
28   RMW, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007).

1   conditions precedent to commercial production could have occurred, they still could not have

2   occurred using Engineering Prototypes.   Plaintiffs' Section 2.8 theory of breach is expressly

3   precluded by the language of the agreement precluding the use of Engineering Prototypes for

4   anything other than evaluation and expressly precluding their "use in production."   These

5   preclusions are stated not just once, but at least **_four_** times.   Section 5.0 of the Agreement reads:

6      **5.0   ENGINEERING   PROTOTYPES.**      Engineering   Prototypes   delivered
       following the development portion of this Agreement (Section 2.0 of the Terms
7      And   Conditions)   are   for   verification   that   the   design   meets   the   agreed   upon
       technical specifications and for general **_informational and testing purposes only_**.
8      **_Engineering Prototypes are not intended for use in production and are not_**
       **_authorized for any such use_**.
9

10  (PX-125, Agreement § 5.0, OKI_LW_008258; bold italic emphasis added).   Section 1.1 of the

11  Terms & Conditions reads:

12     **_Engineering Prototypes or Working Samples_** shall mean sample devices supplied
       by Seller and developed under the terms and conditions of the Development Phase
13     of this Agreement. Engineering Prototypes receive functional testing only and are
       intended   for   verification   that   the   design   meets   the   agreed   upon   technical
14     specifications, functional evaluation and for **_informational and testing purposes_**
       **_only_**. **_Engineering Prototypes are not authorized for use in production_**.
15

16  (PX-125, Terms & Conditions § 1.1, OKI_LW_008264; bold italic emphasis added).   Section 2.4

17  of the Terms & Conditions reads:

18     2.4 Acceptable Engineering Prototypes.   Engineering Prototypes shall be deemed
       acceptable if: at the time of delivery, after inspection and testing, they conform to
19     Product Specifications listed in Schedule A, or such specifications as Seller and
       Buyer expressly agree to in writing; or Buyer submits a production order or
20     release for the Products represented by the Engineering Prototypes. Engineering
       Prototypes not expressly approved in writing within ninety (90) days of receipt by
21     Buyer shall be deemed rejected. Upon any rejection of Engineering Prototypes,
       Seller may, at its sole discretion and without liability, destroy any and all masks
22     and   other   materials   associated   with   the   development   of   the   Engineering
       Prototypes. Engineering Prototypes are for verification that the design meets the
23     agreed upon technical specifications and for general **_informational and testing_**
       **_purposes only. Engineering Prototypes are not intended for use in production_**
24     **_and are not authorized for any such use_**.
25

26  (PX-125, Terms & Conditions § 2.4, OKI_LW_008264-5; emphasis added). Section 2.8 itself

27  (recited above) includes the prohibition "Seller assumes no liability or responsibility whatsoever

28

1  for the unauthorized use of Engineering Prototypes."   Accordingly, Plaintiffs' new theory of

2  breach under Section 2.8 fails as a matter of law.

3        Additionally, even assuming *arguendo* that Plaintiffs were somehow entitled to a remedy

4  for the defects in these samples, that remedy was limited to the repair or replacement of the

5  samples.  Plaintiffs have provided no evidence and have not proven that any proximate harm

6  occurred from the alleged failure to repair or replace any Engineering Prototypes and certainly

7  have not proven any relationship between the alleged breach and sales of products occurring in

8  2009-2015.

9        Finally, independent of the forgoing arguments, the language of Section 2.8 expressly

10  limits any relief to the "Buyer" and expressly excludes "Buyer's Customers." (PX-125, Terms &

11  Conditions § 2.4, OKI_LW_008264-5).  Navcom is defined as the "Buyer" in the Preamble of the

12  Agreement.  (PX-125 at Preamble, OKI_LW_008257).  It is undisputed that Deere is not a party

13  to the Agreement nor the Amended Agreement.  ***Even Plaintiffs' financial expert Mr. Hansen***

14  ***agreed that Deere is NavCom's customer***. (*See, e.g.*, Tr. at 1170:7-25).  As such, the Court must

15  enter judgment as a matter of law that Deere cannot have a claim arising under any alleged breach

16  of Section 2.8.

17       **G.**   **Plaintiffs Have Failed to Prove Any Harm In Fact**

18        Plaintiffs are not asserting any breach prior to June 22, 2008 since any such breach would

19  be time-barred.  However, Plaintiffs have not, and cannot, show that anything occurred between

20  June 22, 2008 and July 8, 2008 that would result in any breach of Oki Semiconductor's

21  obligations under Sections 1.0, 2.2, 2.6, and/or 2.8 of the Amended Agreement.[11]

22        Yet even if, *arguendo,* all of the other requisite elements of their breach claim were met,

23  Plaintiffs have failed to prove any harm that is proximately caused by any alleged breach.  Proof

24

---

25  [11]   Additionally, to the extent that any of the clauses relied upon by Plaintiffs create a
26  "continuing obligation" for Oki Semiconductor to perform, that obligation was terminated when
   Oki Semiconductor provided notice in February 2008 that an "all layer redesign" was required,
27  and/or when the parties agreed not to pursue creation of a three-chip solution conforming to
   Version 25 of the specification, thereby abandoning the Version 25 contract and excusing any
28  requirement for Oki Semiconductor to produce the only chipset identified in the asserted contract.

1    of harm is an essential element of a claim for breach of contract under California law.  *See*, 1,

2    Witkin, Summary of Cal. Law (9th Ed. 1987), Contracts, §791

3        First, Plaintiffs' failed to prove how their alleged $13 million dollars in lost profits

4    damages are proximately caused by the alleged breach of these sections of the Amended

5    Agreement between June 22, 2008 and July 8, 2008.  To say that Plaintiffs' damages expert was

6    unable to identify any proximate cause is an understatement.  While explaining but for causation

7    was required, he could not identify any causal relationship.  (*See generally*, Tr. 1046:3-1183:20).

8        Additionally, the evidence adduced in Plaintiffs' case in chief has shown that even absent

9    a right to terminate, they were not harmed by any alleged breach by Oki Semiconductor.

10   NavCom chose to develop the discrete solution on a "parallel path" from the beginning.  As of

11   July 7, 2007, long before the June 22, 2008 statute of limitation date, Plaintiffs had already made

12   the decision to launch the Gen5 product with the discrete solution.  (*See, e.g.,* DX-1011; DX-1013

13   at NAV0061764 ("RF ASIC delayed – proven discrete design will be used for production"); Tr.

14   382:13-384:18).  The evidence shows the alleged failure to receive the RF ASIC had no impact

15   on the launch or functionality of the Gen5 products, which actually launched below target cost.

16   (DX-1038; Tr. 443:24-444:11).   Moreover, the contemporaneous comments of the CEO of

17   NavCom and the Deere senior executive for the division that was allegedly harmed by the alleged

18   breach belie any harm in fact.  (*Id.* ("Great news!")).  The evidence set forth at trial reflects that

19   NavCom was considering terminating the agreement and proceeding with the discrete solution.

20   The Gen5 product ultimately launched on time, as planned, with the discrete solution, and its

21   functionality was unaffected.   It launched below target cost.   In fact, Plaintiffs still use the

22   discrete solution in its products today.[12]

23

24
_____

25   [12]   NavCom and Deere have also taken no steps to mitigate damages. Even if NavCom were
     somehow entitled to a remedy for Oki Semiconductor's alleged breach of an obligation to deliver
26   prototypes on a certain schedule, the proper measure of damages would be the amount required to
     place NavCom in the position it would have been in – the price to contract with another company
27   to develop replacement chips. Instead, Deere and NavCom seek to force Oki Electric to pay for
     the difference between the contract price and the cost of the discrete solution for the entire
28   lifespan of the Gen5 product. (*See, e.g.*, Tr. 454:3-8; 456:15-457:10; 1152:2-11; 1185:1-5).

### H.   **Plaintiffs' Unjust Enrichment Claim Is Unsupportable Under California Law**

Just prior to trial, Plaintiffs' raised a new claim of unjust enrichment. It is well-settled law, however, that there "is no cause of action in California for unjust enrichment." *Durell v. Sharp* Healthcare, 108 Cal. Rptr. 3d 682, 699 (Cal. App. 2010); *see also*, *Graham-Sult v. Clainos,* Civ. No. 4:10-cv-04877-CW, 2014 WL 444153 (9th Cir.  2013 December 27, 2013) (holding unjust enrichment is not a cause of action in California); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F.Supp.2d 1145, 1194 (C.D. Cal. 2010) ("Simply put, 'there is no cause of action in California for unjust enrichment.'") (*citing Melchior v. New Line Prods., Inc.*, 106 Cal.App.4th 779, 793 (Cal. Ct. App. 2003)).  Accordingly, Oki Electric respectfully requests that the Court grant judgment as a matter of law that Plaintiffs have failed to prove their unjust enrichment claim. *See Dunkel v. eBay Inc.*, No. 5:12–CV–01452–EJD, 2013 WL 415584 (N.D. Cal. January 31, 2013) (dismissing unjust enrichment claim).

Even if *arguendo* Plaintiffs' unjust enrichment claim is treated as a cause of action, rather than a remedy itself (*Melchior v. New Line Prods.*, Inc., 106 Cal.App.4th 779, 793 (Cal. Ct. App. 2003), Plaintiffs' claim for unjust enrichment must be dismissed because the statute of limitations for unjust enrichment in California is three years.  *Federal Deposit Insurance Corp. v. Dintino*, 167 Cal.App.4th 333, 348 (Cal. App. 2008) (holding the statute of limitations for unjust enrichment is three years); *see also*, CAL. CODE CIV. PROC. 338.

Moreover, Plaintiffs unjust enrichment claim is a *non sequitor*. Plaintiffs do not seek return of anything they conferred upon or gave to Oki Semiconductor, but instead seek payment in the first instance for expenses that Oki Semiconductor allegedly did not have to incur because it exercised its right to terminate the agreement.  Once again, it is axiomatic that Plaintiffs cannot seek the return of something they never possessed and/or provided to Oki.  Under California law, unjust enrichment is a synonym for restitution; it ***must*** be based on a benefit of some kind transferred from the plaintiff to the defendant.  "The elements for a claim of unjust enrichment are 'receipt of a benefit and unjust retention of the benefit at the expense of another.'" *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1132 (2014), *as modified on denial of*

21

1  *reh'g* (Feb. 27, 2014) (noting that unjust enrichment is "synonymous with restitution").

2  According to the Court of Appeals, "'[t]he theory of unjust enrichment requires one who acquires

3  a benefit which may not justly be retained, to return either the thing or its equivalent to the

4  aggrieved party so as not to be unjustly enriched.'"  *Id.* (quoting *Otworth v. Southern Pac.*

5  *Transportation Co.* 166 Cal.App.3d 452, 460 (1985)).

6          Plaintiffs' own analysis of unjust enrichment includes no mention of a benefit conferred

7  from Plaintiffs to Oki Semiconductor.  Plaintiffs improperly begin their analysis in the middle of

8  the performance of the alleged agreement.[13]  A proper analysis starts from the time *before* the

9  parties entered into the Agreement, at which point NavCom had not paid Oki Semiconductor any

10  money and Oki Semiconductor had no obligations to NavCom.  Measured from that point,

11  NavCom conferred a benefit on Oki Semiconductor in the form of two payments totaling

12  $420,000, and Oki Semiconductor, in exchange, performed its obligations under the Agreement,

13  which were a condition precedent to receiving the $420,000.  All told, Oki Semiconductor spent

14  over $1.6 million to receive these "benefits."  (*See, e.g.,* DX-1065; Tr. at 1211:16-1212:12; DX-

15  1153; Tr. at 1212:13-1213:8)  Thus, NavCom received what it bargained for; the Court held as

16  much in its order on the parties summary judgment motions: "Plaintiffs' first and second claimed

17  items of damages are expenditures incurred in exchange for Defendant's performance of the

18  actions described in the Agreement, and Defendant did perform those actions. Allowing Plaintiffs

19  to recover the first and second claimed items of damages would place Plaintiffs in a better

20  position than they would otherwise have occupied because they would have received Defendant's

21  performance in exchange for no cost to Plaintiffs." Dkt. No. 199 at 19:14-19.  Viewed properly,

22  from the perspective of the entire transaction, Oki Semiconductor did not save $2 million dollars

23  by canceling the project; it *lost* over a million dollars by agreeing to jointly develop the RF ASIC

24  with NavCom.

25

26

---

27  [13]  In fact, as described above, by this point in time the Amended Agreement had been
abandoned / rescinded by mutual agreement as further evidenced by the conduct of the parties in

28  the time following the mutual agreement to abandon the development of Version 25.  *See, supra.*

OKI ELECTRIC'S BENCH BRIEF REGARDING
ITS MOTION FOR JUDGMENT AS A MATTER
OF LAW MADE IN OPEN COURT

1    Oki Electric respectfully requests that the Court enter judgment for Oki Electric and

2    dismiss Plaintiffs' unjust enrichment claim as a matter of law.

3        **I.    Deere Is Not An Intended Third Party Beneficiary[14]**

4        Deere's claims arise out of its assertion that it is an intended third party beneficiary.

5    Plaintiff offered no evidence that Deere was an intended beneficiary.  The burden is on the third

6    party "to prove that the performance [it] seeks was actually promised."  (*Garcia v. Truck Ins.*

7    *Exch.*, 36 Cal. 3d 426, 436 (1984); *Neverkovec v. Fredericks*, 74 Cal. App. 4th 337, 348-49

8    (1999).  Instead, throughout trial Plaintiffs tried to conflate the two parties in order to create the

9    appearance that they were inseparable.  They are not, as admitted by Navcom's witnesses and

10   acknowledged by their expert.   (Tr. at 855:8-10; 1170:7-16 (Deere is Navcom's customer).

11   Section 24.0 of the Terms & Conditions clearly states that "Nothing in this Agreement shall inure

12   to the benefit of or be deemed to give rise to any rights in any third party, whether by operation of

13   law or otherwise."  "Whether a third party is an intended beneficiary or merely an incidental

14   beneficiary to the contract involves construction of the parties' intent, gleaned from reading the

15   contract as a whole in light of the circumstances under which it was entered." *Jones v. Aetna Cas.*

16   *& Sur. Co.*, 26 Cal. App. 4th 1717, 1725 (1994).  "A third party may qualify as a beneficiary

17   under a contract where the contracting parties must have intended to benefit that individual and

18   such intent appears from the terms of the agreement."  *Id.* at 1724; *see also Brinton v. Bankers*

19   *Pension Servs.*, Inc., 76 Cal. App. 4th 550, 558 (1999); *Lucas v. Hamm*, 56 Cal. 2d 583, 591

20   (1961); Civil Code section 1559 excludes enforcement of a contract by persons who are only

21   incidentally or remotely benefited by the agreement. (Lucas, supra, 56 Cal.2d at p. 590.)

22       Thus, the parties intent is plainly expressed, Deere was not an intended third-party

23   beneficiary.

24

25

26

27   _____

[14]   Defendant incorporates all points and authorities presented in its pretrial filings pertaining to

28   this issue, including *inter alia*, Docket Nos. 102 and 111.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### J.   Section 16.0 Precludes Plaintiffs' Damages

Section 16.0 of the Terms & Conditions of the Amended Agreement blocks recovery of consequential damages and lost profits:

> **16.0 LIMITATION OF LIABILITY.** Notwithstanding any other provisions in this Agreement, neither party shall be liable with respect to its obligations under this Agreement for ***consequential, exemplary, special, or incidental damages***, including, without limitation, ***lost profits***, even if it has been advised of the possibility of such damages . . . .

(PX-125, Terms & Conditions § 1.1, OKI_LW_008272; bold italic emphasis added).

Plaintiffs have alleged only one category of damages,[15] which it describes as "increased costs." (Tr. at 1093:3-6). Plaintiffs seek to measure these alleged increased costs by subtracting the cost, including components, labor, and other costs, of the RF ASIC, from the cost of the pre-existing "discrete solution" that NavCom used instead of the RF ASIC. These damages are lost profits, as Plaintiffs' own expert admitted during cross examination:

> Q. . . . [A]s a practical matter . . . I think you would agree that if your costs go up and your sales price stays the same, the impact upon you, the seller, is that you have a decrease in profit, correct?
>
> A. Yes, that's what I've said several times.

(Tr. at 1095:23-1096:4.) Plaintiffs' own accounting documents, which their expert relied upon, describe an increase in per-item cost, without an increase in per-item selling price, as a decrease in profit. (PX-235; *see* Tr. at 1122:17-1124:4; *see also* Tr. at 1079:3-7 ("Q. And so if we took their price that they sell it for and we minus, subtracting the cost of goods sold, we're left with their gross profit, correct? A. That's correct, revenue minus cost of goods sold gives you gross profit."). Thus, it is clear that these damages are properly characterized as "lost profits," which are expressly precluded by Section 16.0.

Moreover, as conclusively proven by Defendant, the alleged damages asserted by Plaintiffs' damages expert are consequential damages – the lost profits of Navcom's customer (i.e., Deere) and not direct damages of any alleged breach of the contract between Navcom and

---

[15]   The Court has already held that the amounts paid are not recoverable as damages. *See*, Dkt. No. 199 at 18:6-19:21.

1   Oki Semiconductor.[16]   It is undisputed that Deere is not a party to the Agreement nor the

2   Amended Agreement.   ***Even Plaintiffs' financial expert Mr. Hansen agreed that Deere is***

3   ***NavCom's customer***.   (*See, e.g.*, Tr. at 1170:7-25).

4

5   **IV.   CONCLUSION**

6          For the reasons set forth herein, and advanced during trial and the hearings that occurred

7   therewith, Defendant respectfully requests the Court grant judgment in Defendant's favor

8   pursuant to FED. R. CIV. P. 50(a), and all other relief identified by Defendant in its Answer to the

9   Complaint and in the Final Pretrial Conference Statement (Dkt. No. 176).

10

11   Dated:  May 4, 2014                                    By:  /s/ *Marc R. Labgold*
                                                                  Marc R. Labgold
12
                                                                  *Attorney for Defendant*
13                                                                *OKI ELECTRIC INDUSTRY CO., LTD.*

14

15

16

17

18

19

20

21

22

23

24

25

26

---

27   [16]   Additionally, as recognized by the Court in responding to Plaintiffs' motion to clarify, in
     asserting these damages Plaintiffs rely upon a series of assumptions regarding the parties'
28   conduct.  Dkt. No. 231 at 3.