MORGAN, LEWIS & BOCKIUS LLP
BRETT M. SCHUMAN (SBN 189247)
bschuman@morganlewis.com
RACHEL M. WALSH (SBN 250568)
rwalsh@morganlewis.com
RYAN L. SCHER (SBN 244706)
rscher@morganlewis.com
JEREMY N. LATEINER (SBN 238472)
jlateiner@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel:    415.442.1000
Fax:    415.442.1001

Attorneys for Plaintiffs
NavCom Technology, Inc. and Deere & Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NAVCOM TECHNOLOGY, INC. and DEERE & COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>OKI ELECTRIC INDUSTRY CO., LTD. and DOES ONE THROUGH TEN inclusive,<br><br>Defendants. | Case No. 5:12-cv-04175 EJD<br><br>**PLAINTIFFS NAVCOM TECHNOLOGY, INC. AND DEERE & COMPANY'S RULE 50(A) MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Courtroom:  4<br>Judge:  Hon. Edward J. Davila<br><br>**Trial Date:  April 22, 2014** |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.    LEGAL STANDARD ........................................................................................... 2

III.    ARGUMENT ........................................................................................................ 3

    A.    Oki Has Adduced No Evidence That The Parties Mutually Rescinded Or Abandoned The Agreement ....................................................................... 3

        1.    Oki's Claim That The Parties Rescinded or Abandoned The Agreement By Executing Amendment 1 Must Be Rejected ..................... 5

        2.    Oki Cannot Adduce Evidence That Discussions Regarding The So-Called "Four Chip Solution" Abandoned Or Rescinded The Contract ................................................................................................. 6

        3.    The Evidence Adduced At Trial Shows Mutual Intent to Amend The Agreement ..................................................................................... 7

    B.    The Parties Did Not Enter Into A Novation Of The Agreement ............................ 9

    C.    Oki Cannot Show That NavCom Anticipatorily Breached The Agreement Under Section 2.3.1 ............................................................................................. 10

    D.    Oki Has Adduced No Evidence That Plaintiffs' Claims Are Barred By The Statute Of Limitations ......................................................................................... 11

    E.    Plaintiffs' Damages Are Not Barred By Section 16.0 Of The Agreement As A Matter Of Law .............................................................................................. 13

    F.    The Evidence Shows That Deere Is A Third-Party Beneficiary ......................... 16

        1.    Section 24.0 of the Agreement Does Not Alter Deere's Status As A Third Party Beneficiary ............................................................................ 18

    G.    The Evidence Demonstrates That Plaintiffs Took Reasonable Steps To Mitigate Their Damages ...................................................................................... 19

    H.    NavCom and Deere Have Shown That They are Entitled to Judgment on Their Breach of Contract Claim ......................................................................... 22

IV.    CONCLUSION .................................................................................................. 22

# TABLE OF AUTHORITIES

**Page**

## Cases

*999 Corp. v. C.I.T. Corp.*
  776 F.2d 866 (9th Cir. 1985) ............................................................................ 21

*Airis SFO, LLC v. City and County of San Francisco*
  Nos. A121855, A122157, 2010 WL 3687508 (Cal. App. 1 Dist. Sep. 22, 2010) ..................... 12

*Alling v. Universal Manuf. Corp.*,
  5 Cal. App. 4th 1412 (1992) ........................................................................... 16

*Anderson v. Liberty Lobby, Inc.*
  477 U.S. 242 (1986) ...................................................................................... 3

*Brandon & Tibbs v. George Kevorkian Accountancy Corp.*
  226 Cal. App. 3d 442 (1990) ...................................................................... 14, 20

*Cellier v. Citroen Concours*
  No. D039013, 2003 WL 879075 (Cal. App. 4 Dist. Mar. 7, 2003) ............................... 13

*City Solutions v. Clear Channel Communs., Inc.*
  365 F.3d 835 (9th Cir. 2004) ........................................................................... 3

*Claredi Corp. v. SeeBeyond Technology Corp.*
  No. 4:04CV1304 RWS, 2010 WL 1257946  (E.D. Mo. Mar. 26, 2010) .......................... 15

*Cochran v. Cochran*
  56 Cal. App. 4th 1115 (1997) ......................................................................... 12

*Consolidated Aluminum Corp. v. Krieger*
  710 S.W.2d 869 (Ky.App. 1986) ...................................................................... 21

*Coremetrics, Inc. v. Atomic Park.com, LLC*
  No. C-04-0222 EMC, 2005 WL 3310093 (N.D. Cal.  Dec. 7, 2005) ........................... 15

*El Pollo Loco, Inc. v. Hashim*
  316 F.3d 1032 (9th Cir. 2003) ........................................................................ 12

*Employers' Reinsurance Co. v. Superior Court*
  161 Cal. App. 4th 906 (2008) ........................................................................... 6

*Emplrs. Ins. of Wausau v. Granite State Ins. Co.*
  330 F.3d 1214 (9th Cir. 2003) ........................................................................ 13

*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.*
  66 Cal. App. 3d 101 (1977) ............................................................................ 14

1

2

### TABLE OF AUTHORITIES
(continued)

**Page**

3

4

*Harriman v. Tetik*
  56 Cal. 2d 805 (1961) ................................................................................ 4

5

6

*High Concrete Tech., LLC v. Korolath of New England, Inc.*
  665 F. Supp. 2d 883 (S.D. Ohio 2009) ...................................................... 6

7

*Honda v. Reed*
  156 Cal. App. 2d 536 (1958) ...................................................................... 5

8

9

*Howard v. County of Amador*
  220 Cal. App. 3d 962 (1990) ...................................................................... 9

10

*In re First Magnus Financial Corp.*
  No. AZ-10-1006, 2010 WL 6452904  (9th Cir. Aug. 31, 2010) ................. 15

11

12

*Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters. (U.S.A.)*
  No. CV 08-7587, 2009 U.S. Dist. LEXIS 118448 (C.D. Cal. Dec. 21, 2009) ......................... 20

13

*Johnson v. Holmes Tuttle Lincoln-Mercury*
  160 Cal. App. 2d 290 (1958) ...................................................................... 16

14

15

*Kemmis v. McGoldrick*
  767 F.2d 594 (9th Cir. 1985) ...................................................................... 16

16

*Krechman v. County of Riverside*
  723 F.3d 1104 (9th Cir. 2013) .................................................................... 3

17

18

*LeVesque v. WCAB*
  1 Cal.3d 627 (1970) ................................................................................... 4

19

*Lewis Jorge Constr. Mgmt., Inc. v. Pomona Unified Sch. Dist.*
  34 Cal. 4th 960 (2004) ............................................................................... 14

20

21

*McCreary v. Mercury Lumber Distributors*
  124 Cal. App. 3d 477 (1954) ...................................................................... 5

22

*Micrel, Inc. v. TRW, Inc.*
  486 F.3d 866 (6th Cir. 2007) ...................................................................... 15

23

24

*Millikan v. American Spectrum Real Estate Servs. California, Inc.*
  117 Cal. App. 4th 1094 (2004) ................................................................... 20

25

*Nelson v. Silverman*
  888 F.Supp. 1041 (S.D.Cal. 1995) ............................................................. 3

26

27

*Pearl v. Gulf Red Cedar Co.*
  15 Cal. App. 2d 196 (1936) ........................................................................ 3

28

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

**TABLE OF AUTHORITIES**
(continued)

Page

*Prouty v. Gores Technology Group*
121 Cal. App. 4th 1225 (2004)................................................................ 16, 17

*Reeves v. Sanderson Plumbing Prods., Inc.*
530 U.S. 133 (2000)................................................................................ 3

*Results By IQ LLC v. Netcapital.com, LLC*
No. C 11-0550, 2013 WL 2436333 (N.D. Cal. May 7, 2013)................. 12

*Romano v. Rockwell Int'l., Inc.*
14 Cal. 4th 479 (1996).......................................................................... 12

*Ross v. Tabor*
53 Cal. App. 605 (1921)........................................................................ 3

*Schauer v. Mandarin Gems of California*
125 Cal. App. 4th 949 (2005)................................................................ 16

*Schlinkman v. Davis*
195 Cal.App.2d 603 (1961).................................................................... 4

*Seaboard Music Co. v. Germano*
24 Cal.App.3d 618 (1972)..................................................................... 20

*Souza v. Westlands Water Dist.*
135 Cal. App. 4th 879 (2006)................................................................ 16

*Stinnett v. Damson Oil Corp.*
648 F.2d 576 (9th Cir. 1981)................................................................. 10

*Summers v. Delta Air Lines, Inc.*
508 F.3d 923 (9th Cir. 2007)................................................................. 2

*Takeda Pharm. Co., Ltd. v. Handa Pharms, LLC*
No. C-11-00840, 2013 U.S. Dist. LEXIS 74126 (N.D. Cal. Apr. 8, 2013) ............................. 20

*Taylor v. Johnston*
15 Cal.3d 130 (1975)............................................................................ 10

*The Travelers Ins. Co. v. Workmen's Compensation Appeals Bd.*
68 Cal. 2d 7 (1967).............................................................................. 4

*Tuso v. Green*
194 Cal. 574 (1924).............................................................................. 3

*Vahle v. Barwick*
93 Cal. App. 4th 1323 (2001)................................................................ 17

iv

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page**

3

*Valle de Oro Bank v. Gamboa*
4      26 Cal. App. 4th 1686 (1994) ........................................................................... 19

5   *Wallace v. City of San Diego*
    479 F.3d 616 (9th Cir. 2006) ............................................................................... 3
6

*Wechsler v. Hunt Health Sys.*
7      No. 94 Civ. 8294, 1999 U.S. Dist. LEXIS 13216 (S.D.N.Y. Aug. 25, 1999) ........................... 20

8   *Yang Ming Marine Transp. Corp. v. Okamoto Freighters Ltd.*
    259 F.3d 1086 (9th Cir. 2001) ........................................................................... 21
9

10

**Statutes**

CAL. CIV. CODE § 1689(a) ........................................................................... 3
11

CAL. CIV. CODE § 3300 ........................................................................... 14
12

CAL. CIV. CODE § 3534 ........................................................................... 19
13

CAL. CIV. PROC. CODE § 1859 ........................................................................... 19
14

CAL. CIV. PROC. CODE §1856(c) ........................................................................... 5
15

CAL. CIV. PROC. CODE. § 337 ........................................................................... 12
16

**Other Authorities**

17

3 Cal. Affirmative Def. § 36:2 (2013 Ed.) ........................................................................... 21
18

5 Corbin, Contracts (1964) Damages, § 1044 ........................................................................... 20
19

**Rules**

20

Fed. R. Civ. P. 50(a)(1) ........................................................................... 2

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE THAT at 9:00 a.m., on May 6, 2014, in Courtroom 4, located at 280 S. First Street, San Jose, California, or as soon thereafter as the matter may be heard, pursuant to Federal Rule of Civil Procedure 50(a), Plaintiffs NavCom Technology, Inc. ("NavCom") and Deere & Company ("Deere," collectively "Plaintiffs") respectfully move for judgment as a matter of law on Plaintiffs' claim for breach of contract and on Defendant Oki Electric Industry Co., Ltd.'s ("Defendant" or "Oki") affirmative defenses of rescission and/or abandonment of the Customized Advanced GPS RF Chipset Development and Purchase Agreement ("Agreement"), novation, anticipatory breach, statute of limitations, that Plaintiffs' damages are barred under the Limitation of Liability clause of the contract, Deere's lack of standing as a third-party beneficiary, and failure to mitigate.[1] This motion was made orally on May 5, 2014, and Plaintiffs submit the following Memorandum of Points and Authorities in support thereof.

This motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the declaration of Brett M. Schuman, the evidence of record at trial, all pleadings and papers on file in this case, and upon such matters as may be presented to the court at the time of hearing on this motion.

## I. INTRODUCTION.

Defendant Oki has asserted a number of affirmative defenses in this action. After presenting its case-in-chief, none are supported by sufficient evidence to go to the jury.

Oki's assertion that the Agreement was rescinded or abandoned is unsupported by the evidence, as there is no evidence of _**mutual**_ intent by _**both**_ parties to rescind or abandon the Agreement. If anything, the evidence shows an intent to amend the Agreement which, under the law, is the opposite of rescission or abandonment of the Agreement. Similarly, with respect to

---

[1] In its answer, Defendant asserted defenses of waiver, estoppel and unclean hands. _See_ Dkt. No. 49. In its Opposition to Plaintiffs' Motion for Summary Judgment, Defendant expressly withdrew its defenses of estoppel and unclean hands. Dkt. No. 111-4, 24:22-25:2. Defendant has not raised or adduced any evidence relating to its defense of waiver, however, it appears to be coextensive with Defendant's defenses relating to rescission and/or termination, and fails for the same reasons. _See id._ at 23:16-24:19.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1   Oki's defense of novation, merely characterizing an amendment to be a "novation" does not make

2   it so, particularly where, as here, all of the evidence is consistent with amending the Agreement.

3          With respect to anticipatory breach, Oki has failed to identify an obligation that Plaintiffs

4   failed to meet in order to constitute anticipatory breach.

5          Oki's statute of limitations defense ignores the fact that this Court has ruled that Oki's

6   breach by failure to provide notice of termination under Section 1.0 of the Agreement is not

7   barred by the statute of limitations.  With respect to other breaches, Oki's affirmative defense

8   ignores that these are breaches of continuing obligations that only accrued when Oki terminated

9   the Agreement on July 8, 2008, thus ending any chance NavCom and Deere had of receiving

10  working RF ASICs.

11         Oki's defense based on Section 16.0 of the Agreement should be rejected because the

12  evidence at trial establishes that NavCom and Deere's increased costs are general damages,

13  recoverable under the Agreement.

14         Plaintiffs have adduced uncontroverted evidence that Deere was the intended third-party

15  beneficiary of the Agreement.  Oki's arguments ignore the necessity of considering all evidence,

16  including the parties' intent and conduct, in determining whether Deere was an intended third-

17  party beneficiary.

18         Finally, with respect to Oki's failure to mitigate defense, Oki would demand that NavCom

19  and Deere do the unreasonable — to pay Oki additional development charges and to continue

20  with a failed project — to mitigate its damages.  The law does not require this, and Oki's defense

21  fails.

22  **II.    LEGAL STANDARD.**

23         Rule 50(a) "allows a court to remove 'issue[s]' – claims, defenses, or entire cases – from

24  the jury when there is no 'legally sufficient evidentiary basis' to support a particular outcome."

25  *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 926 (9th Cir. 2007) (citation omitted).  If "the

26  Court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for"

27  a party on a particular issue, "the court may . . . resolve the issue against the party; and grant a

28  motion for judgment as a matter of law . . ."  Fed. R. Civ. P. 50(a)(1).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

2

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

A district court can grant a Rule 50(a) motion for judgment as a matter of law only if there is no legally sufficient basis for a reasonable jury to find for that party on that issue. *Krechman v. County of Riverside*, 723 F.3d 1104, 1109-10 (9th Cir. 2013). In deciding a motion brought pursuant to Rule 50(a), a court reviews all of the evidence and draws all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000); *City Solutions v. Clear Channel Communs., Inc*., 365 F.3d 835, 839 (9th Cir. 2004). While a district court is generally not permitted to make credibility determinations or weigh the evidence (*Reeves*, 530 U.S. at 150), it may make such assessments if "the evidence is so one-sided that one party much prevail as a matter of law" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Further, to defeat a Rule 50(a) motion, "[t]he question is not whether there is no evidence supporting the party against whom the motion is directed but whether the evidence is sufficient for the jury to properly find a verdict for the party." *Nelson v. Silverman*, 888 F.Supp. 1041, 1043 (S.D.Cal. 1995). Thus, judgment as a matter of law is warranted where "the evidence permits only one reasonable conclusion . . ." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2006) (citation omitted).

## III.   ARGUMENT.

### A.   Oki Has Adduced No Evidence That The Parties Mutually Rescinded Or Abandoned The Agreement.

Oki failed to adduce any evidence supporting its affirmative defense that the parties mutually rescinded or abandoned the Agreement. "A contract may be rescinded if all parties thereto consent." Cal. Civ. Code § 1689(a). Missing from any evidence presented by Oki at trial is the consent of *__either__*  party to rescind or terminate the Agreement. At most, the parties' actions are consistent with amending the Agreement, not abandoning or rescinding it. "[A]bandonment is made up of two elements, act and intent, and the intent must be gathered from all the facts and circumstances of the case …." *Pearl v. Gulf Red Cedar Co.*, 15 Cal. App. 2d 196, 199 (1936). To constitute implied abandonment, the acts and conduct relied upon must be positive, unequivocal, and inconsistent with the contract. *Ross v. Tabor*, 53 Cal. App. 605, 615 (1921); *Tuso v. Green*, 194 Cal. 574, 582 (1924) ("It is true that the consent of the parties to such an

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

3

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1   agreement of rescission is not required to be expressed in words, but may be manifested by

2   conduct.  But such conduct must afford a stronger basis for the inference of consent than mere

3   conjecture or speculation."). In fact, "[m]utual rescission involves the formation of a new

4   contract, and the issues include the same questions of law and facts regarding offer and

5   acceptance that occur in any other problem of contract formation." *Harriman v. Tetik*, 56 Cal. 2d

6   805, 810 (1961).

7        The evidence adduced by Oki is that the parties intended to amend, not abandon or

8   rescind, the Agreement.  As the California Supreme Court has held, "an alteration of details of the

9   contract which leaves undisturbed its general purpose constitutes a modification rather than a

10  rescission of the contract . . .  it does not affect the original contract, which still remains in force."

11  *The Travelers Ins. Co. v. Workmen's Compensation Appeals Bd.*, 68 Cal. 2d 7, 17 (1967),

12  *disapproved on other grounds in LeVesque v. WCAB*, 1 Cal.3d 627, 637 (1970) (citations

13  omitted).  Amendment is the affirmation of the underlying agreement, not the abandonment of it.

14  For example, in a contract for building a house, where a number of changes had been made to the

15  plans, no abandonment was found:

16           There was no evidence that the parties had abandoned the contract,
             but apparently the court relied upon the fact that changes had been
17           made which in some instances increased the cost and in others
             decreased the cost. It is to be noted that the contract itself
18           contemplated that changes might be made, for it was stipulated
             therein that changes should be authorized by the owner. There is no
19           real dispute in the evidence that changes had been made, sometimes
             for the purpose of keeping down the cost below what it would have
20           been had the plans and specifications been exactly followed while
             other changes increased the cost, but these circumstances do not
21           justify the contract being discarded as though abandoned.

22  *Schlinkman v. Davis*, 195 Cal.App.2d 603, 605 (1961).  The Court of Appeal went on to find in

23  *Schlinkman* that the contract provision regarding maximum cost was also still in effect.  *Id*. at

24  605.  Accordingly, even where the parties originally contracted to build a Colonial-style house,

25  yet changed the plans to build a "California modern" style house, that does not constitute an

26  abandonment of the contract.

27        The cases relied upon by Oki are readily distinguishable.  In *McCreary v. Mercury*

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB2/ 25024531.1

4

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

*Lumber Distributors*, 124 Cal. App. 3d 477 (1954), the parties entered into a contract for the sale and removal of timber. *Id.* at 479. After nearly a year and a half, the majority of the timber had yet to be removed, so the landowner sent a letter of rescission to the logger, locked the gates to the property, and made all outstanding payments under the contract. *Id.* at 481. After the letter of rescission was sent, the parties then negotiated and actually reached a new agreement, drafted a term sheet of agreed-upon terms, and had an attorney draft a new contract that explicitly terminated the old contract. *Id.* at 481-82, 484. These actions, coupled with the logger's failure to claim further rights in the old contract until filing the lawsuit, demonstrated the logger's acquiesence to the notice of rescission. *Id.* at 486. Here, Oki did not send a notice rescinding or terminating the Agreement until July 8, 2008, and there was no evidence that the parties actually negotiated the terms of a new contract.

*Honda v. Reed*, 156 Cal. App. 2d 536 (1958), also is inapposite. There, the parties entered into a contract to lease an apartment. *Id.* at 537. Before the agreement became effective, the buyer/lessor was required to set up escrow – but the escrow instructions "were never signed by any party, and no escrow was then or ever commenced to conclude the transaction contemplated by the purported agreement . . ." *Id.* Several months later, after failed negotiations for a new and different agreement, the buyer/lessor sued to enforce specific performance on the original agreement. *Id.* at 538. The trial court's finding that the original contract had been abandoned by mutual consent was upheld, because plaintiff had never even attempted performance of the first contract. *Id.* 539-40. Here, the evidence is undisputed that NavCom performed its obligations under the Agreement, and that Oki attempted unsuccessfully to deliver working RF ASIC chips.

       1.     Oki's Claim That The Parties Rescinded or Abandoned The Agreement By Executing Amendment 1 Must Be Rejected.

Throughout this litigation, Oki has somehow contended that when the parties entered into Amendment 1 to the Agreement, attaching Version 25 of the Specification, the parties abandoned or rescinded the original agreement. *See* PX-46 (Amendment 1). The parties' course of conduct shows, however, that both Amendment 1, and the later changes discussed regarding the four-chip solution, are amendments to the Agreement. *See* CAL. CIV. PROC. CODE §1856(c) ("The terms set

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB2/ 25024531.1

5

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

forth in a writing . . . may be explained or supplemented by course of dealing or usage of trade or by course of performance."); *Employers' Reinsurance Co. v. Superior Court*, 161 Cal. App. 4th 906, 920-22 (2008) (holding that course of dealing evidence is admissible in interpreting an insurance contract); *High Concrete Tech., LLC v. Korolath of New England, Inc.*, 665 F. Supp. 2d 883, 889 (S.D. Ohio 2009) (finding course of dealing evidence relevant to show lack of mutual rescission).

It is undisputed, however, that Amendment 1 did not change any terms of the Agreement; its only purpose was to substitute an updated version (Version 25) of the specification for the extant version when the Agreement was executed (Version 19). It is also undisputed that this kind of amendment was expressly contemplated by the Agreement itself. PX-125 at Schedule A (OKI_LW_008260) ("It is understood by Seller and Buyer that the Nova RF ASIC Specification is not completely definitive . . . and that some characteristics may be changed . . . ."); § 2.3.1 (OKI_LW_008264) ("some change in the specifications listed in Schedule A is expected); § 2.5.2 (OKI_LW_008265) (same).

2.      Oki Cannot Adduce Evidence That Discussions Regarding The So-Called "Four Chip Solution" Abandoned Or Rescinded The Contract.

Here, the uncontroverted evidence shows that Oki and NavCom did not intend to abandon or otherwise rescind the contract based on the so-called "four chip solution" proposed by Oki and its vendor, Tahoe RF. Dr. Paul Galyean, project manager for the Nova RF ASIC project, testified that there was no discussion of terminating the contract when Oki and Tahoe RF presented the four-chip solution to NavCom. 4/23/14 Trial Tr., 332:3-17. Dr. Galyean recognized any request for approval, or a "go/no-go" decision, to not deal with the provisions of the contract itself. *See id.*, PX-56 ("This is not a contractual issue, as there is no requirement or allowance in the agreement for us to say yes or no once the contract is underway."). The Agreement itself gave Oki the flexibility to implement the chipset in the best way it saw fit. *See* 4/23/14 Trial Tr., 326:25-328:16; PX-125 at OKI_LW_008379 ("The term RF ASIC could refer to a single monolithic part, but will more likely be a set of individually packaged ICs"). He further testified that he did not believe that the Agreement had been terminated or abandoned prior to July 8,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

6

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

2008.  *Id*. at 478:23-479:6.  Jerry Knight, the manager of advanced receiver development responsible for the project, testified that there was never any discussion of terminating the contract when NavCom and Oki discussed Oki's proposed 4-chip solution to the problems it was having developing the three-chip design.  4/22/14 Trial Tr., 204:20-205:6.  Oki's corporate witness, Yoko Goto, testified that Oki decided to terminate the Agreement in June 2008, that it informed NavCom of its decision to terminate the Agreement, and that the decision to do so was made by Mr. Ushida.  PX-279 (Goto), 72:12-16; 72:20-24.

> 3.   The Evidence Adduced At Trial Shows Mutual Intent to *Amend* The Agreement.

At most, the parties' actions showed an intent to ***amend*** the Agreement, not to rescind or abandon it.  For example, Dr. Galyean testified that he understood that the four-chip solution would eventually require another ***amendment***, not an abandonment or termination, of the Agreement, much in the way Amendment 1 replaced Version 19 of the specification with Version 25.  4/23/14 Trial Tr., 332:24-333:16, 409:8-20; PX-56 ("There are several ***minor*** action items . . . need to revise Agreement with Oki to reflect the four chip solution and its pricing.") (emphasis added).  Similarly, Dr. Galyean's request for confirmation that the total price for the four-chip chipset would be the same as the three-chip chipset is consistent with an amendment, and does not indicate the kind of clear and unequivocal conduct needed to support a claim for abandonment or mutual rescission.  *See* 4/23/14 Trial Tr., 329:21-330:22; PX-205.

The documentary evidence adduced at trial unequivocally confirms the parties' intent to amend, not abandon, the Agreement.  For example, the document relied upon by Oki as notice of an intent to terminate is a PowerPoint presentation that merely says "[a]ll-layer re-design is needed to solve remaining issues and improve overall performance of chips to meet target specifications."  DX-1169 (dated February 21, 2008).  As of March 26, 2008, it was clear that an all-layer redesign was needed, not that the contract would be abandoned.  5/5/14 Trial Tr. 1286:19-21 (playing Galyean Dep. Tr., 105:12-16).  As of April 4, 2008, Oki reaffirmed its commitment to the project, and in turn, to the Agreement, by sending a letter to NavCom's CEO "in response to the request from NavCom on providing a full commitment pledge to make the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB2/ 25024531.1

7

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1   best effort possible to solve in a timely manner all technical issues arisen during the design

2   process." PX-158.

3       Dr. Galyean's notes from meetings and calls around the time are likewise consistent with

4   amending the Agreement, not abandoning it. DX-1030 ("RF ASIC Meeting" dated April 18,

5   2008, "There will need to be a few more changes [to the specification] and a formal amendment

6   to the agreement in a while."); PX-56 ("RF ASIC Meeting," dated May 28, 2008, "Tahoe asked

7   for a formal go/no-go decision from NCT.  This is ***not a contractual issue***, as there is no

8   requirement or allowance in the agreement for us to say yes or no once the contract is

9   underway.") (emphasis added).  Other documents relied on by Oki are consistent in stating the

10  parties' intention to amend, not rescind or otherwise terminate, the Agreement.  DX-1031

11  ("Action Item Spreadsheet" dated April 18, 2008, stating "We will need to deal with the draft

12  ***amendment*** to the agreement once it is settled."); DX-1051 ("Action Item Spreadsheet" dated

13  April 24, 2008, stating "We will need to deal with the draft ***amendment*** to the Agreement once it

14  is settled."); DX-1053 (same, dated May 8, 2008); DX-1054 (same, dated May 15, 2008); DX-

15  1055 (same, dated May 15, 2008); PX-56 (same, dated May 28, 2008); DX-1061 (same, dated

16  May 28, 2008, and adding "Need to ***revise*** agreement with Oki.") (emphases added).

17      The parties' discussion of chip prices for the four-chip chipset does not support Oki's

18  rescission or abandonment defense, because at no point did the parties discuss entering into a new

19  agreement.  The evidence shows only that NavCom insisted that the pricing set forth in the

20  Agreement not change, and Oki agreed.  DX-1055 (Oki's Ruben Balbuena confirming the price

21  of the chipset, stating that "OKI-J has run analysis for both proposals from Tahoe RF on

22  configuration of the chipset, and we run into the conclusion that the total cost for the chipset

23  (either 3-chip or 4-chip) will remain at $35.00, same as the original price when we signed the

24  agreement.").  Even where Oki had asked NavCom to pay additional development fees, Oki

25  stated that it "relinquishes any sales rights to the chipset to other customers."  DX-1065 at

26  NAV004712.  If Oki had already terminated the Agreement, it would have had no rights left to

27  relinquish.

28      Oki continues to ignore the one piece of evidence that confirms that there was no

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

8

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1    rescission or abandonment until July 8, 2008: the termination letter itself. PX-158. As the letter

2    stated, "Oki hereby provides notice of termination of the Development and Purchase Agreement

3    C04719-VPA dated December 14, 2005 . . ." *Id.* As Dr. Galyean testified, it would be strange

4    indeed to receive a letter terminating the Agreement if the Agreement had already been

5    terminated or abandoned. 4/23/14 Trial Tr., 479:7-11.

6         Only after Oki sent the termination letter on July 8, 2008 are its conduct and statements

7    consistent with having terminated the Agreement. Representatives of NavCom and Oki held a

8    telephone conference on July 9, 2008, and Mr. Galyean's notes state that Mr. Ushida, who spoke

9    for Oki "referenced the letter Oki sent earlier advising us that they have decided to terminate the

10   contract" and that "[t]wo reasons were given for the termination" of the Agreement. DX-1037 at

11   NAV0090107. Mr. Galyean also reported that Oki "asked if [NavCom] had a counterproposal to

12   bring forward on termination." *Id.* In an internal email at Oki dated July 22, 2008, Ruben

13   Balbuena stated that "a reply regarding the contract termination terms presented by OKI will be

14   received at a later date . . ." PX-214 at OKI_LW_018292. None of this evidence is controverted,

15   and Oki's defense of rescission and abandonment fails as a matter of law.

16        **B.    The Parties Did Not Enter Into A Novation Of The Agreement.**

17        For the same reasons that it cannot show that the Agreement was abandoned or mutually

18   rescinded, Oki cannot show that the parties entered into a novation. "Essential to a novation is

19   that it 'clearly appear' that the parties intended to extinguish rather than merely modify the

20   original agreement. The burden of proof is on the party asserting that a novation has been

21   consummated . . . . Regardless of the extent to which a contract is modified, a novation cannot be

22   found unless it be shown that the parties intended and agreed to extinguish the original contract."

23   *Howard v. County of Amador*, 220 Cal. App. 3d 962, 977-978 (1990) (internal citations omitted).

24   For the same reasons that Oki has not adduced any evidence that the parties intended to rescind or

25   terminate the contract, Oki cannot adduce any evidence that there was a novation.

26        Oki's characterization of the parties' discussions to amend the Agreement, either to add

27   Version 25 of the specification, or with respect to the four-chip solution, as "novation" does not

28   make them so. The evidence explained above at Section III.A is uncontroverted and consistent

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

9

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1   with **_amending_** the Agreement, not with abandoning or terminating it.  As the Ninth Circuit found

2   on similar facts, "[c]alling [an amended agreement] a 'novation' is a self-serving

3   mischaracterization of that agreement.  Alteration of some details of a contract, while leaving

4   undisturbed its general purpose . . . constitutes a mere modification of the original contract, and

5   the latter remains in force as modified." *Stinnett v. Damson Oil Corp.*, 648 F.2d 576, 582 (9th

6   Cir. 1981).  Oki's characterization of changes or modifications to the Agreement as a "novation"

7   are wholly unsupported by any evidence adduced at trial or by the law.

8        **C.      Oki Cannot Show That NavCom Anticipatorily Breached The Agreement
               Under Section 2.3.1.**

9
10       "Anticipatory breach occurs when one of the parties to a bilateral contract repudiates the

11   contract.  The repudiation may be express or implied. An express repudiation is a clear, positive,

12   unequivocal refusal to perform; an implied repudiation results from conduct where the promisor

13   puts it out of his power to perform so as to make substantial performance of his promise

14   impossible." *Taylor v. Johnston*, 15 Cal.3d 130, 137 (1975) (citations omitted).  "When a

15   promisor repudiates a contract, the injured party faces an election of remedies: he can treat the

16   repudiation as an anticipatory breach and immediately seek damages for breach of contract,

17   thereby terminating the contractual relation between the parties, or he can treat the repudiation as

18   an empty threat, wait until the time for performance arrives and exercise his remedies for actual

19   breach if a breach does in fact occur at such time.  However, if the injured party disregards the

20   repudiation and treats the contract as still in force, and the repudiation is retracted prior to the

21   time of performance, then the repudiation is nullified and the injured party is left with his

22   remedies, if any, invocable at the time of performance." *Id.*

23       Here, there is no evidence that NavCom and Deere performed an act that repudiated the

24   contract, even under Oki's fanciful theory.  Oki's theory is hard to understand, but apparently is

25   tied to Section 2.3.1 of the Agreement, which reads in relevant part:

26           If Buyer makes changes in the specifications listed in Schedule A
             applicable to the development of Engineering Prototypes under this
27           Agreement or otherwise causes additions to the Statement of Work
             in Schedule B hereto or causes any of the steps specified in the
28           Statement of Work to be repeated by Seller, Buyer shall be

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

10

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1    responsible for any and all additional costs Seller may incur in
     compliance with such changes.

2
                              *         *         *

3
     Any changes must be in writing. Seller will advise Buyer in
4    writing of any additional development charges and any change in
     the unit pricing for the Products. If Buyer elects to proceed with
5    the changes, Buyer agrees to pay any additional development
     charges indicated by Seller and agrees to the revised unit pricing
6    and revised schedule.

7    Notwithstanding anything to the contrary in this Section, some
     change in the specifications listed in Schedule A is expected, and
8    the language in Schedule A takes precedence over the language of
     this Section.

9

10   PX-125, Terms and Conditions, § 2.3.1 (OKI_LW_008264). Oki failed to adduce any evidence

11   that NavCom made any changes to the specifications that caused additional development costs.

12   Indeed, the only evidence at trial was that no changes to the specifications increased the costs of

13   development. 4/29/14 Trial Tr., 639:23-640:11; 643:5-645:24 (Ward). To the extent that Oki

14   contends that NavCom breached this provision, resulting in anticipatory breach, the evidence is

15   undisputed that Oki never advised NavCom of any additional development charges under this

16   section. Indeed, the only evidence on this point is from the testimony of Oki's corporate witness,

17   Yoko Goto, who testified that Oki ***never asked NavCom to bear additional development costs***

18   under the Agreement. *See* PX-279, 174:19-176:4 (additional development costs); 182:23-183:4

19   (testifying to lack of awareness as to whether Oki had done analysis to determine whether any

20   specification changes increased cost to Oki of designing and developing the project). And, to the

21   extent that Oki mounts the same defense with respect to Section 2.5.2, governing "Additional

22   NRE Charges," there is no evidence that Oki asked NavCom to bear additional costs under that

23   section either. Oki's purported anticipatory breach defense fails as a matter of law.

24        D.    **Oki Has Adduced No Evidence That Plaintiffs' Claims Are Barred By The
                Statute Of Limitations.**

25        The uncontroverted evidence shows that Plaintiffs' claim for breach of contract accrued

26   on July 8, 2008, when Oki terminated the Agreement. Under California law, a claim for breach

27   of a written contract must be brought within four years of the accrual of the claim. Cal. Civ. Proc.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

11

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1   Code. § 337; *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1039 (9th Cir. 2003); *Results By IQ*

2   *LLC v. Netcapital.com, LLC*, No. C 11-0550, 2013 WL 2436333, *3 (N.D. Cal. May 7, 2013).  A

3   claim for breach of contract "does not accrue before the time of breach."  *Romano v. Rockwell*

4   *Int'l., Inc.*, 14 Cal. 4th 479, 488 (1996); *see Cochran v. Cochran*, 56 Cal. App. 4th 1115, 1120

5   (1997).

6          With respect to Oki's statute of limitations defense for breach of Section 1.0, this defense

7   already has been dismissed.  In ruling on summary judgment, the Court held that "[a]s  discussed

8   above, Defendant breached when it terminated the Agreement on July 8, 2008 without providing

9   three months' notice."  Dkt. No. 199, at 24.  Oki's new argument that it terminated the Agreement

10  on February 21, 2008 fails.  The evidence on which is relies, DX-1169, is a PowerPoint

11  presentation regarding the technical failures of Oki's second set of prototypes.  Nowhere does it

12  address termination of the Agreement.  Oki's even more recent contention that it terminated in

13  late March 2008 fails for the same reasons — there is no evidence of a termination of the

14  Agreement, as the only discussions going on at that time were technical in nature.  It is beyond

15  legitimate dispute that Oki terminated the Agreement on July 8, 2008, when it sent its termination

16  letter.  PX-165.

17         Oki also has not adduced any evidence that Plaintiffs' claims for breach of contract of

18  Sections 2.2, 2.6 and 2.8 of the Agreement are barred by the statute of limitations.  The evidence

19  shows that Oki had a continuing obligation to use its best efforts to design and deliver working,

20  functional Engineering Prototypes until the end of the then-current term, December 31, 2008.

21  PX-125, § 1.0.  As late as April 4, 2008, Oki confirmed to NavCom that it would fulfill these

22  ongoing obligations.  *See* PX-158.  Because of this, these breaches constituted continuing

23  violations that accrued at the end of a term.  As explained in *Romano,* 14 Cal.4th at 489, "where

24  there are ongoing contractual obligations the plaintiff may elect to rely on the contract despite a

25  breach, and the statute of limitations does not begin to run until the plaintiff has elected to treat

26  the breach as terminating the contract."  *See also Airis SFO, LLC v. City and County of San*

27  *Francisco,* Nos. A121855, A122157, 2010 WL 3687508, at *11 (Cal. App. 1 Dist. Sep. 22, 2010)

28  (unpublished) (overturning lower court decision on statute of limitations and finding that the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

12

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1   plaintiff could rely on the contract after initial breach of covenant of good faith and fair dealing);

2   *Cellier v. Citroen Concours,* No. D039013, 2003 WL 879075, at *4-5 (Cal. App. 4 Dist. Mar. 7,

3   2003) (unpublished) (holding that there was sufficient evidence that breach did not accrue until

4   the defendant returned the vehicle that was the subject of the contract, not when the plaintiff had

5   asked the defendant to stop work); *Emplrs. Ins. of Wausau v. Granite State Ins. Co.,* 330 F.3d

6   1214, 1220 fn.8 (9th Cir. 2003) (finding that the Court may consider unpublished state court

7   decisions).

8          Further, the evidence shows that Oki understood that it was under a continuing obligation

9   to use its best efforts to design and deliver the engineering prototypes, and Defendant has

10  adduced no evidence to the contrary.  For example, after Oki delivered a second set of non-

11  working and non-conforming prototypes, and in response to NavCom's express concerns about

12  Oki's commitment to the project, Oki provided a letter on April 4, 2008, reassuring NavCom of

13  Oki's commitment to the project: "Oki Electric Industry Co., Ltd. and Oki Semiconductor . . . are

14  committed to make the best effort possible to solve in a timely manner all technical issues arisen

15  during the design process, and as such we have evaluated the current responsibility structure and

16  made adjustments to improve communication flow."  PX-158.  Even after that letter was sent, it is

17  undisputed that Oki continued to work with its partners to resolve problems with the chipset.  *See,*

18  *e.g.,* PX-22, PX-25, PX-27, PX-29, PX-30, PX-56, PX-205, DX-1053, DX-1054, DX-1065.

19  Oki's assurances, and its continuing work on the project up to termination, show that Oki

20  understood that it had a continuing obligation under the Agreement to deliver working

21  Engineering Prototypes that met the specifications, and to repair or replace the non-working

22  prototypes Oki delivered before termination.

23      **E.**     **Plaintiffs' Damages Are Not Barred By Section 16.0 Of The Agreement As A**
                    **Matter Of Law.**
24
25          Plaintiffs' damages — the increased costs due to using the discrete solution in their Gen 5

26  products — are general damages that are not barred by the Limitation of Liability Clause

27  contained at Section 16.0 of the Agreement.  Section 16.0 reads, in pertinent part

28  "[n]otwithstanding any other provisions in this Agreement, neither party shall be liable with

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

13

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1   respect to its obligations under this Agreement for consequential, exemplary, special, or

2   incidental damages, including without limitation, lost profits, even if it has been advised of the

3   possibility of such damages, except in the case of fraud . . ." PX-125 at OKI_LW_008272.  Here,

4   Plaintiffs do not seek consequential, special, exemplary, or incidental damages.

5          "Contractual damages are of two types — general damages (sometimes called direct

6   damages) and special damages (sometimes called consequential damages)."  *Lewis Jorge Constr.*

7   *Mgmt., Inc. v. Pomona Unified Sch. Dist.*, 34 Cal. 4th 960, 968 (2004).  "General" damages are

8   those that arise naturally from the breach, or might have been reasonably contemplated or

9   foreseen by the parties as the probable result of the breach.  *Glendale Fed. Sav. & Loan Assn. v.*

10  *Marina View Heights Dev. Co.*, 66 Cal. App. 3d 101, 125 (1977); Cal. Civ. Code § 3300.  The

11  general damages recoverable for breach of contract are limited to damages that actually were

12  contemplated by or within the reasonable contemplation of the parties at the time they entered

13  into the contact.  *Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d

14  442, 457 (1990).

15         Defendant has failed to adduce any evidence that Plaintiffs' increased-cost damages are

16  actually "lost profits."  Oki's argument on this point is based only on its flawed idea that all costs

17  incurred in making a product affect its profitability, and therefore, that all increased costs are "lost

18  profits."  In his direct examination, Mr. Hansen explained that his damages calculations were

19  based on the increased costs to NavCom and Deere due to Oki's failure to provide working

20  Engineering Prototypes and to use its best efforts to do so.  4/30/14 Trial Tr. (Hansen), 1020:4-

21  1021:15; 1026:3-1027:5.  During over 4.5 hours of cross examination, Mr. Hansen's testimony

22  was consistent:  "When you're analyzing damages and impact, lost profits is a term that is used to

23  identify situations where there has been a sale, there's an additional item of revenue or a sale that

24  would have been made that wasn't able to be made."  5/1/14 Trial Tr., (Hansen) 1093:23-1094:1;

25  *see id.* at 1094:24-1095:3 ("I think I'm being very clear about why I'm calling this an increase

26  cost claim and it's not a claim for lost profits, if you will, in the damages context.  Everything

27  affects profit.  That doesn't make everything a lost profits claim.").

28         Even if Plaintiffs' damages could be considered "lost profits," they remain general — and

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

14

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

not consequential — damages.  Plaintiffs' increased-cost damages are the natural and probable

consequence of Oki's failure to meet its contractual obligation to design and deliver a working RF

ASIC design.  Courts interpreting contract provisions that contain provisions nearly identical to

Section 16.0 of the Agreement have routinely concluded that a limitation of liability provision

like Section 16.0 only prevents indirect or consequential lost profits damages, not general or

direct lost-profits damages.  *See In re First Magnus Financial Corp.*, No. AZ-10-1006, 2010 WL

6452904 at *5 (9th Cir. Aug. 31, 2010) ("The plain language of Section 8.2 unambiguously

restricts damages from lost profits in the context of incidental, punitive, indirect, special or

consequential damages … [A] party's expectancy, or general damages, for loss of value due to a

breach is a separate category of damages and legally distinct from consequential damages.");

*Coremetrics, Inc. v. Atomic Park.com, LLC*, No. C-04-0222 EMC, 2005 WL 3310093 at *4 (N.D.

Cal.  Dec. 7, 2005) ("A reasonable jury, after having read this clause, could only conclude that

Coremetrics and AtomicPark intended to bar recovery of indirect damages, of which lost profits is

just one of several possible measures."); *Claredi Corp. v. SeeBeyond Technology Corp.*, No.

4:04CV1304 RWS, 2010 WL 1257946 at *6 (E.D. Mo. Mar. 26, 2010) (applying California law,

the Court found "[a] plain reading of section 7.3 limits only *indirect* loss of profits and not lost

profits which are direct damages").

      Increased-cost damages have been found and upheld to be the natural and probable

consequence of breach of an agreement to design and develop ASICs.  In *Micrel, Inc. v. TRW,

Inc.*, 486 F.3d 866 (6th Cir. 2007), TRW sought damages based on the increased cost of using

ASICs from National Semiconductor in place of ASICs that Micrel failed to finish designing

under the development agreement.  On appeal following a jury verdict for TRW, "Micrel argue[d]

that the district court erred by allowing TRW to seek 'cover' damages under the [UCC], or

'expectancy' damages under the common law, which were based almost entirely on the

unrealized savings it expected from the use of Micrel's lower-cost replacement parts." *Id.* at 877.

The Sixth Circuit rejected the argument and affirmed the verdict under both the common law and

the UCC:  "We find that, although the jury was free to find that damages flowing from the failure

to supply parts were not contemplated by the parties, the district court did not err in rejecting

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

15

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1   Micrel's argument that such damages were unavailable as a matter of law." *Id.* at 878, 880.

2   To the extent that Oki argues that Deere's damages are by definition consequential

3   damages, Oki is incorrect. The record evidence shows that Deere's damages, like NavCom's,

4   arose naturally from the breach. Even if the design had not entered production, NavCom and

5   Deere could have taken the finished design to a different semiconductor foundry, and obtained RF

6   ASICs for use in Deere products. *See* 4/23/14 Trial Tr., 318:8-24 (Galyean); 320:4-322:22

7   (Galyean). These damages arise naturally from Oki's failure to provide functional Engineering

8   Prototypes and to use best efforts to meet the agreed-upon schedule.

9   **F.    The Evidence Shows That Deere Is A Third-Party Beneficiary.**

10   NavCom and Deere have presented uncontradicted evidence that Deere was an intended

11   third-party beneficiary of the Agreement. Where the terms of an Agreement "necessarily require

12   the promisor to confer a benefit on a third person, then the contract, and hence the parties thereto,

13   contemplate a benefit to the third person." *Johnson v. Holmes Tuttle Lincoln-Mercury*, 160 Cal.

14   App. 2d 290, 297 (1958); *accord Souza v. Westlands Water Dist.*, 135 Cal. App. 4th 879, 891

15   (2006). The promisor, here, Oki, "must have understood that the promisee [NavCom] had such

16   intent. No specific manifestation by the promisor of an intent to benefit the third person is

17   required." *See Schauer v. Mandarin Gems of California*, 125 Cal. App. 4th 949, 958 (2005)

18   (internal citations omitted); *Alling v. Universal Manuf. Corp.*, 5 Cal. App. 4th 1412, 1439-40

19   (1992) (affirming trial-court judgment that plaintiff was a third-party beneficiary because there

20   was sufficient evidence that defendant-promisor knew that the promissee intended for the contract

21   to benefit the third-party beneficiary).

22   First, the Agreement itself shows the NavCom and Oki's intent to benefit Deere, and the

23   understanding that Deere would be placing a significant number of orders for the subject RF

24   ASICs. The parties' intent controls on this issue, and here the parties' intent was clear. *See*

25   *Prouty v. Gores Technology Group*, 121 Cal. App. 4th 1225, 1234 (2004) ("The language of the

26   contract and the facts surrounding its negotiation demonstrate the parties expressly intended

27   plaintiffs to be third party beneficiaries"); *Kemmis v. McGoldrick*, 767 F.2d 594, 597 (9th Cir.

28   1985). Section 3.2.3 provides that Oki "shall extend the same terms and conditions of this

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

16

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1   Agreement to Deere & Company and its subsidiaries and affiliates, and such purchases shall be

2   regarded as purchase by Buyer for the purposes of cumulative pricing . . . ."  PX-125, Part 1, at §

3   3.2.3 (OKI_LW_008267).  The Agreement itself states that Deere can purchase RF ASIC chips at

4   the same prices as NavCom, and that Deere's purchases count toward cumulative pricing, causing

5   the price for the chips to go down for both NavCom and Deere as more chips are purchased.

6   Elsewhere, the Agreement addresses the use of Deere's name by Oki.  *Id.* at Part 1, at § 21.0

7   (OKI_LW_008273).  This and other evidence confirms that an objective of the Agreement was to

8   develop technology for Deere products.  Under *Prouty*, this evidence is sufficient to demonstrate

9   Deere's status as a third-party beneficiary of the Agreement.  *See Prouty,* 121 Cal. App. 4th at

10   1233.

11          Second, a number of Oki's witnesses and documents show that Oki knew and intended

12   that Deere be an intended third-party beneficiary of the Agreement.  The inquiry into the fact

13   issue of intent to benefit third parties is not limited to an examination of the written contract.  *See*

14   *Vahle v. Barwick*, 93 Cal. App. 4th 1323, 1329 (2001).  Ruben Balbuena, who was the main

15   contact point between NavCom and Oki during the negotiation of the Agreement, testified that he

16   understood that NavCom was developing advanced GPS modules to be included in Deere's

17   products.  PX-282 (Balbuena Dep. Tr.) 26:15-20; 27:2-7; 85:16-86:11.  Yuki Ushida, who

18   oversaw the project at Oki, testified that he understood that the chipset Oki was to design for

19   NavCom would be used in Deere's products.  5/1/14 Trial Tr., 1223:20-24.  Deere's involvement

20   in the project was continuously discussed throughout the negotiations.  *See, e.g.,* PX-138 at

21   OKI_LW_003032 ("Deere will do all the direct purchasing from Oki").  At the very outset of the

22   negotiations, in February 2005, NavCom's Jerry Knight made a presentation to Oki wherein he

23   explained that the purpose of the RF ASIC project was to design chips for use in Deere's

24   products, and that the project would be funded by Deere.  4/22/14 Trial Tr. (Knight) 182:16-

25   183:4, 253:22-255:4; *see also* DX-1168 (2/24/05 Presentation to Oki) at NAV01014000 (RF

26   ASIC for use in StarFire); 4/22/14 Trial Tr. 253:2-21 (Starfire is a John Deere System).  Oki

27   circulated an internal email documenting its understanding of the proposed project: "***Program is***

28   ***funded by John Deere and will eventually be incorporated into all John Deere products***."  PX-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB2/ 25024531.1                                                                 17
PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

217 at NAV0068601 (emphasis added).

1.    Section 24.0 of the Agreement Does Not Alter Deere's Status As A Third Party Beneficiary

Finally, Section 24.0 of the Agreement does not defeat Deere's ability to sue for breach as a third-party beneficiary. *Prouty*, 121 Cal. App. 4th 1225, is controlling and defeats any arguments Oki may have based on the Agreement. *Prouty* involved former Hewlett-Packard ("HP") employees who worked in HP's VeriFone Division. VeriFone was later acquired by Gores Technology Group ("GTG"). One week after the deal closed, GTG terminated the plaintiffs. *Id.* at 1228-29. The plaintiffs then brought a breach of contract claim against GTG as third party beneficiaries of a provision in the stock and asset purchase agreement between HP and GTG, which provided that GTG would offer employment to all VeriFone employees for 60 days after the deal closed and provide certain severance benefits if the employees were terminated within 90 days thereafter. *Id.* at 1227. GTG moved for summary judgment on the ground that Section 10.5 of the HP-GTG agreement prevented plaintiffs from being third party beneficiaries as a matter of law. The relevant provision read as follows:

> 10.5.  This Agreement, the exhibits and schedules hereto, the Surviving Intercompany Contracts and the Confidentiality Agreement . . . are not intended to confer upon any Person other than the parties hereto, the Company, the Company Subsidiaries, the Purchaser Indemnified Persons and the Seller Indemnified Persons any rights or remedies hereunder.

*Prouty*, 121 Cal. App. 4th at 1227, fn. 1. Section 8(b) of an amendment to the agreement reinforced the Section 10.5 restriction on third-party beneficiaries. *Id.* at 1228.

Like Oki here, GTG argued that these covenants defeated plaintiffs' third-party beneficiary claims: "GTG argued summary judgment was required because plaintiffs were not parties to the stock sale agreement and the amendment, and they were foreclosed by the agreement's terms from being third party beneficiaries." *Id.* at 1229. The trial court granted summary judgment to GTG.

The Court of Appeal reversed. *Id.* at 1230, 1237. The Court first summarized how third party beneficiaries are determined under California law: "Whether the third party is an intended

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

18

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

beneficiary or merely an incidental beneficiary involves construction of the intention of the parties, gathered from reading the contract as a whole in light of the circumstances under which it was entered." *Id.* (internal quotation omitted). "Generally, it is a question of fact whether a particular third person is an intended beneficiary of a contract." *Id.*

The Court of Appeal then rejected GTG's (and, here, Oki's) argument that contract provisions disclaiming third party beneficiaries defeat third party beneficiary claims as a matter of law. The Court instead held that *as a matter of law the Prouty plaintiffs were third party beneficiaries of the relevant agreements* – notwithstanding the presence of two provisions disclaiming third-party beneficiaries. *Id.* In reaching this conclusion, the Court applied the "well established principle[] of contract interpretation [that] when a general provision and a particular provision are inconsistent, the particular and specific provision is paramount to the general provision." *Id.* at 1235; CAL. CIV. PROC. CODE § 1859; CAL. CIV. CODE § 3534.

Section 24.0 reads in pertinent part:

> This Agreement is binding upon and inures to the benefit of the Parties hereto and the successors and assigns of the entire business and goodwill of either Seller or Buyer or that part of the business of either used in the performance of this Agreement, but shall not be otherwise assignable. . . . Nothing in this Agreement shall inure to the benefit of or be deemed to give rise to any rights in any third party, whether by operation of law or otherwise.

PX-125, at § 24.0 (OKI_LW_008274). As in *Prouty*, this clause is inconsistent and irreconcilable with the other, undisputed evidence to the parties' intent to benefit Deere as a third-party beneficiary. All relevant evidence must be considered in determining whether a party is a third-party beneficiary, and Section 24.0 does not defeat the overwhelming evidence adduced by NavCom and Deere that Deere is a third-party beneficiary of the Agreement.

## G.    The Evidence Demonstrates That Plaintiffs Took Reasonable Steps To Mitigate Their Damages.

Oki has adduced no evidence in support of its affirmative defense that NavCom and Deere have failed to mitigate damages. A plaintiff has a duty to take reasonable steps to mitigate damages. *See Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994). The duty to mitigate damages, however, "does not require an injured party to do what is unreasonable or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

19

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1   impracticable." *Id.* The burden of proving that damages could have been avoided is on the party

2   that broke the contract, here Oki. *See Millikan v. American Spectrum Real Estate Servs.*

3   *California, Inc.*, 117 Cal. App. 4th 1094, 1105 (2004).

4         Throughout in this litigation, Oki has asserted a ***single*** alternate course of action that

5   Plaintiffs should have taken to mitigate damages — Plaintiffs should have accepted Oki's offer to

6   pay $860,000 in additional development costs to continue the project. Declaration of Brett M.

7   Schuman in Support of Plaintiffs' Motion For Judgment As A Matter Of Law, Ex. A (Oki's

8   Responses to NavCom's First Set of Interrogatories) at pp. 17-18.[2] "The rule of mitigation of

9   damages has no application where its effect would be to require the innocent party to sacrifice

10  and surrender important and valuable right." *Seaboard Music Co. v. Germano*, 24 Cal.App.3d

11  618, 623 (1972). "Inasmuch as the law denies recovery for losses that can be avoided by

12  reasonable effort and expense, justice requires that the risks incident to such effort should be

13  carried by the party whose wrongful conduct makes them necessary." *Brandon & Tibbs v.*

14  *George Kevorkian Accountancy Corp.*, 226 Cal.App.3d 442, 460-61 (1990) (5 Corbin, Contracts

15  (1964) Damages, § 1044, p. 275.).

16        In *Brandon & Tibbs,* 226 Cal.App.3d 442, the buyer of an accounting practice sued the

17  seller for breach of contract. Following the breach, the buyer opened a new accounting practice

18  instead of purchasing another existing practice. The seller argued that the buyer failed to mitigate

19  its damages by not purchasing another existing practice, but the Court found that the evidence

20  supported the conclusion that starting a new business was indeed reasonable under the

21  circumstances. *Id.* at 461. As in this case, the Court noted that "time … is money" and the buyer

22  had presented evidence that there could have been a long delay if he had attempted to find another

23  practice to purchase. *Id.*

24  ───────────────

[2] As Oki never raised any other bases for its defense of failure to mitigate during discovery, it
should not be allowed to do so here. Oki should not be allowed to raise this defense after
25  discovery has closed. *See, e.g., Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters. (U.S.A.)*, No.
CV 08-7587, 2009 U.S. Dist. LEXIS 118448 (C.D. Cal. Dec. 21, 2009) ("responses to contention
26  interrogatories are treated as 'judicial admissions' that estop the responding party from asserting
positions omitted or different from those responses") (citing *Wechsler v. Hunt Health Sys.*, No. 94
27  Civ. 8294, 1999 U.S. Dist. LEXIS 13216, *5 (S.D.N.Y. Aug. 25, 1999); *Takeda Pharm. Co., Ltd.*
*v. Handa Pharms, LLC*, No. C-11-00840, 2013 U.S. Dist. LEXIS 74126, *71 (N.D. Cal. Apr. 8,
28  2013) (court considers interrogatory responses "to be binding judicial admissions").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

20

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

1    Oki's argument that NavCom was obliged to enter into a "new agreement" with Oki, and

2    pay Oki an additional $860,000 must be rejected as a matter of law.  *See, e.g., Yang Ming Marine*

3    *Transp. Corp. v. Okamoto Freighters Ltd.*, 259 F.3d 1086, 1095 (9th Cir. 2001); *999 Corp. v.*

4    *C.I.T. Corp.*, 776 F.2d 866, 870-71 (9th Cir. 1985).  A party is not required to accede to new

5    terms interposed by a breaching party unless the new terms are trivial or inconsequential in

6    comparison to the damages the non-breacher would suffer.  *999 Corp.*, 776 F.2d at 871.  As

7    explained in a treatise, "[t]he injured party is not required to accept the very performance that

8    constitutes the breach of contract in order to mitigate damages unless the new terms are trivial or

9    inconsequential in relationship to the foreseeable damages otherwise flowing from the breach."

10   *See* 3 Cal. Affirmative Def. § 36:2 (2013 Ed.) (citing *999 v. C.I.T. Corp.*, 776 F.2d 866, 871 &

11   n.4 (9th Cir. 1985)).  In *999 Corp.*, the Ninth Circuit found that a non-breaching party was not

12   required to accept a $25,000 per month pre-payment penalty on about $6 million in financing to

13   mitigate its damages.  *Id.* at 871.

14   Here, the law does not require NavCom to throw bad money after good, paying nearly

15   double what it had already paid to Oki to continue a project that Oki had already bungled.

16   Nor would NavCom be obligated, as Oki seems to contend, to continue the project with

17   some combination of Tahoe RF and Peregrine.  First, there is no evidence in the record that this

18   was possible, or would have resulted in the delivery of a working chipset to NavCom and Deere.

19   Second, for the same reasons it was not obligated to continue with Oki, NavCom and Deere were

20   not obliged by law to enter into a new agreement with Tahoe RF.  Finally, Oki's contention that

21   NavCom should have just passed on its added costs to consumers is facially absurd.  Even if there

22   were evidence showing this to be possible, NavCom and Deere are not obliged to do so under the

23   law.  *See Consolidated Aluminum Corp. v. Krieger,* 710 S.W.2d 869, 872 (Ky.App. 1986) (non-

24   breaching buyer not required pass costs of seller's breach of contract along to its own customers).

25   NavCom and Deere have adduced undisputed evidence that their actions in mitigating

26   damages were reasonable.  As Dr. Galyean, the project manager for the Nova RF ASIC project

27   testified, "the one thing we had to prevent on behalf of NavCom and Deere, we had to avoid the

28   situation where Deere and NavCom couldn't field their products."  4/22/2014 Trial Tr., 296:17-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25024531.1

21

PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD

19.  To avoid this, NavCom and Deere made the decision to go to market with the so-called discrete solution, which implemented the RF front end of the GPS receiver using over 500 additional, off-the-shelf parts.  *See* 4/22/2014 Trial Tr., 262:22-263:2 (Galyean describing discrete design); 295:18-297:1 (Galyean describing reasons for developing discrete design); 4/23/14 Trial Tr., 311:14-312:2 (Galyean); PX-49 (describing continued development of the discrete solution).  The use of the discrete solution resulted in additional costs; however, NavCom and Deere were able to avoid significantly greater harm by doing so.

### H.   NavCom and Deere Have Shown That They are Entitled to Judgment on Their Breach of Contract Claim.

For the reasons stated in Plaintiffs' Opposition to Defendant Oki Electric Industry Co., Ltd.'s Motion for Judgment as a Matter of Law, Plaintiffs have submitted sufficient evidence to prove each element of their breach of contract claim.  *See* Dkt. No. 301.  Plaintiffs hereby incorporate the arguments and evidence in that motion.  Defendant has not presented evidence to the contrary, and Plaintiffs are entitled to judgment on their claim for breach of contract.

## IV.   CONCLUSION.

For the foregoing reasons, NavCom and Deere respectfully request that the Court enter judgment as a matter of law regarding Oki's affirmative defenses and on their claim for breach of contract.

Dated:  May 5, 2014                      MORGAN, LEWIS & BOCKIUS LLP

By:  /s/ Brett M. Schuman
     Brett M. Schuman
     Attorneys for Plaintiffs
     NavCom Technology, Inc. and Deere & Company

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
DB2/ 25024531.1

22

PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW
5:12-CV-04175 EJD