NAGASHIMA & HASHIMOTO
MARC R. LABGOLD (*pro hac vice*)
mlabgold@labgoldlaw.com
PATRICK J. HOEFFNER (*pro hac vice*)
phoeffner@labgoldlaw.com
12007 Sunrise Valley Drive, Suite 110
Reston, Virginia  20191
Telephone: 877-401-8855
Facsimile:  877-401-8855

NAGASHIMA & HASHIMOTO
TAKAAKI NAGASHIMA (*pro hac vice*)
nagashima@nandhlaw.com
Hirakawa-cho, KS Bldg., 2nd Floor
2-4-14, Hirakawa-cho, Chiyoda-ku
Tokyo 102-0098 Japan
Telephone: +81-3-3239-5750
Facsimile:  +81-3-3239-8538

MAKMAN & MATZ LLP
DAVID A. MAKMAN (SBN 178195)
ROBERT C. MATZ  (SBN 217822)
655 Mariner's Island Blvd. Suite 306
San Mateo, California  94404
Telephone: 650-242-1560
Facsimile:  650-242-1547

Attorneys for Defendant
Oki Electric Industry Co., Ltd

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| NAVCOM TECHNOLOGY, INC.; and DEERE & COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>OKI ELECTRIC INDUSTRY CO., LTD.; and DOES ONE through TEN inclusive,<br><br>Defendants. | Case No. 5:12-cv-04175 EJD<br><br>**DEFENDANT OKI ELECTRIC INDUSTRY CO. LTD'S OPPOSITION TO PLAINTIFFS' RULE 50(A) MOTION AND RENEWED MOTION PURSUANT TO RULE 50(A)**<br><br>Judge:  Honorable Edward J. Davila<br>Court: Courtroom 4, San Jose |

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................... 1

II.     LEGAL STANDARD ............................................................................................. 1

III.    ARGUMENT .......................................................................................................... 2

        A.      The Parties' Agreement to Amend the Agreement and Replace
                Version 19 of the Specification with Version 25 of the
                Specification Was a Novation ................................................................... 2

        B.      The Parties' have Mutually Rescinded or Abandoned The Amended
                Agreement After Oki Semiconductor Informed Navcom
                Of the Need for an "All Layer Redesign" ................................................. 3

        C.      Oki Has Shown that NavCom Anticipatorily Breached the
                Amended Agreement When NavCom Failed to Make
                Payment As Required by the Amended Agreement .................................. 7

        D.      Oki Electric Has Proved That The Plaintiffs' Claims
                Are Barred By The Statute Of Limitations .............................................. 8

        E.      Oki Electric Has Proved Plaintiffs Claimed Damages
                Are Barred By Section 16.0 Of The Amended Agreement as a
                Matter Of Law ........................................................................................ 10

        F.      Oki Electric Has Proved Deere Is Not a Third Party Beneficiary ................. 12

        G.      Oki Electric Has Proved Plaintiffs Failed to Mitigate ........................... 13

        H.      Oki Electric Has Proved the Agreement Has Not Been Breached ................. 14

IV.     CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

**Case**

**Page**

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................................................ 2

*Brandon & Tibbs v. George Kevorkian Accountancy Corp.*,
226 Cal. App. 3d 442 (Cal. Ct. App. 1990) ........................................... 14

*Brinton v. Bankers Pension Servs.*, Inc.,
76 Cal. App. 4th 550 (1999) .................................................................. 13

*Career Sys. Dev. Corp. v. Am. Home Assur. Co.*, C 10-2679 BZ,
2011 WL 4344578 (N.D. Cal. Sept. 14, 2011) ....................................... 9

*City Solutions v. Clear Channel Communs., Inc.*,
365 F.3d 835 (9th Cir. 2004) ................................................................... 2

*Employers Ins. of Wausau v. Granite State Ins. Co.*,
330 F.3d 1214 (9th Cir. 2003) ................................................................. 9

*Ferretti v. Pfizer Inc.*,
855 F. Supp. 2d 1017 (N.D. Cal. 2012) ................................................. 10

*Garcia v. Truck Ins. Exch.*,
36 Cal. 3d 426 (1984) ............................................................................ 12

*Green Desert Oil Group, et al. v. BP West Coast Products, et al.*
2011 WL 5521005 (N.D. Cal Nov. 14, 2011) ....................................... 13

*Honda v. Reed*,
156 Cal.App.2d 536 (1958) ................................................................ 3, 6

*Howard v. Cnty. of Amador*,
220 Cal. App. 3d 962 (Cal. Ct. App. 1990) ............................................ 3

*Jolly v. Eli Lilly & Co.*,
44 Cal. 3d. 1103 (Cal. 1988) ............................................................... 8, 9

*Jones v. Aetna Cas. & Sur. Co.*,
26 Cal. App. 4th 1717 (1994) ................................................................ 13

*Krechman v.County of Riverside*,
723 F.3d 1104 (9th Cir. 2013) ................................................................. 2

*Lucas v. Hamm*,
56 Cal. 2d 583 (1961) ............................................................................ 13

*McCreary v. Mercury Lumber Distributors*,
124 Cal.App.2d 477 (1954) ................................................................. 3, 7

*Micrel, Inc. v. TRW, Inc.*,
486 F.3d 866 (6th Cir. 2007) .............................................................. 12

*Moss v. Tiberon Minerals Ltd.*, 07-2732 SC,
    2008 WL 686833 (N.D. Cal. Mar. 11, 2008) ........................................................ 10

*Neverkovec v. Fredericks*,
    74 Cal. App. 4th 337 (1999) ................................................................................. 12

*Prouty v. Gores Tech. Group*,
    121 Cal. App. 4th 1225 (2004) ............................................................................. 13

*Reeves v. Sanderson Plumbing Prods., Inc.*,
    530 U.S. 133 (2000) ................................................................................................ 2

*Ritchie v. United States*,
    451 F.3d 1019 (9th Cir. 2006) ................................................................................ 2

*Romano v. Rockwell Int'l., Inc.*,
    14 Cal. 4th 479 (1996) ....................................................................................... 9, 10

*Shaffer v. Debbas*,
    17 Cal. App. 4th 33 (1993) .................................................................................. 14

*Taylor v. Johnston*,
    15 Cal.3d 130 (1975) .............................................................................................. 7

*Valle de Oro Bank v. Gamboa*,
    26 Cal. App. 4th 1686 (1994) .............................................................................. 14

*Vedachalam v. Tata Am. Int'l Corp.*, C 06-0963 CW,
    2011 WL 2747578 (N.D. Cal. July 13, 2011) ...................................................... 10

**Other Authorities**

Fed. R. Civ. P. 50(a) ...................................................................................... 1, 2, 15

Fed. R. Civ. P. 50 .................................................................................................. 15

Civil Local Rule 3-4(e) ...................................................................................... 9, 10

Civil Local Rule 7-14 ............................................................................................ 10

1

## I.    INTRODUCTION

2       Pursuant to FED. R. CIV. P. 50(a), Defendant Oki Electric Industry Co., Ltd. ("Oki

3  Electric") submits its opposition to Plaintiffs NavCom Technology, Inc. ("NavCom") and Deere

4  & Company's ("Deere"; collectively, "Plaintiffs") FED. R. CIV. P. 50(a) motion for judgment as a

5  matter of law.  Oki Electric's affirmative defenses regarding rescission, abandonment, novation,

6  anticipatory breach, the statute of limitations, the Limitation of Liability Clause of the Terms &

7  Conditions of the Amended Agreement (§ 16), Deere's status as a third party beneficiary, and

8  mitigation of damages are each well-supported by the evidence adduced by Oki Electric during

9  trial.[1]

10      Defendant also renews its motion pursuant to Rule 50(a) for the reasons set forth therein,

11  the evidence relied upon therein, all evidence and arguments submitted and presented in this case

12  included those presented herein.

## II.   LEGAL STANDARD

14      Federal Rule of Civil Procedure 50(a) provides that a party may move for judgment as a

15  matter of law in a jury trial at any time before the case is submitted to the jury:

> (a) Judgment as a Matter of Law
>     **(1) In General.** If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>         **(A)** resolve the issue against the party; and
>         **(B)** grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

---

[1] Plaintiffs' Motion For Judgment As A Matter Of Law (Dkt. No. 305) mentions the defense of waiver in Footnote 1 without moving to enter judgment on that issue. For that reason alone, Plaintiffs paper is insufficient with respect to the issue of waiver. However, the motion fails on substantive grounds as well. To succeed in its waiver defense, Defendant must prove by clear and convincing evidence that Plaintiffs knew Defendant was required to design RF ASIC Specification version 25 with respect to the Amended Agreement (or Specification version 19 with respect to the Original Agreement) and that Plaintiffs freely and knowingly gave up their right to have Defendant perform this obligation. For all of the reasons explained in Sections III.A. and III.B., *infra*, Defendant has proved all of the required elements to establish waiver with respect to the Agreements at issue.

OKI ELECTRIC'S BENCH BRIEF REGARDING ITS MOTION FOR JUDGMENT AS A MATTER OF LAW MADE IN OPEN COURT

1

2

> *(2) Motion.* A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury. The motion must specify the judgment sought and the law and facts that entitle the movant to the judgment.

3

4

5

6

7

8

9

10

11

12

13

14

Fed. R. Civ. P. 50(a); *see Ritchie v. United States*, 451 F.3d 1019, 1022-23 (9th Cir. 2006) ("judgment as a matter of law is appropriate only if no reasonable jury could find for a party on that claim."). A district court can grant a Rule 50(a) motion for judgment as a matter of law only if there is no legally sufficient basis for a reasonable jury to find for that party on that issue. *Krechman v. County of Riverside*, 723 F.3d 1104, 1109-10 (9th Cir. 2013). In deciding a motion brought pursuant to Rule 50(a), a court reviews all of the evidence and draws all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *City Solutions v. Clear Channel Commcn's, Inc.*, 365 F.3d 835, 839 (9th Cir. 2004). While a district court is generally not permitted to make credibility determinations or weigh the evidence (*Reeves*, 530 U.S. at 150), it may make such assessments if "the evidence is so one-sided that one party must prevail as a matter of law" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

15

## III. ARGUMENT

16

### A. The Parties' Agreement to Amend the Agreement and Replace Version 19 of the Specification with Version 25 of the Specification Was a Novation

17

18

19

20

21

22

23

24

25

26

27

28

Oki Electric has shown that the replacement of the Agreement incorporating Version 19 with the Amended Agreement incorporating Version 25 was a novation under California law. (PX 125; DX 1004). The Agreement was not merely supplemented or explained by the Amended Agreement, but instead it was replaced entirely. Tr. at 363:7-9 (The purpose of the amendment from version 19 to version 25 was to "replace version 19 with version 25"); *id.* at 363:25-364:3 (The amendment to version 25 replaced the obligation to prepare version 19 RF ASIC with an obligation to prepare the version 25 RF ASIC); *id.* Tr. at 364:4-6 (Version 25 became the operative agreement after the amendment); DX 1271 (Galyean 30(b)(6)) at 19:13-17; 18:18-25; 118:23-119:6 (the amended agreement became the operative agreement). *See also*, Tr. at 361:13-364:6. It is apparent from the testimony at trial that NavCom and Oki Semiconductor intended to extinguish their obligation to make chips conforming to Version 19 under the Agreement and

substitute the Amended Agreement, thus obligating the parties to make chips conforming to Version 25 of the Specification. *See Howard v. Cnty. of Amador*, 220 Cal. App. 3d 962, 977 (1990).

### B. The Parties have Mutually Rescinded or Abandoned The Amended Agreement After Oki Semiconductor Informed NavCom of the Need for an "All Layer Redesign"

Contrary to NavCom's suggestion in its brief, Oki Electric has demonstrated conclusively at trial that the parties have rescinded or abandoned the Amended Agreement.[2] *See, e.g.*, Dkt. No. 300 at 8-9, 12, 16-17. (PX 125; DX 1004; DX 1271).  California precedent makes clear that mutual abandonment extends from the "mutual cancellation of executory contractual rights," and "may be effective by an oral agreement." *Honda v. Reed*, 156 Cal. App. 2d 536, 539-40 (1958). "Abandonment of a contract may be implied from the acts of the parties in negotiating for a new and different contract concerning the same property or subject matter." *Id.*; *see also McCreary v. Mercury Lumber Distributors*, 124 Cal. App. 2d 477 (1954).  During trial, Oki Electric has shown that NavCom and Oki Semiconductor mutually abandoned the Amended Agreement when they mutually agreed to abandon the development of Version 25 in favor of pursing development of the 4-chip solution.

On February 21, 2008, after the parties had experienced difficulties with the first round of chips, and the diagnostic second round of chips revealed additional issues, Oki Semiconductor informed NavCom that an "All-layer re-design" was required. DX 1169 at NAV0081293.  An all-layer redesign involves a complete redesign of the chips, including a new specification and a new design process; essentially, a new project. Tr. at 1002:4-13 (An "all layer redesign" with regard to the 4-chip design means that NavCom and Oki Semiconductor would have "essentially [been] making four new chips to match a functional specification that ha[d] yet to be drawn up."); Tr. at 95:2-13 (An "all layers" redesign means that "you change everything"); Tr. at 1002:4-10 (An "all layer redesign" means that "all layers that make up the integrated circuit inside of the chip are going to be redesigned").  NavCom agreed that an all layer redesign was required.  Tr. at 392:5-

---

[2]The terms abandonment and recession are used interchangeably in California case law and herein.

OKI ELECTRIC'S BENCH BRIEF REGARDING ITS MOTION FOR JUDGMENT AS A MATTER OF LAW MADE IN OPEN COURT

393:1 (the parties all agreed as of Feb. 21, 2008 that an all layer redesign was required); DX 1271 (Galyean 30(b)(6)) at 105:12-16 (it was clear to everyone at the March 26, 2008 design review that "a significant redesign was going to be required"); *see also* Tr. at 1140:6-13.  At that point, the parties mutually agreed that the Amended Agreement, incorporating Version 25 of the Specification, was no longer going to be pursued by the parties.  Tr. at 408:23-409:7 (As of March 2008, NavCom and Oki had agreed that the Version 25 specification would not be pursued, in favor of a new design from Oki Electric); Tr. at 1070:5-1070:9 ("And that was the termination of the version 25 three chip project at that point, and they were starting to look at a four chip or another design; correct? My understanding is that they were looking at changing the design yes.") (Mr. Hansen understood that by March of 2008 the parties had terminated the agreement and started looking at changing the design). *See also* Tr. at 223:24-224:22; 392:11-393:12; 403:14-408:1; 408:23-409:20; 412:17-413:4; 415:8-418:8; 418:12-18; 419:2-19; 427:15-429:18; 450:20-452:9; 536:20-541:17; 1140:6-13; 1069:4-1070:9; 1209:23-1211:25; 243:5-13; 1001:10-1002:17; 1000:8-1002:17; Nobbe video testimony at 90:20-21; 90:23-91:3; 95:2-13; and Galyean 30(b)(6) video testimony at 105:12-16; 118:23-119:25; 207:04-208.07.

Around this time, as the parties abandoned Version 25, NavCom began the process of shopping the specification around to other design houses. DX 1018, at NAV0071404 (In February of 2008, senior manager Nicholas Ortyl directed Paul Galyean to "not spend a lot of engineering time" on the RF ASIC project, because "the consensus within the [NavCom] engineering group is that they want to move on."); Tr. at 450:20-452:9 (In a March 28, 2008 management meeting, NavCom internally considered options other than proceeding with Oki Electric); Tr. at 418:12-18 (NavCom began shopping around the specification for the RF ASIC shortly after receiving the April 4, 2008 letter); DX 1029 (April 16, 2008 e-mail requesting a "clean (and sanitized) copy of the RF ASIC specification" . . . to "shop it around to other design houses and fabs, since I have less than zero confidence in our present approach.").

Simultaneously, NavCom asked Oki Semiconductor for a letter of commitment to the *project* – a clear sign that NavCom was of the opinion that there was no extant contract to enforce with Oki Semiconductor. DX 1272; DX 1271 (Galyean 30(b)(6)) 105:20 TO 106:03 ("Q. Now, *as*

1   *part of the consideration of whether or not to proceed with consideration of a redesign with*

2   *Oki*, do you recall that Mr. Fawcett requested that Oki provide a written confirmation of its

3   essentially *commitment to the project*? Do you recall that?  A. I do. And Craig did request written

4   confirmation from Oki of their *commitment to the project*.") (emphasis added).   Oki

5   Semiconductor provided the letter. PX 158.  Paul Galyean confirmed *on redirect* by NavCom's

6   counsel that the commitment letter was "not a contractual issue with respect to [the RF ASIC]

7   contract at all."  Tr. at 477:13-22.  There was no binding contract remaining – if there had been,

8   and NavCom believed there was, there would be no reason to ask for a non-binding letter instead

9   of simply seeking to enforce the "contract." Tr. at 416:2-18; *see also*, *id.* at 415:5-416:1.

10       Following the commitment letter, the parties decided to pursue a 4-chip design for the

11   redesigned RF ASIC. DX 1271 (Galyean 30(b)(6)) at 207:04-208:07 (by May 15, 2008, NavCom

12   and Deere had decided to use the 4-chip solution); Tr. at 412:17-413:4 (Once the parties agreed

13   that the 4-chip version was going to be made, Version 25 was not going to be made); Knight at

14   243:5-13 (NavCom decided to go with the 4-chip design on May 15, 2008 after Oki quoted no

15   change in price); DX 1054; DX 1055 ("We decided to go with the 4 chip design after OKI quoted

16   no change in price."); Tr. at 1069:4-7. It is clear that the 4-chip design was not covered by

17   Specification Version 25, which would have to be incorporated into the Amended Agreement if

18   the Parties ultimately agreed to pursue it. Tr. at 540:24-541:11 (the 4-chip version was not going

19   to be covered by the Version 25 specification).

20       There was no existing contract for the 4-chip design. Tr. at 539:7-13 ("There was no

21   contract for the four chip, correct? That's correct.").  Once the parties had settled on the basic 4-

22   chip architecture they both knew and fully understood that an amendment to the Amended

23   Agreement would be required so that it would cover the 4-chip design. Tr. at 409:8-20 (Whatever

24   design was pursued, it would be sufficiently different from Version 25 to "require" an

25   amendment); DX 1271; (Galyean 30(b)(6)) at 118:23-119:25 (As of April, 2008, Deere and

26   NavCom realized that the 4-chip solution was going to be sufficiently different to "require an

27   amendment" to the agreement); Tr. at 409:8-20 (As of March of 2008, the specification had

28   "grown to be specific about three chips," and a 4-chip solution would require an update of the

1   specification to change the pinouts); Tr. at 412:17-413:4 (The specification had to change to

2   accommodate a 4-chip solution, because the Version 25 of the Specification only involved three

3   chips, and because the Version 25 of the Specification included pinouts for the three chips); DX

4   1051 ("We will need to deal with the draft amendment once it is settled.); DX 1053 (same).

5       The parties proceeded to negotiate various terms concerning the possible development of

6   a 4-chip design, including chipset price, scheduling and development fees, and the basic

7   architectural terms of it. Tr. at 1209:23-1210:4 (Following the April 4 letter, NavCom and Oki

8   began "talks directed at . . . scheduling, price, development fee, [and] specifications with regards

9   to the new [4-chip] project"); Tr. at 1211:2-1211:21 (Oki and NavCom discussed pricing for the

10  4-chip design, and Oki made a proposal with regard to the development costs for the 4-chip

11  project); Tr. at 1001:1-22 (Just prior to the July 8, 2008 letter, the parties were proposing a way

12  forward using the 4-chip configuration, and there had been discussions regarding the terms under

13  which NavCom and Oki were starting the new 4-chip configuration). *See also, e.g.*, DX 1053; DX

14  1054; DX 1055.  Oki Semiconductor made a formal proposal to NavCom regarding the new

15  project. Tr. at 427:15-429:18 (Oki Electric presented a proposal to NavCom regarding the new 4-

16  chip project; NavCom did not accept Oki's proposal and did not make any counteroffer); DX

17  1065 (Oki Semiconductor's proposal). Ultimately, NavCom did not accept Oki Semiconductor's

18  proposal. Tr. at 1210:11-14 (No agreement was entered with regard to the 4-chip design).

19  Obviously, there would be no need to negotiate such terms as chipset price if the Amended

20  Agreement were still in place, nor would there remain open questions concerning volume

21  discounts. DX 1001.

22      Thus, Oki Electric has shown that the parties mutually abandoned or rescinded the

23  Amended Agreement covering the Version 25 design after Oki Semiconductor recommended an

24  all layer redesign. This is supported by the fact that, following the abandonment of the Amended

25  Agreement, the parties began working towards a new design. NavCom requested a commitment

26  letter which, according to Paul Galyean, was not related to the Amended Agreement.

27  Subsequently, the parties entered into negotiations regarding the price, scheduling, development

28  fee, and specifications of the 4-chip design.  The parties' acts and course of conduct evidence a

clear intent to abandon Version 25 in favor of pursuit of the new, 4-chip design. *See Honda*, 156 Cal. App. 2d at 539-40; *McCreary*, 124 Cal. App. 2d at 485-86.   See also, DX 1018; DX 1027/PX158; DX 1022; DX 1029; DX 1051; DX 1053; DX 1054; DX 1055; DX 1065; and DX 1169

### C.   Oki Has Shown that NavCom Anticipatorily Breached the Amended Agreement When NavCom Failed to Make Payment As Required by the Amended Agreement

As set forth in Plaintiffs' Rule 50(a) motion, "Anticipatory breach occurs when one of the parties to a bilateral contract repudiates the contract. The repudiation may be express or implied. An express repudiation is a clear, positive, unequivocal refusal to perform; an implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible." *Taylor v. Johnston*, 15 Cal. 3d 130, 137 (1975) (citations omitted). "When a promisor repudiates a contract, the injured party faces an election of remedies: he can treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract, thereby terminating the contractual relation between the parties, or he can treat the repudiation as an empty threat, wait until the time for performance arrives and exercise his remedies for actual breach if a breach does in fact occur at such time. However, if the injured party disregards the repudiation and treats the contract as still in force, and the repudiation is retracted prior to the time of performance, then the repudiation is nullified and the injured party is left with his remedies, if any, invocable at the time of performance." *Id.*

Schedule C of the Amended Agreement states, under "Payment Terms," that the third and final payment of $150,000 is "due and payable upon delivery of Engineering Prototypes." (PX 125; DX 1004). It is undisputed that two sets of engineering prototypes were delivered. DX 1268; Tr. at 60:6-7; 60:9-25 (The engineering samples were delivered to NavCom in April, 2007); *id.* at 129:1-129:3, 129:8, 129:10-12, 129:15-17, 129:23-25, 130:01 (The second set of engineering samples were delivered to NavCom).  It is further undisputed that Plaintiffs never made the third payment of $150,000. Tr. at 279:10-280:16 (Mr. Galyean understood that the contract required that NavCom pay Oki "$150,000 upon delivery of engineering prototypes," but NavCom chose not to make the third payment "because [it] never received working engineering prototypes.")

The terms "Engineering Prototypes" and "Acceptable Engineering Prototypes" are defined in the contract. *Compare* Sections 1.1 and 2.4 of the Terms and Conditions (PX 125 at OKI_LW_008264). Schedule C of the contract requires $150,000 be paid "upon delivery of engineering prototypes" *Id.* at OKI_LW_008262. NavCom breached the agreement when it failed to make the third payment upon delivery of the first set of prototypes in April of 2007. Thus, dismissal of Oki Electric's affirmative defense of anticipatory breach is not warranted.

### D. Oki Electric Has Proved That The Plaintiffs' Claims Are Barred By The Statute Of Limitations

Plaintiffs assert a breach of sections 1.0, 2.2, 2.6, and 2.8 of the Amended Agreement. Tr. at 731:22-734:17. To avoid being precluded by the applicable four-year statute of limitations, any alleged breach must have accrued later than June 22, 2008. *Jolly v. Eli Lilly & Co*., 44 Cal. 3d. 1103, 1109 (1988) ("An action accrues on the date of injury.").

Section 1.0 of the Amended Agreement provides that either party may terminate the agreement with 90 days notice, as the Court found. *See, e.g.*, Dkt. No. 199 at 15, 22. Oki Semiconductor provided repeated notice to NavCom that it intended to stop work on the contract. On February 21, 2008, Oki Semiconductor provided notice that it would not be performing under the contract (*i.e.,* not making Version 25), because an "[a]ll-layer redesign [was] needed." DX 1169; Tr. at 392:11-393:12. By March 26, 2008, "it was clear to everybody that a significant redesign was going to be required," and NavCom had agreed to stop Version 25 development. *See, e.g.*, Tr. at 1140:6-13; Plaintiffs' 30(b)(6) testimony at 105:12-16, Tr. at 1069:24-1070:9. Subsequent to that notice, the parties agreed that a 4-chip solution was required. *See, e.g.,* DX 1055. Then they began negotiations relating to the price and schedule of the new 4-chip project. Tr. at 1209:23-1211:25; DX 1065. At this point, both parties recognized that the new design would require a new agreement. (*See, e.g.,* DX 1051; DX 1053; DX 1054). By May 15, there was agreement that the 4-chip would be pursued. *Id.* Thus, Oki Semiconductor had provided notice to NavCom of the termination of the Amended Agreement as of February 21, 2008 and numerous times thereafter prior to June 22, 2008. Accordingly, if a breach of section 1.0 occurred, the claim is barred by the four-year statute of limitations.

Sections 2.2, 2.6, and 2.8 are similarly situated. (DX 1004). If a breach occurred, it necessarily occurred prior to June 22, 2008 and the statute of limitations runs from the date of injury. *Jolly*, 44 Cal. 3d. at 1109 ("An action accrues on the date of injury."). Section 2.2 of the Terms & Conditions on its face is directed to the "Development Schedule" and, as such, any alleged breach of Section 2.2 *per se* must be based upon some alleged failure to comply with an obligation pertaining to the schedule. PX 125, Terms & Conditions § 2.2, OKI_LW_008264. Plaintiffs take the position that "10 months from the sign-off" means ten months from the signing of the initial Agreement in December of 2005. Ten months from December of 2005 would be October of 2006. If the breach occurred at that point, then any recovery is blocked by the 4-year statute of limitations, which would have accrued by October 2010 – 20 months prior to the filing of suit. Section 2.6 concerns the delivery of engineering prototypes. *Id.*, Terms & Conditions § 2.6, OKI_LW_008265. The evidence proves these engineering prototypes were delivered to Navcom in April 2007 and January 2008. Tr. 311:14-312:8. If there is a breach of Section 2.6, it must necessarily have occurred at the time the engineering prototypes were delivered. Section 2.8 concerns the condition of the engineering prototypes. PX 125, Terms & Conditions § 2.8, OKI_LW_008265. Once again, if there is a breach of this section of the contract, it necessarily must have occurred at the time of delivery of the engineering prototypes in April 2007 and December 2007. Accordingly, the statute of limitations with respect to Section 2.6 and 2.8 would have run by December 2007 at the latest. *See also*, PX 165; Tr. at 1218:9-1219:15; 367:20-369:3; 473:6-16; 534:7-536:4; 731:22-734:17; 1054:6-1055:1; and 1062:18-21.

The case law cited by Plaintiffs supports Defendant's position or is distinguishable.[3] For example, *Romano* stands for the proposition that a party may treat a repudiation as an anticipatory

---

[3] Plaintiffs cite to *Employers Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n.9 (9th Cir. 2003) for the proposition that they can rely upon unpublished state court decisions. *Employers Ins. of Wausau*, however, states only that the **Ninth Circuit** may rely upon unpublished state court decisions, even though such decisions have "no precedential value."[3] *Id.*; *Career Sys. Dev. Corp. v. Am. Home Assur. Co.*, C 10-2679 BZ, 2011 WL 4344578, *4 at n.6 (N.D. Cal. Sept. 14, 2011) (distinguishing *Employers Ins. of Wausau*, and holding that "unpublished decisions from the California Court of Appeal, such as *Golden Eagle,* cannot be cited or relied upon by a court or a party in any action."). Civil Local Rule 3-4(e) ***specifically prohibits*** the attorneys from citing to unpublished state court decisions:

OKI ELECTRIC'S BENCH BRIEF REGARDING
ITS MOTION FOR JUDGMENT AS A MATTER
OF LAW MADE IN OPEN COURT

breach and immediately seek damages or it may treat the repudiation as an empty threat and wait until the actual breach occurs. Upon the "actual breach" occurring, however, the statute of limitations begins to run. *Romano v. Rockwell Int'l., Inc.*, 14 Cal. 4th 479, 489 (1996). Similarly, if a breach occurred with respect to the asserted provisions of the Agreement (Sections 1.0, 2.2, 2.6, or 2.8) it necessarily occurred prior to June 22, 2008. The statute of limitations would then run from that point and would expire before the case was file on June 22, 2012.

In addition, at the time that Plaintiffs decided to move forward with the discrete solution instead of the RF ASIC in July 2007, the injury to Plaintiffs had occurred. (DX 1011; DX 1013; Tr. at 367:20-369:3). At that moment in time Plaintiffs would have lost the wished for cost savings Plaintiffs' claim accrued. Accordingly, the statute of limitations would begin to run in July 2007 and expire in July 2011, nearly a year before the Complaint was filed.

### E.  Oki Electric Has Proved Plaintiffs' Claimed Damages Are Barred By Section 16.0 Of The Amended Agreement as a Matter Of Law.

Section 16.0 of the Terms & Conditions of the Amended Agreement blocks recovery of consequential damages and lost profits:

---

**(e) Prohibition of Citation to Uncertified Opinion or Order**. Any order or opinion that is designated: "NOT FOR CITATION," pursuant to Civil L.R. 7-14 or pursuant to a similar rule of any other issuing court, may not be cited to this Court, either in written submissions or oral argument, except when relevant under the doctrines of law of the case, res judicata or collateral estoppel.

Courts in this District have followed Local Rule 3-4(e), even to the point of calling the citation of unpublished decisions *sanctionable*. *Ferretti v. Pfizer Inc.*, 855 F. Supp. 2d 1017, 1024, at n.1 (N.D. Cal. 2012) ("Pursuant to Civil Local Rule 3–4(e), Plaintiff is precluded from citing unpublished state court decisions. Accordingly, the Court does not consider Cates."); *Vedachalam v. Tata Am. Int'l Corp.*, C 06-0963 CW, 2011 WL 2747578, at *1 n.1 (N.D. Cal. July 13, 2011) ("To support their motion, Defendants cite multiple unpublished California state court opinions. . . . Defendants' reliance on these opinions violates Civil L.R. 3–4(e), which prohibits parties from citing opinions not designated for citation. Accordingly, the Court *sua sponte* strikes from Defendants' papers all citations to unpublished state opinions."); *Moss v. Tiberon Minerals Ltd.*, 07-2732 SC, 2008 WL 686833, at *3 (N.D. Cal. Mar. 11, 2008) ("As *Ito* is an unpublished opinion, citation to it for legal precedent is not only a violation of Civil Local Rule 3-4(e), but is also a violation of Ninth Circuit Rule 36-3(c) *and is sanctionable*." (emphasis added)).[3]

**16.0 LIMITATION OF LIABILITY.** Notwithstanding any other provisions in this Agreement, neither party shall be liable with respect to its obligations under this Agreement for ***consequential, exemplary, special, or incidental damages***, including, without limitation, ***lost profits***, even if it has been advised of the possibility of such damages . . . .

PX 125, Terms & Conditions § 1.1, OKI_LW_008272 (emphasis added); DX 1004.

Plaintiffs have alleged only one category of damages,[4] which it describes as "increased costs." Tr. at 1093:3-6. Plaintiffs seek to measure these alleged increased costs by subtracting the cost, including components, labor, and other costs, of the RF ASIC, from the cost of the pre-existing "discrete solution" that NavCom used instead of the RF ASIC. These damages are lost profits, as Plaintiffs' own expert admitted during cross examination:

> Q. . . . [A]s a practical matter . . . I think you would agree that if your costs go up and your sales price stays the same, the impact upon you, the seller, is that you have a decrease in profit, correct?
>
> A. Yes, that's what I've said several times.

Tr. at 1095:23-1096:4. *See also*, 1079:3-7; 1122:17-1124:4; and 1170:7-25. Plaintiffs' own accounting documents, which their expert relied upon, describe an increase in per-item cost, without an increase in per-item selling price, as a decrease in profit. PX 235; *see* Tr. at 1122:17-1124:4; *see also* Tr. at 1079:3-7 ("Q. And so if we took their price that they sell it for and we minus, subtracting the cost of goods sold, we're left with their gross profit, correct? A. That's correct, revenue minus cost of goods sold gives you gross profit."). Thus, it is clear that these damages are properly characterized as "lost profits," which are expressly precluded by Section 16.0.

Moreover, as conclusively proven by Defendant, the alleged damages asserted by Plaintiffs' damages expert are consequential damages – the lost profits of Navcom's customer (*i.e.,* Deere) and not direct damages of any alleged breach of the contract between Navcom and Oki Semiconductor.[5] It is undisputed that Deere is not a party to the Agreement nor the Amended

---

[4]  The Court has already held that the amounts paid by Navcom to Oki Semiconductor are not recoverable as damages. *See*, Dkt. No. 199 at 18:6-19:21.

[5]  Additionally, as recognized by the Court in responding to Plaintiffs' motion to clarify, in asserting these damages Plaintiffs rely upon a series of assumptions regarding the parties' conduct. Dkt. No. 231 at 3.

1   Agreement.  **Even Plaintiffs' financial expert Mr. Hansen agreed that Deere is NavCom's**

2   **customer**.  *See* Tr. at 1170:7-25.

3       Plaintiffs once again cite *Micrel, Inc. v. TRW, Inc*., 486 F.3d 866 (6th Cir. 2007) to

4   support their position that their third component of damages (i.*e*., their lost profits claim) does not

5   fall under the Limitation of Liability, Section 16.0. As previously discussed, *Micrel* is a UCC

6   case, applying Ohio state contract law on a contract that did not have a limitation of liability

7   clause. This Court has already ruled that the Agreement does not fall under the UCC, so *Micrel* is

8   inapplicable. Dkt. No. 199 at 22. Moreover, the Court has already ruled that "cover" damages

9   pursuant to the Uniform Commercial Code ("UCC") are not recoverable. *Id*. at 21-22.

### F.    Oki Electric Has Proved Deere Is Not a Third Party Beneficiary

11      Deere's legal claims arise out of its assertion that it is an intended third party beneficiary.

12  Plaintiffs offered no evidence that Deere was an intended beneficiary.  In fact, during negotiations

13  of the Agreement, Oki Semiconductor questioned NavCom regarding whether Deere would be a

14  party to the agreement. Deere refused. PX 140. The burden is on the third party "to prove that the

15  performance [it] seeks was actually promised."  *Garcia v. Truck Ins. Exch.*, 36 Cal. 3d 426, 436

16  (1984); *Neverkovec v. Fredericks*, 74 Cal. App. 4th 337, 348-49 (1999).  Instead, throughout trial

17  Plaintiffs tried to conflate the two parties in order to create the appearance that they were

18  inseparable.  Indeed, the section of the Amended Agreement relied upon by Plaintiffs, Section

19  3.2.3, is in the Production Phase of the Agreement and is not applicable. Indeed, the Court has

20  ruled the Agreement did not enter the Production Phase because a condition precedent had not

21  been met. *See* Dkt. 199 at 21. Moreover, Section 3.2.3 merely provides NavCom (not Deere) with

22  the benefit of Deere purchases—that is, Deere's purchasers count towards reducing the costs of

23  NavCom's purchases. PX 125; DX 1004.

24      Deere is not a third-party beneficiary, as admitted by Navcom's witnesses and

25  acknowledged by their expert.  Tr. 855:8-10; 1170:7-25 (Deere is Navcom's customer); see also,

26  Tr. at 533:22-536:4; DX 1022.  Section 24.0 of the Terms & Conditions clearly states that

27  "Nothing in this Agreement shall inure to the benefit of or be deemed to give rise to any rights in

28  any third party, whether by operation of law or otherwise." PX 125; DX 1004) "Whether a third

party is an intended beneficiary or merely an incidental beneficiary to the contract involves construction of the parties' intent, gleaned from reading the contract as a whole in light of the circumstances under which it was entered." *Jones v. Aetna Cas. & Sur. Co.*, 26 Cal. App. 4th 1717, 1725 (1994). "A third party may qualify as a beneficiary under a contract where the contracting parties must have intended to benefit that individual and such intent appears from the terms of the agreement." *Id.* at 1724; *see also Brinton v. Bankers Pension Servs., Inc.*, 76 Cal. App. 4th 550, 558 (1999); *Lucas v. Hamm*, 56 Cal. 2d 583, 591 (1961); Civil Code section 1559 excludes enforcement of a contract by persons who are only incidentally or remotely benefited by the agreement. *Lucas*, 56 Cal. 2d at 590.

Plaintiffs' attempt to draw a comparison between these facts and the facts in *Prouty v. Gores Tech. Grp.*, 121 Cal. App. 4th 1225 (2004) by suggesting that Section 3.2.3 supersedes Section 24.0. *Prouty*, however, was very different. First, both provisions at issue in *Prouty* were operable—unlike here where Section 3.2.3 is inoperable because the condition precedent to enter the Production Phase has not been met. *Prouty*, 121 Cal. App. 4th at 180-81. Also, as held in *Green Desert Oil Group v. BP West Coast Products*, 2011 WL 5521005, *3 (NDCA 2011), the *Prouty* decision is fact specific. In distinguishing *Prouty*, the *Green Desert* Court wrote: "Here, in contrast to Prouty and to Milmoe, there is no express provision in the MSLA intended to benefit Plaintiffs." The fact pattern of *Green Desert* is much closer to this case than is *Prouty's* fact pattern. Accordingly, *Prouty* is inapplicable.

Thus, the parties' intent is plainly expressed; Deere was not an intended third-party beneficiary.

### G.   Oki Electric Has Proved Plaintiffs Failed to Mitigate

NavCom and Deere have also taken no steps to mitigate damages. Plaintiffs' failure could not be more evident than their refusal to pay the $860,000 NRE to secure a four chip chipset.[6]

---

[6] Plaintiffs' attempt to limit Defendant's mitigation defense is defeated by their own interrogatory responses, which do not mention Sections 2.2 and 2.6 whatsoever and only vaguely refer to Section 2.8 as it says what it says. Further, Plaintiffs' were clearly on notice of Defendant's intent to assert the full range of mitigation defenses as evidenced by Plaintiffs' attempt to introduce evidence that it was unreasonable to replace the RF ASIC after July 2008.

Had Plaintiffs paid the NRE as requested by Oki Semiconductor on May 30, 2008, all of the $13,000,000 plus in damages now asserted would have been avoided. DX 1065. The case law cited by Plaintiffs is distinguishable for one very pertinent issue—in Plaintiffs' words the case law stands for the proposition that "a party is not required to acede to new terms interposed by a <u>breaching party</u>." Dkt. No. 301 citing to *999 Corp. v. C.I.T. Corp.*, 776 F.2d 866, 871 (9th Cir. 1985). As Plaintiffs have so forcefully argued throughout their Rule 50 motion, no breach was committed by Defendant prior to July 8, 2008. So, Defendant could not have been a "breaching party" on May 30, 2008 when the request for NRE was made. Even if NavCom were somehow entitled to a remedy for Oki Semiconductor's alleged breach of an obligation to deliver prototypes on a certain schedule, the proper measure of damages would be the amount required to place NavCom in the position it would have been in – the price to contract with another company to develop replacement chips. Instead, Deere and NavCom seek to force Oki Electric to pay for the difference between the contract price and the cost of the discrete solution for the entire lifespan of the Gen5 product. *See, e.g.*, PX 165; DX 1065; Tr. at 427:15-428:25, 454:3-8, 456:15-457:101152:2-11, 1185:1-5.

The evidence proves that NavCom made the business decision not to secure another vendor, thereby assuming any risk of alleged future harm. "A Plaintiff may not recover for damages avoidable through . . . reasonable exertion." *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994); *see also Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 460 (1990) (plaintiff must do "everything reasonably possible to negate his own loss"); *Shaffer v. Debbas,* 17 Cal. App. 4th 33, 41 (1993) (holding that avoidable damages are unrecoverable). Not only did Plaintiffs fail to prove they mitigated their damages, the evidence demonstrates they made the decision not to do so, but instead allowed the alleged damages to accrue. *See, e.g.*, Tr. 454:3-8, 456:15-457:10; 1000:8-1002:17, 1003:12-23, 1152:2-11, 1185:1-5; and Nobbe video testimony at 171:25-172:9; 193:16-19.

### H.    Oki Electric Has Proved the Agreement Has Not Been Breached

For the reasons stated in Defendant's Bench Brief Regarding Its Motion For Judgment As A Matter Of Law Made In Open Court, Oki Electric has proved the agreement was not breached.

14

OKI ELECTRIC'S BENCH BRIEF REGARDING ITS MOTION FOR JUDGMENT AS A MATTER OF LAW MADE IN OPEN COURT

1    Dkt. No. 300. In addition, Defendant could not have breached the Agreement because Plaintiffs

2    failed to perform a requirement of the Agreement. Specifically, NavCom was obligated to pay the

3    third payment of $150,000 to Oki upon delivery of Engineering Prototypes. PX 125, Schedule C.

4    Oki delivered Engineering Prototypes in April 2007—the $150,000 payment became due and

5    payable at that time. Section 2.6 provides the Engineering Prototypes shall not be delivered unless

6    Oki is in receipt of all payments due—which as of May 2007 includes the $150,000 payment.

7    Accordingly, Oki was not obligated to provide any additional Engineering Prototypes after April

8    2007. Further, Oki had no continuing obligation to work on the project as long as the $150,000

9    payment was outstanding.

10

11   **IV.    CONCLUSION**

12         For the reasons set forth herein, and advanced during trial and the hearings that occurred

13   therewith the evidence in this case and in the Defendant's prior motions and pleadings, Defendant

14   respectfully requests the Court deny Plaintiffs' FED. R. CIV. P. 50(a) motion for judgment as a

15   matter of law.   Defendant also requests the Court grant its renewed motion pursuant to FED. R.

16   CIV. P. 50(a).

17

18   Dated: <u>May 6, 2014</u>                          By:  /s/ *Marc R. Labgold*

19                                                       Marc R. Labgold

20                                                       *Attorney for Defendant*
                                                         *OKI ELECTRIC INDUSTRY CO., LTD.*

21

22

23

24

25

26

27

28