1  MORGAN, LEWIS & BOCKIUS LLP
   BRETT M. SCHUMAN (SBN 189247)
2  bschuman@morganlewis.com
   RACHEL M. WALSH (SBN 250568)
3  rwalsh@morganlewis.com
   RYAN L. SCHER (SBN 244706)
4  rscher@morganlewis.com
   JEREMY N. LATEINER (SBN 238472)
5  jlateiner@morganlewis.com
   One Market, Spear Street Tower
6  San Francisco, CA  94105-1126
   Tel:    415.442.1000
7  Fax:   415.442.1001

8  Attorneys for Plaintiffs
   NavCom Technology, Inc. and Deere & Company

9

10              UNITED STATES DISTRICT COURT

11             NORTHERN DISTRICT OF CALIFORNIA

12                   SAN JOSE DIVISION

13

14  NAVCOM TECHNOLOGY, INC. and          Case No. 5:12-cv-04175 EJD
    DEERE & COMPANY,
15                                        **PLAINTIFFS' RENEWED MOTION
                   Plaintiffs,            FOR PARTIAL JUDGMENT AS A
16                                        MATTER OF LAW PURSUANT TO
            vs.                           FED. R. CIV. P. 50(b)**
17
    OKI ELECTRIC INDUSTRY CO., LTD. and   Date:      September 12, 2014
18  DOES ONE THROUGH TEN inclusive,       Time:      9:00 a.m.
                                          Courtroom: 4
19                 Defendants.            Judge:  Hon. Edward J. Davila
20                                        **Trial Date:  April 22, 2014**
21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25131376.9

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ............................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 2

I.      INTRODUCTION. ................................................................................................. 2

II.     RELEVANT PROCEDURAL HISTORY ............................................................. 4

III.    LEGAL STANDARD FOR RULE 50(B) MOTIONS. ......................................... 4

IV.     THERE IS NO LEGALLY SUFFICIENT EVIDENCE SUPPORTING THE
        SPECIAL VERDICT THAT OKI DID NOT BREACH THE AGREEMENT. ............... 5

        A.      Plaintiffs Established That NavCom and Oki Entered Into The Agreement. ......... 5

        B.      No Legally Sufficient Evidence Supports The Special Verdict That Oki
                Did Not Breach The Agreement. .............................................................. 6

                1.      Oki Breached Section 1.0 Of The Agreement. ........................... 6

                2.      Oki Breached Section 2.6 Of The Agreement. ........................... 8

                3.      Oki Breached Section 2.8 Of The Agreement. ........................... 9

        C.      NavCom Fulfilled Its Obligations Under The Agreement. .................................. 10

        D.      Plaintiffs Adduced Legally Sufficient Evidence Of Damages Proximately
                Caused By Oki's Breaches Of Sections 2.6 and 2.8. ............................................ 12

        E.      There Is No Evidence (Or Basis To Speculate) That Oki Would Have
                Terminated If It Had Delivered Working Engineering Prototypes. ...................... 15

V.      OKI FAILED TO ADDUCE ANY LEGALLY SUFFICIENT EVIDENCE IN
        SUPPORT OF ITS AFFIRMATIVE DEFENSES. .......................................................... 16

        A.      There Was No Novation (Special Verdict Question #6). ..................................... 16

        B.      There Was No Mutual Abandonment Of The Agreement (Special Verdict
                Question #8) ........................................................................................................ 17

        C.      There Was No Waiver (Special Verdict Question #7 and #9) ............................. 21

        D.      There Was No Anticipatory Breach (Special Verdict Question #10) ................... 21

VI.     CONCLUSION. ...................................................................................................... 23

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DB2/ 25131376.8

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*A.H.D.C. v. City of Fresno, Cal.*,
   No. CIV–F–97–5498 OWW SMS, 2004 WL 5866233 (E.D.Cal. March 9, 2004) .................. 7

*Bangert Bros. Const. Co., Inc. v. Kiewit Western Co.*,
   310 F.3d 1278 (10th Cir. 2002) .......................................................................................... 5

*City of El Cajon v. El Cajon Police Officers' Assn.*,
   49 Cal.App.4th 64 (1996) .................................................................................................. 10

*Delalat ex rel. Delalat v. Syndicated Office Systems, Inc.*,
   No. 10cv1273–DMS NLS, 2013 WL 8364853 (S.D.Cal. July 30, 2013) ........................... 5

*Hensler v. City of Los Angeles*,
   124 Cal.App.2d 71 (1954) ............................................................................................ 15, 16

*Honda v. Reed*,
   156 Cal.App.2d 536 (1958) .......................................................................................... 20, 21

*Howard v. County of Amador*,
   220 Cal.App.3d 962 (1990) ............................................................................................... 16

*Hydrodynamic Indus. Co., Ltd. v. Green Max Distributors, Inc.*,
   No. 2:12–cv–05058–ODW, 2014 WL 1872098 (C.D.Cal. May 9, 2014) ............................ 3

*LeVesque v. WCAB*,
   1 Cal.3d 627 (1970) ......................................................................................................... 17

*Mangum v. Action Collection Serv., Inc.*,
   575 F.3d 935 (9th Cir. 2009) ............................................................................................. 5

*McCreary v. Mercury Lumber Distributors*,
   124 Cal.App.2d 477 (1954) ............................................................................................... 20

*Morey v. Vannucci*,
   64 Cal.App.4th 904 (1998) .......................................................................................... 10, 11

*O'Phelan v. Loy*,
   No. 09–00236 ACK–KSC, 2011 WL 2006426 (D.Hawai'i May 23, 2011) ...................... 8, 9

*Oldenkott v. American Elec. Inc.*,
   14 Cal.App.3d 198 (1971) ................................................................................................. 16

*Patterson v. Hughes Aircraft Co.*,
   11 F.3d 948 (9th Cir. 1993) .............................................................................................. 11

*Peal v. Gulf Red Cedar Co. of Cal.*,
   15 Cal.App.2d 196 (1936) ................................................................................................. 17

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*ProMex, LLC v. Hernandez*,
   781 F.Supp.2d 1013 (C.D.Cal. 2011)............................................................ 8

*Reeves v. Sanderson Plumbing Prods., Inc.*,
   530 U.S. 133 (2000) ..................................................................................... 5

*Ross v. Tabor*,
   53 Cal.App.605 (1921)................................................................................ 17

*Sawyer v. Asbury*,
   861 F.Supp.2d 737 (S.D.W.Va. 2012) ......................................................... 5

*Schlinkman v. Davis*,
   195 Cal.App.2d 603 (1961) ........................................................................ 18

*Stinnett v. Damson Oil Corp.*,
   648 F.2d 576 (9th Cir. 1981)...................................................................... 17

*Summers v. Delta Air Lines, Inc.*,
   508 F.3d 923 (9th Cir. 2007)........................................................................ 4

*Sweet v. Johnson*,
   169 Cal.App.2d 630 (1959) ..................................................................... 2, 8

*Travelers Ins. Co. v. WCAB*,
   68 Cal.2d 7 (1967) ............................................................................... 17, 19

*Trujillo v. North County Transit Dist.*,
   63 Cal.App.4th 280 (1998)........................................................................... 3

*Tuso v. Green*,
   194 Cal. 574 (1924) ................................................................................... 17

*Winarto v. Toshiba Am. Elecs. Components, Inc.*,
   274 F.3d 1276 (9th Cir. 2001)...................................................................... 5

*Wolf v. Walt Disney Pictures and Television*,
   162 Cal.App.4th 1107 (2008)....................................................................... 9

STATUTES

CAL. CIV. CODE
   § 3360................................................................................................... 8

RULES AND REGULATIONS

FED. R. CIV. P. 30(b)(6)............................................................................ 9, 12

FED. R. CIV. P. 50 ................................................................................... 3, 4, 5

FED. R. CIV. P. 50(a)............................................................................... passim

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25131376.9

iii

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

Fed. R. Civ. P. 50(b) ........................................................................................................... 2, 3, 4

OTHER AUTHORITIES

23 Cal. Jur. 3d Damages § 10 ........................................................................................................... 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25131376.9

iv

1

**NOTICE OF MOTION AND MOTION**

2      PLEASE TAKE NOTICE THAT at 9:00 a.m., on September 12, 2014, in Courtroom 4,

3   located at 280 First South Street, San Jose, California, or as soon thereafter as the matter may be

4   heard, Plaintiffs NavCom Technology, Inc. ("NavCom") and Deere & Company ("Deere,"

5   collectively "Plaintiffs") will move the Court pursuant to Fed. R. Civ. P. 50(b) for partial

6   judgment as a matter of law on Plaintiffs' claim that Defendant Oki Electric Industry Co., Ltd.

7   ("Defendant" or "Oki") breached Sections 1.0, 2.6 and 2.8 of the Customized Advanced GPS RF

8   Chipset Development and Purchase Agreement and on Oki's affirmative defenses of novation,

9   waiver, mutual abandonment and anticipatory breach.

10      This motion is based on this Notice, the accompanying Memorandum of Points and

11   Authorities, the accompanying declaration of Brett M. Schuman, all pleadings and papers on file

12   in this case, all trial transcripts and exhibits, and upon such matters as may be presented to the

13   court at the time of hearing on this motion.

14   Dated:  June 5, 2014                    MORGAN, LEWIS & BOCKIUS LLP

15

16                                          By:  /s/ Brett M. Schuman

17                                               Brett M. Schuman
                                                 Attorneys for Plaintiffs
18                                               NavCom Technology, Inc. and Deere &
                                                 Company

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DB2/ 25131376.9

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    <u>INTRODUCTION.</u>**

The jury's special verdict – that Oki is not liable for breaching the Customized Advanced GPS RF Chipset Development and Purchase Agreement ("Agreement") on any basis – is not supported by substantial evidence.

*First*, as the Court previously found (for purposes of summary judgment), Oki breached Section 1.0 of the Agreement by terminating in July 2008 and stopping work immediately.  Dkt. No. 199 at 15:14-16:2.  At trial, Plaintiffs adduced overwhelming evidence of this breach, and no legally sufficient evidence supports the jury's special verdict that Section 1.0 was not breached.  Even absent other evidence of harm – an issue the jury did not reach – plaintiffs are entitled at a minimum to nominal damages for Oki's breach of Section 1.0.  *See Sweet v. Johnson*, 169 Cal.App.2d 630, 632-33 (1959).

*Second*, there is no legally sufficient evidence supporting the jury's special verdict that Oki did not breach Sections 2.6 and 2.8 of the Agreement.  Section 2.6 obligated Oki to deliver working Engineering Prototypes; Section 2.8 obligated Oki to repair or replace Engineering Prototypes that did not work.  At trial, Oki repeatedly admitted that the Engineering Prototypes it delivered to NavCom in April 2007 did not work:

> "Now, the first chips are made and there's no dispute, I cannot tell you otherwise, the first chips were not perfect.  The first chips did not work the way that they were supposed to or the way it was hoped to."

Ex. A[1], 4/22/14 Trial Tr. (Oki Opening Stmt.) 149:15-18.

> "Now, the first set of chips are delivered four months after that, April of 2007, and there's no dispute that they didn't work."

Ex. H, 5/7/14 Trial Tr. (Oki Closing Stmt.) 1626:17-19.  At trial, Oki did not even *try* to argue or introduce evidence that it repaired or replaced the April 2007 chips with Engineering Prototypes

---

[1] Unless otherwise noted, all exhibits referenced herein are attached to the Declaration of Brett M. Schuman in Support of Plaintiffs' Renewed Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P.  50(b), filed concurrently herewith.  Documents that were admitted into evidence at trial have maintained their trial exhibit number and are identified with the prefix PX or DX.

1    that worked.  Rather, Oki's defense was based primarily on its contention that, following delivery

2    of the non-confirming and non-working chips, the parties supposedly agreed to abandon the

3    Agreement.  The jury did not reach this or any other Oki defenses, and the special verdict cannot

4    be sustained on the basis of any of them.  *See Hydrodynamic Indus. Co., Ltd. v. Green Max*

5    *Distributors, Inc.*, No. 2:12–cv–05058–ODW, 2014 WL 1872098, at *3 (C.D.Cal. May 9, 2014)

6    ("Because the jury did not make explicit factual findings in the form of special verdicts, the Court

7    must discern the jury's implied factual findings by interpreting the evidence consistently with the

8    verdict and drawing all reasonable inferences in [the prevailing party's] favor."); *see also Trujillo*

9    *v. North County Transit Dist.*, 63 Cal.App.4th 280, 285 (1998) ("With a special verdict, we do not

10   imply findings on all issues in favor of the prevailing party, as with a general verdict.").  Now that

11   all of the evidence has come in, it is beyond any fair dispute that Oki breached Sections 2.6 and

12   2.8 of the Agreement, and Plaintiffs are entitled to JMOL on these breaches.

13        If the Court grants JMOL, or a new trial,[2] on these breach issues, it also should grant

14   JMOL on Oki's affirmative defenses of novation, waiver, mutual abandonment and anticipatory

15   breach.  Although Oki's counsel *argued* in support of some of these defenses, Oki did not present

16   sufficient *evidence* to support a defense jury verdict on any of them.  The undisputed trial

17   evidence establishes that:

18        • Oki was the chip designer;

19        • Oki initially proposed a three-chip design;

20        • Oki decided, after delivering the non-working chips in April 2007 and after further

21          analysis of the problems with them, to redesign the chips in a four-chip

22          configuration;

23        • NavCom agreed to allow Oki to switch from a three-chip to a four-chip design as

24

25   [2] Ordinarily, JMOL motions and new trial motions are both due <u>within 28 days after judgment</u>.
     Fed. R. Civ. P. 50(b); 59(b).  However, the 2006 and 2009 Amendments to Rule 50 added

26   language stating that a JMOL motion that "addresses a jury issue not decided by the verdict" is
     due "no later than <u>28 days after the jury is discharged</u>."  *See* Advisory Committee Notes for 2006

27   and 2009 Amendments to Fed. R. Civ. P. 50 (underline added).  Out of an abundance of caution,
     Plaintiffs are filing their JMOL motion at this time to meet this earlier deadline.  Plaintiffs will

28   subsequently file a motion for a new trial and request that the motions be considered together by
     the Court.

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

1   long as the pricing for production versions of the chips (which was per-chip

2   pricing for the three-chip design) did not change; and

3   • Oki told NavCom the contract pricing would not change.

4   *See* PX-205; DX-1169; Ex. A, 4/22/14 Trial Tr. (Knight) 203:19-204:10; Ex. B, 4/23/14 Trial Tr.

5   (Galyean) 346:25-347:12.  Oki never proved that NavCom waived any rights under the

6   Agreement, agreed to abandon the Agreement, or anticipatorily breached the Agreement in any

7   way.

8   **II.**      **RELEVANT PROCEDURAL HISTORY.**

9   At trial, both parties brought (and opposed) Rule 50(a) motions.  *See* Dkt. Nos. 300, 301,

10  305, 310.  Plaintiffs' motion requested judgment on its breach of contract claims based on the

11  extensive evidence they presented, and Oki failed to adduce contrary evidence.  Dkt. No. 305

12  (Plaintiffs' 50(a) JMOL) at 22 (breach of contract claims); *see also* Dkt. No. 301 (Opp. to Oki's

13  50(a) JMOL) at 3-16 (extensive discussion of evidence supporting breach of contract claims).  On

14  May 6, 2014, the Court reserved decision "pending the jury's decision in the case," and invited

15  "the parties to renew their motion should they wish to do so."  Ex. G, 5/6/14 Trial Tr. (Hearing)

16  1377:8-15.  On May 8, 2014, the jury returned a special verdict of no breach of contract.  Dkt.

17  No. 318 (Verdict).  The jury did not make any findings regarding Oki's affirmative defenses,

18  whether "NavCom prove[d] that it was harmed by Defendant's failure to satisfy Section 1.0

19  (Term)," or any issues relating to damages.  *See* Dkt. No. 318 (Verdict); Ex. F, 5/5/14 Trial Tr.

20  1308:14-22 (Court's explanation regarding process for bifurcating damages).  The Court then

21  denied Plaintiffs' Rule 50(a) Motion.  Ex. I, 5/8/14 Trial Tr. 1732:25-1733:8; *see* Dkt. No. 323

22  (5/20/14 Order).

23  On May 28, 2014, the Court entered judgment in favor of Oki.  Dkt. No. 328.  Plaintiffs

24  now renew their motion for judgment as a matter of law pursuant to FED. R. CIV. P. 50(b).

25  **III.**      **LEGAL STANDARD FOR RULE 50(b) MOTIONS.**

26  Rule 50 "allows a court to remove 'issue[s] – claims, defenses, or entire cases' from the

27  jury when there is no 'legally sufficient evidentiary basis' to support a particular outcome."

28  *Summers v. Delta Air Lines, Inc.*, 508 F.3d 923, 926 (9th Cir. 2007) (citation omitted).  The

4

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

standard for granting a renewed, post-verdict JMOL is the same as the standard for granting a pre-submission JMOL under Rule 50(a).  *Winarto v. Toshiba Am. Elecs. Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001).  A court should render judgment as a matter of law "when a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (quoting FED. R. CIV. P. 50(a)).  "Judgment as a matter of law is appropriate when the evidence presented at trial permits only one reasonable conclusion."  *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 938-39 (9th Cir. 2009) (citation omitted).

Rule 50 authorizes partial JMOL, including, for example, on liability, leaving other issues such as damages for a new trial.[3]  *See e.g.*, *Bangert Bros. Const. Co., Inc. v. Kiewit Western Co.*, 310 F.3d 1278, 1286 (10th Cir. 2002); *Delalat ex rel. Delalat v. Syndicated Office Systems, Inc.*, No. 10cv1273–DMS NLS, 2013 WL 8364853, at *9 (S.D.Cal. July 30, 2013); *Sawyer v. Asbury*, 861 F.Supp.2d 737, 746 (S.D.W.Va. 2012).

## IV.   THERE IS NO LEGALLY SUFFICIENT EVIDENCE SUPPORTING THE SPECIAL VERDICT THAT OKI DID NOT BREACH THE AGREEMENT.

As the Court instructed the jury, to prevail on their breach of contract claim, Plaintiffs had to prove the following elements:

> 1. That NavCom and Defendant entered into a contract;

> 2. That NavCom did all, or substantially all, of the significant things that the contract required it to do, or that it was excused from doing those things;

> 3. That Defendant failed to do something that the contract required it to do or did something that the contract prohibited it from doing; and

> 4. That NavCom was harmed by that failure.

Dkt. No. 314 at 21 (Instruction No. 21).

---

[3] Should Plaintiffs' prevail on their motion for judgment as a matter of law regarding Oki's breach of Sections 1.0, 2.6, and 2.8, Plaintiffs respectfully request a new trial on other issues including damages.

A.   **Plaintiffs Established That NavCom and Oki Entered Into The Agreement.**

The first element is that "NavCom and Defendant entered into a contract."  There was no dispute at trial that NavCom and Oki entered into the Agreement in 2005, and the amendment to the Agreement in 2006.  *See* PX-125, PX-46.  This is the contract that formed the basis for Plaintiffs' claim.

B.   **No Legally Sufficient Evidence Supports The Special Verdict That Oki Did Not Breach The Agreement.**

1.   Oki Breached Section 1.0 Of The Agreement.

Schedule 1.0 of the Agreement provides:

> 1.0 TERM. The term of this Agreement for purposes of ASIC (Applications Specific Integrated Circuit) development and purchase order placement shall commence with the date first written above and continue until December 31, 2006. This Agreement shall automatically renew for successive one (1) year periods until Buyer or Seller terminates the Agreement with *at least three (3) months written notice prior to the expiration of any then current term*.

PX-125 (Agreement) § 1.0 (emphasis added).

Oki sent a letter to NavCom terminating the Agreement on July 8, 2008.  PX-165.  Even assuming Oki had a right to terminate under Section 1.0, by giving notice of termination in July 2008, Oki was still obligated to continue working on the RF ASICs through the end of the "then current term," *i.e.*, December 31, 2008.  PX-125 at § 1.0.  But Oki simply quit – it stopped work, and failed to finish the term, in breach of Section 1.0.  Ex. E, 5/1/14 Trial Tr. (Ushida) 1251:8-10 ("Q. Mr. Ushida, at any point after July 8th, 2008, did Oki perform any further design work on the NavCom RF ASIC?  A.  No."); PX-278 (Nobbe) 172:13-173:5, 173:7-25; PX-281 (Fujita) 124:21-23; PX-33 (7/14/08 Peregrine email stating: "At this point we are completely disengaged on the project."); PX-201 (7/14/08 Peregrine email stating: "YEEHAW, this program is now officially dead and buried."); PX-30 (6/24/08 summary of call between Tahoe RF and Peregrine, stating: "Irshad – stop work THIS FRIDAY w/o payment").  Oki conceded its breach of Section 1.0 in its closing statement – simply arguing that it "wouldn't have made any difference anyway"

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

DB2/ 25131376.9

if Oki had complied with Section 1.0.  Ex. H, 5/7/14 Trial Tr. (Oki Closing Stmt.) 1639:9-13.

For the first time at the very end of trial, *i.e.,* in its opposition to Plaintiffs' Rule 50(a) motion, and again in its closing argument, Oki suggested that it did not breach Section 1.0 because it supposedly gave NavCom notice of termination in a February 21, 2008 PowerPoint presentation.  Dkt. No. 310 at 8:12-17 (citing DX-1169); Ex. H, 5/7/14 Trial Tr. (Oki Closing Stmt.) 1651:9-1652:24.  Oki's presentation was technical, addressing Oki's progress in diagnosing the problems with the April 2007 chips.  The presentation gave no notice that Oki was terminating the Agreement; indeed, the Agreement is not mentioned at all in the presentation.  *See* DX-1169.  More importantly, this presentation could not possibly constitute legally sufficient notice of termination because it was not sent by registered mail, addressed to NavCom at its headquarters, and marked for the attention of NavCom's President.  *See* PX-125 at § 23.0 ("Notices to be given under this Agreement shall be effected by registered mail by depositing said notice in a receptacle for the receipt of United States mail, addressed to the parties at their addresses set forth at the head of this Agreement, and marked for the attention of the President").

Because it found no breach, the jury did not reach the question on the special verdict form asking whether NavCom was harmed by Oki's breach of Section 1.0.  *See* Dkt. No. 318 at Question 12.  Since the jury did not reach that question, it cannot be implied that the jury's no-breach finding was based on any finding of lack of harm.  *See A.H.D.C. v. City of Fresno, Cal.*, No. CIV–F–97–5498 OWW SMS, 2004 WL 5866233, at *6 (E.D.Cal. March 9, 2004) ("A jury's findings by special verdict should be construed in the context of surrounding circumstances and in connection with the pleadings, instructions, and the issues or questions presented.") (citations omitted).

Plaintiffs clearly suffered actual harm by Oki's breach of Section 1.0.  In their Complaint, Plaintiffs alleged that they were supposed to receive chips by November 2008, *i.e.*, before the end of the 2008 term of the Agreement:  "By September 2007, it became clear to NavCom and Oki Semiconductor Co. that a major engineering redesign was needed.  Oki Semiconductor initially committed to redesign.  The redesigned RF ASIC was to include four chips instead of three, and was scheduled for delivery in November 2008."  Dkt. No. 1-1 (Complaint) at ¶ 21.  Even if Oki

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

1    would not have met that deadline, it could have completed important design work that would

2    have allowed Plaintiffs to avoid or minimize their damages from not having Engineering

3    Prototypes.  For example, in May 2008, Oki told NavCom that the four-chip design would be

4    ready for "tapeout" around the end of 2008.  *See* PX 56 at NAV0045201.  Thus, even under Oki's

5    revised schedule, the redesign could have been completed by the end of the 2008 term if Oki had

6    kept working, as it was obligated to do under Section 1.0.  *See* 4/23/2014 Trial Tr., 391:22-25

7    (tapeout is the last step before performing the functions of making the semiconductor chip),

8    465:24-466:11 ("Tapeout is the name for what occurs when all of the simulations are done, the

9    designs are complete, the package is all wrapped up and it's ready to go to the fabrication line and

10   build the chip.  It's the entire design package that transfers to a fab, a line with semiconductors

11   are built, chips are built.  It's that design package that goes so you can build the chip.  Tapeout is

12   the point where you say here's the design package, and let's go build the chip.").

13        Even if the jury had found no harm, however, Plaintiffs still would have established

14   breach because Oki is liable for nominal damages as a matter of law.  *See* CAL. CIV. CODE §

15   3360; *Sweet*, 169 Cal.App.2d at 632-33; *ProMex, LLC v. Hernandez*, 781 F.Supp.2d 1013, 1019

16   (C.D.Cal. 2011); 23 Cal. Jur. 3d Damages § 10 ("A plaintiff is entitled to recover nominal

17   damages for the breach of a contract, despite the plaintiff's inability to show that actual damage

18   was inflicted on him or her by the breach, because the defendant's failure to perform a contractual

19   duty is, in itself, a legal wrong that is fully distinct from the actual damage . . .  Accordingly,

20   nominal damages, which are presumed as a matter of law to stem merely from the breach of a

21   contract, may properly be awarded for the violation of such a right."); *see also O'Phelan v. Loy*,

22   No. 09–00236 ACK–KSC, 2011 WL 2006426, at *8 (D.Hawai'i May 23, 2011) (granting JMOL

23   for plaintiff and awarding nominal damages).

24                    2.      Oki Breached Section 2.6 Of The Agreement.

25        Section 2.6 of the Agreement obligated Oki to deliver working Engineering Prototypes

26   that met the specifications.[4]  This section provides that "Engineering Prototypes will be delivered

27   ───────────────────────────────

[4] The Court correctly perceived Oki's argument on this issue (as expressed in a proposed jury
instruction to which Oki objected) to be that "the Agreement obligated Oki *merely to try* to

28   develop and deliver engineering prototypes that met the required specifications using their

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

1   after Buyer's written approval in accordance with the Engineering Prototype turnaround time

2   specified in Schedule C."  PX-125 at § 2.6.  Engineering Prototypes are defined in the Agreement

3   as chips that meet the specifications.  *Id.* at § 1.1.  It is undisputed that Oki never delivered

4   working Engineering Prototypes prior to July 2008, when it terminated the Agreement and

5   stopped work.

6          It is undisputed that, in April of 2007, Oki delivered a set of non-working and non-

7   conforming chips to NavCom.  PX-279 (Goto, Oki's FED. R. CIV. P. 30(b)(6) witness) 187:3-5,

8   187:7-8; PX-49 at NAV0082000 ("Wow, a disaster"); PX-270; Ex. A, 4/22/14 Trial Tr. (Knight)

9   194:9-12, 240:3-5; (Galyean) 292:25-293:6.  Oki admits that these chips had massive problems

10  and were failures.  PX-279 (Goto, Oki's FED. R. CIV. P. 30(b)(6) witness) 189:13-25, 190:6-14.

11  As Oki conceded in its opening statement, "Now, the first chips are made and there's no dispute, I

12  cannot tell you otherwise, the first chips were not perfect.  The first chips did not work the way

13  they were supposed to or the way it was hoped to."  Ex. A, 4/22/14 Trial Tr. (Oki Opening Stmt.)

14  149:15-18.

15         Oki delivered a second set of chips in early 2008.  These did not meet the specifications

16  either.  Ex. E, 5/1/14 Trial Tr. (Ushida) 1205:11-1206:15 (listing the problems with the "second

17  prototype[s] that had been delivered," noting that "the chips were not 100% functional"); PX-279

18  (Goto, Oki's FED. R. CIV. P. 30(b)(6) witness) 190:24-191:16, 191:18-20, 191:23-192:4; Ex. A,

19  4/22/14 Trial Tr. (Knight) 194:13-16; Ex. B, 4/23/14 Trial Tr. (Galyean) 312:3-8.[5]

20         There is no legally sufficient evidence supporting the jury's finding that Oki did not

21  breach Section 2.6.

22  _____

23  reasonable best efforts."  5/6/14 Trial Tr. (Charging Conf.) 1495:13-1496:15 (italics added).  Oki
    never identified any words in the Agreement that are reasonably susceptible to this interpretation.

24  *See Wolf v. Walt Disney Pictures and Television*, 162 Cal.App.4th 1107, 1126 (2008) (first step in
    interpreting the meaning of disputed words in a contract is the court's determination that the

25  words are reasonably susceptible to the interpretation urged).  In fact, in Oki's closing argument,
    its counsel improperly characterized the project as "research," stating: "[W]hen you're doing

26  development, it's actually called development.  If we knew what we were doing, we wouldn't call
    it research.  ***It's the same kind of concept.***"  5/7/14 Trial Tr., 1627:12-15 (emphasis added).

27  Nowhere in the Agreement is the RF ASIC development project, or Oki's obligations relating
    thereto, characterized as "research."  *See* PX-125.

28  [5] Oki's contention that the January 2008 chips were not supposed to work is irrelevant for
    purposes of this motion.

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

3.   Oki Breached Section 2.8 Of The Agreement.

The Agreement also provided a warranty on Engineering Prototypes:

> Seller warrants that the Engineering Prototypes delivered pursuant to Section 2.0 (Development Phase) of the Terms and Conditions shall, at the time of delivery, be free and clear of all liens and encumbrances and free from defects in materials or workmanship, shall conform to Product Specifications listed in Schedule A, or such other specifications approved in writing by Seller and Buyer.

PX-125 at § 2.8.  It is undisputed that Oki never repaired or replaced the non-working prototype chips that did not meet the specifications.  Oki plainly breached the Section 2.8 warranty.  Ex. B, 4/23/14 Trial Tr. (Galyean) 315:20-22 ("Q. Dr. Galyean, did Oki ever repair or replace these chips with chips that met the specifications? A. No.").  No legally sufficient evidence supports the verdict that Oki did not breach Section 2.8.

The undisputed evidence at trial establishes that the four-chip design was Oki's preferred way of repairing or replacing the admittedly non-conforming, three-chip prototypes it had delivered to NavCom in 2007.  *See* DX-1169, PX-205.  NavCom preferred fewer chips (ideally, one chip), but the Agreement gave Oki to flexibility as the designers to determine the number of chips.  *See* Ex. B, 4/23/14 Trial Tr. 326:6-23; *see also* PX-125 at Schedule A, §§ 2.3.1, 2.5.2, OKI_LW_008379 (Specification Version 19); PX-46 at NAV0065260 (Specification Version 25).  The issue of whether Oki was obligated under the Agreement to finish the four-chip design that it had proposed (to fix the problems with the three-chip design that it had also proposed) is a question of law for the Court – not a fact question for the jury.  *See City of El Cajon v. El Cajon Police Officers' Assn.*, 49 Cal.App.4th 64, 71 (1996); *Morey v. Vannucci*, 64 Cal.App.4th 904, 912-13 (1998).

**C.   NavCom Fulfilled Its Obligations Under The Agreement.**

At trial, Oki half-heartedly suggested that NavCom failed to fulfill its obligations under the Agreement.  There is no legally sufficient evidence supporting Oki's suggestion.

*First*, Oki suggested that NavCom's claims are barred because it did not make the third ($150,000) payment identified in the Agreement's Schedule C.  *See* PX-125 at Schedule C. NavCom was to pay $300,000 "immediately due and payable at the time of signing the

10

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

1   Agreement," and $120,000 on delivery of "block specifications, pin assignments and simulation

2   results that conformed to the specifications." *Id.* NavCom made the first payment shortly after

3   the signing of the Agreement. Ex. A, 4/22/14 Trial Tr. 280:9-13; Dkt. No. 176 (JFPCS) UF #8.

4   NavCom made the second payment of $120,000 in January 2007. Ex. A, 4/22/14 Trial Tr. 280:9-

5   13; Dkt. No. 176 (JFPCS) at 12, UF #9. Schedule C contemplates a third payment: "$150K due

6   and payable upon delivery of Engineering Prototypes." PX-125 at Schedule C.

7          The suggestion that the third payment was due in April 2007, when Oki delivered chips

8   that everyone knew and agreed did not work and did not come close to meeting the specifications,

9   is nonsensical. It also is defeated by the parties' course of performance: when a payment was

10  due under Schedule C, Oki would invoice NavCom for the amount due. *See* PX-83, PX-95; *see*

11  *also* Ex. A, 4/22/14 Trial Tr. (Galyean) 280:9-19.[6] Oki never invoiced NavCom for the third

12  payment, nor did it ever ask NavCom to make the payment – because Oki understood the

13  payment was not due until working Engineering Prototypes that met the specifications were

14  delivered. *See id.* In addition, the contract provision defining "Acceptable Engineering

15  Prototypes," mentioned in Oki's opposition to Plaintiffs' Rule 50(a) motion, is irrelevant to the

16  question of when the $150,000 payment was due. *See* Dkt. No. 310 at 8:1-6. The referenced

17  provision merely limits NavCom's ability to reject Engineering Prototypes that met the

18  specifications – if Oki had delivered them, which it did not do. No legally sufficient evidence

19  supports Oki's suggestion that Plaintiffs' claims are barred because NavCom did not make this

20  payment.

21          *Second*, Oki suggested NavCom's claims are barred because NavCom did not provide a

22  specification according to Schedule B, which requires that NavCom "Provide NOVA RF ASIC

23  Specification." NavCom unquestionably provided a specification. Oki studied that specification

24  for many months and determined that the RF ASIC project was feasible. PX-125 at Schedule B;

25  ─────────────
    [6] Given that this issue was not raised until after Plaintiffs rested, Plaintiffs did not have the
26  opportunity to move the Oki invoices (PX-83, PX-95) into evidence. The Court should not
    consider this eleventh-hour argument. *See e.g., Patterson v. Hughes Aircraft Co.*, 11 F.3d 948,
27  950 (9th Cir. 1993) (finding abuse of discretion where district court tried issues that were not left
    open for determination at trial in final pretrial order). To the extent the Court does consider the
28  argument, it should consider the invoices and other evidence that conclusively defeats the
    purported defense.

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

DB2/ 25131376.9

Ex. B, 4/23/14 Trial Tr. (Galyean) 350:18-351:9; *see also* PX-279 (Goto, Oki's Fᴇᴅ. R. Cɪᴠ. P. 30(b)(6) witness) 71:18-24 (Oki would not have entered into Agreement if feasible); Ex. E, 5/1/14 Trial Tr. (Ushida) 1202:18-22 (Oki would not undertake a project if it did not believe the project was technically feasible); PX-278 (Nobbe) 51:6-14, 52:5, 52:7-9 (believed the "technology was capable of realizing the functions required for the chipset"); PX-3 at PER_NAV_0005196 ("*Certain* that the chipset is feasible in this technology") (emphasis added); PX-282 (Balbuena) 29:21-24 (Peregrine never told Oki that the chipset specified by NavCom could not be built), 69:17-23 (no internal Oki discussions about the specification not being feasible); *cf.* PX-217 (feasibility study); PX-218 (feasibility study); PX-71 (feasibility study); Ex. A, 4/22/14 Trial Tr. (Knight) 187:10-15 (feasibility studies "showed to us that Oki understood what we wanted and they were looking at it in detail, and they thought they could implement the RF ASIC."). Thus, no legally sufficient evidence supports Oki's suggestion that NavCom failed to fulfill its Schedule B obligation.

*Third*, Oki suggested that NavCom did not fulfill a purported obligation to test the chips. No legally sufficient evidence supports this suggestion, either. Schedule B requires that NavCom "Evaluate Prototypes." Upon receiving the non-conforming Engineering Prototypes in April 2007, NavCom RF engineers tested them and reported findings to Oki, *see* PX-49, which concluded that the chips did not work or meet the specifications.

### D.     Plaintiffs Adduced Legally Sufficient Evidence Of Damages Proximately Caused By Oki's Breaches Of Sections 2.6 and 2.8.

Although the jury did not reach the issue of damages, Plaintiffs proved damages proximately caused by Oki's breach of Sections 2.6 and 2.8. Plaintiffs' expert (John Hansen) testified that "Deere and NavCom have suffered damages in the form of increased cost by virtue of not having a working ASIC, RF ASIC delivered." Ex. D, 4/30/14 Trial Tr. (Hansen) 1017:5-1017:14. Mr. Hansen quantified and discounted to present value the increased costs to Deere and NavCom of not having the Oki RF ASICs in the Gen 5 receiver products. Mr. Hansen subtracted the costs Plaintiffs would have incurred if they had workable, conforming RF ASICs from Plaintiffs' actual costs of using the discrete solution in its Gen 5 receivers. Ex. D, 4/30/14 Trial

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

DB2/ 25131376.9

1    Tr. (Hansen) 1020:4-17.  He then discounted those increased costs to present value.  Ex. D,

2    4/30/14 Trial Tr. (Hansen) 1040:18-1042:10.  Mr. Hansen determined that Deere and NavCom

3    were harmed by between $12,707,000 and $13,512,000 by Oki's failure to deliver working

4    Engineering Prototypes.  Ex. D, 4/30/14 Trial Tr. (Hansen) 1042:11-17.

5           The Engineering Prototypes that Oki was contractually obligated to provide were to be a

6    working design ready to go into production.  They were intended to meet NavCom's

7    "Performance Characteristics" as described in the specifications.  That meant, for example, that

8    they had to "perform 2 frequency conversions" (3.1) and  "total power consumption for all three

9    chips with all bands operational shall be no more than 1W" (4.2), etc.  PX-125 at

10   OKI_LW_008383, OKI_LW_008390.

11          Plaintiffs proved that they would not have suffered their increased-cost damages if Oki

12   had delivered working Engineering Prototypes (Section 2.6) or repaired or replaced (Section 2.8)

13   the non-working and non-conforming chips that it did provide.  Among other things, Plaintiffs

14   adduced substantial evidence that if Oki had delivered working and conforming Engineering

15   Prototypes, Plaintiffs could have taken the chips to another manufacturer for production if Oki

16   decided to terminate the contract.  Ex. B, 4/23/14 Trial Tr. 316:1-12 (Galyean) ("If Oki had

17   delivered . . . working chips for us, then our options would have been much better.  We would

18   have taken that design to some other vendor and had that chip bought by somebody else."),

19   318:8-24 ("Q.  What was the effect on NavCom and Deere not getting working chips that met the

20   specifications from Oki?  A.  The effect is that we did not have [a] working RF ASIC design.  If

21   we had had that, we would have taken that design to another vendor, another manufacturer . . . .

22   And we would have had the chip built somewhere else."); (Galyean) 320:4-13 ("It's relatively

23   normal to do that, to take a design from one manufacturer to another.").  Plaintiffs did this in the

24   past with other chips  – including the Oki digital ASIC.  Ex. B, 4/23/14 Trial Tr. (Galyean) 320:4-

25   20 ("NavCom took a design for a chip we called the C ASIC, we took that from another

26   manufacturer to Oki and had them build what we called the C-2 chip.  We did the same thing with

27   another chip.  We called it the M Chip.  We took that from another manufacturer and had Oki

28   build it.  So, it's relatively normal to move chip designs."), 320:4-322:22 (NavCom took Oki-

13

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

1   designed digital ASIC to another manufacturer).  Such action would have obviated the need to

2   use the more costly discrete solution that Plaintiffs were forced to use as a result of Oki's breach.

3   Ex. C, 4/29/14 Trial Tr. 779:2-8 (Wilson) (if Oki had delivered the RF ASICs "we would replace

4   the discrete components on the electronics board that were going – that perform the same function

5   that the RF ASIC was designed to do.  So it would be placing that ASIC on the electronic board

6   [to] replace the discrete components."); Ex. D, 4/30/14 Trial Tr. (Wilson) 952:18-953:25 (if Oki

7   had delivered RF ASICs by July 2008, NavCom would have reengineered the existing Gen5 PCB

8   "to utilize the ASIC and realize the significant cost reduction of producing each receiver by using

9   the RF ASIC"); *cf*. Ex. A, 4/22/14 Trial Tr. (Knight) 257:23-258:25 (If Oki had delivered RF

10  ASIC chips, those chips would have been competitive for Deere and NavCom's needs); DX-1024

11  (3/2008 Presentation) at NAV0075610 ("Plan at present is still to insert RF ASICs into Gen5 in

12  FY09.").

13          Production chips from replacement suppliers could have been obtained at the same – and

14  possibly even lower – cost than what Oki would have charged under the Agreement.  Ex. B,

15  4/23/14 Trial Tr. (Galyean) 322:3-13 (when NavCom took Oki-designed digital ASIC to another

16  foundry, paid same prices as Oki contract price); *see* Ex. D, 4/30/14 Trial Tr. (Hansen) 1035:1-24

17  (Maxim's competitive bid for the RF ASIC project was to sell production chips at $20-$32

18  confirms that prices in Oki RF ASIC Agreement are reasonable); PX-261 at NAV0082335

19  (Maxim proposal).

20          Oki did not controvert any of this evidence at trial.[7]

21          Oki unpersuasively argues that Section 2.8 prohibited of use of Engineering Prototypes in

22  production and that this precludes Plaintiffs' damages.  *See* Dkt. No. 300 (Oki 50(a) JMOL) at

23  18-19.  Plaintiffs never said they would have needed to use the Engineering Prototypes in

24  production if Oki had delivered functional, conforming Prototypes.  Engineering Prototypes

25  represent the successful completion of the RF ASIC *design* that could used by another

26  manufacturer to make production chips.  Section 10 of the Agreement, entitled Tooling, provides

---

[7] In closing, Oki's counsel improperly argued, without evidentiary support, that Plaintiffs would
not have been able to obtain production versions of the chips from another manufacturer based on
working Engineering Prototypes from Oki.

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

DB2/ 25131376.9

1   Plaintiffs with the ownership right over the tools needed to manufacture the chips.  If Oki had

2   finished the working design and then quit, Plaintiffs owned the tools needed to enable another

3   manufacturer to create the chips that would be used in production.  PX-125 at § 10.

    **E.**    **There Is No Evidence (Or Basis To Speculate) That Oki Would Have Terminated If It Had Delivered Working Engineering Prototypes.**

6         There is no evidence that Oki would have terminated the Agreement in the "but-for"

7   world, nor is there any reason to speculate that Oki would have done so.  The evidence is that

8   both parties intended and expected to sell production versions of the RF ASICs after the design

9   was finished by Oki.  Oki stood to make more money from those sales (both by Deere, NavCom

10  and Oki).  *See* PX-125 at OKI_LW_008258, § 6.0 ("SALES BY OKI"); PX-131 (Oki's RF ASIC

11  Proposal) at OKI_LW_004157 ("Oki will assume the majority . . . of the development cost if it

12  can sell the chipset as a standard part to the market at large."); PX-170 at OKI_LW_018169

13  ("Finished products will be sold to other customers as a standard product of Oki."); PX-75

14  (9/15/05 Presentation) at NAV0045835 (slide explaining "Oki Sales of RF ASICs"); PX-228

15  ("Oki estimates the total cost of the project at $1,480K, but are covering the excess above $570K

16  themselves in return for being allowed to sell the resulting chips on the open market."); Ex. D,

17  4/30/14 Trial Tr. (Hansen) 1030:13-17 ("If Oki had delivered a working RF ASIC, and they go to

18  the production phase, it would be in their economic interest to go ahead and produce the chips so

19  that they could earn the sales revenues and profits on those chips.").  In other words, if Oki had

20  *not* breached its obligation to finish the design and provide working Engineering Prototypes, Oki

21  had a strong incentive to enter production and *not* to terminate the Agreement.

22        Mere "theoretical and hypothetical possibilities" about what Oki *might* or *could* have done

23  do not limit Plaintiffs' damages.  *See e.g., Hensler v. City of Los Angeles*, 124 Cal.App.2d 71, 84-

24  85 (1954).  There must be evidence that Oki "would in fact have" exercised its termination rights

25  under the Agreement in the "but for" world.  *Id.*  There is none.

26        In *Hensler*, the City of Los Angeles breached a construction contract by improperly

27  cancelling approximately 20% of the work.  When the plaintiff sought damages for all of the

28  cancelled work, the City argued that, because the contract permitted it to delete from the work

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

DB2/ 25131376.9

order "any item other than major items found *unnecessary to the project*," the damage award must be reduced for all items that it *could have* properly cancelled.  *Id.* at 77 (italics in original).  The Court rejected this argument: "There is no intimation in the record that, but for its failure to secure consent to put the new by-pass road in operation, defendant would have in fact made any omissions. The purported testimony would have consisted of mere speculations as to theoretical and hypothetical possibilities, unrelated to the considerations actuating defendant's purpose in ordering the deletions, and was properly rejected."  *Id.* at 84-85; *see also Oldenkott v. American Elec. Inc.*, 14 Cal.App.3d 198, 203 (1971) (where plaintiff had option to renew employment agreement and had not exercised that option before the breach, damages were appropriate if the jury determined that plaintiff "would have exercised the option" but-for the breach).

## V.   OKI FAILED TO ADDUCE ANY LEGALLY SUFFICIENT EVIDENCE IN SUPPORT OF ITS AFFIRMATIVE DEFENSES.

Although the jury did not reach Oki's affirmative defenses on the special verdict form, Plaintiffs hereby renew their Rule 50(a) motion with respect to those defenses because Oki failed to present legally sufficient evidence.

### A.   There Was No Novation (Special Verdict Question #6).[8]

"Essential to a novation is that it 'clearly appear' that the parties intended to extinguish rather than merely modify the original agreement . . . . Regardless of the extent to which a contract is modified, a novation cannot be found unless it be shown that the parties intended and agreed to extinguish the original contract." *Howard v. County of Amador*, 220 Cal.App.3d 962, 977-78 (1990) (internal citations omitted).  Oki did not present legally sufficient evidence of a novation of the Agreement.

The November 2006 amendment, which simply replaced Specification version 19 with version 25, did not extinguish any contractual obligation.  As the Ninth Circuit held on similar facts, "[c]alling [an amended agreement] a 'novation' is a self-serving mischaracterization of that agreement.  Alteration of some details of a contract, while leaving undisturbed its general purpose

---

[8] Oki did not plead novation as an affirmative defense.  *See* Dkt. No. 49.  Therefore, Plaintiffs' did not address this defense in their earlier motion for partial summary judgment.  *See* Dkt. No. 97.

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

DB2/ 25131376.9

1   . . . constitutes a mere modification of the original contract, and the latter remains in force as

2   modified." *Stinnett v. Damson Oil Corp.*, 648 F.2d 576, 582 (9th Cir. 1981) (citation omitted).

### B.   There Was No Mutual Abandonment Of The Agreement (Special Verdict Question #8)[9]

5   Oki did not present legally sufficient evidence that the parties mutually rescinded or

6   abandoned the Agreement when they addressed Oki's proposed, four-chip design.

7   "[A contractual] abandonment is made up of two elements, act and intent, and the intent

8   must be gathered from all the facts and circumstances of the case." *Peal v. Gulf Red Cedar Co. of*

9   *Cal.*, 15 Cal.App.2d 196, 199 (1936).  To constitute implied abandonment, the acts and conduct

10   relied upon must be positive, unequivocal, and inconsistent with the contract. *Ross v. Tabor*, 53

11   Cal.App.605, 615 (1921); *Tuso v. Green*, 194 Cal. 574, 582 (1924) ("It is true that the consent of

12   the parties to such an agreement of rescission is not required to be expressed in words, but may be

13   manifested by conduct.  But such conduct must afford a stronger basis for the inference of

14   consent than mere conjecture or speculation").

15   The parties' discussions in early 2008 regarding Oki's proposed four-chip design, to fix

16   problems Oki encountered with the three-chip design it had committed to build, did not constitute

17   a mutual abandonment of the Agreement as a matter of law.  "[A defendant's] alteration of details

18   of the contract which leaves undisturbed its general purpose constitutes a modification rather than

19   a rescission of the contract . . .  it does not affect the original contract, which still remains in

20   force." *Travelers Ins. Co. v. WCAB*, 68 Cal.2d 7, 17 (1967), *disapproved on other grounds*,

21   *LeVesque v. WCAB*, 1 Cal.3d 627, 637 (1970) (citations omitted).  For example, in a contract for

22   building a house, where plans were changed, these changes caused no abandonment:

23
There was no evidence that the parties had abandoned the contract,
but apparently the court relied upon the fact that changes had been
made which in some instances increased the cost and in others
decreased the cost. It is to be noted that the contract itself
contemplated that changes might be made, for it was stipulated
therein that changes should be authorized by the owner. There is no
real dispute in the evidence that changes had been made, sometimes

27   _____

[9] Oki did not plead abandonment or rescission as an affirmative defense. *See* Dkt. No. 49.
28   Therefore, Plaintiffs' did not address this defense in their earlier motion for partial summary
judgment. *See* Dkt. No. 97.

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

DB2/ 25131376.9

> for the purpose of keeping down the cost below what it would have
> been had the plans and specifications been exactly followed while
> other changes increased the cost, but these circumstances do not
> justify the contract being discarded as though abandoned.

*Schlinkman v. Davis*, 195 Cal.App.2d 603, 605 (1961). *Schlinkman* went on to hold that a

contract provision regarding maximum cost remained in effect despite plan changes. *Id.* at 605.

As in *Schlinkman*, the Agreement here expressly contemplated that changes would be

made during the development phase. *See* PX-125 at Schedule A, §§ 2.3.1, 2.5.2,

OKI_LW_008379 (Specification Version 19); PX-46 at NAV0065260 (Specification Version

25). The parties' discussions regarding such changes cannot be evidence of any mutual

abandonment of the Agreement as a matter of law. Dr. Paul Galyean, project manager for the

Nova RF ASIC project, testified that there was no discussion of terminating the contract when

Oki and Tahoe RF presented the four-chip solution to NavCom. Ex. B, 4/23/14 Trial Tr., 332:3-

17. A "go/no-go" decision on the four-chip design was not a referendum on whether the

Agreement was still enforceable. *See id.*, PX-56 at NAV0045202 ("This is not a contractual

issue, as there is no requirement or allowance in the agreement for us to say yes or no once the

contract is underway."). The Agreement itself gave Oki the flexibility to implement the chipset in

the best way it saw fit. *See* Ex. B, 4/23/14 Trial Tr., 326:25-328:16; PX-125 at OKI_LW_008379

("The term RF ASIC could refer to a single monolithic part, but will more likely be a set of

individually packaged ICs"). Dr. Galyean further testified that he did not believe that the

Agreement had been terminated or abandoned prior to July 8, 2008. *Id.* at 478:23-479:6. Jerry

Knight, the manager of advanced receiver development responsible for the project, testified that

there was never any discussion of terminating the Agreement when NavCom and Oki discussed

Oki's proposed four-chip solution. Ex. A, 4/22/14 Trial Tr., 204:20-205:6. There also is no

evidence that ***Oki*** intended to abandon or rescind the Agreement prior to termination, much less

that Oki ever communicated to Plaintiffs such an intent. Indeed, Oki's corporate witness, Yoko

Goto, testified that Oki decided to terminate the Agreement in June 2008, and informed NavCom

of its decision to terminate the Agreement at that time. The decision was made around that time

by Mr. Ushida. PX-279 (Goto), 72:12-73:2.

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

1    To the extent any change to the Agreement was contemplated, it was to *amend*, not to

2    rescind or abandon.  Amendment is the affirmation of the underlying contract, not an

3    abandonment or rescission of it.  *See Travelers*, 68 Cal.2d at 17.  For example, Dr. Galyean

4    testified that he understood that the four-chip solution would eventually require another

5    amendment of the Agreement, but in the way Amendment 1 replaced Version 19 of the

6    specification with Version 25.  Ex. B, 4/23/14 Trial Tr., 332:24-333:16, 409:8-20; PX-56 at

7    NAV0045202 ("There are several ***minor action items*** . . . need to revise Agreement with Oki to

8    reflect the four chip solution and its pricing.") (emphasis added).  <u>Abandonment of a contract is</u>

9    <u>not a "minor action item."</u>

10    Dr. Galyean's notes from meetings and calls around the time Oki proposed its four-chip

11    solution are fully consistent with amending the Agreement, not abandoning it.  DX-1030 ("RF

12    ASIC Meeting" dated April 18, 2008, "There will need to be a few more changes [to the

13    specification] and a formal amendment to the agreement in a while."); PX-56 ("RF ASIC

14    Meeting," dated May 28, 2008, "Tahoe asked for a formal go/no-go decision from NCT.  This is

15    not a contractual issue, as there is no requirement or allowance in the agreement for us to say yes

16    or no once the contract is underway.").  Documents relied on by Oki are also consistent with

17    amendment, not rescission or termination.  DX-1031 ("Action Item Spreadsheet" dated April 18,

18    2008, stating "We will need to deal with the draft amendment to the agreement once it is

19    settled."); DX-1051 ("Action Item Spreadsheet" dated April 24, 2008, stating "We will need to

20    deal with the draft amendment to the Agreement once it is settled."); DX-1053 (same, dated May

21    8, 2008); DX-1054 (same, dated May 15, 2008); DX-1055 (same, dated May 15, 2008); PX-56

22    (dated May 28, 2008); DX-1061 (same, dated May 28, 2008, and adding "Need to revise

23    agreement with Oki.").

24    The intent to do no more than amend is consistent with the parties' discussions of chip

25    prices for the four-chip chipset, because those discussions never addressed terminating the

26    Agreement or entering into a new one.  The evidence shows only that NavCom insisted that the

27    pricing set forth in the Agreement not change, and Oki agreed.  DX-1055 (Oki's Ruben Balbuena

28    confirming the price of the chipset, stating that "OKI-J has run analysis for both proposals from

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

1   Tahoe RF on configuration of the chipset, and we run into the conclusion that the total cost for the

2   chipset (either 3-chip or 4-chip) will remain at $35.00, same as the original price when we signed

3   the agreement.").

4          The most compelling piece of evidence introduced by either party on this issue was Oki's

5   July 8, 2008 termination letter. PX-165. As the letter stated, "Oki hereby provides notice of

6   termination of the Development and Purchase Agreement C04719-VPA dated December 14,

7   2005 . . ." *Id.* As Dr. Galyean testified, it would be strange indeed to receive a letter terminating

8   the Agreement if the Agreement had already been terminated or abandoned. Ex. B, 4/23/14 Trial

9   Tr., 479:7-11.

10          The cases heretofore relied upon by Oki are readily distinguishable. In *McCreary v.*

11   *Mercury Lumber Distributors*, 124 Cal.App.2d 477 (1954), the parties entered into a contract for

12   the sale and removal of timber. *Id.* at 479. After nearly a year and a half, the majority of the

13   timber had yet to be removed, so the landowner sent a letter of rescission to the logger, locked the

14   gates to the property, and made all outstanding payments under the contract. *Id.* at 481. After the

15   letter of rescission was sent, the parties negotiated and reached a new agreement, drafted a term

16   sheet, and had an attorney draft a new contract that explicitly terminated the old contract. *Id.* at

17   481-82, 484. These actions, coupled with the logger's failure to claim further rights in the old

18   contract until filing the lawsuit, demonstrated the logger's acquiescence in to the notice of

19   rescission. *Id.* at 486. Here, by contrast, Oki did not send a notice terminating the Agreement

20   until July 8, 2008, and there was no evidence that the parties actually negotiated the terms of a

21   new contract at that time or at any earlier one.

22          *Honda v. Reed*, 156 Cal.App.2d 536 (1958), also is inapposite. There, the parties

23   contracted for lease of an apartment. Before the lease became effective, the buyer/lessor was

24   required to set up escrow, escrow instructions "were never signed by any party, and no escrow

25   was then or ever commenced to conclude the transaction contemplated by the purported

26   agreement . . ." *Id.* at 537. Several months later, after failed negotiations for a new lease, the

27   buyer/lessor sued to enforce specific performance of the original lease. *Id.* at 538. The trial court

28   found the original contract had been abandoned by mutual consent, because plaintiff had never

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

20

1    even attempted to perform the first lease.  *Id.* at 539-40.  Here, by contrast, the evidence is

2    undisputed that NavCom performed its obligations, and that Oki attempted unsuccessfully to

3    deliver working RF ASIC chips under the Agreement.

4        **C.**     **There Was No Waiver (Special Verdict Question #7 and #9)**

5           Oki's waiver defense, as articulated by Oki during closing argument, is co-extensive with

6    Oki's abandonment defense.  *See* Ex. H, 5/7/14 Trial Tr. (Oki Closing Stmt.) 1649:5-13 ("So the

7    parties agreed to discontinue the development of version 25.  We believe that the evidence shows

8    that that's not possible.  And that's going to be the corresponding waiver question.  Did they

9    agree to discontinue the development of version 25?  The evidence is there.  That's why they

10   started talking about a four chip.  They decided that version 25 was not going to work for them

11   anymore.  They all mutually agreed.  But, again, this is in the context of waiver").  Therefore,

12   Oki's waiver defense fails for the reasons its abandonment defense does.

13          Further, the Court instructed the jury that to prevail on a waiver defense, Oki would have

14   had to prove by clear and convincing evidence that NavCom "freely and knowingly gave up its

15   right" to have Oki perform its obligations under the Agreement.  Dkt. No. 314 at 27 (Instruction

16   No. 27).  Oki adduced no evidence – much less clear and convincing evidence – that NavCom

17   ever gave up any of its rights under the Agreement.  The Agreement did not require Oki to build

18   any specific design with any specific number of chips.  The Agreement included Oki's then-

19   current design plan but gave Oki the flexibility to change it.  *See* Ex. A, 4/22/14 Trial Tr., 275:6-

20   279:9; Ex. B, 4/23/14 Trial Tr., 326:25-328:16; PX-125 at OKI_LW_008260 (Schedule A),

21   OKI_LW_008379 (Specification Version 19); PX-46 at NAV0065260 (Specification Version

22   25).  NavCom preferred the three-chip design but it "grudgingly accepted" Oki's proposed four-

23   chip solution – as long as that adjustment did not increase the price established in the Agreement

24   for the chips.  *See* Ex. J, (Galyean 30(b)(6) Dep. Tr.) at 119:7-25.  Thus, far from waiving any

25   rights under the Agreement, NavCom insisted on maintaining those rights if Oki proceeded with

26   its four-chip design.

27       **D.**     **There Was No Anticipatory Breach (Special Verdict Question #10)**

28          Oki did not plead the affirmative defense of anticipatory breach.  Dkt. No. 49.

21

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

1   Consequently, Plaintiffs did not serve a contention interrogatory directed to any such defense, and

2   it could not move for summary judgment on it.  Oki remained coy about the basis for this unpled

3   defense throughout the litigation and, indeed, through the end of trial.  *See* Ex. G, 5/6/14 Trial Tr.

4   1446:5-8 (Oki's counsel asking to defer argument on its proposed anticipatory breach defense to

5   the end of the charging conference because he wanted to "recast or reform" it).

6       In response to discovery request not directed to anticipatory breach, Oki suggested that

7   NavCom supposedly failed "to pay any additional development expenses as required under

8   Section 2.3.1 of the Terms & Conditions, constituted a repudiation/anticipatory breach, which

9   excused further performance by Oki."  *See* Dkt. No. 329 (Oki's Responses to Plaintiffs' First Set

10  of Interrogatories) at 7:16-19; *see also id.*, at 10:15-18, 11:9-14.  Section 2.3.1 provides, in pertinent

11  part, that ***"[i]f Buyer [i.e., NavCom]*** makes changes in the specifications … or otherwise causes

12  additions to the Statement of Work …, Buyer shall be responsible for any and all additional costs

13  Seller [Oki] may incur in compliance with such changes.  PX-125, OKI_LW_008264 at § 2.3.1

14  (emphasis added).  Oki did not pursue this theory at trial.  Section 2.3.1 was not mentioned once

15  during the trial prior to the jury instructions.  Oki did not pursue this theory for good reason:

16  "Buyer" (NavCom) did not make any changes in the specifications or cause any additions to the

17  Statement of Work that required Oki to incur additional development expenses, and Oki never

18  adduced any evidence that NavCom made such cost-increased changes.[10]

19      Oki asked for a convoluted, anticipatory breach instruction theory tied to Oki's proposed,

20  four-chip re-design, *viz*: "If you have determined that a contract was formed for the development

21  of the 4-chip RF ASIC, then you must decide if Navcom was in anticipatory breach before the

22  time that Navcom claims Oki Semiconductor was in breach . . . Oki contends that Navcom

23  refused to pay any of the expense in conjunction with the redesign of the 4-chip chipset in

24  anticipatory breach of Section 2.3.1."  *See* Dkt. No. 247 (Def.'s Requested Instruction No. 50).

25  But, the evidence unequivocally showed that Oki proposed the four-chip design after concluding

26  

---

[10] Evidence was adduced that Oki asked NavCom to pay an additional $860,000 in development
27  costs in May 2008.  *See* Ex. B, 4/23/14 Trial Tr. 333:21-334:25; DX-1065.  It was undisputed,
however, that those additional costs related to a change proposed ***by Oki*** from a three-chip design
28  to a four-chip design.  *See* Ex. B, 4/23/14 Trial Tr., 325:11-21.

PLAINTIFFS' PARTIAL JMOL
PURSUANT TO FRCP 50(b)
5:12-CV-04175 EJD

DB2/ 25131376.9

1   that its three-chip design was too seriously flawed to be salvaged.  Buyer, *i.e.*, NavCom, did not

2   request the four-chip re-design.  NavCom therefore had no legal obligation to pay for the costs

3   associated with the four-chip approach under the Agreement, or for any other reason.

4          Oki's anticipatory breach defense dismally fails as a matter of law.

5          For the first time in opposition to Plaintiffs' Rule 50(a) motion, Oki offered yet another

6   version of its anticipatory breach defense.  This time, Oki argued that NavCom committed

7   anticipatory breach, thereby excusing Oki from any further performance under the Agreement, by

8   failing to make the third (*i.e.*, $150,000) payment listed in the Agreement's Schedule C.  Dkt. No.

9   310 at 7:5-8:6.[11]  This last version of the defense fails, as explained earlier in Section IV.C.,

10  because NavCom was not obligated to make the third payment until Oki delivered working

11  Engineering Prototypes.

12  **VI.    CONCLUSION.**

13         Plaintiffs' Renewed Motion for Partial Judgment as a Matter of Law should be granted.

14  Dated: June 5, 2014                          MORGAN, LEWIS & BOCKIUS LLP

15

16                                               By:  /s/ Brett M. Schuman

17                                                    Brett M. Schuman
                                                     Attorneys for Plaintiffs
18                                                   NavCom Technology, Inc. and Deere &
                                                     Company

19

20

21

22

23

24

25

26

27

---

[11] In opposing JMOL, Oki did not mention any of the prior iterations of its anticipatory breach
theory.

28

                                             PLAINTIFFS' PARTIAL JMOL
                                             PURSUANT TO FRCP 50(b)
                                             5:12-CV-04175 EJD

DB2/ 25131376.9