EXHIBIT A

DECLARATION OF BRETT M.
SCHUMAN IN SUPPORT OF
PLAINTIFFS NAVCOM TECHNOLOGY,
INC. AND DEERE & COMPANY'S
RENEWED MOTION FOR PARTIAL
JUDGMENT AS A MATTER OF LAW
PURSUANT TO FED. R. CIV. P. 50(b)

1              UNITED STATES DISTRICT COURT

            FOR THE NORTHERN DISTRICT OF CALIFORNIA

2                   SAN JOSE DIVISION

3

   NAVCOM TECHNOLOGY INC., AND

4  DEERE & COMPANY,

                      CASE NO.  CV-12-04175-EJD

5        PLAINTIFFS,

                      SAN JOSE, CALIFORNIA

6  VS.

                      APRIL 22, 2014

7  OKI SEMICONDUCTOR AMERICA INC.,

   ET AL.,            VOLUME 2

8

      DEFENDANTS.        PAGES 90 - 304

9

10

            TRANSCRIPT OF PROCEEDINGS

11      BEFORE THE HONORABLE EDWARD J. DAVILA

            UNITED STATES DISTRICT JUDGE

12

13          A-P-P-E-A-R-A-N-C-E-S

14

   FOR THE PLAINTIFFS:   MORGAN, LEWIS & BOCKIUS

15              BY:  BRETT M. SCHUMAN

                RYAN L. SCHER

16          ONE MARKET, SPEAR STREET TOWER

            SAN FRANCISCO, CALIFORNIA 94105

17

18  FOR THE DEFENDANTS:  NAGASHIMA & HASHIMOTO

                BY:  MARC R. LABGOLD

19              TAKAAKI NAGASHIMA

                PATRICK J. HOEFNER

20          12007 SUNRISE VALLEY DRIVE, SUITE 110

            RESTON, VIRGINIA 20191

21

      (APPEARANCES CONTINUED ON THE NEXT PAGE.)

22

   OFFICIAL COURT REPORTER:   IRENE L. RODRIGUEZ, CSR, CRR

23              CERTIFICATE NUMBER 8074

24

      PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,

25  TRANSCRIPT PRODUCED WITH COMPUTER.

1
2

A P P E A R A N C E S: (CONT'D)

3

4        FOR THE DEFENDANTS:

5                            MAKMAN & MATZ

                             BY:  DAVID A. MAKMAN

6                            655 MARINER'S ISLAND BOULEVARD

                             SUITE 306

7                            SAN MATEO, CALIFORNIA 94404

8                            SHAW KELLER

                             BY:  ANDREW E. RUSSELL

9                            300 DELAWARE AVENUE, SUITE 1120

                             WILMINGTON, DETROIT 19801

10

11       ALSO PRESENT:        OKI ELECTRIC INDUSTRY CO., LTD

                             BY:  ISAO GOTO

12                           1-7-12 TORANOMON MINATO-KU

                             TOKYO 105-8460 JAPAN

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    INDEX OF PROCEEDINGS

3        PLAINTIFFS' OPENING STATEMENT          P. 121

4        DEFENDANTS' OPENING STATEMENT          P. 140

5

         FOR THE PLAINTIFFS:

6

         JERRY KNIGHT

7            DIRECT EXAM BY MR. SCHUMAN          P. 166

             CROSS-EXAM BY MR. LABGOLD           P. 206

8            REDIRECT EXAM BY MR. SCHUMAN        P. 251

9        PAUL GALYEAN

             DIRECT EXAM BY MR. SCHUMAN          P. 261

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

INDEX OF EXHIBITS

2

3                          IDENT.      EVIDENCE

4       PLAINTIFFS:

5       230                            180

        217                            184

6       218                            185

        71                             186

7       131                            188

        267                            196

8       228                            269

        74                             266

9       75                             270

        46                             287

10      150                            290

        49                             293

11      270                            297

        271                            299

12

13      DEFENDANTS:

14

        1005                           208

15      1168                           211

        125                            219

16      1084                           223

        1004                           228

17      1101                           230

        1105                           242

18      1032                           247

19

20

21

22

23

24

25

| 1 | | SAN JOSE, CALIFORNIA | APRIL 22, 2014 |

1        SAN JOSE, CALIFORNIA        APRIL 22, 2014

2                  P R O C E E D I N G S

3   09:01AM    (JURY OUT AT 9:01 A.M.)

4   09:01AM      THE COURT: SO LET'S GO ON THE RECORD THEN. WE'RE

5   09:01AM   ON THE RECORD IN THE NAVCOM VERSUS OKI CASE. ALL COUNSEL ARE

6   09:01AM   PRESENT.

7   09:01AM      AND BEFORE WE BRING THE JURY UP, I DO WANT TO GO OVER THE

8   09:01AM   PRELIMINARY INSTRUCTIONS WITH YOU, GIVE YOU AN OPPORTUNITY TO

9   09:01AM   PLACE ANYTHING ON THE RECORD THAT YOU'D LIKE.

10  09:01AM      AND I DO HAVE YOUR JOINT SET OF STANDARD PRELIMINARY AND

11  09:01AM   IT'S TITLED HERE CLOSING INSTRUCTIONS.

12  09:01AM      THIS IS DOCUMENT NUMBER 247. AND I'LL BE REFERENCING -- I

13  09:01AM   THINK THE PRELIMINARY INSTRUCTIONS GO TO PAGE 57, I THINK, OF

14  09:01AM   YOUR SUBMISSION.

15  09:01AM      AND I'LL JUST GO THROUGH THESE NOW IF YOU HAVE THOSE IN

16  09:01AM   FRONT OF YOU. FIRST -- AND, AGAIN, THESE ARE PRELIMINARY,

17  09:01AM   PRELIMINARY INSTRUCTIONS.

18  09:01AM      THE FIRST IS DUTY OF JURY, WHICH IS 1.1B, I'LL GIVE THAT.

19  09:01AM      CLAIMS AND DEFENSES. I HAVE MODIFIED -- I'VE READ EACH OF

20  09:02AM   YOUR PROPOSALS, AND I HAVE MODIFIED AND WILL READ A

21  09:02AM   MODIFICATION. I'VE CUT BACK AND ADDED CERTAIN ITEMS. I,

22  09:02AM   PERHAPS, CAN MAKE PHOTOCOPIES FOR YOU OF MY NOTES, BUT

23  09:02AM   CERTAINLY THERE WILL BE A RECORD OF IT ON THE TRANSCRIPT. SO

24  09:02AM   I'LL READ THAT MODIFICATION.

25  09:02AM      BURDEN OF PROOF, 1.3, I WILL GIVE.

| | | |
|---|---|---|
| 1 | 10:39AM | IF YOU HAVE A CONTRACT TO BUILD SOMETHING, OR THERE'S A |
| 2 | 10:39AM | CONTRACT TO DO SOMETHING, OR THERE'S ANY TYPE OF A CONTRACT, IT |
| 3 | 10:39AM | HAS TO EXPLAIN WHAT IT IS THAT WE'RE GOING TO AGREE TO DO. |
| 4 | 10:39AM | AND IN THE BEGINNING THEY AGREED TO GO FORWARD WITH THIS |
| 5 | 10:40AM | LESS THAN COMPLETE SPECIFICATION WITH THE INTENT THAT THEY |
| 6 | 10:40AM | WOULD WORK IT OUT, AND NOW THEY HAVE WORKED IT OUT. AND WITH |
| 7 | 10:40AM | VERSION 25 IN PLACE THEY'RE GOING TO START THE FIRST PRODUCTION |
| 8 | 10:40AM | TO TRY TO MAKE A PROTOTYPE. |
| 9 | 10:40AM | NOW, VERSION 25, WHAT IS IMPORTANT, IS ALSO THREE CHIPS. |
| 10 | 10:40AM | AND YOU'RE GOING TO SEE THAT ON THE FACE. THIS LOOKS A LOT |
| 11 | 10:40AM | LIKE THE LAST PICTURE THAT WE SAW WITH THE THREE CHIPS. IT'S |
| 12 | 10:40AM | STILL THREE CHIPS. THERE ARE HOLES THAT ARE FILLED IN, BUT |
| 13 | 10:40AM | IT'S SIGNIFICANTLY DIFFERENT ENOUGH THAT WE'RE GOING TO HAVE TO |
| 14 | 10:40AM | AMEND THE CONTRACT. |
| 15 | 10:40AM | NOW, THE FIRST CHIPS ARE MADE AND THERE'S NO DISPUTE, I |
| 16 | 10:40AM | CANNOT TELL YOU OTHERWISE, THE FIRST CHIPS WERE NOT PERFECT. |
| 17 | 10:41AM | THE FIRST CHIPS DID NOT WORK THE WAY THAT THEY WERE SUPPOSED TO |
| 18 | 10:41AM | OR THE WAY IT WAS HOPED TO. |
| 19 | 10:41AM | OBVIOUSLY BOTH SIDES IN THIS WOULD HAVE BEEN REALLY HAPPY |
| 20 | 10:41AM | IF THE FIRST ATTEMPT IN THIS DEVELOPMENT PROJECT HAD WORKED, |
| 21 | 10:41AM | BUT IT DIDN'T. |
| 22 | 10:41AM | AND AS MANY OF YOU MAY BE FAMILIAR, THERE'S A LOT THAT |
| 23 | 10:41AM | GOES ON IN THIS VALLEY AND A LOT OF DIFFERENT TECHNOLOGIES OF |
| 24 | 10:41AM | DEVELOPMENT WHERE THE FIRST TIME IT DOESN'T WORK. |
| 25 | 10:41AM | AND YOU'RE GOING TO HEAR TESTIMONY FROM THEIR WITNESSES |

| | | |
|---|---|---|
| 1 | 11:56AM | Q.  MR. KNIGHT, AGAIN, AT A HIGH LEVEL, WITHOUT GOING INTO ALL |
| 2 | 11:56AM | OF THE TECHNICAL DETAIL, COULD YOU DESCRIBE FOR THE MEMBERS OF |
| 3 | 11:56AM | THE JURY, PLEASE, HOW THIS FEASIBILITY STUDY DIFFERED FROM THE |
| 4 | 11:56AM | PRIOR FEASIBILITY STUDY? |
| 5 | 11:56AM | A.  YES.  THIS IS ADDRESSED TO A SMALL PORTION OF THE TOTAL |
| 6 | 11:56AM | DESIGN.  OKI WAS HAVING TROUBLE COMING UP WITH A WAY TO |
| 7 | 11:56AM | IMPLEMENT PART OF WHAT WE REQUESTED TO BE IN THE RF ASIC, AND |
| 8 | 11:56AM | THEY ASKED US TO REMOVE THAT FROM THE SPECIFICATION AND ALLOW |
| 9 | 11:56AM | THAT PART TO REMAIN AS SPECIFIED PARTS.  WE AGREED TO DO SO. |
| 10 | 11:57AM | Q.  MR. KNIGHT, WHAT DID THESE FEASIBILITY STUDIES THAT OKI |
| 11 | 11:57AM | WAS PROVIDING TO NAVCOM MEAN TO NAVCOM? |
| 12 | 11:57AM | A.  WELL, IT SHOWED TO US THAT OKI UNDERSTOOD WHAT WE WANTED |
| 13 | 11:57AM | AND THEY WERE LOOKING AT IT IN DETAIL, AND THEY THOUGHT THEY |
| 14 | 11:57AM | COULD IMPLEMENT THE RF ASIC.  IT GAVE US GOOD ASSURANCE THAT |
| 15 | 11:57AM | THEY WERE THE PARTNER THAT WE CAN WORK WITH. |
| 16 | 11:57AM | Q.  MR. KNIGHT, AT SOME POINT IN 2005, DID OKI MAKE A |
| 17 | 11:57AM | TECHNICAL PROPOSAL TO NAVCOM FOR HOW IT WOULD ACTUALLY DESIGN |
| 18 | 11:57AM | THESE RF ASIC CHIPS? |
| 19 | 11:57AM | A.  YES, THEY DID. |
| 20 | 11:57AM | Q.  AND COULD YOU TURN TO DOCUMENT 31 IN YOUR BINDER? |
| 21 | 11:57AM | A.  YES. |
| 22 | 11:57AM | Q.  AND DO YOU RECOGNIZE THIS DOCUMENT? |
| 23 | 11:57AM | A.  YES, I DO.  THIS IS A FURTHER MEMO FROM OKI TO NAVCOM. |
| 24 | 11:57AM | THIS ONE ATTACHED THE PROPOSAL OF HOW OKI WOULD IMPLEMENT THE |
| 25 | 11:57AM | CHIPSET AND ALSO SOME ECONOMIC PARAMETERS OF THE CHIP PROPOSAL. |

| | | |
|---|---|---|
| 1 | 01:42PM | SPECIFICATIONS FOR THE OKI RF ASIC, WERE THEY TYPICAL OF THE |
| 2 | 01:42PM | CHANGES THAT YOU SEE -- HAVE SEEN IN YOUR EXPERIENCE WITH THESE |
| 3 | 01:42PM | OTHER PROJECTS? |
| 4 | 01:42PM | A.  I WOULD CHARACTERIZE THEM AS TYPICAL OR EASIER.  THERE |
| 5 | 01:42PM | WASN'T ANYTHING OF BIG SUBSTANCE. |
| 6 | 01:42PM | Q.  MR. KNIGHT, DID OKI AT SOME POINT DELIVER CHIPS MEETING |
| 7 | 01:43PM | THE SPECIFICATIONS IN 2006? |
| 8 | 01:43PM | A.  NO, THEY DID NOT. |
| 9 | 01:43PM | Q.  DID OKI DELIVER CHIPS MEETING THE SPECIFICATIONS IN 2007? |
| 10 | 01:43PM | A.  NO.  IN THE EARLY 2007 THEY DELIVERED A SET OF CHIPS THAT |
| 11 | 01:43PM | WERE BADLY NOT WORKING.  THEY WERE SO POOR WE COULD NOT EVEN |
| 12 | 01:43PM | FIGURE OUT WHAT WAS WRONG WITH THEM. |
| 13 | 01:43PM | Q.  DID OKI DELIVER CHIPS THAT MET THE SPECIFICATIONS IN 2008? |
| 14 | 01:43PM | A.  NO, THEY DID NOT.  IN EARLY 2008 THEY DELIVERED A SECOND |
| 15 | 01:43PM | SET OF NONWORKING RF ASICS SO THIS IS THE SECOND TIME AND AGAIN |
| 16 | 01:43PM | THEY WERE STILL NOT WORKING. |
| 17 | 01:43PM | Q.  TURN FOR ME, PLEASE, TO THE DOCUMENT AT TAB 267 IN YOUR |
| 18 | 01:43PM | BINDER. |
| 19 | 01:43PM | A.  YES. |
| 20 | 01:43PM | Q.  AND DO YOU RECOGNIZE THE DOCUMENT AT TAB 267? |
| 21 | 01:43PM | A.  YES, I DO. |
| 22 | 01:43PM | Q.  AND GENERALLY CAN YOU DESCRIBE IT, PLEASE? |
| 23 | 01:44PM | A.  THIS IS AN E-MAIL CHAIN AND IN THIS CASE THE E-MAIL CHAIN |
| 24 | 01:44PM | WAS STARTED BY DR. PAUL GALYEAN, WHO IS MANAGING THE RF ASIC |
| 25 | 01:44PM | PROGRAM FOR NAVCOM AT THE TIME AND JOHN DEERE, TO MY |

1  01:54PM  Q. AND IN THE LAST SENTENCE OF YOUR E-MAIL, MR. KNIGHT, YOU

2  01:54PM  SAY "IF WE DECIDE TO STOP THE OKI RF ASIC PROJECT, I THINK WE

3  01:54PM  SHOULD REPLACE IT WITH ONE OF OUR NEWER RF PLANS SO THAT WE

4  01:54PM  HAVE A CHIPSET THIS COMPETITIVE."

5  01:54PM  A. I THINK I MEANT "THAT IS COMPETITIVE."

6  01:54PM     BUT WHAT I'M SAYING THERE IS THAT WE'RE NOW AT LEAST

7  01:54PM  THREE YEARS LATE, PROBABLY FOUR YEARS LATE ON THE PROJECT WHEN

8  01:54PM  WE GET WORKING CHIPS.

9  01:54PM     IN THE MEANTIME, THE MARKETPLACE HAS CHANGED. WE NEED TO

10  01:54PM  GET AN UPDATE TO OUR RECEIVER DESIGN SO THAT WE'LL HAVE A

11  01:54PM  PRODUCT THAT IS COMPETITIVE FOUR YEARS LATE.

12  01:54PM  Q. AND DID NAVCOM TERMINATE THE PROJECT AS A RESULT OF THIS

13  01:54PM  DISCUSSION?

14  01:54PM  A. NO, WE DID NOT. WE EVALUATED OUR CHOICES, AND WE THOUGHT

15  01:55PM  THAT THE LOWEST COST, QUICKEST WAY AT THIS POINT TO GET TO A

16  01:55PM  PRODUCT AND GET ONE OUT WAS TO CONTINUE WITH OKI AND CORRECT

17  01:55PM  THE DESIGN WITH OKI'S RF CHIPS AND BRING OUR PRODUCT OUT AS WE

18  01:55PM  PLANNED.

19  01:55PM  Q. AND, MR. KNIGHT, AT SOME POINT IN 2008 DID OKI PRESENT A

20  01:55PM  PLAN FOR FIXING THE PROBLEMS WITH THE CHIPS?

21  01:55PM  A. YES, THEY DID.

22  01:55PM  Q. AND DID YOU ATTEND ANY MEETINGS WHERE OKI'S PLAN FOR

23  01:55PM  FIXING THE PROBLEMS WITH THE CHIP WAS DISCUSSED?

24  01:55PM  A. YES. OKI ENGAGED WITH A NEW COMPANY CALLED TAHOE RF, AN

25  01:55PM  AUBORN, CALIFORNIA COMPANY, AND MY TEAM MET WITH TAHOE RF

| | | |
|---|---|---|
| 1 | 01:55PM | SEVERAL TIMES BY PHONE AND ALSO VISITED THEIR OFFICES IN THE |
| 2 | 01:55PM | SACRAMENTO AREA TO REVIEW THEIR EVALUATION OF OKI'S CHIPS AND |
| 3 | 01:55PM | TO REVIEW TAHOE'S PLAN FOR CORRECTING THE PROBLEMS IN THE CHIP. |
| 4 | 01:56PM | Q.  AND DID NAVCOM AND YOUR TEAM ACCEPT OKI'S PLAN FOR FIXING |
| 5 | 01:56PM | THE PROBLEMS IN THE CHIP? |
| 6 | 01:56PM | A.  TAHOE PROPOSED A REDESIGNING OF MOST, IF NOT ALL, OF THE |
| 7 | 01:56PM | CHIP AND REALLOCATING INTO A FOUR CHIP SOLUTION INSTEAD OF A |
| 8 | 01:56PM | THREE CHIP SOLUTION. |
| 9 | 01:56PM | WE AGREED THAT TO -- TO THOSE SUGGESTED CHANGES IF WE |
| 10 | 01:56PM | COULD GET A PRODUCT PROVIDED THERE WAS NO INCREASE IN COSTS. |
| 11 | 01:56PM | WE SAID IN MEMOS THAT WE WROTE THAT THAT WAS OUR |
| 12 | 01:56PM | CONDITIONS, THAT WE COULD ACCEPT THE NEW REDESIGN, THE |
| 13 | 01:56PM | SUGGESTED REDESIGN, BUT AS LONG AS THE COST WAS NOT CHANGED. |
| 14 | 01:56PM | Q.  WHY DID NAVCOM ACCEPT THE FOUR CHIP REDESIGN PLAN? |
| 15 | 01:57PM | A.  WELL, WE HAD NO GOOD SOLUTIONS.  WE WERE BEHIND SCHEDULE. |
| 16 | 01:57PM | OUR MANAGEMENT WAS MAD AT US.  THE BEST WAY TO GET A PRODUCT |
| 17 | 01:57PM | OUT IN A REASONABLE TIMEFRAME WAS TO CONTINUE ON RATHER THAN TO |
| 18 | 01:57PM | START ALL OVER AND HAVING TO SELECT NEW VENDORS AND START ALL |
| 19 | 01:57PM | OVER FROM SCRATCH. |
| 20 | 01:57PM | Q.  AT ANY MEETINGS THAT YOU PERSONALLY ATTENDED, MR. KNIGHT, |
| 21 | 01:57PM | WHERE THIS FOUR CHIP SOLUTION WITH OKI WAS DISCUSSED, WAS THERE |
| 22 | 01:57PM | ANY DISCUSSION ABOUT TERMINATING THE CONTRACT FOR THE RF ASIC |
| 23 | 01:57PM | PROJECT? |
| 24 | 01:57PM | A.  NO.  WE ONLY DISCUSSED WHAT THE OPTIONS WERE FOR |
| 25 | 01:57PM | COMPLETING THE CONTRACT AND GETTING OUR PRODUCT READY. |

| | | |
|---|---|---|
| 1 | 01:57PM | Q. AT ANY OF THESE MEETINGS THAT YOU ATTENDED WHERE OKI'S |
| 2 | 01:57PM | FOUR CHIP PLAN WAS DISCUSSED, WAS THERE ANY DISCUSSION ABOUT |
| 3 | 01:57PM | ABANDONING THE CONTRACT? |
| 4 | 01:57PM | A. NO. THESE WERE ENGINEERING MEETINGS. WE DIDN'T DISCUSS |
| 5 | 01:57PM | CONTRACTS. WE DISCUSSED HOW TO GET ENGINEERING SOLUTIONS TO |
| 6 | 01:57PM | THE PROBLEMS. |
| 7 | 01:58PM | Q. AND AT SOME POINT, MR. KNIGHT, DID YOU LEARN THAT THE |
| 8 | 01:58PM | PROJECT HAD ENDED? |
| 9 | 01:58PM | A. YES, I DID. |
| 10 | 01:58PM | Q. AND HOW DID YOU LEARN THAT THE PROJECT HAD ENDED? |
| 11 | 01:58PM | A. DR. PAUL GALYEAN FORWARDED E-MAILS FROM OKI STATING THAT |
| 12 | 01:58PM | OKI HAD ELECTED TO TERMINATE THE PROJECT. |
| 13 | 01:58PM | Q. AND WHAT WAS YOUR REACTION WHEN YOU HAD HEARD THAT OKI HAD |
| 14 | 01:58PM | TERMINATED THE PROJECT? |
| 15 | 01:58PM | A. WELL, THIS HAD BEEN SOMETHING THAT I HAD BEEN WORKING ON |
| 16 | 01:58PM | FOR A LONG TIME. IT WAS MY DESIGN. I FELT OWNERSHIP OF THE |
| 17 | 01:58PM | PROJECT AND SO ON. AND I WAS REALLY CRUSHED. I FELT AS BAD AS |
| 18 | 01:58PM | ONE COULD FEEL ON AN ENGINEERING PROJECT. |
| 19 | 01:58PM | Q. THANK YOU, MR. KNIGHT. |
| 20 | 01:58PM | I DON'T HAVE ANY FURTHER QUESTIONS AT THIS TIME. |
| 21 | 01:58PM | THE COURT: CROSS-EXAMINATION? |
| 22 | 01:59PM | MR. LABGOLD: THANK YOU, YOUR HONOR. AND JUST SO |
| 23 | 01:59PM | THE RECORD IS CLEAR, BY THE PARTY'S AGREEMENT, MR. KNIGHT WILL |
| 24 | 01:59PM | ONLY BE CALLED ONE TIME AS WILL SOME OF THE OTHER WITNESSES. |
| 25 | 01:59PM | THE COURT: YES. |

| 1 | 02:50PM | A.  WELL, YEAH.  THE FIRST SET OF CHIPS WAS SO POOR WE |
| 2 | 02:50PM | COULDN'T FIGURE OUT WHAT WAS WRONG. |
| 3 | 02:51PM | Q.  WELL, THE FIRST SET OF CHIPS, UNDISPUTED, DID NOT PERFORM |
| 4 | 02:51PM | AS THEY WERE SUPPOSED TO; CORRECT? |
| 5 | 02:51PM | A.  THAT'S CORRECT. |
| 6 | 02:51PM | Q.  AND SO DID YOU SIMPLY TAKE THEM AND THROW THEM AWAY? |
| 7 | 02:51PM | A.  BASICALLY. |
| 8 | 02:51PM | Q.  NO TESTING WAS DONE WHATSOEVER? |
| 9 | 02:51PM | A.  WELL, WE TESTED THEM, BUT THE TESTING WASN'T VERY USEFUL. |
| 10 | 02:51PM | Q.  SO NO ANALYSIS WAS PERFORMED? |
| 11 | 02:51PM | A.  A LOT OF ANALYSIS WAS PERFORMED, BUT NO GOOD CONCLUSIONS |
| 12 | 02:51PM | WERE MADE FROM IT.  WELL, THAT'S NOT FAIR. |
| 13 | 02:51PM | WE COULD NOT FIGURE OUT WHAT WAS WRONG IN THESE SECTIONS |
| 14 | 02:51PM | FROM THAT SET OF CHIPS. |
| 15 | 02:51PM | Q.  AND, IN FACT, BASED ON YOUR INITIAL TESTING AND ANALYSIS A |
| 16 | 02:51PM | SECOND SET OF CHIPS WAS PLANNED WITH THE IDEA OF CORRECTING |
| 17 | 02:51PM | SOME OF THE DEFECTS THAT YOU HAD IDENTIFIED; CORRECT? |
| 18 | 02:51PM | A.  YES, AND MAKING THE OTHER SECTIONS THAT WE DIDN'T KNOW |
| 19 | 02:51PM | WHAT THE PROBLEM WAS, CORRECTING THE DESIGN SO THAT WE HAD A |
| 20 | 02:52PM | BETTER CHANCE THAT IT WOULD ACTUALLY WORK. |
| 21 | 02:52PM | Q.  SO THAT THE SECOND SET OF CHIPS WAS INTENDED TO CORRECT |
| 22 | 02:52PM | THOSE PROBLEMS WHICH YOU COULD IDENTIFY AND THEN BE DIAGNOSTIC |
| 23 | 02:52PM | IN NATURE; CORRECT? |
| 24 | 02:52PM | A.  I WOULD AGREE WITH THAT. |
| 25 | 02:52PM | Q.  IF YOU COULD TAKE A LOOK AT THE DOCUMENT WE HAVE MARKED AS |

| 1 | 03:19PM | NONDISCLOSURE AGREEMENT. |
| 2 | 03:19PM | Q.  DID OKI EVER TELL YOU, MR. KNIGHT, DURING 2005, THAT |
| 3 | 03:19PM | PEREGRINE DID NOT WANT TO BE INVOLVED IN THE RF ASIC PROJECT? |
| 4 | 03:19PM | A.  NO. |
| 5 | 03:19PM | Q.  AND DID PEREGRINE EVER TELL YOU DURING ANY OF THE MEETINGS |
| 6 | 03:19PM | THAT YOU ATTENDED WITH THEM IN 2005 THAT THEY DID NOT WANT TO |
| 7 | 03:19PM | BE INVOLVED IN THE RF ASIC PROJECT? |
| 8 | 03:19PM | A.  NO.  IN FACT, THEY ACTED AND THEY MET WITH US AT THE |
| 9 | 03:19PM | MEETINGS AND THEY PRESENTED THE DESIGNS AS THEY WERE DOING |
| 10 | 03:19PM | THEM.  I WAS -- I THOUGHT THEY WERE INVOLVED IN THE DESIGN OF |
| 11 | 03:19PM | THE CHIP. |
| 12 | 03:19PM | Q.  TURN FOR ME, PLEASE, TO EXHIBIT 267, AND THIS IS IN THE |
| 13 | 03:19PM | WHITE BINDER.  AND SORRY WE KEEP FLIPPING BACK AND FORTH FROM |
| 14 | 03:19PM | THE BLACK TO THE WHITE BINDER. |
| 15 | 03:19PM | A.  YES. |
| 16 | 03:19PM | Q.  AND DO YOU RECALL SOME QUESTIONS FROM MR. LABGOLD |
| 17 | 03:19PM | REGARDING THIS E-MAIL AND PARTICULARLY WHEN THE CHIPS WOULD BE |
| 18 | 03:20PM | RECEIVED, WHETHER THEY WOULD BE COMPETITIVE FOR DEERE? |
| 19 | 03:20PM | A.  YES. |
| 20 | 03:20PM | Q.  AND DO YOU REMEMBER THAT?  AND I THINK MR. LABGOLD MADE |
| 21 | 03:20PM | THIS TIMELINE.  DO YOU REMEMBER THOSE QUESTIONS? |
| 22 | 03:20PM | A.  YES. |
| 23 | 03:20PM | Q.  AND, MR. KNIGHT, IF OKI HAD COMPLETED THE DESIGN ON TIME |
| 24 | 03:20PM | AND DELIVERED THE CHIPS TO NAVCOM AND DEERE ON TIME, WOULD |
| 25 | 03:20PM | THESE CHIPS HAD BEEN COMPETITIVE FOR DEERE AND NAVCOM'S |

| | | |
|---|---|---|
| 1 | 03:20PM | PURPOSES? |
| 2 | 03:20PM | A. YES. |
| 3 | 03:20PM | Q. WHY? |
| 4 | 03:20PM | A. WELL, THEY MET OUR NEEDS. THEY PROVIDED ACCESS TO ALL OF |
| 5 | 03:20PM | THE SIGNALS THAT WERE AVAILABLE. GLONASS WASN'T YET AVAILABLE; |
| 6 | 03:20PM | GALILEO WAS YEARS AND YEARS AWAY; COMPASS WAS YEARS AND YEARS |
| 7 | 03:20PM | AWAY. ALTHOUGH I WAS WORRIED ABOUT THEM AND TALKING ABOUT |
| 8 | 03:20PM | THEM, THEY WEREN'T THERE YET. |
| 9 | 03:20PM | SO FOR THE TIMEFRAME THAT THE PRODUCT WAS INTENDED FOR, |
| 10 | 03:21PM | THE SIGNALS PROVIDED BY THIS CHIP WERE PERFECTLY ADEQUATE AND |
| 11 | 03:21PM | FOR WHAT WAS NEEDED. |
| 12 | 03:21PM | Q. COULD GLONASS OR GALILEO FUNCTIONALITY HAVE BEEN ADDED TO |
| 13 | 03:21PM | THE RECEIVER ON TOP OF THE RF ASIC CHIPS IF THEY HAD BEEN |
| 14 | 03:21PM | DELIVERED? |
| 15 | 03:21PM | A. YES. |
| 16 | 03:21PM | Q. IF OKI HAD DELIVERED WORKING CHIPS THAT MET THE |
| 17 | 03:21PM | SPECIFICATIONS IN 2007, THAT WOULD HAVE BEEN FOLLOWED BY A |
| 18 | 03:21PM | PERIOD OF VALIDATION AT DEERE; CORRECT? |
| 19 | 03:21PM | A. THAT'S CORRECT. |
| 20 | 03:21PM | Q. AND IF THOSE CHIPS HAD BEEN DELIVERED IN 2007 AND THEY MET |
| 21 | 03:21PM | THE SPECIFICATIONS, WOULD THEY STILL HAVE BEEN COMPETITIVE AND |
| 22 | 03:21PM | USEFUL FOR PURPOSES OF DEERE AND NAVCOM? |
| 23 | 03:21PM | A. YES. |
| 24 | 03:21PM | Q. SAME REASONS AS BEFORE? |
| 25 | 03:21PM | A. SAME. |

1    04:06PM    PERFORMING CHIPS AND IF IT WERE HELPFUL TO THEM TO HAVE THE USE

2    04:06PM    OF THIS NAVCOM INTELLECTUAL PROPERTY AND THESE PATENTS, THEN WE

3    04:06PM    WERE MAKING IT AVAILABLE TO THEM.

4    04:06PM        THE LAST PART OF THE CONTRACT IS THE VERSION 19 OF THE RF

5    04:06PM    ASIC SPECIFICATION.

6    04:06PM    Q.   DR. GALYEAN, I WANT TO TAKE YOU BACK TO SCHEDULE A FOR A

7    04:06PM    MOMENT, PLEASE.

8    04:06PM    A.   YES.

9    04:06PM    Q.   IN THE SECOND PARAGRAPH THE SCHEDULE A SAYS, "IT IS

10   04:07PM    UNDERSTOOD BY SELLER AND BUYER THAT THE NOVA RF ASIC

11   04:07PM    SPECIFICATION IS NOT COMPLETELY DEFINITIVE, THAT SOME

12   04:07PM    CHARACTERISTICS HAVE BEEN SPECIFIED AS TBD, AND THAT SOME

13   04:07PM    CHARACTERISTICS MAY BE CHANGED WITH THE INTENTION OF PROVIDING

14   04:07PM    SELLER, IN CONSULT WITH BUYER, THE LATITUDE TO DESIGN THE

15   04:07PM    CHIPSET WITH THE HIGHEST PERFORMANCE FEASIBLE AND REASONABLE."

16   04:07PM        WHAT DOES THIS MEAN THAT THE SPECIFICATION IS NOT

17   04:07PM    COMPLETELY DEFINITIVE?

18   04:07PM    A.   WHEN YOU START THE DEVELOPMENT OF SOMETHING LIKE AN RF

19   04:07PM    ASIC, THERE ARE THINGS THAT YOU SIMPLY CANNOT KNOW AND CANNOT

20   04:07PM    DEFINE AT THAT POINT IN TIME.

21   04:07PM        THERE ARE THINGS THAT ARE ONLY KNOWN AS THE DESIGN IS

22   04:07PM    PRODUCED, AS THE DESIGN IS DEVELOPED.

23   04:07PM        SO AS OKI GOES THROUGH THE DEVELOPMENT PROCESS, THESE

24   04:07PM    THINGS BECOME KNOWN, AND THEN THEY CAN BE INCLUDED IN THE

25   04:08PM    SPECIFICATION.

| | | |
|---|---|---|
| 1 | 04:08PM | IN SOME CASES WE COULD PIN SOMETHING DOWN, BUT IT WOULD |
| 2 | 04:08PM | SIMPLY TIE OKI'S HANDS.  WE WANT TO GIVE THEM THE GREATEST |
| 3 | 04:08PM | AMOUNT OF FLEXIBILITY TO DESIGN A PRODUCT AND SPECIFICATIONS |
| 4 | 04:08PM | AND AS HIGH PERFORMING AS POSSIBLE. |
| 5 | 04:08PM | SO WE DIDN'T TRY TO PIN EVERYTHING DOWN AND SOME THINGS |
| 6 | 04:08PM | COULD NOT HAVE BEEN PINNED DOWN. |
| 7 | 04:08PM | Q.  WAS THIS CONCEPT THE SUBJECT OF DISCUSSION BETWEEN OKI AND |
| 8 | 04:08PM | NAVCOM DURING THE NEGOTIATION OF THE AGREEMENT? |
| 9 | 04:08PM | A.  IT WAS.  THE OKI TEAM WAS INVOLVED IN THE VARIOUS VERSIONS |
| 10 | 04:08PM | OF THE SPECIFICATION THAT CAME BEFORE 19, AND AS WE HAD THE |
| 11 | 04:08PM | PRELIMINARY TALKS WITH THEM AND AS THEY DID THEIR ANALYSES, YOU |
| 12 | 04:08PM | KNOW, BEFORE THE CONTRACT WAS SIGNED, THERE WERE PARTS OF THE |
| 13 | 04:09PM | SPECIFICATIONS THAT CHANGED AND THE SPECIFICATION NUMBERS |
| 14 | 04:09PM | ADVANCE. |
| 15 | 04:09PM | WHEN WE GOT READY TO SIGN THE CONTRACT, THESE NUMBERS HAD |
| 16 | 04:09PM | ADVANCED UP TO 19 AND SOME OF THE DETAILS THAT WERE ABSENT |
| 17 | 04:09PM | EARLIER HAD BEEN FILLED IN BECAUSE OKI HAD SOME PRELIMINARY |
| 18 | 04:09PM | IDEAS ABOUT THE DESIGN. |
| 19 | 04:09PM | SO, YES, OKI WAS -- THE OKI TEAM WAS INVOLVED IN THE |
| 20 | 04:09PM | CHANGES IN THESE SPECIFICATIONS AS WE CAME UP TO 19 IN THE |
| 21 | 04:09PM | CONTRACT. |
| 22 | 04:09PM | Q.  DR. GALYEAN, OTHER THAN THE LANGUAGE THAT WE HAVE BEEN |
| 23 | 04:09PM | LOOKING AT IN SCHEDULE A, IS THERE ANY OTHER LANGUAGE ANYWHERE |
| 24 | 04:09PM | ELSE IN THE AGREEMENT REFLECTING THIS CONCEPT THAT THE |
| 25 | 04:09PM | SPECIFICATION MAY CHANGE DURING THE COURSE OF THE PROJECT? |

| | | |
|---|---|---|
| 1 | 04:09PM | A.  YES, THERE IS.  THIS LANGUAGE IS IN SCHEDULE A IN THE |
| 2 | 04:09PM | DETAILED TERMS AND CONDITIONS IT APPEARS IN THE SECTION 2.3.1. |
| 3 | 04:10PM | AND IT APPEARS AGAIN IN SECTION 2.5.2.  AND THEN THIS CONCEPT |
| 4 | 04:10PM | OF A VARIABLE, YOU KNOW, LIVING DOCUMENT KIND OF SPECIFICATION |
| 5 | 04:10PM | UP HERE IS ONCE MORE IN THE SPECIFICATION ITSELF. |
| 6 | 04:10PM | Q.  COULD WE PUT UP 2.3.1, PLEASE, JOHN, THE FIRST SECTION |
| 7 | 04:10PM | THAT DR. GALYEAN MENTIONED. |
| 8 | 04:10PM | DR. GALYEAN, CAN YOU PLEASE READ FOR THE MEMBERS OF THE |
| 9 | 04:10PM | JURY THE LANGUAGE THAT YOU WERE REFERRING TO IN YOUR PRIOR |
| 10 | 04:10PM | ANSWER REGARDING THIS SECTION? |
| 11 | 04:10PM | A.  IN 2.3.1 THE LAST PARAGRAPH, THIS IS THE PARAGRAPH TALKING |
| 12 | 04:11PM | ABOUT CHANGES THAT MIGHT OCCUR DURING THE DEVELOPMENT PHASE, IT |
| 13 | 04:11PM | SAYS, "NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS |
| 14 | 04:11PM | SECTION, SOME CHANGE IN THE SPECIFICATIONS LISTED IN SCHEDULE A |
| 15 | 04:11PM | IS EXPECTED, AND THE LANGUAGE IN SCHEDULE A TAKES PRECEDENCE |
| 16 | 04:11PM | OVER THE LANGUAGE IN THIS SECTION." |
| 17 | 04:11PM | Q.  AND THEN, DR. GALYEAN, YOU MENTIONED ANOTHER SECTION OF |
| 18 | 04:11PM | THE AGREEMENT WITH SIMILAR LANGUAGE.  WHICH SECTION WAS THAT? |
| 19 | 04:11PM | A.  THAT WAS 2.5.2. |
| 20 | 04:11PM | Q.  CAN WE PUT 2.5.2 UP, PLEASE. |
| 21 | 04:11PM | CAN YOU READ FOR THE MEMBERS OF THE JURY THE LANGUAGE THAT |
| 22 | 04:11PM | YOU WERE REFERRING TO IN 2.5.2? |
| 23 | 04:11PM | A.  "NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THIS SECTION, |
| 24 | 04:11PM | SOME CHANGE IN THE SPECIFICATIONS IN SCHEDULE A IS EXPECTED AND |
| 25 | 04:11PM | THE LANGUAGE IN SCHEDULE A TAKES PRECEDENCE OVER THE LANGUAGE |

| 1 | 04:11PM | IN THIS SECTION." |
| 2 | 04:12PM | Q.  AND THEN I THINK IN YOUR PRIOR ANSWER YOU ALSO MENTIONED |
| 3 | 04:12PM | SOMETHING ELSE ABOUT THE SPECIFICATION LANGUAGE? |
| 4 | 04:12PM | A.  YES. |
| 5 | 04:12PM | Q.  AND CAN WE PUT THE LAST PART UP.  8379.  A LITTLE FURTHER |
| 6 | 04:12PM | BACK.  8379. |
| 7 | 04:12PM | DR. GALYEAN, WHAT LANGUAGE IN THE SPECIFICATION VERSION 19 |
| 8 | 04:12PM | WERE YOU REFERRING TO IN YOUR PRIOR ANSWER? |
| 9 | 04:12PM | A.  THERE'S TWO PLACES WHERE THIS CONCEPT IS ALLUDED TO.  ONE |
| 10 | 04:12PM | OF THEM IS IN THE, FOR INSTANCE, IN THE FIRST PARAGRAPH THE |
| 11 | 04:13PM | SENTENCE THAT STARTS OUT "THE TERM RF ASIC COULD REFER TO A |
| 12 | 04:13PM | SINGLE MONOLITHIC PART BUT WILL MORE LIKELY BE A SET OF |
| 13 | 04:13PM | INDIVIDUALLY PACKAGED IC'S." |
| 14 | 04:13PM | SO THIS IS SAYING THAT WE DON'T KNOW WHETHER WE'RE GOING |
| 15 | 04:13PM | TO HAVE ONE, TWO, THREE OR WHATEVER NUMBER OF CHIPS.  THIS IS |
| 16 | 04:13PM | AN EXAMPLE OF THE LATITUDE THAT WE INTENDED TO ALLOW OKI TO |
| 17 | 04:13PM | DESIGN THE CHIP. |
| 18 | 04:13PM | SO THE SPECIFICATION AT THIS POINT IS REFLECTING THAT OUR |
| 19 | 04:13PM | INTEREST IN NOT HAVING IT PIN DOWN ALLOWING THE DESIGNERS THE |
| 20 | 04:13PM | GREATEST FLEXIBILITY TO DESIGN. |
| 21 | 04:13PM | ANOTHER EXAMPLE IS UNDER THE SECOND PARAGRAPH UNDER SCOPE |
| 22 | 04:13PM | WHERE IT SAYS, "AS THE REQUIREMENTS DOCUMENT FOR THE RF IC |
| 23 | 04:14PM | DESIGN TEAM, THIS SPECIFICATION DOES NOT DELINEATE THE |
| 24 | 04:14PM | INTERFACES BETWEEN THE RF ASICS.  THESE SPECIFICATIONS WILL BE |
| 25 | 04:14PM | GENERATED AS PART OF THE DESIGN PROCESS." |

| | | |
|---|---|---|
| 1 | 04:14PM | AND HE GOES ON TO EXPLAIN WHY, YOU KNOW, WHY THAT IS |
| 2 | 04:14PM | IMPORTANT. |
| 3 | 04:14PM | BUT THE POINT IS THAT THE INTERCONNECTIONS BETWEEN THESE, |
| 4 | 04:14PM | IF THERE ARE THREE IC'S, THE INTERCONNECTIONS CAN'T BE KNOWN |
| 5 | 04:14PM | BECAUSE THE CHIP HAS NOT BEEN DESIGNED YET AND THE |
| 6 | 04:14PM | SPECIFICATION IS SIMPLY SAYING THAT IT IS UNKNOWN AT THIS |
| 7 | 04:14PM | STAGE, AND IT WILL BE FILLED IN LATER.  IT IS JUST POINTING |
| 8 | 04:14PM | INTO THE LIVING DOCUMENT AND THE CHARACTERISTICS OF THE |
| 9 | 04:14PM | SPECIFICATION. |
| 10 | 04:14PM | Q.  DR. GALYEAN, TURN TO SCHEDULE C OF THE DOCUMENT.  SO WE'RE |
| 11 | 04:14PM | TURNING BACK. |
| 12 | 04:14PM | A.  YES. |
| 13 | 04:14PM | Q.  AND YOU MENTIONED THAT ESTIMATED DEVELOPMENT TIME. |
| 14 | 04:15PM | CAN WE BLOW UP, JOHN, AT THE TOP, TIME, TEN MONTHS.  THANK |
| 15 | 04:15PM | YOU. |
| 16 | 04:15PM | BUT, DR. GALYEAN, WHO PROVIDED THE ESTIMATED DEVELOPMENT |
| 17 | 04:15PM | TIME THAT IS REFLECTED IN THIS AGREEMENT? |
| 18 | 04:15PM | DID THAT COME FROM DEERE AND NAVCOM, OR DID THAT COME FROM |
| 19 | 04:15PM | OKI? |
| 20 | 04:15PM | A.  THAT CAME FROM OKI.  THAT WAS THEIR ESTIMATE BASED UPON |
| 21 | 04:15PM | THEIR WORK AND THEIR PRELIMINARY STUDIES OF THE REQUIREMENTS AS |
| 22 | 04:15PM | TO HOW LONG IT WOULD TAKE THEM TO DO THE CHIPS. |
| 23 | 04:15PM | Q.  AND THEN A LITTLE BIT FURTHER DOWN IS THE SCHEDULE C |
| 24 | 04:15PM | PAYMENT TERMS, AND I THINK YOU MENTIONED IT IN YOUR PRIOR |
| 25 | 04:15PM | TESTIMONY. |

| | | |
|---|---|---|
| 1 | 04:15PM | CAN YOU DESCRIBE FOR THE MEMBERS OF THE JURY, PLEASE, WHAT |
| 2 | 04:15PM | THESE PAYMENT TERMS WERE? |
| 3 | 04:15PM | A.  SURE.  WHAT THE PAYMENT TERMS SAY IS THAT NAVCOM WILL PAY |
| 4 | 04:15PM | OKI $300,000 WHEN WE SIGN THE CONTRACT; IT SAYS THAT WE'LL PAY |
| 5 | 04:16PM | THEM ANOTHER $120,000 WHEN THEY DELIVER CERTAIN TECHNICAL |
| 6 | 04:16PM | SPECIFICATIONS; AND, IT SAYS THAT WE'LL PAY THEM FURTHER |
| 7 | 04:16PM | $150,000 UPON DELIVERY OF ENGINEERING PROTOTYPES. |
| 8 | 04:16PM | SO OUR PAYMENTS TO OKI WERE STAGED IN THREE PAYMENTS. |
| 9 | 04:16PM | Q.  AND, DR. GALYEAN, DID NAVCOM MAKE ANY OF THOSE PAYMENTS TO |
| 10 | 04:16PM | OKI DURING THE COURSE OF THE PROJECT? |
| 11 | 04:16PM | A.  WE DID.  WE PAID THE $300,000 WHEN THE CONTRACT WAS |
| 12 | 04:16PM | SIGNED, AND WE PAID THE $120,000 WHEN THE BLOCK SPECIFICATIONS |
| 13 | 04:16PM | AND THE TECHNICAL INFORMATION WAS PROVIDED. |
| 14 | 04:16PM | Q.  AND WHY DID NAVCOM NOT MAKE THE THIRD PAYMENT? |
| 15 | 04:16PM | A.  WE DID NOT MAKE THE THIRD PAYMENT BECAUSE WE NEVER |
| 16 | 04:16PM | RECEIVED WORKING ENGINEERING PROTOTYPES. |
| 17 | 04:16PM | Q.  DR. GALYEAN, DID OKI EVER ASK NAVCOM TO MAKE THE THIRD |
| 18 | 04:17PM | PAYMENT? |
| 19 | 04:17PM | A.  NO, THEY DIDN'T. |
| 20 | 04:17PM | Q.  DR. GALYEAN, IS DEERE & COMPANY A SIGNATORY TO THIS |
| 21 | 04:17PM | CONTRACT? |
| 22 | 04:17PM | A.  NO, THEY ARE NOT. |
| 23 | 04:17PM | Q.  AND WHY NOT? |
| 24 | 04:17PM | A.  AND BASIC REASON IS WE SAW NO REASON WHY DEERE WOULD BE A |
| 25 | 04:17PM | SIGNATORY.  AT THE FRONT OF THE CONTRACT IT STATES THAT NAVCOM |

| | | |
|---|---|---|
| 1 | 04:35PM | AND A RESPONSE TO A NUMBER OF PEOPLE, SOME OF WHOM HAVE |
| 2 | 04:35PM | JOHN DEERE E-MAIL ADDRESSES. |
| 3 | 04:35PM | CAN YOU JUST TELL THE MEMBERS OF THE JURY BRIEFLY WHO |
| 4 | 04:35PM | THOSE PEOPLE ARE AND WHY YOU FORWARDED THIS E-MAIL TO THEM? |
| 5 | 04:35PM | A. SURE. ALL OF THESE PEOPLE ARE JOHN DEERE EMPLOYEES. SOME |
| 6 | 04:35PM | OF THEM ARE THE TECHNICAL PEOPLE WORKING ON THE PROJECT WHO |
| 7 | 04:35PM | SIMPLY NEED TO KNOW IF THEY'RE NOT GOING TO RECEIVE PARTS THEY |
| 8 | 04:36PM | MIGHT BE PLANNING ON HAVING AT A CERTAIN POINT IN TIME; SOME OF |
| 9 | 04:36PM | THEM BELONG TO SUPPORT GROUPS WHO NEED TO KNOW IF THERE ARE |
| 10 | 04:36PM | DELAYS. SO, FOR INSTANCE, FOR MANUFACTURING PEOPLE, IT MEANS |
| 11 | 04:36PM | THAT THEY'RE NOT ABLE TO BUILD AND DO A CERTAIN BUILD AT A |
| 12 | 04:36PM | CERTAIN POINT IN TIME BECAUSE WE CANNOT GIVE THEM THE PARTS. |
| 13 | 04:36PM | OTHERS MAY BE IN SUPPORT GROUPS, PEOPLE WHO MIGHT BE |
| 14 | 04:36PM | PLANNING TESTING OF THE PRODUCTS. |
| 15 | 04:36PM | SO ALL OF THESE PEOPLE ARE IMPACTED WHEN SLIPS OCCUR IN A |
| 16 | 04:36PM | KEY COMPONENT LIKE THE RF ASIC. |
| 17 | 04:36PM | Q. DR. GALYEAN, WAS PLAINTIFFS' EXHIBIT 150 THE ONLY E-MAIL |
| 18 | 04:36PM | THAT YOU SENT TO OKI DURING THE COURSE OF THE RF ASIC PROJECT |
| 19 | 04:36PM | COMPLAINING ABOUT SCHEDULE DELAYS? |
| 20 | 04:36PM | A. NO. THERE WERE, THERE WERE MANY OF THESE VERBAL AND |
| 21 | 04:36PM | WRITTEN. THIS IS JUST AN EXAMPLE OF ONE. |
| 22 | 04:36PM | Q. DR. GALYEAN, DID NAVCOM GET ANY CHIPS FROM OKI DURING THE |
| 23 | 04:37PM | FIRST TEN MONTHS AFTER THE AGREEMENT WAS SIGNED? |
| 24 | 04:37PM | A. NO, WE DID NOT. |
| 25 | 04:37PM | Q. AND WHEN DID NAVCOM RECEIVE THE FIRST SET OF CHIPS FROM |

| | | |
|---|---|---|
| 1 | 04:37PM | OKI? |
| 2 | 04:37PM | A.  WE GOT THE FIRST SET OF CHIPS IN APRIL OF 2007. |
| 3 | 04:37PM | Q.  DID THOSE CHIPS MEET THE SPECIFICATIONS IN THE AGREEMENT? |
| 4 | 04:37PM | A.  NO, THEY DID NOT.  ALL THREE CHIPS HAD MAJOR FLAWS AND |
| 5 | 04:37PM | PROBLEMS.  THEY WEREN'T ANYWHERE NEAR TO MEETING THE |
| 6 | 04:37PM | SPECIFICATIONS. |
| 7 | 04:37PM | Q.  DR. GALYEAN, PLEASE TURN TO TAB PX 49 IN YOUR BINDER.  PX |
| 8 | 04:37PM | 49. |
| 9 | 04:38PM | A.  YES. |
| 10 | 04:38PM | Q.  DO YOU RECOGNIZE THIS DOCUMENT? |
| 11 | 04:38PM | A.  I DO.  THIS IS A STRING OF E-MAILS ORIGINATING IN ONE FROM |
| 12 | 04:38PM | JACOB MAKHINSON TO ME, CONTINUING WITH ME FORWARDING IT TO |
| 13 | 04:38PM | VARIOUS FOLKS AND THEN RESPONDING TO IT. |
| 14 | 04:38PM | MR. SCHUMAN:  YOUR HONOR, I WOULD MOVE PLAINTIFFS' |
| 15 | 04:38PM | EXHIBIT 49 INTO EVIDENCE. |
| 16 | 04:38PM | MR. LABGOLD:  NO OBJECTION. |
| 17 | 04:38PM | THE COURT:  IT'S RECEIVED AND IT MAY BE PUBLISHED. |
| 18 | 04:38PM | (PLAINTIFFS' EXHIBIT 49 WAS RECEIVED IN EVIDENCE.) |
| 19 | 04:38PM | BY MR. SCHUMAN: |
| 20 | 04:38PM | Q.  DR. GALYEAN, WITHOUT GOING INTO THE TECHNICAL DETAIL, |
| 21 | 04:38PM | WOULD YOU EXPLAIN FOR THE MEMBERS OF THE JURY THE SUBJECT |
| 22 | 04:38PM | MATTER OF JACOB MAKHINSON'S E-MAIL TO YOU? |
| 23 | 04:38PM | A.  SURE.  JACOB MAKHINSON IS THE SENIOR RF MANAGER THERE AT |
| 24 | 04:38PM | NAVCOM FOR THIS PROJECT.  SO HE'S THE GENTLEMAN WHEN WE GOT |
| 25 | 04:39PM | CHIPS, IT WAS HIS RESPONSIBILITY TO PUT THEM ON A PRINTED |

| | | |
|---|---|---|
| 1 | 04:55PM | RIGHT NOW, YOUR HONOR, BUT I THINK THE PRACTICE OF GETTING YOU |
| 2 | 04:55PM | A NOTE IF WE NEED ANY RESOLUTION BEFORE THE JURY COMES IN. |
| 3 | 04:55PM | THE COURT:  SURE.  LET ME KNOW.  I'M NOT INVITING |
| 4 | 04:55PM | THAT. |
| 5 | 04:55PM | MR. SCHUMAN:  WELL, WE ARE WORKING DILIGENTLY TO TRY |
| 6 | 04:55PM | TO RESOLVE ANY SUCH ISSUES. |
| 7 | 04:55PM | THE COURT:  WELL, I APPRECIATE THAT.  YOU HAVE |
| 8 | 04:55PM | ACCOMPLISHED THAT A GREAT DEAL SO I DO APPRECIATE THAT.  WHY |
| 9 | 04:55PM | DON'T I SEE YOU TOMORROW MORNING. |
| 10 | 04:55PM | MR. LABGOLD:  THANK YOU, YOUR HONOR. |
| 11 | 04:56PM | THE COURT:  ALL RIGHT. |
| 12 | 04:56PM | (COURT CONCLUDED AT 4:56 P.M.) |
| 13 | | |
| 14 | | |
| 15 | | |
| 16 | | |
| 17 | | |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | | |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | | |

1

2

3          CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8    STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9    280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10   CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12   A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13   ABOVE-ENTITLED MATTER.

14

15

                    _____

16              IRENE RODRIGUEZ, CSR, CRR

                CERTIFICATE NUMBER 8076

17

18

                DATED:  APRIL 22, 2014

19

20

21

22

23

24

25