NAGASHIMA & HASHIMOTO
MARC R. LABGOLD (*pro hac vice*)
mlabgold@labgoldlaw.com
PATRICK J. HOEFFNER (*pro hac vice*)
phoeffner@labgoldlaw.com
12007 Sunrise Valley Drive, Suite 110
Reston, Virginia 20191
Telephone: 877-401-8855
Facsimile: 877-401-8855

NAGASHIMA & HASHIMOTO
TAKAAKI NAGASHIMA (*pro hac vice*)
nagashima@nandhlaw.com
Hirakawa-cho, KS Bldg., 2nd Floor
2-4-14, Hirakawa-cho, Chiyoda-ku
Tokyo 102-0098 Japan
Telephone: +81-3-3239-5750
Facsimile: +81-3-3239-8538

MAKMAN & MATZ LLP
DAVID A. MAKMAN (SBN 178195)
ROBERT C. MATZ (SBN 217822)
655 Mariner's Island Blvd. Suite 306
San Mateo, California 94404
Telephone: 650-242-1560
Facsimile: 650-242-1547

Attorneys for Defendant
Oki Electric Industry Co., Ltd.

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

| | |
|---|---|
| NAVCOM TECHNOLOGY, INC.; and DEERE & COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>OKI ELECTRIC INDUSTRY CO., LTD.; and DOES ONE through TEN inclusive,<br><br>Defendants. | Case No. 5:12-cv-04175 EJD<br><br>**DEFENDANT OKI ELECTRIC INDUSTRY CO. LTD.'S RESPONSE TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b)**<br><br>Date: September 12, 2014<br>Time: 9:00 AM<br>Place: Courtroom 4, San Jose<br>Judge: Honorable Edward J. Davila |

1

2

## <u>TABLE OF CONTENTS</u>

3    I.     Introduction ............................................................................................. 1

4    II.    The Jury's Verdict Was Supported by Substantial Evidence................................. 1

5            a.  The Evidence Shows that Oki Electric Did Not Breach § 1.0 ..................... 2

6            b.  Oki Electric Did Not Breach § 2.6 ........................................................ 10

7

8            c.  Oki Electric Did Not Breach § 2.8 ........................................................ 13

9            d.  Plaintiffs' Alleged Damages Were Not Proximately Caused
                 by Any Alleged Breach Including Any Alleged Breach
10               of §§ 2.6 and 2.8 ............................................................................... 16

11           e.  Damages Beyond the Period of the Alleged Notice of Termination
                 Are Precluded by Oki Semiconductor's Right to Terminate.................... 18

12

13   III.   Oki Electric's Proved Its Affirmative Defenses at Trial................................... 20

14           a.  The Parties' Amendment of the Agreement Was a Novation .................... 20

15           b.  Oki Electric Proved at Trial That the Parties Mutually
                 Rescinded or Abandoned the Amended Agreement ................................ 21

16
             c.  Oki Electric Proved Waiver at Trial ..................................................... 24

17
     IV.    Conclusion........................................................................................... 25

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>                                                                                      <u>Page</u>

3

4

*Affordable Hous. Dev. Corp. v. City of Fresno*,
    433 F.3d 1182 (9th Cir. 2006) ...................................................... 8

5

*Aguilera v. Pirelli Armstrong Tire Corp.*,
    223 F.3d 1010 (9th Cir. 2000) ...................................................... 8

6

7

*Brandon & Tibbs*,
    226 Cal. App. 3d 468 (Cal. Ct. App. 1990) ............................... 13

8

9

*Brothers v. Hewlett-Packard Co.*,
    2007 WL 485979 (N.D. Cal. Feb. 12, 2007) .............................. 14

10

*Citrilite Co., Inc. v. Cott Beverages, Inc.*,
    2011 WL 284915 (E.D. Cal. Jan. 25, 2011) ............................... 19

11

12

*Citri-Lite Co. v. Cott Beverages, Inc.*,
    721 F. Supp. 2d 912 (E.D. Cal. 2010) ........................................ 19

13

14

*Du Zeff's Hollywood, Inc. v. Wald*,
    235 Cal. App. 2d 678 (Cal. Ct. App. 1965) ............................... 10

15

16

*Dugan v. Nance*,
    2013 WL 6633072 (C.D. Cal. Dec. 16, 2013) ....................... 14, 15

17

*Fetsch v. City of Roseburg*,
    2013 WL 2631495 (D. Or. June 11, 2013) ................................... 3

18

19

*Goodwall Const. Co. v. Beers Const. Co.*,
    991 F.2d 751, 757 (Fed. Cir. 1993) ...................................... 18, 20

20

21

*Guy v. City of San Diego*,
    608 F.3d 582 (9th Cir. 2010) ...................................................... 15

22

*Hensler v. City of Los Angeles*,
    124 Cal. App. 2d 71 (1954) ........................................................ 19

23

24

*Howard v. Cnty. of Amador*,
    220 Cal. App. 3d 962 (1990) ...................................................... 21

25

26

*Martin v. Pritchard*,
    52 Cal. App. 720 (Cal. Ct. App. 1921) .................................... 9-10

27

28

*Martin v. U-Haul Co. of Fresno*,
    204 Cal. App. 3d 396 (Cal. Ct. App. 1988) ....................... 18, 19, 20

*McEuin v. Crown Equip. Corp.*,
  328 F.3d 1028 (9th Cir. 2003) ........................................................ 6

*Morey v. Vannucci*,
  64 Cal. App. 4th 904 (1998) .......................................................... 16

*Oldenkott v. American Elec. Inc.*,
  14 Cal. App. 3d 198 (1971) ........................................................... 20

*Patent Scaffolding Co. v. William Simpson Const. Co.*,
  256 Cal. App.2d 506 (2d Dist.1967) ............................................... 8

*Roberts v. W. Pac. R. Co.*,
  142 Cal. App. 2d 317 (Cal. Ct. App. 1956) ...................................... 8

*Rudgayzer v. Yahoo! Inc.*,
  2012 WL 5471149 (N.D. Cal. Nov. 9, 2012) ................................... 8

*Schlinkman v. Davis*,
  195 Cal. App. 2d 603 (1961) ......................................................... 22

*Shaffer v. Debbas*,
  17 Cal. App. 4th 33 (1993) ............................................................ 19

*Sharp Structural, Inc. v. Franklin Mfg., Inc.*,
  283 F. App'x 585 (9th Cir. 2008) ................................................. 6, 9

*Strait v. Wilkins*,
  23 Cal. App. 774 (Cal. Ct. App. 1914) ........................................... 8

*Thrifty Payless, Inc. v. Mariners Mile Gateway*, LLC,
  185 Cal. App. 4th 1050 (2010) ..................................................... 19

*In re Toyota Corp Unintended Acceleration Litig.*,
  754 F. Supp. 2d 1145 (C.D. Cal. 2010) ......................................... 14

*Travelers Ins. Co. v W.C.A.B.*,
  68 Cal. 2d 7 (1967) ................................................................. 22, 23

*Valle de Oro Bank v. Gamboa*,
  26 Cal. App. 4th 1686 (1994) ...................................................... 19

*Yates v. GunnAllen Fin.*,
  321 F. App'x 560 (9th Cir. 2008) ................................................... 7

**Other Authorities**

Cal. Civ. Code § 1530 .......................................................................................................... 20

Cal. Civ. Code § 1531 .......................................................................................................... 20

Cal. Civ. Code § 1641 ............................................................................................................ 2

Cal. Civ. Code § 3358 .......................................................................................................... 13

Cal. Civ. Code § 3360 ............................................................................................................ 9

1    **I.      Introduction**

2           Defendant Oki Electric Industry Co., Ltd. ("Oki Electric") submits its opposition to

3    Plaintiffs NavCom Technology, Inc. ("NavCom") and Deere & Company's ("Deere")

4    (collectively, "Plaintiffs") motion for judgment as a matter of law pursuant to Fed. R. Civ. P.

5    50(b) (Dkt. No. 330).  Plaintiffs ask the Court to overturn the jury's unanimous verdict, but the

6    arguments set forth in Plaintiffs' motion fail to demonstrate the jury's verdict lacked "a legally

7    sufficient evidentiary basis" as required by Rule 50.  Oki Electric submitted substantial evidence

8    at trial supporting the jury's verdict that no breach occurred, in addition to supporting each of Oki

9    Electric's affirmative defenses.  Oki Electric respectfully submits the Court need not reach those

10   defenses, but, given Plaintiffs' waiver of its right to have a jury resolve those issues, the Court is

11   free to enter its own findings of fact in support of those defenses if it deems it necessary.

12   **II.     The Jury's Verdict Was Supported by Substantial Evidence**

13          The unanimous jury found that (1) NavCom ***did not*** prove that Defendant had breached

14   the Original Agreement (Version 19); (2) NavCom ***did not*** prove that Defendant had breached the

15   Amended Agreement (Version 25); and (3) NavCom ***did not*** prove that Defendant was

16   contractually obligated to develop the proposed 4-chip RF ASIC design. (Dkt. No. 318).  Each of

17   these findings is well-supported by the evidence admitted at trial.

18          Plaintiffs had the burden of proof, and they premised their case on a series of alleged

19   "broken promises" – each of which was shown to be either baseless or an outright falsehood.  For

20   example, the alleged "promise" of delivery within 10 months was eviscerated by Dr. Galyean's

21   testimony that there were "no guarantees as to what the time of delivery of anything would be,"

22   and that Oki Semiconductor "w[as] not obligated to provide [the chips] in ten months"  (Tr. at

23   352:7-353:12).   The "broken promise" with respect to the second set of samples was shown to be

24   another fabrication when Dr. Galyean admitted, in his 30(b)(6) deposition and again at trial, that

25   the second set of samples were never intended to be functional, but instead were diagnostic in

26   nature.  (DX-1271 at 59:12-60:11; Tr. 389:8-14).  As such, Plaintiffs and their counsel ***knew*** their

27   assertion of this "promise" was false.  Plaintiffs' empty arguments regarding "broken promises"

28

1   simply amplified Oki Electric's contradictory evidence and threw a spotlight on the empty stage

2   that remained at the close of Plaintiffs' case.

3        Despite the fact that it was Plaintiffs' burden to show breach, it was Oki Electric that

4   actually questioned Plaintiffs' witnesses concerning when the alleged breach occurred and what

5   constituted the alleged breach.  Plaintiffs' failure to do so reflects their inability to show breach,

6   and their hope instead to either sway the jury otherwise or secure a sound byte for motion

7   practice.  The evidence Oki Electric elicited from Plaintiffs' own witnesses, however, proved

8   there was no breach and, as was painfully apparent from Mr. Hansen's cross-examination, there

9   was absolutely no evidence that any proximate harm occurred with respect to any alleged breach.

10       Thus, the jury not only had sufficient basis to conclude Plaintiffs failed to meet their

11  burden of proving breach, it had ample affirmative proof that no breach had in fact occurred.  As

12  such, the sanctity of the jury's unanimous verdict should not be disturbed.

13                  **a.   The Evidence Shows that Oki Electric Did Not Breach § 1.0**

14       Plaintiffs' arguments that the jury lacked a legally sufficient evidentiary basis to find no

15  breach of § 1.0 are flawed and blatantly misstate the record.  First, Plaintiffs' argument is but the

16  latest in a seemingly endless string of attempts to have the Court reconsider its prior ruling

17  regarding the right to terminate (Dkt. No. 199).  The agreement provides, "[t]his Agreement shall

18  automatically renew for successive one (1) year periods until Buyer or Seller terminates the

19  Agreement with at least three (3) months written notice prior to the expiration of any then current

20  term." (PX-125 at § 1.0, OKI_LW_008257).  This is not an issue properly presented under Rule

21  50(b); the Court already found that this language provides a right to terminate with three months'

22  notice, and the case proceeded to trial on that law of the case.  (*See, e.g.*, Dkt. No. 199 at 15, 22).

23  *See, e.g., Fetsch v. City of Roseburg*, 6:11-CV-6343-TC, 2013 WL 2631495, at *2 (D. Or. June

24  11, 2013).  Plaintiffs' arguments are based upon a construction that ignores the actual language in

25  favor of an unsupported and inconsistent interpretation.[1]  The agreement ***does not*** say that the

26  Agreement will "following termination, continue to the end of the then current term"; rather, it

---

27  [1]   "The whole of a contract is to be taken together, so as to give effect to every part, if

28  reasonably practicable, each clause helping to interpret the other."  CAL. CIV. CODE § 1641.

2

OKI ELECTRIC'S RESPONSE TO PLAINTIFFS'
RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO FRCP 50(b)

says "until Buyer or Seller terminates the Agreement . . . " (PX-125 at § 1.0, OKl_LW_008257). Thus, the Court's interpretation is correct and, regardless, is not subject to review in the Rule 50(b) context.

Second, ample evidence supports the jury's verdict that Oki Electric did not breach § 1.0:

(i)  Oki Electric proved at trial that Oki Semiconductor provided *repeated* notice to NavCom that it intended to stop work on the contract, long before the expiration of the alleged notice period.  On February 21, 2008, Oki Semiconductor provided notice that it would not be performing under the contract (*i.e.,* not making Version 25), because an "[a]ll-layer re-design [was] needed." (DX-1169; Tr. at 392:11-393:1.).  By March 26, 2008, "it was clear to everybody that a significant redesign was going to be required," and NavCom had *agreed* to stop Version 25 development.[2]  (*See*, *e.g.*, Tr. at 1140:6-13; Tr. at 1069:24-1070:9).  The parties commenced negotiations concerning the pricing of the finished chipsets, the development schedule for the new 4-chip project and the development costs.  (Tr. at 1209:23-1211:25; DX-1065; DX-1055).  It is undisputed that both parties recognized that the new 4-chip design would require a new agreement.  (*See, e.g.,* DX-1051; DX-1053; DX-1054).  By May 15, 2008, NavCom agreed to proceed with the 4-chip design. (DX-1055).  These facts were not only unrebutted, but were *admitted* by Plaintiffs' own witnesses.  Thus, Oki Electric presented a legally sufficient evidentiary basis for the jury to find it provided proper notice to NavCom as of February 21, 2008, such that the three month period had run by the time that NavCom alleges Oki

---

[2]  Plaintiffs argue that this argument was withheld until after Plaintiffs' Rule 50(a) motion. (Dkt. No. 330 at 7).  That too is factually incorrect.  Oki Electric has consistently argued that it provided proper notice under §1.0, and it adduced evidence of that fact during trial.  (*See* Dkt. No. 176 at 9 (stating Oki Electric's position that "Oki Semiconductor's cessation of its involvement in the Nova RF ASIC Project was proper and did not give rise to any liability for breach of contract"); DX-1271 at 105:12-16; Tr. at 392:5-20 (major redesign needed), 408:18-409:7 (Version 25 would not be pursued)).  Moreover, Oki Electric presented this argument in its *own* Rule 50(a) brief (Dkt. No. 300, at pages 5 n.2, and 8), filed prior to the close of evidence.  If Plaintiffs wanted to address this argument further, the proper time was in their rebuttal case. Additionally, Plaintiffs have waived this argument.  In their Rule 50(a) response, Plaintiffs argued only that Oki Semiconductor's cessation of work prior to December 31, 2008 was improper, but did not rebut this issue and therefore *conceded* the notice was proper.  (Dkt. No. 301 at 6).

3

1    Semiconductor stopped work on July 8, 2008.[3]

2         (ii)  Oki Electric proved that the July 8, 2008 letter was not provided as notice of

3    termination of the Amended Agreement, but was instead provided in response to NavCom's

4    request for clarification of Oki Semiconductor's June 30, 2008 email.   In that email, Oki

5    Semiconductor advised NavCom it would discontinue its participation in the RF ASIC "project."

6    (PX-164; Tr. 1218:6-17).  In response to that email, NavCom sought clarification, requesting Oki

7    Semiconductor "put [its] decision about this project in writing" by July 8, 2008. (DX-1270).  Oki

8    Semiconductor provided the July 8, 2008 letter pursuant to NavCom's request and on its

9    requested timetable. (PX-165; Tr. 1218:18-1219:15).   The letter's reference to the contract

10   number was explained by Oki Electric's witness, Yuki Ushida, without any rebuttal or contrary

11   evidence; the contract number was included to ensure NavCom understood that Oki

12   Semiconductor was only terminating its involvement in the RF ASIC project, but was ***not***

13   terminating the co-existent Digital ASIC contract (DX-1079).   (*Id.*).   Dr. Galyean confirmed

14   NavCom understood that was the case. (Tr. 437:2-19; *see also*, 434:3-435:22).   As such, the jury

15   had a legally sufficient evidentiary basis for finding no breach.

16        (iii)  The verdict is further supported by the fact that NavCom did not treat the July

17   8, 2008 letter as a breach.   Internal emails from NavCom and Deere's senior management

18   welcomed the end of the beleaguered project.   (*E.g.*, DX-1037, DX-1038, DX-1040).   Dr.

19   Galyean initially denied finding anything beneficial about Oki Semiconductor's termination of

20   the "***project***," but when impeached on cross-examination with proof to the contrary, he conceded

21   that he too saw the "upside" to the discontinuance of the ***project***.   (*Compare* Tr. at 439:16-20 and

22   445:19-24).   Neither NavCom nor Deere sent any email or letter, directly or from counsel,

23   complaining about any alleged breach, any impropriety of the discontinuance, or any alleged

24   harm.  The fact that Plaintiffs welcomed the end of the project and did not complain or demand

25   _____

26   [3]   Plaintiffs' assertion that Oki Electric conceded breach of Section 1.0 in its closing argument is
     false. (Dkt. No. 330 at 6-7).   The statement that Plaintiffs point to is merely Oki Electric's
27   argument that it is irrelevant whether the termination period lasted for three months or through the
     end of the then-current term.  (Tr. at 1639:1-13).  Either way, there could have been no harm to
28   Plaintiffs.

1   performance provides an additional basis upon which the jury could conclude there was no breach

2   or harm in fact (as well as objective proof of the prior rescission).

3          (iv)   Oki Electric also proved that NavCom failed to perform its obligations under

4   the Amended Agreement.[4]   As set forth in Jury Instruction 21, Plaintiffs had the burden of

5   proving that "Navcom did all, or substantially all, of the significant things that the contract

6   required it to do[.]"   The undisputed evidence, however, shows that Plaintiffs failed to make the

7   third payment of $150,000, which was "due and payable upon delivery of Engineering

8   Prototypes." (PX-125 at OKI_LW_008262).   Plaintiffs argue that this requirement is somehow

9   invalid or irrelevant because the prototypes provided were not fully functional or did not meet the

10  specifications.   Those, however, were not conditions precedent to the payment becoming "due

11  and payable."   The Agreement define "Engineering Prototypes" as being provided for testing and

12  evaluation purposes only, and specifically distinguishes them from "Acceptable Engineering

13  Prototypes," which are those Engineering Prototypes that are determined to conform to the

14  specifications. (PX-125 at OKI_LW_008264, *compare* §§ 1.1 and 2.4).   It is undisputed that two

15  sets of engineering prototypes were delivered for testing and evaluation. (Dkt. No. 330 at 9).   It is

16  further undisputed that Plaintiffs never made the third payment of $150,000. (Tr. at 279:10-

17  280:16 (Mr. Galyean understood that the contract required that NavCom pay Oki "$150,000 upon

18  delivery of engineering prototypes," but NavCom chose not to make the third payment "because

19  [it] never received working engineering prototypes.")).

20          The undisputed evidence proves NavCom failed to make the third payment upon delivery

21  of the first set of prototypes in April of 2007.   Section 2.6 provides that the Engineering

22  Prototypes shall not be delivered unless Oki Semiconductor is in receipt of all payments due –

23  which as of May 2007 included the $150,000 payment. (PX-125 at NAV008265).   Accordingly,

24  Oki Semiconductor was not obligated to provide any additional Engineering Prototypes after

25  April 2007, when NavCom failed to make the required third payment.   Further, Oki

26  Semiconductor had no continuing obligation to perform as long as the $150,000 payment was

27

28  [4]   This same evidence supports Oki Electric's anticipatory breach defense.

outstanding.  This alone provides a legally sufficient evidentiary basis for the jury to conclude there was no breach.

Plaintiffs assert that the parties' course of performance defeats this claim, but that argument is moot.  Section 26.0 of the Terms & Conditions provides "[t]he failure by either party to enforce at any time or for any period of time any of the provisions of this Agreement shall not constitute a waiver of such provisions or of the right of such party to enforce each and every provision."  (PX-125 at OKl_LW_008274).  Plaintiffs go so far as to cite to PX-83 and PX-95 – two exhibits that were not admitted, cannot be relied upon, and certainly cannot impact the jury's verdict.  *See McEuin v. Crown Equip. Corp.*, 328 F.3d 1028, 1037 (9th Cir. 2003) (refusing to consider "[e]vidence not admitted at trial").  Plaintiffs seek to excuse their reliance on these materials by claiming that Oki Electric did not raise this issue until after Plaintiffs rested.  This too is false as evidenced by the fact that there would be no other reason for Plaintiffs to elicit the following testimony from Dr. Galyean on ***direct examination***:

> Q.   And why did Navcom not make the third payment?
>
> A.   We did not make the third payment because we never received working
>       engineering prototypes.

(Tr. 280:9-16).  The only relevance of that testimony is to attempt to excuse their failure to comply with their contractual obligations.  Plaintiffs were clearly aware of the issue and had a full opportunity to move the admission of the documents at issue, or other evidence, but chose not to do so.  Thus, the evidence should not be admitted and the jury's verdict should not be disturbed.

(v)  In its Rule 50(b) motion, for the very first time, Plaintiffs argue that § 23.0 of the Agreement precludes Oki Electric's reliance on the demonstrated February 21, 2008 notice, because that notice was not "effected by registered mail by depositing said notice in a receptacle for the receipt of United States mail, addressed to the parties at their addresses set forth at the head of this Agreement, and marked for the attention of the President."  (Dkt. No. 330 at 7).  Plaintiffs, however, did not make this argument at trial or in their Rule 50(a) motion, or in response to Oki Electric's Rule 50(a) motion – *i.e.,* at a point where it could have been addressed by the parties before the case went to the jury.  Therefore, the issue is now waived.  *Sharp*

*Structural, Inc. v. Franklin Mfg., Inc.*, 283 F. App'x 585, 588 (9th Cir. 2008) ("'[Defendant] did not raise this issue in its oral or written Rule 50(a) motion.  The result is 'a complete waiver, precluding our consideration of the merits of the issue.'"  (citation omitted)); *Yates v. GunnAllen Fin.*, 321 F. App'x 560, 562 (9th Cir. 2008) ("[Defendant] has waived its argument that none of the causes of action [plaintiff] put to the jury can, as a matter of law, sustain punitive damages. We strictly observe the requirement that a motion for judgment as a matter of law ('JMOL') under Federal Rule of Civil Procedure ('Rule') 50(a) be made at the close of all the evidence").[5]

           (vi)   Finally, Plaintiffs concede they must show harm in order to show breach. Even assuming *arguendo* there was a lack of adequate notice, Plaintiffs failed to prove any harm during the notice period.[6]  As Plaintiffs state (Dkt. No. 330 at 5), the jury was instructed in Instruction 21 that "[t]o meet its burden of proving Defendant has committed a breach of contract, NavCom must prove . . . [t]hat Defendant failed to do something that the contract required it to do [and] . . . [t]hat NavCom *was harmed by that failure*."  (Dkt. No. 314 at 21).  Plaintiffs agreed to Jury Instruction 21, which was sourced primarily from their own proposed instruction and which tracks CACI No. 303.  Ironically, Plaintiffs quote and rely upon this instruction in their brief. (Dkt. No. 330 at 5).  Plaintiffs cannot now argue that their own proposed jury instruction was incorrect as to the law, when they obviously did not object to it and they rely upon it in their own

---

[5]   Even if Plaintiffs' § 23.0 argument regarding notice had not been waived, their § 23.0 standard must be applied with equal force to the July 8, 2008 letter, which was neither sent by registered mail nor "marked for the attention of the President."  (*See*, PX-165).  Under Plaintiffs' new theory, there can be no breach because the July 8, 2008 letter *could not have been a notice of termination* -- a fact which is supported by the substantial evidence that the parties had previously mutually agreed to abandon the Agreement, with the letter simply providing the requested a decision about the "project," not the "Agreement."  (See Section II(a)(ii), *supra*).

[6]   Plaintiffs argue that the presence of unanswered Question 12 on the verdict form somehow indicates that the jury did not reach the issue of harm.  Question 12, however, is specifically linked to Question 11 regarding breach or waiver of § 1.0.  The jury did not need to address either question, because they found that there was no breach as instructed by Jury Instruction 21. As properly instructed, the jury's finding of no breach of the agreements as a whole is supported by NavCom's failure to prove  (1) harm, (2) that Oki Semiconductor failed to provide notice, or (3) that there was an agreement covering the 4-chip design (the chipset that Plaintiffs allege in the Complaint and proved at trial to be the subject matter the parties were focused on at the time of the alleged breach).  It is axiomatic that without a contract, there could be no breach.

7

brief.  Plaintiffs have long since waived any such position.  *See Affordable Hous. Dev. Corp. v. City of Fresno*, 433 F.3d 1182, 1196 (9th Cir. 2006) ("Failure to object to an instruction waives the right of review."  (citation omitted)).

The agreed-upon jury instruction is, moreover, an accurate statement of California contract law.  *See*, *e.g.*, *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000) ("Under California law, a breach of contract claim requires a showing of appreciable and actual damage.") (noting that damages from a breach must be more than nominal in order to be actionable); *Patent Scaffolding Co. v. William Simpson Const. Co.*, 256 Cal. App.2d 506, 511, 64 Cal. Rptr. 187 (2d Dist.1967) ("A breach of contract without damage is not actionable.").  As this Court has recognized, nominal damages may be appropriate when the harm cannot be ***quantified***, but they may not be awarded where there is ***no harm***.  *Rudgayzer v. Yahoo! Inc.*, 5:12-CV-01399 EJD, 2012 WL 5471149, at *6-7 (N.D. Cal. Nov. 9, 2012) (Davila, J.) ("Part of the reason why . . . courts awarded nominal damages was because they were ***unable to quantify*** the actual damages. . . .  Because Plaintiff has not alleged actual damages, he has failed to sufficiently plead a breach of contract claim under California law."  (emphasis added)).  Indeed, the statute cited by Deere (Cal. Civ. Code § 3360) states only that nominal damages "may" be recovered, not must.  Thus, while nominal damages are in some cases appropriate, there is no automatic entitlement to an award of nominal damages.  *Strait v. Wilkins*, 23 Cal. App. 774, 777 (Cal. Ct. App. 1914); *see also Roberts v. W. Pac. R. Co.*, 142 Cal. App. 2d 317, 323 (Cal. Ct. App. 1956) ("[A]ppellant suffered no actual damages by reason of his dismissal, and was not entitled to nominal damages as a matter of right.").   Thus, as properly instructed, the jury's finding that Defendants did not breach the agreement (Questions 1 and 2) is supported by the evidence that NavCom did not do all that it was required to do under the Amended Agreement, that NavCom failed to prove the required element of "harm," and/or that Oki Semiconductor met all of its obligations.

Oki Electric proved at trial that Plaintiffs could not have been harmed by any alleged failure to provide notice under the Amended Agreement, and Plaintiffs' supposed evidence to the contrary fails to satisfy the Rule 50(b) standard.  Oki Electric addressed this issue in detail in its

OKI ELECTRIC'S RESPONSE TO PLAINTIFFS'
RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO FRCP 50(b)

Rule 50(a) motion, ***without contestation or rebuttal from Plaintiffs in their response***.  (Dkt. No. 300 at 4-5).[7]  Thus, Plaintiffs have waived any opposition now.  *Sharp Structural, Inc.*, 283 F. App'x at 588.

In Plaintiffs' Rule 50(b) motion, their sole support for harm from the alleged breach of § 1.0 is that "Oki told NavCom that the four-chip design would be ready for 'tapeout' around the end of 2008."  (Dkt. No. 330 at 8).  This, however, is factually incorrect.  Plaintiffs misleadingly cite to the chart in PX-56 as allegedly showing a "Tapeout" date in ***2008***.  The chart, however, plainly reflects an estimated "Tapeout" date, at the earliest, of late January ***2009*** – a date past even Plaintiffs' asserted December 31, 2008 expiration of the termination period.   (PX-56).  Further, the evidence demonstrates that these too were only *estimated* time periods, and NavCom understood further delays could occur.  (*Id.* at ¶¶3-4; PX-125 at OKI_LW_008262 ("Estimated Development Time")).   Moreover, the parties never reached an agreement concerning the proposed 4-chip development and, as such, the schedule never was finalized.  Yet, even if viewed in the best light for Plaintiffs, there would have been no further deliverables from Oki Semiconductor until ***2009***.  (*See, e.g.,* PX-56 at Figure 1).

Plaintiffs also present a new argument for nominal damages, alleging that "[e]ven if the jury had ***found no harm***, . . .  Plaintiffs still would have established breach[.]"  (Dkt. No. 330 at 8 (emphasis added)).  This is baseless and legally incorrect.  This argument directly contradicts Jury Instruction 21, which states that "[t]o meet its burden of proving Defendant has committed a breach of contract, NavCom must prove . . . . That ***NavCom was harmed by that failure***."  (Dkt. No. 314 at 21 (emphasis added)).   Additionally, California law establishes that a losing party is not entitled to judgment or a new trial simply to vindicate a right to nominal damages.  *Martin v. Pritchard*, 52 Cal. App. 720, 727 (Cal. Ct. App. 1921) ("[A] judgment for a defendant in an

---

[7]   Additionally, Plaintiffs offered no such argument in their Rule 50(a) motion or in response to Oki Electric's Rule 50(a) motion.  (Dkt. Nos. 301, 305).  Until now, Plaintiffs' ***only*** claim of harm as a result of a breach of § 1.0 was that "[a]t a minimum, Plaintiffs are entitled to nominal damages for Oki's breach of Section 1.0."  (Dkt. No. 301 at 6, n.1).  As discussed below, nominal damages are not available under California law ***absent*** a showing of harm.  Plaintiffs' argument that they proved actual harm for breach of § 1.0 at trial has therefore been waived. *Sharp Structural, Inc.*, 283 F. App'x at 588.

1   action *ex contractu* for damages where it is established that a plaintiff is entitled to nothing more

2   than nominal damages will not be reversed on appeal"); *see generally Du Zeff's Hollywood, Inc.*

3   *v. Wald*, 235 Cal. App. 2d 678, 681 (Cal. Ct. App. 1965).

4   **b.  Oki Electric Did Not Breach § 2.6**

5   Plaintiffs failed to prove any breach of Section 2.6 of the Terms & Conditions and, even if

6   *arguendo* they could, they have failed to prove any harm proximately caused from any alleged

7   breach of Section 2.6.  (PX-125 at OKI_LW_008265).  Schedule C of the Agreement sets forth an

8   "*Estimated* Development Time and *Estimated* Engineering Prototype Turnaround Time" of "10

9   months from the ***sign-off*** of this Agreement."  (*Id*. at OKI_LW_8262 (emphasis added)).

10   While Plaintiffs falsely asserted that Oki Semiconductor had "promised" to deliver the

11   samples within 10 months of the execution of the Agreement (Tr. 121:14-122:4), their witness,

12   Dr. Galyean, (a) confirmed his prior 30(b)(6) testimony that the 10 month period was merely an

13   estimate (Tr. at 352:7-353:12); (b) agreed that there were "no guarantees as to what the time of

14   delivery of anything would be," and that he "understood . . . it was not a guarantee, it was an

15   estimate" (*id.*);  and (c) testified that ***Oki Semiconductor did not breach when it did not provide***

16   ***chips immediately***, because Oki Semiconductor "w[as] not obligated to provide [the chips] in ten

17   months"  (*id.*).   It is axiomatic that, because there was no "obligation" for Oki Semiconductor to

18   provide the samples in 10-months, any alleged failure to do so cannot constitute a breach.[8]

19

20

21

22

23

---

24   [8]   Plaintiffs' allegations of breach involving undue delay and/or failure to timely deliver samples
     are undermined by the testimony of their own proffered expert, Phillip Ward.  Not only did he

25   unequivocally testify that it was "very typical" for there to be many changes during the life of a
     project like this (Tr. at 645:25-646:21), he testified that the Nova RF ASIC project experienced

26   *fewer* changes than what he referred to as a "typical" project. (*Id.*; *see also* Tr. at 646:12-21 (not
     unusual to have 25 versions of a specification); 668:14-669:20 (agreeing that the number of

27   revisions was "typical"); 670:13-16 (nature in which the specifications evolved in this project was
     exactly what he would expect in a development project of this type)).

28

Plaintiffs also allege fail to address the date from which the "***Estimated*** . . . 10 months from the ***sign-off***" period ran.[9] With respect to the actual timing from "***sign-off***," it is undisputed that the Amended Agreement incorporated Version 25 as the operative Specification, in November 2006. (Tr. 363:25-365:10). No samples were attempted prior to the entry of Specification Version 25, and the first samples were produced in April 2007, four months after the parties had signed-off on the Specification. (*Id.*) Dr. Galyean testified that the April 2007 delivery of the first set of flawed samples ***was not a breach***, (Tr. at 353:7-12). Although Plaintiffs in their opening statement and direct examination of Dr. Galyean asserted that the second set of chips "also failed" – which Plaintiffs asserted was another broken promise – Dr. Galyean admitted on cross-examination that the second set of samples was never intended to be functional. (Tr. 121:23-25; Tr. 389:8-14; DX-1271 at 59:12-60:11).

The next possible time period for an alleged breach of § 2.6 is between March 26, 2008, when the parties agreed that a "major redesign" was required (and effectively rescinded or abandoned the Version 25 agreement), and May 15, 2008, when NavCom decided to proceed with the 4-chip design. (DX-1055). During this period, however, the evidence proves that the parties were negotiating what form the newly-redesigned chips would take. (*See, e.g.,* Tr. at 427:15-429:18; 1210:1-1211:25). By this point in time, as described above, it is undisputed that the parties had agreed not to make the Version 25 chips. Dr. Galyean affirmatively testified that Oki Semiconductor's statement that it did not want to further pursue the Version 25 design, ***was not a breach***. (Tr. 413:5-8). The unrebutted evidence also proves NavCom had waived any obligation of Oki Semiconductor's to develop the three-chip design embodied by Version 25 and

---

[9] The term "sign-off" cannot be interpreted as the execution date of the Agreement, as evidenced by the language on the same page of Schedule C, which requires the first payment be made "at the time of signing this Agreement." The "sign-off" language refers to the parties having "signed off" on the finalized specification for the RF ASIC to be prepared. This is consistent with the use of the term "sign-off" in the Parties' agreement for the development of the Digital ASIC, which Oki Electric established at trial was negotiated concurrently with the RF ASIC agreement. (*See, e.g.*, DX-1079 at OKI_LW_0026769; Tr. 434:3-435:13). The evidence conclusively proves that the Version 19 Specification incorporated into the Original Agreement was incomplete and, obviously, it was not possible to prepare a chipset until a final Specification was agreed upon. (*See, e,g,* Tr. 218:17-24; 275:6-25; 326:25-327:6; 351:10-20; 669:2-20.

the Amended Agreement.  (Tr. 408:18-22; 412:17-413:8).  Dr. Galyean affirmatively testified that no breach occurred prior to July of 2008.  (Tr. at 534:7-536:4; DX-1022).[10]

The remaining relevant time period is from May 15, 2008 to July 8, 2008.  Once again, the evidence supports the jury's verdict and refutes Plaintiffs' position.  First, Dr. Galyean testified no breach occurred prior to July of 2008.  (Tr. at 534:7-536:4; DX-1022).  Second, Mr. Knight testified that, as of May 15, 2008, NavCom had "agreed that the four chip design would be" the design for the contemplated new development project.  (Tr. at 243:5-13; DX-1055).  Mr. Wilson likewise admitted that, as of May 15, 2008, the parties had agreed to pursue the 4-chip design rather than the Version 25 design.  (Tr. at 1001:10-1002:17).  Mr. Wilson confirmed the prior agreement would not have covered the proposed 4-chip design and a new specification was needed for the 4-chip design – but that specification was never prepared.  (*Id.*)  Dr. Galyean also agreed that the parties had agreed that the 4-chip design would be pursued, that the Version 25 design would be abandoned, and that a new specification was required in order to reflect the 4-chip design.  (*See, e.g.*, Tr. at 412:17-413:4; Tr. at 1069:4-23).  Oki Semiconductor prepared a proposal concerning the development costs (NREs) for the 4-chip design, and on May 30, 2008, it presented its proposal to NavCom to split, and indeed, once again bear the lion's share of the development costs of the proposed 4-chip development project.  (DX-1065; Tr. at 428:18-429:9).  NavCom, however, rejected Oki Semiconductor's proposal, without any counteroffer.  (Tr. at 429:15-18; Tr. at 1211:12-25).  Thus, the Amended Agreement to develop Version 25 was mutually abandoned (prior to, but certainly no later than May 15, 2008); at a minimum, Oki Semiconductor's obligation to make Version 25 was waived; and the parties never reached an agreement concerning the development of the 4-chip design.  (Tr. 408:18-22; 412:17-413:8; 411:7-9).  Simply put, as of the date of the alleged termination in July 2008, there was nothing for Oki Semiconductor to develop.  Without an agreed-upon specification, no prototypes were even possible.  Thus, the jury's verdict that no breach occurred is both supported by the evidence and

---

[10]  Because Dr. Galyean sought the advice of Deere's legal counsel at that time, NavCom would have been on notice of any breach had it occurred.  (Tr. at 534:19-535:3).

legally correct because Oki Semiconductor could not have breached the ***non-existent contract*** for the development of the 4-chip design.

Finally, Plaintiffs failed to prove evidence of any alleged harm proximately caused by the alleged breach of Section 2.6.  To the contrary, the evidence conclusively proves that, by no later than July 7, 2007, NavCom had already decided to launch the Gen 5 products with the so-called "discrete solution."  (*See, e.g.,* DX-1011; DX-1013 at NAV0061764 ("RF ASIC delayed – proven discrete RF design will be used for production."); Tr. at 366:11-367:2).  Dr. Galyean, however, admitted that no alleged breach had occurred by that point in time.  (Tr.352:7-353:12).  Further, NavCom admitted that it chose not to pursue an alternative source of chips or to employ the "next generation" chipset, which it had possessed since 2011.  (Tr. 352:7-353:12; 454:5-457:1; 950:18-951:12).  As such, Plaintiffs failed to prove how any of Deere's alleged $13 million dollars in lost profit damages – commencing in ***2009*** and continuing through the end of ***2015*** – were proximately caused by any alleged breach of § 2.6.  (*See, e.g.*, Tr. 1050:15-1051:8; 1053:5-1056:8).  California Civil Code Section 3358 provides: "[N]o person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides."  "The damages awarded should, insofar as possible, place the injured party in the same position it would have held had the contract properly been performed, but such damages may not exceed the benefit which it would have received had the promisor performed."  *Brandon & Tibbs*, 226 Cal. App. 3d at 468 (citations omitted).  Given that standard, Plaintiffs were in the same place on July 8, 2008 as they were on July 7, 2007 and, as such, the only events that could have caused those facts had occurred by no later than July 2007 – any such events are unrelated to any of Plaintiffs' various theories of breach, and occurred well before the critical date for the four-year statute of limitations.

### c.  Oki Electric Did Not Breach § 2.8

As a matter of law, Plaintiffs failed to prove any breach of Section 2.8 of the Terms & Conditions and failed to prove any proximate harm stemming from any alleged failure under Section 2.8.  (PX-125 at OKI_LW_008265).

Plaintiffs' claim for breach of § 2.8 fails as a matter of law, because well before the alleged breach on July 8, 2008, NavCom had excused/waived any obligation for Oki Semiconductor to make a 3-chip chipset conforming to Version 25 of the Specification.[11]   (See Section III(a), *infra*).   Even assuming *arguendo* that Oki Semiconductor had an obligation to "repair or replace" any defective Version 25 chips, by March 26, 2008 the parties had recognized that a "major redesign" was required and mutually agreed to abandon the development of Version 25.   (*See supra*).   By May 15, 2008, the parties had agreed to pursue the 4-chip design instead of the Version 25 or other design.   Thus, by no later than May 15, 2008, Oki Semiconductor was excused from performing under the contract (*i.e.,* excused of any obligation to develop the Version 25 chipset covered by the Amended Agreement) and, because the parties had not prepared, much less agreed to, a new specification, it was impossible for Oki Semiconductor to perform.   The Amended Agreement called for a chipset conforming to Version 25, but the parties had agreed ***not*** to make Version 25 and had not agreed to any new Specification.   Thus, there could not have been a breach of § 2.8 since there was nothing for Oki Semiconductor to produce.

Moreover, the jury specifically found, in response to Question 3, that NavCom did not "prove that Defendant was contractually obligated to develop the proposed 4-chip RF ASIC design[.]" (Dkt. No. 318 at 3).   This verdict is amply supported by the evidence as, for example, Dr. Galyean confirmed that no 4-chip Specification was ever prepared, much less incorporated into any agreement.   (Tr. at 411:7-9).   Plaintiffs now seek to ignore the jury's answer to Question 3 on the basis that it "is a question of law for the Court – not a fact question for the jury."   (Dkt. No. 330 at 10).   Plaintiffs, however, did not object on that basis at trial, despite being specifically prompted by the Court.   (Tr. at 1545:18-24 ("Mr. Schuman: Your honor, I don't have an objection to question 3.")).   Their current objection is therefore waived.   *Dugan v. Nance*, CV 11-8145-

---

[11]   Additionally, Plaintiffs failed to present any evidence that the failure of the chips was due to defects in materials or workmanship as opposed to design defects, factors distinguished in Section 2.8. *See In re Toyota Corp Unintended Acceleration[] Litig.*, 754 F. Supp. 2d 1145, 1181 (C.D. Cal. 2010); *see Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007).   Plaintiffs did not contest this in their response to Oki Electric's Rule 50(a) motion, and thereby waived any contrary argument.

CAS (SHx), 2013 WL 6633072, at *14 (C.D. Cal. Dec. 16, 2013) (holding that "defendant waived his objection to a special verdict form 'because he did not object to [it] when the court submitted it to the jury'" (quoting *Guy v. City of San Diego*, 608 F.3d 582, 586 (9th Cir. 2010))). As described above, the purpose of the Amended Agreement was to incorporate Version 25 of the specification. Version 25 was a 3-chip design. (*e.g.*, DX-1004 at NAV0065261). Thus, the jury necessarily addressed the question of whether the parties had abandoned or waived the obligation to make the Version 25 design, and concluded they never entered into an agreement to make a 4-chip design.

Plaintiffs argue that, as a matter of law, the agreements did not call for a specific design with a set number of chips, and instead gave Oki Semiconductor "flexibility . . . to determine the number of chips" – a theory conclusively disproven by Oki at trial.[12] While Plaintiffs tried mightily to lead Dr. Galyean's testimony in that direction, on cross-examination he rebutted this point, stating in his own words: "***[t]he specification had grown to be specific about three chips***, and if we were going to use a four chip solution, for instance, as I said earlier, all of the pinouts would change." (Tr. 409:8-20). Thus, there was legally sufficient evidence to support the jury's conclusion that the Amended Agreement was directed to 3-chips, and as such, not breached by

---

[12] Plaintiffs' argument here ***directly conflicts*** with Plaintiffs' other arguments regarding breach. Plaintiffs have argued, at length, that Oki Semiconductor breached the agreement by failing to deliver chips "that met the specifications." (*See* Dkt. No. 330 at 8-9). Now they argue that, as a matter of law, the specifications set forth in the agreement were irrelevant, and Oki Semiconductor could deliver a chipset consisting of any number of chips. (Dkt. No. 330, at 10). Plaintiffs cannot have it both ways – either the agreements incorporated the specification, and Oki Semiconductor allegedly breached by failing to deliver a chip that met the specification, or the agreements did not incorporate the specification, and Oki Semiconductor did not breach.

1    the alleged failure to make the 4-chip design.[13]

2    #### d. Plaintiffs' Alleged Damages Were Not Proximately Caused by Any Alleged Breach Including Any Alleged Breach of §§ 2.6 and 2.8

3            Plaintiffs' assertion that *if* Oki Semiconductor had provided working chips rather than

4    exercising its right to terminate the agreement, Plaintiffs *could have* taken those chips to another

5    foundry, also fails as a matter of law.  The Court has already found that the parties never entered

6    the "Production Phase."  (Dkt. No. 199 at 21).  Plaintiffs admit that the project was terminated

7    during the Development Phase.  (Dkt. No. 99-3 at 2).  Plaintiffs' theory of taking some

8    hypothetical replacement engineering prototypes to another foundry is pure speculation for the

9    reasons the Court has already stated in its prior Orders (Dkt. Nos. 199 and 231).  Yet, even

10   assuming *arguendo* that all of the conditions precedent to commercial production could

11   theoretically have occurred, they still could not have occurred using Engineering Prototypes or

12   within the time provided by Oki Semiconductor's right to terminate.

13           The language of the Agreement precludes the use of Engineering Prototypes for anything

14   other than testing and evaluation, and expressly precludes their "use in production."  These

15   preclusions are stated not just once, but at least *four* times.  (*See, e.g.,* PX-125 at § 5.0,

16   OKI_LW_008258 ("Engineering Prototypes . . . are for verification that the design meets the

17   agreed upon technical specifications and for general informational and testing purposes only.

18   Engineering Prototypes are not intended for use in production and are not authorized for any such

19   use."); *id*. at § 1.1, OKI_LW_008264; *id*. at § 2.4, OKI_LW_008264-5).  Indeed, § 2.8 itself

20

---

21   [13]  Plaintiffs' reliance on Dr. Galyean's understanding of the contract is inapposite.  (Dkt. No.
22   330 at 10).  This testimony was offered over Oki Electric's objection that it was "asking for a
     legal conclusion"; the Court limited Dr. Galyean's response to "his understanding in the
23   agreement."  (Tr. at 325:22-326:11).  Plaintiff cannot now rely on this factual testimony to argue
     that the conclusion of whether or not the agreements covered the 4-chip design was a "question of
24   law." To the extent that the determination relied on the *factual* testimony of Plaintiffs' own
     witness, it was clearly a factual determination, and the jury was justified in making that
25   determination in response to Question 3.  Plaintiffs' own citation makes this clear. *See Morey v.*
     *Vannucci*, 64 Cal. App. 4th 904, 912-13 (1998) ("Where the interpretation of contractual
26   language turns on a question of the credibility of *conflicting* extrinsic evidence, interpretation of
     the language is not solely a judicial function. . . . As trier of fact, it is the jury's responsibility to
27   resolve any conflict in the extrinsic evidence properly admitted to interpret the language of a
     contract.").
28

                                        16        OKI ELECTRIC'S RESPONSE TO PLAINTIFFS'
                                                  RENEWED MOTION FOR JUDGMENT AS A
                                                  MATTER OF LAW PURSUANT TO FRCP 50(b)

includes the prohibition, "Seller assumes no liability or responsibility whatsoever for the unauthorized use of Engineering Prototypes." (*Id.* at § 2.8). Accordingly, Plaintiffs' new theory of breach under § 2.8 fails as a matter of law.

Plaintiffs' new reliance on § 10.0 of the Terms & Conditions (Dkt. No. 330 at 14-15) similarly fails under the facts and as a matter of law. As noted above, the Court found that the parties never entered the "Production Phase" (Dkt. No. 199 at 21), based upon Plaintiffs' admission that the project was terminated during the Development Phase (Dkt. No. 99-3 at 2). Section 10.0, however, pertains exclusively to "production," not "development" – a fact that is evident not only from its location in the Production Phase of the Agreement, but also by its plain language. In addition to the "tooling" language, § 10.0 requires Seller to maintain a secondary production line and imposes additional termination restrictions with respect to "discontinuance of manufacture of Products." (PX-125 at OKI_LW_008269-70). No "Products," however, came to fruition under this Agreement. Yet even if one assumes *arguendo* that § 10.0 were applicable, it does not support Plaintiffs' arguments. Contrary to Plaintiffs' assertions, § 10.0 provides that "Seller" (*i.e.,* Oki Semiconductor) "shall retain, possession of, and the right to exclusive use of, all masks, tapes, plots, drawings, fixtures, patterns, test programs, equipment, manufacturing aids and similar devices, made or obtained for the performance of this Agreement ('Tooling'), without regard to whether a separate charge is made for the same." (*Id.* at OKI_LW_008269). And even if that were not the case, the ***proposed*** schedule for the development of the ***proposed*** 4-chip design as of July 8, 2008 (PX-56) definitively states that the tapeout, masks, etc. (*i.e.,* tooling) was not contemplated to even exist prior to ***April 2009, long after the expiration of the notice period regardless of how such period is calculated***. (*See, e.g.,* PX-56 at Figure 1). Plaintiffs' apparent reliance upon the second sentence of the first paragraph of § 10.0 is also to no avail. Aside from the fact that this language refers to tooling that Buyer developed ***and paid for*** (*i.e.,* such as the test boards NavCom created; *see, e.g.,* DX-1056 at NAV0070511), even if misconstrued to encompass Seller's tooling, it is undisputed that NavCom refused to pay for any development costs associated with the 4-chip design – hence, Oki Semiconductor's withdrawal from the project. (Tr. 427:15; DX-1065; Tr. 1211:16-25). Thus, this *post hoc* argument provides

5:12-cv-04175 EJD

17

1    no basis for disturbing the jury's verdict.

2        Independent of the forgoing, the language of § 2.8 expressly limits any relief to the

3    "Buyer" and expressly excludes "Buyer's Customers."   (PX-125, Terms & Conditions § 2.4,

4    OKI_LW_008264-6).  NavCom is defined as the "Buyer" in the Preamble. (PX-125 at Preamble,

5    OKI_LW_008257).  It is undisputed that Deere is not a party to the Agreement nor the Amended

6    Agreement.  *Even Plaintiffs' financial expert Mr. Hansen agreed that Deere is NavCom's*

7    *customer*.  (*See, e.g.*, Tr. at 1170:7-25).  As such, the Court must enter judgment as a matter of

8    law that Deere cannot have a claim arising under any alleged breach of § 2.8.[14]

9                    **e.   Damages Beyond the Period of the Alleged Notice of Termination**
                         **Are Precluded by Oki Semiconductor's Right to Terminate**

10       Oki Electric proved the July 8, 2008 letter was not a termination of the Amended

11   Agreement, but instead was provided in response to NavCom's request for clarification of Oki

12   Semiconductor's June 30, 2008 email.   (See Section II(a)(ii), above).   Yet even assuming

13   *arguendo* that Plaintiffs had proven the July 8, 2008 letter was a breach, California law restricts

14   damages for the termination of an agreement containing a right of termination clause to the

15   damages that would have accrued during the notice period. *Martin v. U-Haul Co. of Fresno*, 204

16   Cal. App. 3d 396, 409 (Cal. Ct. App. 1988).  NavCom and Oki Semiconductor had agreed that

17   even absent the termination, the 4-chip design would not be completed until the ***end of January***

18   ***2009***, and no prototypes would have been prepared until ***July of 2009 at the earliest***.  (See

19   Section II.B.1, *supra*; PX-56).  Thus, Plaintiffs' position 3-months following the receipt of the

20   July 8, 2008 letter, or even on December 31, 2008, would have been ***exactly the same*** regardless

21   of the termination, and Plaintiffs therefore cannot show any harm proximately caused by the

22

23

24

25   ────────────────────
     [14]  Navcom has also waived any argument concerning Deere's alleged third-party beneficiary

26   status.  Furthermore, given Plaintiffs' waiver of a right to have the jury decide that issue, to the
     extent the Court deems it necessary or appropriate, the Court can decide that issue.  *Goodwall*

27   *Const. Co. v. Beers Const. Co.*, 991 F.2d 751, 757 (Fed. Cir. 1993).   Thus, for the reasons
     presented in Oki's Rule 50(a) motion (Dkt. No. 300), which arguments are renewed and

28   incorporated herein by reference, Deere cannot be an intended third party beneficiary.

alleged breach.[15]

Plaintiffs now seek to make an end-run around *Martin* by arguing that, absent the alleged antecedent breaches of §§ 2.6 and 2.8, Oki Semiconductor would not have exercised its right to terminate. (Dkt. No. 330 at 15). This argument has been soundly and repeatedly rejected by the courts. *See, e.g.*, *Thrifty Payless, Inc. v. Mariners Mile Gateway*, LLC, 185 Cal. App. 4th 1050, 1064 (2010) ("[Plaintiff] argues that even if [Defendant] had the right to terminate the lease, it is entitled to damages because of the antecedent defaults . . . . Liability for default, however, does not persist after a valid termination under the lease—if it did, it would be as if there were no valid termination." (citing *Martin*)); *see also Citrilite Co., Inc. v. Cott Beverages, Inc.*, No. 1:07-CV-01075, 2011 WL 284915 (E.D. Cal. Jan. 25, 2011) ("Plaintiff's purported exception would swallow the *Martin* rule, as an aggrieved party could avoid the rule simply by asserting that some antecedent breach of a contract obligation . . . caused their adversary to exercise a termination option."); *Citri-Lite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912, 937 (E.D. Cal. 2010) (termination clause limited damages to a 60-day period following cancellation, and speculative lost payments through 2015 were too remote to be recoverable).

Plaintiffs cite *Hensler v. City of Los Angeles*, 124 Cal. App. 2d 71, 84-85 (1954) in support of their attempt to circumvent *Martin*, but *Hensler* is inapplicable. In *Hensler*, the contract provided the defendant a right to eliminate "unnecessary" work items. When the defendant failed to get approval for road closures needed to complete a portion of the construction project, it chose to cancel that portion. The Court held that the proper measure of damages was the value of the canceled portion, because the defendant did not exercise its right to eliminate unnecessary work items prior to the cancellation, and because there was no evidence that it would have done so absent the cancellation. *Hensler* does not go to the issue here: the *foreseeability* of

---

[15] The earlier notice put Plaintiff in a **better** position, with additional time to secure an alternate vendor, but NavCom made the decision not limit its harm by doing so. "A Plaintiff may not recover for damages avoidable through . . . reasonable exertion." *Valle de Oro Bank v. Gamboa*, 26 Cal. App. 4th 1686, 1691 (1994); *see Shaffer v. Debbas,* 17 Cal. App. 4th 33, 41 (1993) (avoidable damages are unrecoverable). Plaintiffs not only failed to prove they mitigated their damages, the evidence shows they made the affirmative decision not to, and instead allowed the alleged damages to accrue. (*See, e.g.*, Tr. 454:3-8; 456:15-457:10; 1152:2-11; 1185:1-5).

1    damages.  Oki Semiconductor had a right to terminate.  (Dkt. No. 199).  Any alleged damages,

2    therefore, are limited to harm that occurred in the notice period, because the parties could not

3    have foreseen harm beyond that period.  *Martin*, 204 Cal. App. 3d at 408-09.[16]

4    **III.    Oki Electric Has Proved Its Affirmative Defenses at Trial**

5            Plaintiffs declined to ask the jury to complete the verdict form, and thereby waived their

6    right to a jury trial on the issues represented by unanswered questions (4) through (12).

7    *Goodwall*, 991 F.2d at 757.  The Court may decide these issues are moot in light of the verdict, or

8    proceed to address them, as set forth below and in Oki Electric's Rule 50(a) and (b) motions, by

9    making findings of fact without ordering a new trial.

10            **a.    The Parties' Amendment of the Agreement Was a Novation**

11            Oki Electric proved at trial that the replacement of the Original Agreement incorporating

12    Version 19 (PX-125) with the Amended Agreement incorporating Version 25 (DX-1004) was a

13    novation under California law.  Novation is defined by statute as "the substitution of a new

14    obligation for an existing one."  Cal. Civ. Code 1530.  Novation is made by "the substitution of a

15    new obligation between the same parties, with intent to extinguish the old obligation[.]"  Cal. Civ.

16    Code § 1531.  Oki Electric proved by clear and convincing evidence that the Original Agreement

17    was not merely supplemented or explained by the Amended Agreement, but instead the entire

18    purpose of the amendment was to substitute the obligation to develop Version 19 with the

19    obligation to develop Version 25. (Tr. at 363:7-364:3; 364:4-6 (Version 25 became the operative

20    agreement after the amendment); DX-1271 at 18:18-25, 19:13-17).  In addition to replacing the

21    obligation, the Amended Agreement was re-integrated as a new operative agreement.  (Tr. at

22    363:10-364:6).  It is apparent from the testimony at trial that NavCom and Oki Semiconductor

23    intended to extinguish the obligation to develop chips conforming to Version 19 under the

24

25    _____

      [16]   Plaintiffs' other citation, *Oldenkott v. American Elec. Inc.*, 14 Cal. App. 3d 198, 203-5 (1971),
26    is equally inapposite. There, a court dealt with a 2-year employment contract with an option to
      renew for a second 2-year term, and held that damages were not limited to the first term because
27    the plaintiff employee was young, in good health, and testified that he would have exercised his
      option to renew.  *Id.*  It did not deal with a situation, as here, where either party had a right to
28    terminate.

Original Agreement and substitute the Amended Agreement, thus obligating the parties to develop chips conforming to Version 25 of the Specification. *See Howard v. Cnty. of Amador*, 220 Cal. App. 3d 962, 977 (1990) (novation evidenced by clear agreement).

### b. Oki Electric Proved at Trial That the Parties Mutually Rescinded or Abandoned the Amended Agreement

Oki Electric proved conclusively that the parties rescinded or abandoned the Amended Agreement. (*See, e.g.*, Dkt. No. 300 at 8-9, 12, 16-17). Oki Electric addresses Plaintiffs new arguments below.[17] By answering Question 3 in the negative, the jury found that NavCom and Oki Semiconductor had abandoned or rescinded the agreements, waived any alleged obligation in the agreements to make a 4-chip design, and/or that the agreements never obligated Oki Semiconductor to develop the proposed 4-chip design. The jury also found, in response to Question 2, that Oki Semiconductor did not breach any obligation to make Version 25. Jury Instruction 29 states that if the jury finds mutual consent to rescind or abandon the agreement, then "***there can be no breach of contract***." (Dkt. No. 314 at 29 (emphasis added)). Thus, by answering "No" to Questions 1, 2, and 3, the jury could have relied upon the substantial evidence demonstrating mutual consent to rescind/abandon, and concluded there was no breach of contract. As such, their verdict should be left undisturbed.

Plaintiffs rely on an excerpt from the Goto 30(b)(6) testimony as evidence against abandonment, but that reliance is misplaced. Plaintiffs' counsel impeached Ms. Goto in that same deposition with respect to the statement that Plaintiffs now rely upon. (PX-279, at 82:15-86:25). As such, Plaintiffs created a conflict in testimony that undermines their position. But when they attempted to pursue that same strategy at trial with Mr. Ushida – the individual with first-hand knowledge of all of the relevant facts – he unequivocally explained (i) the irrelevance of the Yanaga and Taya emails, (ii) that the parties had agreed to abandon the development of Version 25 and the Amended Agreement, and (iii) the true purpose and intent of the July 8, 2008 letter

---

[17]   Rather than burdening the Court with a repetition of the arguments already made in its Rule 50(a) motion and in response to Plaintiffs Rule 50(a) motion, and in order to preserve all rights, Oki Electric incorporates those arguments herein by reference. (*See, e.g.,* Dkt. Nos. 310, at 3-7; 301 at 8-13).

1    requested by NavCom. (PX-101; Tr. 1218:6-1219:15; Tr. 1224:6-1229:5).[18]  As such, the jury's

2    verdict was supported by legally sufficient evidence, and Plaintiffs' arguments fail.

3         Plaintiffs also misapply *Schlinkman v. Davis*, 195 Cal. App. 2d 603 (1961) and *Travelers*

4    *Ins. Co. v W.C.A.B.*, 68 Cal. 2d 7 (1967), each cited for the first time in their motion, and each of

5    which is distinguishable on their facts.  *Schlinkman* involved a contract to build a house, which

6    provided that changes could be made during construction.  The trial court found abandonment

7    based on certain unnamed changes.  The Appeals Court reversed:

8         When a ***building is in process of construction***, and additions or alterations are
         made, the original contract, unless it be so entirely abandoned that it is impossible
9         to trace it and say to what part of the work it shall be applied, is held still to exist,
         and to be binding on the parties so far as it can be followed.
10

11   *Schlinkman,* 195 Cal. App. 2d at 605 (emphasis added).  In short, the *building* that was originally

12   contracted for, despite some modifications, *was built.  Id.*  In sharp contrast, the undisputed

13   evidence at trial proved that NavCom and Oki Semiconductor agreed to *abandon* the contracted-

14   for 3-chip Version 25 design, in favor of a new 4-chip architecture, for which no Specification

15   was prepared.  This is analogous to construction of a high-rise apartment building instead of a

16   ranch style home; both are residences, but a wholesale redesign is required.  In short, the

17   Amended Agreement was abandoned, the subject matter changed entirely and, in what was

18   described as a "major redesign," NavCom admitted that it no longer wanted Oki Semiconductor

19   to make the contracted-for 3-chip Version 25 design.

20        *Travelers* was a workers' compensation case regarding an oral employment contract,

21   governed by employment law, and driven by public policy concerns not relevant here. *Travelers*,

22   68 Cal. 2d at 12.  *Travelers* states that an "employment contract need not detail every condition of

23   employment," and recognized that the parties' later performance indicated that they intended to

24   ─────────────

25   [18]   As the Court will recall from one of the discussions held in Chambers, Plaintiffs refused to
     include Defendant's fairness counter-designations to Ms. Goto's testimony, arguing they were too
26   lengthy and that Defendant should instead pursue the testimony from Mr. Ushida since he had
     first-hand knowledge and would be live in court. (*Cf.*, Tr. 564:16-565:25).  Defendant did so and,
27   as such, Plaintiffs should not be heard to object to, and indeed must now suffer the consequences
     of, Mr. Ushida's definitive and unrebutted testimony concerning the issue of abandonment.
28

be bound by the original agreement. *Travelers*, 68 Cal. 2d at 17. That is clearly not the case here. As described above, NavCom agreed to ***abandon*** development of the 3-chip design, and the parties proceeded to engage in negotiations concerning critical terms for a new agreement, including the price per finished chipset, new time frames for delivery, and development costs. If the parties intended to be bound by the original agreement, there would have been no need to negotiate what would be already-settled terms. NavCom then requested the April 4, 2008 "commitment letter," which would also have been unnecessary if the original contract was still in effect – they could have just enforced it. Hence, consistent with *Travelers*, *McCreary* and *Honda* (*supra*), the parties' actions and performance demonstrates the abandonment/rescission of the Amended Contract. (*See also* Dkt. No. 300, at 8-9; Dkt. No. 310, at 3-7).

Plaintiffs' argument that the parties only contemplated amending the agreement, but never abandoned it, similarly fails. As described above, the parties agreed to ***abandon*** the 3-chip Version 25 design in favor of the proposed 4-chip design. The decision to discontinue the development of Version 25 did not represent a simple "amendment" of the agreement, but a wholesale abandonment of the entire purpose of the contract. (*See* Dkt. No. 310 at 3-7). In his 30(b)(6) deposition, Dr. Galyean himself contrasted a simple "amendment," like correcting minor typographical issues in a specification or filling in a simple detail, with the substantive change in subject matter like the "four-chip solution proposed by Tahoe," which required the contract be changed. (DX-1271 at 118:23-119:25). For example, as described above, even though the change from Version 19 to Version 25 involved the same overall 3-chip architecture, the difference between those two Specifications was substantive enough to require a novation to reflect the change in subject matter to be developed. Plaintiffs have fought tooth and nail to avoid the characterization of the Amended Agreement as a novation, because if going from one 3-chip design to another 3-chip design was a novation, then the decision to drop the 3-chip architecture in favor of an entirely new 4-chip architecture (for which a specification was never even drafted),

1  would surely constitute a new development contract.[19]  As such, the jury's verdict is supported by

2  legally sufficient evidence and should not be disturbed, and if the Court deems it necessary or

3  appropriate, it should enter judgment on Oki Electric's abandonment/rescission defense.

4  ### c.  Oki Electric Proved Waiver at Trial

5  Oki Electric proved by clear and convincing evidence that NavCom knowingly gave up its

6  right to Oki Electric's production chips conforming to Version 25 of the Specification, and

7  thereby waived that obligation.  Contrary to Plaintiffs' assertions, whether the facts so proven are

8  coextensive or overlapping with those that prove abandonment, as described in Section III.B

9  above, is legally irrelevant.  Each defense stands on its own merit.

10  As instructed, the jury's negative answers to Questions 1, 2, and 3 of the verdict form

11  indicate that the jury inherently found for Defendants on the waiver issue, as they recognized that

12  the evidence proves that Oki Semiconductor was released from its obligation to develop the

13  Version 25 chipset.  The jury instruction for the waiver defense, which Plaintiffs agreed to (Tr. at

14  1464:1-1468:1), directed the jury that "[i]f Defendant proves that NavCom gave up its right to

15  Defendant's performance of Defendant's obligation to produce chips under the Amended

16  Agreement conforming to Version 25 of the Specification, then Defendant was *not required* to

17  perform this obligation."  (Dkt. No. 314 at 27 (emphasis added)).  Jury instruction 21, on breach,

18  states that in order to find breach the jury must find that "Defendant failed to do something that

19  the contract *required* it to do[.]"  (*Id.* at 21 (emphasis added)).  As discussed in detail above and

20  in Oki Electric's Rule 50(a) motion, which is incorporated herein by reference, NavCom agreed

21  to discontinue the development of the Version 25 design in favor of a pursuing a "major

22  redesign."  By doing so, it waived any such requirement in the Amended Agreement.

23  Plaintiffs try to mute their waiver, relying on Dr. Galyean's characterization that they

24  "'grudgingly accepted' Oki's proposed four-chip solution."  (Dkt. No. 330 at 21).  NavCom's

25  statement is an admission of acceptance, and Dr. Galyean's emotional state is irrelevant.

---

26  [19]  Plaintiffs now argue that their witnesses characterized the abandonment as a "minor action

27  item," but that too is incorrect.  By the time of those statements, the parties had *already*
abandoned development of the Version 25 3-chip design and recognized the new 4-chip design

28  would not be covered by the Amended Agreement.

OKI ELECTRIC'S RESPONSE TO PLAINTIFFS'
RENEWED MOTION FOR JUDGMENT AS A
MATTER OF LAW PURSUANT TO FRCP 50(b)

NavCom had choices:  it was considering terminating the contract, pursuing a new development with other vendors, staying with the discrete design or continuing with Oki Semiconductor in a new design and development effort.   (*See* DX-1022; Tr. 403:6-411:9; DX-1271 at 192:23-195:23).  Obviously, if it had believed Oki Semiconductor was actually in breach, NavCom could have brought suit or at least threatened to do so had it refused to perform.  In reality, however, NavCom made the decision to abandon the development of Version 25.  Its decision was neither coerced nor detrimental.  To the contrary, Oki Electric proved by clear and convincing evidence that NavCom discontinued the Version 25 chips because, *inter alia*, they would not have met the demands of the market and it was financially beneficial to discontinue their development.  (*See*, *e.g.,* DX-1022; Tr. 403:6-411:9; DX-1016; DX-1017; DX-1018; DX-1019).  As instructed by Instruction 27, to prove waiver, Oki Electric was required to show

> 1.   That NavCom knew Defendant was required to produce chips under the Amended Agreement conforming to Version 25 of the Specification; and

> 2.   That NavCom freely and knowingly gave up its right to have Defendant perform this obligation.

(Dkt. No. 314 at 27).  NavCom does not dispute that it knew that Defendant was required to produce chips under the Amended Agreement conforming to Version 25, as set forth in Instruction 27, ¶ 1.  The only remaining issue is whether NavCom "freely and knowingly gave up" this right, and Plaintiffs admit that NavCom did.  (Dkt. No. 330 at 21).

## IV.   <u>Conclusion</u>

For the reasons set forth herein, and advanced during trial and the hearings that occurred therewith the evidence in this case and the Defendant's prior motions and pleadings, Defendant respectfully requests the Court deny Plaintiffs' Rule 50(b) motion for judgment as a matter of law.   Defendant also requests the Court grant its renewed motion pursuant to Rule 50(b).

Dated:  June 19, 2014

NAGASHIMA & HASHIMOTO

By:  /s/ *Marc R. Labgold*
Marc R. Labgold

*Counsel for Defendant*
*Oki Electric Industry Co., Ltd.*

OKI ELECTRIC'S RESPONSE TO PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW PURSUANT TO FRCP 50(b)