MORGAN, LEWIS & BOCKIUS LLP
Brett M. Schuman, Bar No. 189247
bschuman@morganlewis.com
Rachel M. Walsh, Bar No. 250568
rwalsh@morganlewis.com
Ryan Lindsay Scher, Bar No. 244706
rscher@morganlewis.com
Jeremy N. Lateiner, Bar No. 238472
jlateiner@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:     415.442.1000
Fax:    415.442.1001

Attorneys for Plaintiffs
NAVCOM TECHNOLOGY, INC. and DEERE & COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NAVCOM TECHNOLOGY, INC. and DEERE & COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>OKI ELECTRIC INDUSTRY CO., LTD. and DOES ONE THROUGH TEN inclusive,<br><br>Defendant. | Case No. 5:12-cv-04175 EJD<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR RENEWED MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW PURSUANT TO FED. R. CIV. P. 50(b)**<br><br>Date:          September 12, 2014<br>Time:         9:00 a.m.<br>Div.:           4<br>Judge:        Hon. Edward J. Davila<br>Trial Date:  April 22, 2014 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. THE EVIDENCE ADDUCED AT TRIAL ESTABLISHES THAT OKI BREACHED THE AGREEMENT. .......................................................................... 2

    A. Oki Breached Section 1.0 Of The Agreement. ........................................................ 2

    B. Oki Breached Section 2.6 Of The Agreement. ........................................................ 5

    C. Oki Breached Section 2.8 Of The Agreement. ........................................................ 6

    D. NavCom Fulfilled Its Obligations Under The Agreement. ..................................... 7

    E. Plaintiffs Showed That Oki's Breaches Proximately Caused Its Damages. ........... 8

III. OKI'S ARGUMENT REGARDING QUESTION 3 ON THE SPECIAL VERDICT FORM MUST BE REJECTED. ..................................................................... 11

IV. OKI FAILED TO ADDUCE SUBSTANTIAL EVIDENCE IN SUPPORT OF ITS AFFIRMATIVE DEFENSES. .......................................................................... 12

    A. Oki's Novation Defense Fails As A Matter Of Law. ............................................ 12

    B. Oki's Abandonment / Rescission Defense Fails As A Matter Of Law. ................ 13

    C. Oki's Waiver Defense Fails As A Matter Of Law. ............................................... 14

V. OKI'S VARIOUS WAIVER ARGUMENTS SHOULD BE REJECTED. ........................ 14

VI. CONCLUSION ................................................................................................................ 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aguilera v. Pirelli Armstrong Tire Corp.*,
223 F.3d 1010 (9th Cir. 2000) ................................................................................................ 5

*Brothers v. Hewlett-Packard Co.*,
No. C-06-02254 RMW, 2007 WL 485979 (N.D. Cal. Feb. 12, 2007) .................................... 7

*Citri-Lite Co. v. Cott Beverages, Inc.*,
721 F. Supp. 2d 912 (E.D. Cal. 2010) .................................................................................. 11

*Citri-Lite v. Cott Beverages, Inc.*,
No. 1:07-CV-01075, 2011 WL 284915 (E.D. Cal. Jan. 25, 2011) ........................................ 11

*Clem v. Lomeli*,
566 F.3d 1177 (9th Cir. 2009) .............................................................................................. 12

*Du Zeff's Hollywood, Inc. v. Wald*,
235 Cal.App.2d 678 (1965) .................................................................................................... 5

*Dugan v. Nance*,
CV 11-8145 CAS (SHx), 2013 WL 6633072 (C.D. Cal. Dec. 16, 2013) ............................. 15

*Howard v. County of Amador*,
220 Cal.App.3d 962 (1990) .................................................................................................. 12

*In re Toyota Motor Corp.*
754 F. Supp. 2d 1145 (C.D. Cal. 2010) .................................................................................. 7

*LeVesque v. WCAB*,
1 Cal.3d 627 (1970) .............................................................................................................. 13

*Martin v. Pritchard*,
52 Cal.App. 720 (1921) .................................................................................................... 5, 11

*Martin v. U-Haul Co. of Fresno*,
204 Cal.App.3d 396 (1988) ............................................................................................ 10, 11

*Milgard Tempering, Inc. v. Selas Corp. of Amer*,
902 F.2d 703 (9th Cir. 1990) .................................................................................................. 3

*Peal v. Gulf Red Cedar Co. of Cal.*,
15 Cal.App.2d 196 (1936) .................................................................................................... 13

*Rudgayzer v. Yahoo! Inc.*,
5:12-CV-01399 EJD, 2012 WL 5471149 (N.D. Cal. Nov. 9, 2012) ...................................... 5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sanders v. City of Newport*,
  657 F.3d 772 (9th Cir. 2011) .......................................................................................... 12

*Sharp Structural, Inc. v. Franklin Mfg., Inc.*,
  283 F. App'x 585 (9th Cir. 2008) ................................................................................... 14

*Stinnett v. Damson Oil Corp.*,
  648 F.2d 576 (9th Cir. 1981) .................................................................................... 12, 13

*Sweet v. Johnson*,
  169 Cal.App.2d 630 (1959) ......................................................................................... 4, 5

*Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*,
  185 Cal.App.4th 1050 (2010) ........................................................................................ 11

*Travelers Ins. Co. v. WCAB*,
  68 Cal.2d 7 (1967) ......................................................................................................... 13

*Tuso v. Green*,
  194 Cal. 574 (1924) ....................................................................................................... 13

*U.S. v. Miller*,
  822 F.2d 828 (9th Cir. 1987) ........................................................................................... 3

*Yates v. GunnAllen Financial*,
  321 F. App'x 560 (9th Cir. 2008) ................................................................................... 14

**STATUTES**

Civ. Code
  § 3360 ........................................................................................................................... 4, 5

**RULES AND REGULATIONS**

Fed. R. Civ. P.
  49(b) .............................................................................................................................. 11
  50(a) ................................................................................................................... 1, 14, 15
  50(b) ............................................................................................................. 1, 2, 11, 15

**OTHER AUTHORITIES**

CACI 303 ............................................................................................................................ 4

CACI 360 ............................................................................................................................ 4

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

## I. INTRODUCTION

Oki's opposition to Plaintiffs' renewed motion for judgment as a matter of law is largely non-responsive to the evidence that Plaintiffs presented at trial establishing Oki's breaches of the Customized Advanced GPS RF Chipset Development and Purchase Agreement ("Agreement"). Plaintiffs established that Oki breached the Agreement by terminating without notice and failing to complete the current one-year term (Section 1.0); by failing to provide NavCom with working Engineering Prototypes (Section 2.6); and by failing to repair or replace the non-conforming chips that it provided to NavCom (Section 2.8). Plaintiffs also showed that they were harmed by not receiving Engineering Prototypes and by not receiving the benefit of Oki's design work through the end of the 2008 term. And, at a minimum under controlling California law, Plaintiffs are entitled to nominal damages for Oki's breach of Section 1.0.

Oki's inability to defend the jury's no-breach special verdict is apparent from its opposition, where it repeatedly argues that the jury's special verdict can be sustained based on Oki's abandonment, waiver and other affirmative defenses. This is impossible, however, because the jury never reached those defenses. *See* Dkt. No. 318 (Verdict Form). Oki's related argument that the jury's answer to Question 3 on the Special Verdict form "***necessarily addressed the question of whether the parties had abandoned or waived the obligation to make the Version 25 design, and concluded they never entered into an agreement to make a 4-chip design***," Dkt. No. 339, at 15:5-8 (emphasis added), must be rejected for the same reason. Oki's argument establishes yet another problem with Question 3: if the jury interpreted it as Oki now contends, then Question 3 improperly shifted the burden of proof on Oki's affirmative defenses – at least some of which Oki had to prove by clear and convincing evidence – to Plaintiffs to disprove. Plaintiffs obviously were not required to negate Oki's affirmative defenses to establish breach.

Finally, contrary to Oki's arguments, Plaintiffs did not waive any of the grounds for its Rule 50(b) motion. Plaintiffs' Rule 50(b) motion seeks judgment on a *subset* of the claims, defenses and issues that were the subject of Plaintiffs' Rule 50(a) motion.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

## II. THE EVIDENCE ADDUCED AT TRIAL ESTABLISHES THAT OKI BREACHED THE AGREEMENT.

Plaintiffs' proved that Oki breached Section 1.0, 2.6 and 2.8 of the Agreement. Oki's attempt to defend the jury's special verdict based on its un-adjudicated affirmative defenses – and one that was rejected by the Court as a matter of law – necessarily fails.

### A. Oki Breached Section 1.0 Of The Agreement.

The evidence adduced at trial establishes that Oki breached Section 1.0 of the Agreement by halting work in July 2008, before the end of the 2008 term. The Court provisionally agreed, finding that, for purposes of summary judgment, Oki had breached Section 1.0. *See* Dkt. No. 199 at 15:14-16:2. The Agreement required Oki to provide at least three-months notice of intent to terminate at the end of a year-long term. Oki does not dispute that it sent a termination letter on July 8, 2008 referencing the Agreement. Dkt. No. 331-22, (PX-165).[1] Nor does Oki dispute that it did no more work on the RF ASICs after that date. *See* Dkt. No. 331-5 (5/1/14 Trial Tr. (Ushida)) 1251:8-10; Dkt. No. 331-31 (PX-278 (Nobbe)) 172:13-173:5, 173:7-25; Dkt. No. 331-12 (PX-33); Dkt. No. 331-24 (PX-201).

Contrary to Oki's argument, the Agreement plainly required Oki to work until the end of a year-long term. Section 1.0 states that the Agreement, after the first year of the Agreement, "shall automatically renew for successive one (1) year periods until Buyer or Seller terminates the Agreement with at least three (3) months written notice prior to the expiration of any then current term." Dkt. No. 331-20 (PX-125) at § 1.0. The Agreement provides for successive one-year terms. There is no provision authorizing termination in the middle of a term. *See id.* Under Section 1.0, if either party gave notice of its intent to terminate at least three months prior to the end of a term, the Agreement would not roll over into another term. Oki's reliance on the "law of

---

[1] Much of the evidence cited herein was previously submitted with Plaintiffs' Rule 50(b) or Rule 59 motions. For such previously-cited evidence, we cite the declarations in support of the Rule 50(b) and Rule 59 motions. *See* Dkt. Nos. 331 (declaration in support of Rule 50(b) motion); 344 (declaration in support of Rule 59 motion). Additional evidence in support of this Reply is attached to the Declaration of Brett M. Schuman In Support of Plaintiffs' Reply In Support of Their Renewed Motion for JMOL, filed concurrently herewith, cited as " Reply Ex. __." Trial exhibits again retain their trial exhibit numbers – "PX-__" and "DX-__."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

the case" is misplaced here. The Court's prior Order does not preclude a proper interpretation of Section 1.0. *See U.S. v. Miller*, 822 F.2d 828, 832 (9th Cir. 1987) ("Law of the case should not be applied woodenly in a way inconsistent with substantial justice.").[2]

Oki's argument that it gave notice of termination prior to July 8, 2008, when it delivered a presentation, is frivolous. The presentation on which Oki relies as a "notice of termination" could not possibly be such notice. It is a technical PowerPoint presentation that never once even mentions the Agreement. *See generally* Dkt. No. 331-44 (DX-1169). All it says is that an "[a]ll-layer redesign is needed to solve remaining issues and to improve overall performance of chips to meet target specifications." *Id.* at NAV0081293. None of the other evidence Oki cites is legally sufficient to support a jury finding that Oki gave notice of termination prior to delivery of its July 8, 2008 notice of termination.

Oki's attempt to explain away the July 8, 2008 termination letter is not sufficient to sustain the jury's verdict, either. The July 8, 2008 letter speaks for itself, regardless of Mr. Ushida's testimony attempting to explain why Oki supposedly sent it. The letter states "OKI hereby provides ***notice of termination*** of the Development and Purchase Agreement C04719-VPA dated December 14, 2005 . . . ." Dkt. No. 331-22 (PX-165). Oki's argument that its notice of termination was no more than an attempt to alleviate some suspected confusion at NavCom is, as Mr. Ushida admitted at trial, lacking in any evidentiary foundation. Reply Ex. M, 5/1/14 Trial Tr. 1219:2-6 ("We didn't quite know exactly what was the confusion on the part of NavCom was."). The June 30, 2008 email that Oki claims NavCom was confused by bears the subject line "Regarding the future of the NOVA ***RF ASIC*** Project" and states that "[t]he NOVA ***RF ASIC*** project was also reviewed . . . and it is proving very difficult to continue this project." PX-164 (emphases added). The June 30, 2008 email was clear regarding which project was "proving very

---

[2] Application of the law of the case doctrine requires that the matter actually have been decided. *See Milgard Tempering, Inc. v. Selas Corp. of Amer*, 902 F.2d 703, 715 (9th Cir. 1990). Here Oki cannot show that that Court determined how long it needed to work after giving notice under the Agreement. *Compare* Dkt. No. 199 at 14:21-22 ("Section 1.0 expressly grants Defendant the right to terminate the Agreement, subject to the term regarding three months' notice."); *with* Dkt. No. 231 at 4:8-9 ("Defendant's promise that if it terminated the agreement it would give 3 months' notice prior to the end of a term.").

difficult to continue." *Id.*

Oki's argument that NavCom "did not treat the July 8, 2008 letter as a breach" is both irrelevant and wrong, as is argument on NavCom's purported state of mind after the end of the project. Treating the letter as a breach is not an element Plaintiffs must prove for their claim. *See* Dkt. No. 314 at 21 (elements of breach of contract). Plaintiffs' witnesses testified at trial regarding the business reasons why Plaintiffs did not sue Oki sooner. *See* Reply Ex. K, 4/23/14 Trial Tr. (Galyean) 337:4-20 (describing concerns about digital ASIC project).

Plaintiffs also proved that NavCom and Deere suffered actual harm from Oki's termination of the Agreement in the middle of the 2008 term. NavCom and Deere did not receive the benefit of Oki's work through the end of the 2008 term. At one point, Oki projected delivery of Engineering Prototypes of the 4-chip design in November 2008. *See* Dkt. No. 331-44 (DX-1169) at NAV0081294 (dated Feb. 21, 2008); Dkt. No. 344-12 (DX-1022) at NAV0043863 (dated March 10, 2008). As of May 2008, Oki projected tapeout in early January 2009. Dkt. No. 331-15 (PX-56) at NAV0045201. Oki relies on its own mounting delays and ever-evolving timetable to contend that NavCom and Deere could not have been harmed by Oki's sudden decision to quit. The evidence establishes that if Oki had kept working, as required by the Agreement, Plaintiffs could have received a finished RF ASIC design, or something very close to it, by the end of the 2008 term.

Oki's argument against nominal damages should be rejected. Contrary to Oki's argument, CACI 303 does not preclude the possibility of nominal damages. *See* Dkt No. 339 at 7:8-8:25. Oki's suggestion that CACI 303 is inconsistent with nominal damages is belied by CACI 360, which states: "If you decide that [defendant] breached the contract but also that [plaintiff] was not harmed by the breach, you may still award [it] nominal damages such as one dollar." CACI 360 cites as authority Civil Code Section 3360 and *Sweet v. Johnson*, 169 Cal.App.2d 630 (1959), a case that Oki avoids addressing in its opposition. The *Sweet* case states:

> A plaintiff is entitled to recover nominal damages for the breach of
> a contract, despite inability to show that actual damage was
> inflicted upon him, since the defendant's failure to perform a
> contractual duty is, in itself, a legal wrong that is fully distinct from
> the actual damages. The maxim that the law will not be concerned

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

> with trifles does not, ordinarily, apply to violation of a contractual right. Accordingly, nominal damages, which are presumed as a matter of law to stem merely from the breach of a contract may properly be awarded for the violation of such a right. And, by statute, such is also the rule in California.

*Sweet*, 169 Cal.App.2d at 632-33 (internal citations omitted). Thus, under controlling California law, Oki's breach of contract, by itself, constitutes "harm" justifying nominal damages.

The cases cited by Oki in its opposition are inapposite. In *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000), the court dismissed the plaintiff's breach of contract claim at the summary judgment stage where the only evidence of harm was a "fear of a future layoff." Similarly, in *Rudgayzer v. Yahoo! Inc.*, 5:12-CV-01399 EJD, 2012 WL 5471149, at *6-7 (N.D. Cal. Nov. 9, 2012), the court dismissed a breach of contract claim at the pleading stage where the plaintiff failed to allege actual damages. These cases stand for the limited proposition that the plaintiff in a breach of contract case must allege and, if challenged at summary judgment, present some evidence of actual damages in order to proceed to trial. *Id.* at 6. ("[W]hile Plaintiff is correct that nominal damages have been awarded in breach of contract lawsuits, the non-breaching party must still allege actual damages in order to support a prima facie case."). None of Oki's cases stand for the proposition that if a jury finds a plaintiff was not otherwise harmed by a breach of contract, the plaintiff cannot recover nominal damages.[3] Indeed, California Civil Code section 3360 and *Sweet* state that a plaintiff is entitled to nominal damages under those circumstances.

**B.  Oki Breached Section 2.6 Of The Agreement.**

The evidence establishes that Oki breached Section 2.6 by failing to deliver working Engineering Prototypes that met the specifications at any point before the Agreement was terminated. The Agreement defines "Engineering Prototypes" as chips that meet the specifications. Dkt. No. 331-20 (PX-125) at § 1.1, 2.4. It is undisputed that Oki never delivered

---

[3] Oki also cites *Martin v. Pritchard*, 52 Cal.App. 720, 727 (1921), and *Du Zeff's Hollywood, Inc. v. Wald*, 235 Cal.App.2d 678, 681 (1965), for the proposition that a new trial cannot be granted to vindicate a right to nominal damages. Those cases are both, however, in the context of an appeal. *See, e.g., Martin*, 52 Cal.App. at 727 (a judgment "will not be reserved on appeal" where "it is established that a plaintiff is entitled to nothing more than nominal damages.").

functional Engineering Prototypes at any time prior to Oki's termination.

In its opposition, Oki does not dispute that it delivered a set of chips in April 2007 that had serious flaws and did not meet the specifications. And Oki does not dispute that the second set of chips delivered in early 2008 did not meet the specifications either. Oki makes the excuse that the second set of chips were "never intended to be functional." *See* Dkt. No. 339, 11:7-11. This argument omits the reason why: Oki's first attempt at creating Engineering Prototypes was so off-target that the flaws with those chips could not even be fully diagnosed, much less fixed. *See* Dkt. No. 331-1 (4/22/14 Trial Tr. (Knight)) 194:9-12 (the first set of chips "were so poor we could not even figure out what was wrong with them"). In any event, the debate regarding whether the second set of chips was intended to work is irrelevant to Oki's breach of Section 2.6 because it is undisputed that Oki failed to provide working Engineering Prototypes ***at any time*** prior to Oki's termination of the Agreement.

Oki's several arguments regarding when "sign-off" occurred, and the ten-month estimate for delivery of Engineering Prototypes, are also irrelevant for the same reason. *See* Dkt. No. 339 at 10:10-13:2. Oki attempts to carve up the period before termination into any number of segments less than ten months. But Oki's segmentation does not address or change the established fact that Oki never delivered working Engineering Prototypes to NavCom.

Again, Oki cannot hope to sustain the jury's no-breach finding by resort to its affirmative defenses, which the jury did not reach. *See* Dkt. No. 339 at 11:20-12:1 (arguing no breach of Section 2.6 because "NavCom had waived any obligation of Oki Semiconductor's to develop the three-chip design"), 12:19-22 (arguing no breach of Section 2.6 because "the Amended Agreement to develop Version 25 was mutually abandoned").[4]

### C. Oki Breached Section 2.8 Of The Agreement.

The evidence adduced at trial establishes that Oki never repaired or replaced non-conforming and non-working chips it delivered to NavCom with working Engineering

---

[4] Oki's inability to defend the jury's no-breach special verdict is no more apparent than when Oki resorts to its **rejected** statute of limitations defense, which was not presented to the jury. *See* Dkt. No. 339 at 13:3-23.

Prototypes, as required by the warranty it gave NavCom in Section 2.8. In its opposition, Oki does not dispute that it never repaired or replaced the chips. *See* Dkt. No. 331-2 (4/23/14 Trial Tr. (Galyean)) 315:20-22.

Oki's argument that Plaintiffs needed to present evidence that the failure of the chips was due to materials or workmanship is incorrect. *See* Dkt. No. 339, n.11. Section 2.8 warrants that Engineering Prototypes will be both "free from defects and materials or workmanship, [and] shall conform to Product Specifications listed in Schedule A . . . ." Dkt. No. 331-20 (PX-125). Further, Section 2.8 does not distinguish between defects in workmanship and materials and design defects.[5] That is because both were Oki's responsibility. Oki was the designer and the builder of the RF ASICs. NavCom just provided its requirements. Oki studied NavCom's requirements and promised NavCom it could design and build chips meeting NavCom's requirements. And Oki gave NavCom a warranty: if the chips did not meet the specifications, Oki would repair or replaced them with chips that did. Oki plainly breached the warranty it provided in Section 2.8.

The remainder of Oki's response is based on its affirmative defenses of abandonment, rescission, waiver and/or excuse. *See, e.g.,* Dkt. No. 339 at 14:1-3 (arguing that "well before the alleged breach on July 8, 2008, NavCom had excused/waived any obligation for Oki Semiconductor to make a 3-chip chipset . . . ."). Again, the jury's no-breach special verdict cannot be sustained based on these affirmative defenses.

### D. NavCom Fulfilled Its Obligations Under The Agreement.

The evidence establishes that NavCom fulfilled its obligations under the Agreement. While Oki previously suggested that NavCom failed to fulfill several obligations, *see* Dkt. No. 330, at 10:23-12:18, in its opposition Oki contends only that its entire performance was excused

---

[5] The cases cited by Oki do not apply here because Oki warranted that the Engineering Prototypes would meet the specifications. *In re Toyota Motor Corp.* 754 F. Supp. 2d 1145, 1181-82 (C.D. Cal. 2010), dealt with a warranty on only "materials and workmanship." The other case cited by Oki, *Brothers v. Hewlett-Packard Co.*, No. C-06-02254 RMW, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007), similarly found that design defects were not covered by a warranty on "materials and workmanship." Section 2.8 warrants that the Engineering Prototypes will meet the applicable specifications.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

by NavCom's failure to make the final, $150,000 milestone payment identified in Schedule C of the Agreement. *See* Dkt. No. 331-20 (PX-125) at Schedule C; Dkt. No. 331-1 (4/22/14 Trial Tr. (Galyean)) 280:9-19. NavCom did not make the third payment because it never received working Engineering Prototypes from Oki. The third and final payment was due when Oki delivered working Engineering Prototypes, not before, and clearly not when Oki delivered chips in April 2007 that it acknowledged failed miserably.

Oki raised the issue of the third payment contemplated by the Agreement for the first time only ***after*** Plaintiffs had rested, giving them no chance to respond. The parties' course of dealing shows that Oki sent NavCom an invoice each time a payment was due. *See* Dkt. No. 331-18 (PX-83); Dkt. No. 331-19 (PX-95); *see also* Dkt. No. 331-1 (4/22/14 Trial Tr. (Galyean)) 280:9-19. Oki does not dispute that it never invoiced NavCom for the third payment, nor did it ask for the third payment, because Oki understood that it was required to deliver Engineering Prototypes that met the specifications. Oki goes on to argue that it was "not obligated to provide any additional Engineering Prototypes after April 2007" because it had not received the final payment. Dkt. No. 339, 5:24-25. If this were the case, why did Oki continue to work on the Nova RF ASICs for the next 15 months and deliver a second set of chips?

### E. Plaintiffs Showed That Oki's Breaches Proximately Caused Its Damages.

Although the jury did not reach the issue of Plaintiffs' damages under the Court's bifurcation, Plaintiffs presented sufficient evidence of damages proximately caused by Oki's breaches of the Agreement. Oki presented no contrary evidence or evidence refuting proximate cause.

Plaintiffs established that the Engineering Prototypes Oki was supposed to deliver to NavCom represented a finished design ready to move into production. Plaintiffs established that, even if Oki had quit after delivering working or repaired Engineering Prototypes, Plaintiffs could have taken the design to another semiconductor manufacturer for production. *See* Dkt. No. 331-2 (4/23/14 Trial Tr. (Galyean)) 316:1-12, 318:8-24, 320:4-322:22. Plaintiffs established that NavCom had done this in the past with other chips at similar or lower prices than Oki's prices. *Id.* at 322:2-13 (Galyean); Dkt. No. 331-4 (4/30/14 Trial Tr. (Hansen)) 1035:1-24; Dkt. No. 331-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

29 (PX-261) at NAV0082335 (Maxim's proposal). Had Oki delivered a working design, and had NavCom taken it to another manufacturer, NavCom would not have had to use the more costly discrete solution. Dkt. No. 331-3 (4/29/14 Trial Tr. (Wilson)) 779:2-8.

Oki did not present any contrary evidence. Oki did not adduce any evidence supporting its argument that NavCom could not take the design to another manufacturer. It did not present any evidence that NavCom could not have gotten production versions of the chips from a different manufacturer at similar or lower prices. It did not present any evidence that it would have quit anyway had it completed the design.

In its opposition, Oki relies exclusively on unsupported attorney argument. *First*, Oki argues that the Agreement precluded NavCom from using the Engineering Prototypes in production. Dkt. No. 339, at 16:13-17:3. That is non-responsive. Plaintiffs would not have used the Engineering Prototypes in their Gen 5 receivers, even if Oki had delivered them. The Engineering Prototypes would have represented a completed design for the chips – like the 1995 prototype Toyota Prius represented the completion of the design of that car, prior to moving it into production. It is the completed design that Plaintiffs established they could and would have taken to another manufacturer to create production versions of the chips, had Oki completed the design. *See* Dkt. No. 331-2 (4/23/14 Trial Tr. (Galyean)) 318:8-24.

*Second*, Oki argues that Plaintiffs had no rights to tooling under Section 10.0 ("Tooling") because that section deals only with the Production Phase and the project never reached the Production Phase (because Oki did not finish designing the chips). Dkt. No. 339, at 17:4-18:1. Section 10.0 of the Agreement is not confined to the Production Phase. It states that "[t]ooling developed for and paid for by Buyer shall be owned by and remain the exclusive property of Buyer." Dkt. No. 331-20 (PX-125) at OKI_LW_008270. Oki's contention that this refers only to testboards built and developed by NavCom ignores that this provision refers to tooling developed ***for***, not by, Buyer, *i.e.* NavCom. The Agreement gives ownership rights over the necessary tools to NavCom.

*Third*, Oki's speculation that the tooling would not have existed until April 2009 does not defeat proximate cause. Again, Oki tries to benefit from its own delays and argue that Plaintiffs

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

would not have been harmed. The evidence shows that as late as March 2008, Oki anticipated delivering Engineering Prototypes of the 4-chip design in November 2008. *See* Dkt. No. 344-12 (DX-1022) at NAV0043863 (dated March 10, 2008). As of May 2008, Oki was projecting tapeout in early January 2009. Dkt. No. 331-15 (PX-56) at NAV0045201. Oki's argument ignores that, even under its elongated timetable, the RF ASICs would have been complete or very nearly so by the end of the 2008 term if Oki had kept working.

In any event, under the Court's bifurcation, the extent of the harm caused by Oki's breaches was for the jury to decide in a damages phase, not for the liability phase. Oki's characterization of Deere as NavCom's "customer" does not change the fact that NavCom and Deere were both harmed by Oki's breach and failure to complete the design.

*Fourth*, Oki misstates the record in arguing that breach of Section 2.6 could not have proximately caused Plaintiffs' damages. The evidence establishes that the Gen 5 receivers cost Deere and NavCom more to build because they did not have the cost-reducing RF ASICs that Oki was supposed to design for NavCom.[6]

*Fifth*, Oki's renewed argument that its purported right to terminate insulates it against damages for other breaches should once again be rejected. *See* Dkt. No. 266 at 1 (denying Defendant's Motion in Limine No. 2). Oki fails to point to any evidence that it would have terminated if it had not breached Section 2.6 and 2.8, and had delivered a working design. It is undisputed that Oki stood to make money had the RF ASICs gone into production. *See* Dkt. No. 331-20 (PX-125) at OKI_LW_008258, § 6.0 ("SALES BY OKI"); Dkt. No. 331-21 (PX-131) at OKI_LW_004157. *Martin v. U-Haul Co. of Fresno*, 204 Cal.App.3d 396, 400 (1988) does not apply here. In that case, the only breach submitted to the jury was U-Haul's failure to provide sufficient notice of termination prior to terminating the contract. The damages for that alleged

---

[6] A number of Oki's arguments regarding proximate cause are actually arguments about mitigation of damages – another issue that, like Oki's affirmative defenses, was not decided by the jury and therefore cannot sustain the jury's special verdict. At any event, Plaintiffs' witnesses explained why NavCom and Deere did not pursue an alternative source of chips after Oki terminated, and that the "next generation" (Gen 6) RF ASIC chipset was created for the next generation product. *See* Reply Ex. K, 4/23/14 Trial Tr. (Galyean) 338:1-19; Reply Ex. L, 4/30/14 Trial Tr. (Wilson) 949:25-951:12.

breach were limited to the notice period. *Id*. at 409. The *Martin* court did not address other breaches, so the court could not have addressed facts similar to those present in this case. *Citri-Lite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912, 934-37 (E.D. Cal. 2010) expressly recognized that "[t]he *Martin* court's analysis of the termination clause, and its impact on recoverable damages, must be understood in light of the circumstances of the case." *Id*. at 935. The district court found that Citri-Lite could recover damages for loss of good will relating to Cott's conduct before termination so long as the calculation did not assume that Cott would continue to promote and sell the beverages past termination. *Id*. at 936.[7] Oki's reliance on *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*, 185 Cal.App.4th 1050 (2010) is similarly misplaced. In that case, the court's holding was based on a limitation of liability provision in the agreement that barred all damages arising from the failure to complete construction of a store. *Id*. at 1064-65.

### III. OKI'S ARGUMENT REGARDING QUESTION 3 ON THE SPECIAL VERDICT FORM MUST BE REJECTED.

Plaintiffs previously explained why it was improper to ask the jury to decide whether Oki was obligated under the Agreement to finish the RF ASICs using the 4-chip design. *See* Dkt. No. 330 at 10:12-22. In its opposition, Oki argues that the jury's answer to Question 3 means that Oki proved its affirmative defenses:

> By answering Question 3 in the negative, the jury found that NavCom and Oki Semiconductor had abandoned or rescinded the agreements, waived any alleged obligation in the agreements to make a 4-chip design, and/or that the agreements never obligated Oki Semiconductor to develop the proposed 4-chip design.

Dkt. No. 339 at 21:7-10; *see also id.* at 15:5-8. Again, the special verdict cannot be sustained based on Oki's affirmative defenses. The jury plainly did not reach Oki's affirmative defenses.[8]

To the extent the jury's answer to Question 3 can be construed as Oki now suggests, it

---

[7] *Citri-Lite v. Cott Beverages, Inc.*, No. 1:07-CV-01075, 2011 WL 284915 (E.D. Cal. Jan. 25, 2011) addresses a *Daubert* motion and does not exclude damages for loss of good will.
[8] For the reasons stated in Plaintiffs' Opposition to Oki's Rule 50(b) motion, the Court should not enter findings regarding Oki's affirmative defenses under Fed. R. Civ. P. 49(b) as requested by Oki. *See* Dkt. No. 338.

would constitute clear legal error. Oki had the burden of proof on its affirmative defenses – in at least some cases, Oki had to prove those defenses by clear and convincing evidence. Question 3 asked the jury: "***Did NavCom prove*** that Defendant was contractually obligated to develop the proposed 4-chip RF ASIC design?" Dkt. No. 318, at 3:1-2 (emphasis added). NavCom did not have to prove lack of abandonment, lack of rescission, or lack of waiver to prevail on its breach of contract claim, as Oki now contends. When the trial court adds an element to the plaintiff's burden of proof, the error is prejudicial. *See Clem v. Lomeli,* 566 F.3d 1177, 1182-83 (9th Cir. 2009) (finding error not harmless where jury instructions had added extra element to plaintiff's burden of proof). For example, in an employment case, a district court gave instructions that required the plaintiff to prove that her employer did not have "reasonable cause" to deny her reinstatement, which was not an element of her claim. *Sanders v. City of Newport*, 657 F.3d 772, 781 (9th Cir. 2011). The Ninth Circuit reversed a judgment for the defendant and remanded for a new trial because the district court improperly "added an extra element to [the plaintiff's] burden of proof." *Id*.

## IV. OKI FAILED TO ADDUCE SUBSTANTIAL EVIDENCE IN SUPPORT OF ITS AFFIRMATIVE DEFENSES.

### A. Oki's Novation Defense Fails As A Matter Of Law.

Oki presented no evidence showing that Amendment 1 to the Agreement was anything but what it purported to be – an amendment. *See* Dkt. No. 331-13 (PX-46). Amendment 1 replaces Version 19 of the specification, attached to the Agreement, with Version 25 of the specification, leaving all other terms unchanged. *See id.* There is no evidence that the parties intended to extinguish the original contract.[9] *See Howard v. County of Amador*, 220 Cal.App.3d 962, 977-78 (1990) (internal citations omitted). As the Ninth Circuit has held, "[a]lteration of some details of a contract, while leaving undisturbed its general purpose . . . constitutes a mere modification of the original contract, and the latter remains in force as modified." *Stinnett v. Damson Oil Corp.*,

---

[9] The portions of the record cited by Oki in support of its statement that the Agreement was "re-integrated" to include Version 25 of the specification as the "operative agreement" actually say "Q. And Version 25 becomes the operative agreement; correct? I mean the operative specification? A. Yes." Reply Ex. K, 4/23/14 Trial Tr. (Galyean) 364:4-6.

Morgan, Lewis &
Bockius LLP
Attorneys at Law
San Francisco

12

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

648 F.2d 576, 582 (9th Cir. 1981) (citation omitted). Oki fails to address *Stinnett* in its opposition.

### B. Oki's Abandonment / Rescission Defense Fails As A Matter Of Law.

Oki's story that the parties mutually abandoned or rescinded the Agreement when they began to discuss Oki's proposed four-chip design is not supported by any legally sufficient evidence. Oki must have shown positive evidence of both parties' (not just Oki's) acts and intent to rescind or abandon the contract. *See Peal v. Gulf Red Cedar Co. of Cal.*, 15 Cal.App.2d 196, 199 (1936); *Tuso v. Green*, 194 Cal. 574, 582 (1924). Oki can point to evidence of no such act or intent to rescind or abandon the Agreement, so this defense must fail.

The evidence establishes that the parties never discussed abandoning or rescinding the Agreement, even after Oki proposed its 4-chip design. At most, the evidence establishes that the parties contemplated amending the Agreement, a "***minor action item***," to update the specification to conform to Oki's new 4-chip design. Dkt. No. 331-15 (PX-56) at NAV0045202. The Agreement expressly contemplated such changes to the specification. *See* Dkt. No. 331-20 (PX-125) at Schedule A, §§ 2.3.1, 2.5.2, OKI_LW_008379 (Version 19); Dkt. No. 331-13 (PX-46) at NAV0065260 (Version 25). Evidence regarding the discussions between NavCom and Oki are consistent only with amending, not abandoning or rescinding, the Agreement. *See Travelers Ins. Co. v. WCAB,* 68 Cal.2d 7, 17 (1967), *disapproved on other grounds, LeVesque v. WCAB*, 1 Cal.3d 627, 637 (1970) (citations omitted). Likewise, the contemporaneous documents relied on by both NavCom and Oki are consistent only with amendment, not abandonment.[10] Mr. Ushida, Oki's only live witness, did not testify that NavCom and Oki ever discussed abandoning or terminating the Agreement. *See* Reply Ex. M, 5/1/14 Trial Tr. (Ushida) 1218:6-1219:6 (discussing purported reasons for Oki sending termination letter).

---

[10] Oki argues that at deposition, Dr. Galyean contrasted a simple "amendment" with a "substantive change." Dkt. No. 339, 23:19. Dr. Galyean's testimony actually states that the proposed four-chip solution "was a sufficiently sufficient change that it would have to be documented in the specification and ***amended*** with the contract," contemplating an amendment, not abandonment or rescission, to incorporate Oki's new 4-chip design. Dkt. No. 331-34 (DX-1271 (Galyean Dep.)) 119:16-18.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

### C. Oki's Waiver Defense Fails As A Matter Of Law.

Oki's waiver defense fails for the same reasons that its rescission and mutual abandonment defenses do. There is simply no evidence – much less clear and convincing evidence – that NavCom freely and knowingly gave up its rights to have Oki perform its obligations. *See* Dkt. No. 314 at 27 (Jury Instruction No. 27). At no point did NavCom give up its right to have Oki design and build RF ASICs to include in its GPS systems. That NavCom was internally considering other options, including terminating the Agreement, pursuing a new development partner, or using the discrete design, is not clear and convincing proof that NavCom freely and knowingly gave up its rights under the Agreement. *See* Dkt. No. 344-12 (DX-1022); Reply Ex. N (DX-1271) at 192:23-193:21, 195:1-23. The evidence establishes that NavCom decided to continue with Oki under the Agreement until Oki terminated in July 2008. Further, the Agreement contains an anti-waiver provision, Section 26, which provides: "The failure by either party to enforce at any time or for any period of time any of the provisions of this Agreement shall not constitute a waiver of such provisions or of the right of such party to enforce each and every provision." Dkt. No. 331-20 (PX-125) at OKI_LW_008274. By entertaining and considering Oki's proposed 4-chip design, as a remedy for Oki's inability to deliver the 3-chip design initially proposed by Oki, Plaintiffs did not waive their rights under the Agreement as a matter of law.

## V. OKI'S VARIOUS WAIVER ARGUMENTS SHOULD BE REJECTED.

Oki argues that Plaintiffs waived a number of arguments by not arguing them at trial, or by not including them in their Rule 50(a) motion or in response to Oki's Rule 50(a) motion. None of Oki's waiver arguments have any merit.

*First*, the cases relied upon by Plaintiffs are distinguishable. In *Sharp Structural, Inc. v. Franklin Mfg., Inc.*, 283 F. App'x 585, 588 (9th Cir. 2008), the Ninth Circuit found that an entire issue – compensatory damages – had not been raised on a Rule 50(a) motion. Likewise in *Yates v. GunnAllen Financial*, 321 F. App'x 560, 562 (9th Cir. 2008), the defendant did not move on the issue of whether the plaintiff's claims would support the award of punitive damages. The decisions do not stand for the proposition that a moving party must make every gloss on every

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

argument and cite every possible fact in support of their Rule 50(a) motion, or else be barred.

*Second*, Plaintiffs did not waive their ability to respond to Oki's argument that NavCom failed to make the third and final payment. Oki raised this theory for the first time **after** Plaintiffs rested, and Oki does not dispute this. *See* Dkt. No. 310, 7:20-8:6 (filed 5/6/14). Oki's assertion that Plaintiffs were clairvoyant enough to know that Oki would raise this issue because Dr. Galyean was questioned on the Schedule C payments at trial makes no sense. Dr. Galyean explained that NavCom had met its obligations by making the first two payments, and that the third never came due. Dkt. No. 331-1 (4/22/14 Trial Tr. (Galyean)) 280:9-19.

*Third*, Plaintiffs did not waive their ability to respond to Oki's argument that it gave notice of termination by way of a February 2008 technical PowerPoint presentation. Plaintiffs previously explained that the PowerPoint presentation did not constitute notice of termination. *See* Dkt. No. 301, 19:2-4. Section 23.0 provides yet another reason why Oki's argument fails.

*Fourth*, Oki's argument that Plaintiffs waived any objection to Question 3 on the Special Verdict form should be rejected. Plaintiffs objected to both the language of Question 3, its inclusion in the special verdict form, the proposed special verdict form itself, and the jury instruction on contract formation that underlies Question 3. *See* Dkt. No. 344-9 (5/6/14 Trial Tr.) 1433:8-1434:1 (contract formation instruction), 1442:10:1443:2 (rejection of offer instruction), 1556:19-1557:4 (objecting to special verdict form as a whole). Oki's citation on this point is distinguishable: in *Dugan v. Nance*, CV 11-8145 CAS (SHx), 2013 WL 6633072, at *14 (C.D. Cal. Dec. 16, 2013), the defendant failed to object to the formulation of the special verdict form.

*Fifth*, in a footnote and without explanation, Oki argues that "NavCom has also waived any argument concerning Deere's alleged third-party beneficiary status." *See* Dkt. No. 339, at 18:25-28, fn. 14. Obviously, Plaintiffs were not obligated to move for JMOL under Rule 50(b) in order to preserve this issue for a new trial, if one occurs. Oki cites no authority supporting its waiver argument. There is none.

## VI. CONCLUSION

For the above-stated reasons, Plaintiffs NavCom and Deere respectfully request that the Court grant their renewed motion for judgment as a matter of law.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD

| | |
|---|---|
| Dated: June 26, 2014 | MORGAN, LEWIS & BOCKIUS LLP |
| | By */s/ Brett M. Schuman* |
| | Brett M. Schuman |
| | Rachel M. Walsh |
| | Ryan Lindsay Scher |
| | Jeremy N. Lateiner |
| | Attorneys for Plaintiffs |
| | NAVCOM TECHNOLOGY, INC. and |
| | DEERE & COMPANY |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

PLS.' REPLY TO DEF.'S RESPONSE TO
RENEWED 50(b) MOTION FOR JMOL
5:12-CV-04175 EJD