1  NAGASHIMA & HASHIMOTO
   MARC R. LABGOLD (*pro hac vice*)
2  mlabgold@labgoldlaw.com
   PATRICK J. HOEFFNER (*pro hac vice*)
3  phoeffner@labgoldlaw.com
   12007 Sunrise Valley Drive, Suite 110
4  Reston, Virginia 20191
   Telephone: 877-401-8855
5  Facsimile:  877-401-8855

6  NAGASHIMA & HASHIMOTO
   TAKAAKI NAGASHIMA (*pro hac vice*)
7  nagashima@nandhlaw.com
   Hirakawa-cho, KS Bldg., 2nd Floor
8  2-4-14, Hirakawa-cho, Chiyoda-ku
   Tokyo 102-0098 Japan
9  Telephone: +81-3-3239-5750
   Facsimile:  +81-3-3239-8538
10

11 MAKMAN & MATZ LLP
   DAVID A. MAKMAN (SBN 178195)
12 ROBERT C. MATZ  (SBN 217822)
   655 Mariner's Island Blvd. Suite 306
13 San Mateo, California 94404
   Telephone: 650-242-1560
14 Facsimile:  650-242-1547

15 Attorneys for Defendant
   Oki Electric Industry Co., Ltd.

16                 UNITED STATES DISTRICT COURT
17              NORTHERN DISTRICT OF CALIFORNIA
                        SAN JOSE DIVISION
18
19 NAVCOM TECHNOLOGY, INC.; and          Case No. 5:12-cv-04175 EJD
   DEERE & COMPANY,
20                                        **DEFENDANT OKI ELECTRIC**
                    Plaintiffs,           **INDUSTRY CO. LTD.'S OPPOSITION**
21                                        **TO PLAINTIFFS' RULE 59 MOTION**
                v.                        **FOR NEW TRIAL**
22
   OKI ELECTRIC INDUSTRY CO., LTD.; and   Date:   September 12, 2014
23 DOES ONE through TEN inclusive,        Time:   9:00 AM
                                          Place:  Courtroom 4, San Jose
24                  Defendants.           Judge:  Honorable Edward J. Davila

25

26

27

28

## **TABLE OF CONTENTS**

I.       Introduction ........................................................................................................... 1

II.      Plaintiffs' Objection to the "Novel Bifurcation Plan" Is Frivolous ..................... 1

III.     Plaintiffs' Claim of Improper Statements and Argument is Frivolous ............... 4

         A.      Oki Electric's Recital of the Jury Instructions and Verdict Form
                 Instructions Was Not Improper.................................................................. 4

         B.      Oki Electric's Reference To Section 16.0 Of The Amended Agreement
                 Was Not Improper ..................................................................................... 7

         C.      Oki Electric's Counsel Did Not Make Statements About Matters Not In
                 Evidence .................................................................................................... 9

IV.      The Jury's Verdict Is Not Contrary to the Weight of the Evidence; It Is Fully
         Supported by the Evidence ................................................................................ 11

V.       The Clear Weight of the Evidence Supports the Conclusion that Oki Electric Did
         Not Breach the Agreement ................................................................................. 12

         A.      Oki Electric Did Not Breach § 1.0 of the Agreement ............................. 13

         B.      Oki Electric Did Not Breach § 2.6 of the Agreement ............................. 18

         C.      Oki Electric Did Not Breach § 2.8 of the Agreement ............................. 21

         D.      Plaintiffs Failed to Prove Their Alleged Lost Profits Damages Were
                 Proximately Caused by Any Alleged Breach........................................... 21

VI.      The Jury Instructions and Verdict Form Were Not Confusing and Did Not
         Prejudice Plaintiffs ............................................................................................ 23

         A.      The Court Properly Issued Jury Instructions 20, 26, and 30................... 23

         B.      The Verdict Form Properly Asked Whether a Breach had Occurred ..... 25

VII.     Conclusion ......................................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585 (1985) ...................................... 7

4

5

*Bertrand v. Southern Pacific Co.*, 282 F.2d 569 (9th Cir. 1960), *cert. denied*, 365 U.S. 816, 81 S.Ct. 697, 5 L.Ed.2d 694 (1961) ................................................................ 3

6

*Brett v. Hotel Employees and Bartenders Union, Local 879*, 828 F.2d 1409 (9th Cir. 1987)......... 3

7

*Citri-Lite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912 (E.D. Cal. 2010) ............................. 23

8

9

*Citrilite Co., Inc. v. Cott Beverages, Inc.*, No. 1:07-CV-01075, 2011 WL 284915 (E.D. Cal. Jan. 25, 2011) ................................................................................................... 23

10

*Deland v. Old Republic Life Ins. Co.*, 758 F.2d 1331 (9th Cir. 1985) .................................. 4, 6, 14

11

*Du Zeff's Hollywood, Inc. v. Wald*, 235 Cal. App. 2d 678 (1965)................................................. 17

12

*Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 742 F.3d 377 (9th Cir. 2014) .............. 4

13

*First Commercial Mortgage Co. v. Reece*,  89 Cal.App.4th 731 (2001) ....................................... 23

14

15

*Hammer v. Gross*, 932 F.2d 842 (9th Cir. 1991) (en banc), *cert. denied*, 502 U.S. 980 (1991)................................................................................................................. 4, 6, 14

16

*Herrington v. Sonoma County*, 834 F.2d 1488, *modified on other grounds*, 857 F.2d 567 (9th Cir. 1988), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989) .......... 3

17

*Larson v. Neimi*, 9 F.3d 1397 (9th Cir. 1993) ...................................................................... passim

18

*Manfred v. Superstation*, Inc., 365 Fed. App'x 856 (9th Cir. 2010)............................................. 13

19

*Martin v. Pritchard*, 52 Cal. App. 720 (1921) ........................................................................... 17

20

*Martin v. U-Haul Co. of Fresno*, 204 Cal. App. 3d 396 (1988) ............................................ 19, 23

21

22

*Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209 (9th Cir. 1988) ......................................................... 4

23

*Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493 (9th Cir. 2000) ..................... 1

24

*Rockridge Trust v. Wells Fargo NA*, 2014 WL 688124 (N.D. Cal., 2014).................................... 23

25

*Rudgayzer v. Yahoo! Inc.*, 5:12-CV-01399 EJD, 2012 WL 5471149 (N.D. Cal. Nov. 9, 2012) .................................................................................................................. 17

26

*Sanders v. Parker Drilling Co.*, 911 F.2d 191 (9th Cir. 1990) ...................................................... 4

27

28

*Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*, 185 Cal. App. 4th 1050 (2010)............... 23

*Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075 (9th Cir. 2009) ...................................... 13

*U.S. v. 4.0 Acres of Land*, 175 F.3d 1133 (9th Cir. 1999) .................................................... 1, 12, 13

*U.S. v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206 (9th Cir. 1992) ........................................... 4

*U.S. v. Baldwin*, 987 F.2d 1432 (9th Cir. 1993).............................................................................. 5

*Union Oil Co. of Cal. v. Terrible Herbst, Inc.*, 331 F.3d 735 (9th Cir. 2003) ............................... 13

*Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894
   (9th Cir. 1997)............................................................................................................. 7, 9, 10

**Rules**

9 C. Wright & A. Miller, Federal Practice and Procedure §2558 (1971) ........................................ 4

Fed. R. Civ. P. 51 ......................................................................................................................... 3, 4

Fed. R. Civ. P. 59 ..................................................................................................................... passim

## I.  **Introduction**

Defendant Oki Electric Industry Co., Ltd. ("Oki Electric") submits its opposition to Plaintiffs NavCom Technology, Inc.'s ("NavCom") and Deere & Company's ("Deere") (collectively, "Plaintiffs") motion for a new trial pursuant to Fed. R. Civ. P. 59 (Dkt. No. 343). Plaintiffs assert they are "entitled to a new trial" because the jury's verdict is "against the clear weight of the evidence and is the product of a trial marred by legal error and misconduct of counsel." Plaintiffs' grandiose claims of legal error and misconduct are unsupportable. The evidence does not come remotely close to meeting the standard for ordering a new trial—"[t]he trial court may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."[1]  While the decision is soundly within the discretion of the District Court, the Ninth Circuit has cautioned that "a district court may not grant or deny a new trial merely because it would have arrived at a different verdict."[2]  Plaintiffs' motion is not only baseless; it rises to the level of being frivolous. Plaintiffs' motion should be denied and the jury's verdict left undisturbed.[3]

## II.  **Plaintiffs' Objection to the "Novel Bifurcation Plan" Is Frivolous**

The frivolous nature of Plaintiffs' argument is showcased by Plaintiffs' claim that:

> Plaintiffs objected to the Court's bifurcation plan. *See* Ex. A, 4/4/14 Pretrial Conf., 50:20-51:7; Ex. E, 4/45/14 Trial T. 499:8-10.

(Dkt. No. 343 at 12, n.6).  That assertion is demonstrably false.

The word "objection" (or any form thereof) cannot be found in Plaintiffs' proffered Pretrial Conference transcript citation.  To the contrary, what Plaintiffs' counsel said was that he "appreciate[d] the Court's suggestion concerning bifurcation," but was "further questioning

---

[1]  *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000).

[2]  *U.S. v. 4.0 Acres of Land*, 175 F.3d 1133, 1139 (9th Cir. 1999).

[3]  As noted in footnote 1 of its brief (Dkt. No. 343 at 2, n.1), Plaintiffs' arguments concerning the jury's finding of no breach of Sections 1.0, 2.6 and 2.8 of the Agreement are largely a rehashing of the arguments it has presented in its Rule 50(b) motion (Dkt. No. 330).  As such, Oki Electric first addresses those new arguments presented in its Rule 59 motion.

whether a bifurcated trial is necessary here."   (Pretrial Conf., 50:20-51:7).   There was no objection, no complaint, not even a rejection of the concept – just a question.

That question, however, was resolved by Plaintiffs' counsel's acceptance of a bifurcated verdict procedure.   In the lines immediately preceding Plaintiffs' selective record citation and in those that follow, Plaintiffs' counsel stated that the Court's proposed bifurcated verdict form was "*an acceptable approach*" and "*the right way to proceed.*"   Specifically, in opposition to Oki Electric's request that the entire issue of damages be bifurcated, Plaintiffs' counsel responded that the Court's proposal was acceptable:

> MR. SCHUMAN: Well, *but to the Court's Proposal*, which I understand to be a little different than the one we were talking about previously, you know, subject to what the instruction, the limiting instruction would be, *I think that's an acceptable approach*. I think Mr. Hansen, just like in any other breach of contract case, I don't think this case warrants any particularly unique treatment.  In any case that is not bifurcated, the jury is going to hear, whether it's a patent case, a tort case, and they're going to hear on liability or whatever the damages claim may be, and what the court expressed, I think, if it's a legitimate issue, if that's Mr. Labgold's concern, is present in every case that is not bifurcated.  And, of course, bifurcation is not the general rule that is acceptable.  It's appropriate in some cases.  So I think allowing all of the evidence to come in, including Mr. Hansen's testimony, and then submitting the case to the jury on liability only with some explanation for why the jury is not getting asked to also assess damages at that time, which I think is what the Court is suggesting with this limiting instruction, I think if we're going to present all of the evidence and then submit it to the jury on liability only, there should be some explanation to the jury of why they're not being asked to decide damages then, and then *we proceed along the lines the Court previously proposed, which is we see what breaches they come back with, if any.  And if they come back with a breach finding, we submit a damages verdict form*.

(Trial Tr., 499:3-500:5) (emphasis added).  And stating further,

> MR. SCHUMAN: I think the proximate cause issue that we're talking about here and now is fundamentally, first and foremost, an issue of fact for the jury and that's what the case law says.  *And I think proceeding with the plan that the court set forth before, maybe as slightly modified by our discussion here today, is the right way to proceed.*  I don't understand and I don't see a good rationale after one and three-quarter's days of testimony, one plus plaintiffs' witnesses, to overhaul the plan for the trial or grant any relief that has already been denied.

(*Id.* at 502:21-503:6) (emphasis added).

Not only did the Plaintiffs accept the procedure used at trial, they argued for it **over** Oki Electric's objection. In addition to not objecting, Plaintiffs requested the following jury instruction, which was consistent with the procedure Plaintiffs themselves promoted.[4]

---

**PLAINTIFFS' REQUESTED INSTRUCTION NO. 86:**
**Evidence of Damages**

As I mentioned during the trial, there are two discrete issues for you to decide in this case. One of those issues is liability and the other issue is damages. Although you heard evidence of damages during the trial, you will first be given a verdict form that relates only to the issue of liability. You are not to consider evidence of damages in reaching a verdict on the issue of liability. If you return a verdict finding liability, you will then be given a separate verdict form on the issue of damages.

---

(Dkt. No. 309 at 11). The Court accepted Plaintiffs' requested instruction, and instructed the jury accordingly. (Tr. 1703:20-1704:5).

Thus, since the alleged error was not only **not objected to**, but to the contrary was invited, Plaintiffs cannot legitimately claim they are entitled to a new trial on this basis. *See Larson v. Neimi*, 9 F.3d 1397, 1401 (9th Cir. 1993) (trial court did not abuse its discretion in denying motion for new trial where the alleged error resulted from the movant's own allegedly defective verdict form and agreement to re-submit it to the jury). Moreover, the Ninth Circuit has strictly interpreted Fed. R. Civ. P. 51, holding:

The defendants are in no position to complain about the instruction, however, because they did not object to it. Rule 51 is quite explicit that "[n]o party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Fed. R. Civ. P. 51. This court has enjoyed a reputation as the strictest enforcer of Rule 51; we have declared that there is no "plain error" exception in civil cases in this circuit. *Bertrand v. Southern Pacific Co*., 282 F.2d 569, 572 (9th Cir. 1960), *cert. denied*, 365 U.S. 816, 81 S.Ct. 697, 5 L.Ed.2d 694 (1961); *Brett v. Hotel Employees and Bartenders Union, Local 879*, 828 F.2d 1409, 1414 n.7 (9th Cir. 1987); *Herrington v. Sonoma County*, 834 F.2d 1488, 1500 n.12, *modified on other grounds*, 857 F.2d 567 (9th

---

[4]   Plaintiffs' Proposed Jury Instruction No. 84 contained similar language: "If appropriate, the Court will address the application of any limitation of liability provision in the Agreement after you have returned your verdict." (Dkt. No. 309 at 9).

Cir. 1988), *cert. denied*, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989); *see Miller v. Rykoff-Sexton, Inc*., 845 F.2d 209, 213 (9th Cir. 1988); *Sanders v. Parker Drilling Co*., 911 F.2d 191, 209 n.8 (9th Cir. 1990) (Kozinski, J., dissenting). *See also* 9 C. Wright & A. Miller, Federal Practice and Procedure §2558, at 674 (1971) ("the Ninth Circuit stands alone in reading Civil Rule 51 literally and denying that there is any power to reverse for plain error in an unobjected-to instruction in a civil case").

*Hammer v. Gross*, 932 F.2d 842, 847 (9th Cir. 1991) (en banc), *cert. denied*, 502 U.S. 980 (1991); *Deland v. Old Republic Life Ins. Co*., 758 F.2d 1331, 1337 (9th Cir. 1985)*.*

Accordingly, Plaintiffs' request for a new trial – based on a procedure that they agreed was acceptable, and even argued in favor of when the issue was revisited – constitutes an alleged error of their own making and, as such, is frivolous and should be denied.

## III.    Plaintiffs' Claim of Improper Statements and Argument is Frivolous

Plaintiffs next allege "the prejudicial effect of the Court's bifurcation was compounded by defense counsel's improper statements and conduct."  (Dkt. No. 343 at 14).  This argument fails as well.

### A.    Oki Electric's Recital of the Jury Instructions and Verdict Form Instructions Was Not Improper

Plaintiffs focus on the alleged impropriety of the statement made during closing argument that the jury could "go home" if it found no liability.  This argument fails on several grounds.

First, this issue was raised and has already been rejected by the Court.  Tr. 1686:9-1687:10.  As the Court noted at the time, the statement was not coercive, intimidating, nor "appeasing to the jury in some kind of way." *Id.*  Indeed, the Ninth Circuit has consistently held that the presiding trial judge is in a far better position to determine the impact of a statement on a jury moments after it was uttered than anyone reading a transcript months later.  *U.S. v. A. Lanoy Alston, D.M.D., P.C*., 974 F.2d 1206, 1212 (9th Cir. 1992) ("Circuit judges, reading the dry pages of the record, do not experience the tenor of the testimony at trial. The balance of proof is often close and may hinge on personal evaluations of witness demeanor."); *see also Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd.*, 742 F.3d 377, 394 n.17 (9th Cir. 2014) (same).   As such, the Ninth Circuit affords considerable deference to the district court's determination of whether to grant a new trial.

Second, Plaintiffs' counsel consistently stated before the charge conference that if the Court was going to bifurcate the verdict form, then the jury should be instructed concerning the procedural aspects of the bifurcation of liability and damages. (Tr. 499:3-500:5; 502:21-503:6) (quoted above). In that regard, Plaintiffs submitted "Plaintiffs' Requested Instruction No. 86," recited above, which included the statement:

> If you return a verdict finding liability, you will then be given a separate verdict form on the issue of damages.

(Dkt. No. 309 at 11). Thus, Plaintiffs' own requested jury instruction informed the jury that *if* the jury returned a verdict finding liability, they would be required to come back and continue their deliberations with respect to a second verdict form concerning the issue of damages. (*Id.*; Tr. 1703:20-1704:5).[5] *See Larson*, 9 F.3d at 1401 (trial court did not abuse its discretion in denying Rule 59 motion where the alleged error resulted from the movant's own conduct) (citing *U.S. v. Baldwin*, 987 F.2d 1432, 1436-37 (9th Cir. 1993) (where defendant himself proposed the challenged jury instruction, that was invited error and review was denied)). Indeed, the Appellant in *Larson* was the party that submitted the verdict form containing the "usual 'stop here, if your answer is no' direction" in the first place; given the fact that Appellant agreed to resubmission, any error "at least borders on an error invited by [Appellant] himself." *Id*. Similarly, Plaintiffs submitted the jury instructions they now find objectionable, and Plaintiffs argued for the modified bifurcation they now find objectionable. Furthermore, Plaintiffs agreed to the verdict form itself, which contained specific instructions for the jury to follow, including the instruction:

> **If your answer to Question Nos. 1 <u>and</u> 2 are both "NO" <u>and</u> your answer to either of Question Nos. 3 <u>or</u> 4 are "NO", then you have reached a final verdict and you do not need to continue. Please sign the verdict form and notify the clerk that you have reached a verdict.**

(D.I. 318). When the Court addressed this specific language at the charge conference, reading the foregoing language into the record and asking Plaintiffs' counsel: **"Any objection to that remaining as is?"**, Plaintiffs' counsel responded, **"no, your honor."** (Tr. 1547:20-1548:2).

---

[5]   Plaintiffs' counsel also highlighted the fact that the first verdict form did not address the issue of damages. Tr. at 1609:18-22.

Plaintiffs cannot now object after waiving any objection at that time.  *Hammer*, 932 F.2d at 847 (a party is in no position to complain about an instruction when it did not object to it); *Deland*, 758 F.2d at 1337.

Oki Electric's counsel's statement was not improper and was wholly consistent with Plaintiffs' own requested instruction and the agreed language of the verdict form.  Thus, while Plaintiffs have failed to demonstrate any error or prejudice arising from the statement in question, any alleged error was invited by Plaintiffs' own actions and, as such, Plaintiffs' cannot legitimately claim they are entitled to a new trial.  *See Larson,* 9 F.3d at 1401.

<u>Finally</u>, any allegedly prejudicial effect, which Oki Electric maintains was non-existent, was nonetheless obviated by the Court's clear and consistent instructions that attorney argument is not evidence.  Those instructions included:

> In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

> Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements and [will say/have said] in their closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.

(Tr. 111:16-24 (opening instruction); Tr. 1690:3-11 (closing instruction)).  The Court also instructed that

> [t]rials proceed in the following way:

> First, each side may make an opening statement. An opening statement is not evidence.  It is simply an outline to help you understand what that party expects the evidence will show. . . .

(Tr. 118:24 – 119:3); and

> In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

> 1. Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, have said in their closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence.

Tr. 1690:3-11.[6]   The point was further emphasized by Plaintiffs' counsel in Rebuttal Closing Argument.  (Tr. 1659:2-22).  To argue the jury treated attorney statements as evidence contradicts established precedent because the law presumes the jury will perform its duties as instructed.  *Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc.*, 106 F.3d 894, 902 (9th Cir. 1997) (acknowledging "well established precedents requiring the court to presume that juries follow the law") (*citing Aspen Skiing Co. v. Aspen Highlands Skiing Corp.*, 472 U.S. 585, 604 (1985)).  Thus, Plaintiffs' Rule 59 request is properly denied.

### B.   Oki Electric's Reference To Section 16.0 Of The Amended Agreement Was Not Improper

Plaintiffs' claims they were prejudiced by "repeated references to Section 16.0" and Oki's arguments that their lost profit damages were "lost profits," are both ironic and to no avail.

First, when Oki Electric moved the admission of Plaintiffs' Exhibit 125 (PX-125), it was received into evidence without objection.  (Tr. 219:12-15.).  PX-125 is the complete copy of the Original Agreement, and is the contract that Plaintiffs claim was breached.[7]  Plaintiffs did not seek to redact Section 16.0, but instead offered no objection to the unredacted copy being moved into evidence, thereby allowing it to be evidence the jury would necessarily be required to review in reaching its verdict.

Ironically, had Plaintiffs not opposed Oki Electric's request for ***complete bifurcation*** of the issue of damages, the jury would not have heard any reference to Section 16.0 or lost profits. Instead, in an effort to press a perceived advantage of setting forth its damages evidence before the liability verdict, Plaintiffs ***insisted the jury hear all of the evidence before deliberating on the issue of liability***, over Oki Electric's objections, thereby requiring Oki Electric's counsel to cross-examine Plaintiffs' fact witnesses and their expert and to present all of its evidence.  This necessarily included the damages related issues to which Plaintiffs now object. (Tr. 485:20-492:10, 497:6-500:5, 1533:4-1535:9).  Having insisted the jury hear ***all*** of the evidence before

---

[7]   PX-125 is the version Plaintiffs used at depositions throughout the case, in its motions and included on their exhibit list.

7

1  deliberating the issue of liability, Plaintiffs cannot now claim that they were prejudiced by that

2  evidence and argument. The alleged error could have been avoided by objecting to admission

3  into evidence of PX-125, by seeking to redact section 16.0 from PX-125, or by joining Oki

4  Electric's proposal to completely bifurcate liability and damages. But Plaintiffs themselves chose

5  the incorrect path. The alleged error was of Plaintiffs own making and, as such, may not be the

6  basis of a grant of a new trial. *See Larson*, 9 F.3d at 1401.

7      Plaintiffs' assertion that Oki Electric somehow improperly injected "lost profits" into the

8  case is similarly their own doing, was not prejudicial, and does not provide a basis for granting a

9  new trial. Here again, the irony is that the claimed harm arises from Plaintiffs' insistence that the

10 objected-to issue be injected into the case over Oki Electric's objections. Specifically, Oki

11 Electric objected to the admission of exhibits Plaintiffs sought to introduce into evidence in

12 support of their damages claim, a point that Plaintiffs recite at length (without any particular

13 purpose). (Dkt. No. 343 at 14-15). By way of example, Plaintiffs' exhibits PX-234-239 explicitly

14 refer to NavCom's "profit," not "increased cost." (*See also* Tr. 912:1-9, 1116:5-1117:17).

15 Plaintiffs did not object to Oki Electric's examination of Mr. Wilson and Mr. Hansen concerning

16 those allegedly lost profits – to the contrary, Plaintiffs moved their admission, and they were

17 admitted, **over** Oki Electric's objections. (*Id.*, Tr. 814:22-815:23; 944:24--947:25). Once again,

18 the alleged error could have been avoided by not offering into evidence exhibits that used the term

19 "profit" to describe Plaintiffs' "increased costs," by seeking to redact "profit" from the exhibits,

20 or by joining Oki Electric's proposal to completely bifurcate liability and damages. But Plaintiffs

21 once again chose the incorrect path and the alleged error was once again of Plaintiffs' own

22 making. It may not be the basis of a grant of a new trial. *See Larson,* 9 F.3d at 1401.

23     Moreover, while Plaintiffs have no legal basis with respect to this issue, any possible issue

24 concerning Section 16.0 was already addressed. As the Court noted prior to the jury being

25 charged,

26     THE COURT: All right. Thank you, Counsel.

27     In regard, Mr. Schuman, to your objections, and it will be noted for the record,
    I'm not going to redact 16, instruction 33. I think that we discussed [it], and our

28

5:12-cv-04175 EJD

OKI ELECTRIC'S OPPOSITION TO
PLAINTIFFS' RULE 59
MOTION FOR NEW TRIAL

lengthy discussions yesterday covers that issue. And I will read that instruction 33. It was designed and it was created to deal with this issue specifically. So as I said yesterday, and I say again, I trust that these jurors will follow the law and follow the court's instructions.

(Tr. 1686:9-18).   Instruction 33 was based on Plaintiffs' requested jury instruction 84:

---

### PLAINTIFFS' REQUESTED INSTRUCTION NO. 84:

#### Limitation of Damages

During this trial, you have heard references to Section 16.0 of the Agreement and the term "lost profits." You must not speculate about the language of Section 16.0 or consider the possible existence or application of any limitation of liability provision during your deliberations. If appropriate, the Court will address the application of any limitation of liability provision in the Agreement after you have returned your verdict.

---

(Dkt. No. 309 at 9).  Oki Electric did not object to Plaintiffs' requested instruction and the Court instructed the jury accordingly.  (Tr. 1704:6-13).  Having been so instructed, the law presumes the jury will perform its duties as instructed.  *Westinghouse Elec. Corp.*, 106 F.3d at 902 (acknowledging "well established precedents requiring the court to presume that juries follow the law"). Thus, Plaintiffs' request for a new trial is properly denied.

### C.   Oki Electric's Counsel Did Not Make Statements About Matters Not In Evidence

Plaintiffs' third and final accusation of counsel's misconduct once again rests on an issue to which Plaintiffs' failed to object.  Plaintiffs have, therefore, waived any objection to Oki Electric's counsel's remarks that chips must be made via a production plan. Even assuming, *arguendo*, that Oki Electric's counsel's statement was improper, any impact of the statement was negated by the Court's repeated instruction to the jury that arguments and statements by lawyers are not evidence. (Tr. 111:16-24, 118:24–119:3, 1690:3-11; *see also* Tr. 1659:2-5, 1659:20-22 (plaintiffs' counsel's statements regarding same)). As discussed *supra*, the Court made it abundantly clear to the jury that what the lawyers have said in their opening statements, have said in their closing arguments, and at other times is intended to help the jury interpret the evidence, but it is not evidence. (Tr. 1690:3-11). To argue otherwise contradicts established precedent

1    because the law presumes the jury will perform its duties as instructed.  *See Westinghouse Elec.*

2    *Corp.*, 106 F.3d at 902 (court must presume that the jury followed the law as recited).

3          Furthermore, contrary to Plaintiffs' assertions, testimony **elicited by Plaintiffs' counsel**

4    supports the allegedly offending statements.  Plaintiffs' witness, Paul Galyean, testified on direct

5    examination that the chipset cannot be fabricated until the simulations are done, the designs are

6    complete, and the package is all wrapped up.  It is this "design package" that is then provided to

7    the fabricator—not a prototype chip.  Specifically, Mr. Galyean testified as follows:

8          Q. And you used this term "tapeout," and I think this came up during cross-
           examination.  Can you just tell the members of the jury, please, what tapeout is in
9          relation to when chips get made?

10         A.  Tapeout is the name for what occurs when all of the simulations are done, the
           designs are complete, the package is all wrapped up and it's ready to go to the
11         fabrication line and build the chip.   It's the entire design package that transfers to
           a fab, a line with semiconductors are built [sic], chips are built.  It's that design
12         package that goes so you can build the chip.  Tapeout is the point where you say
           here's the design package, and let's go build the chip.
13

14   (Tr. 465:24-466:11).

15         Moreover, Plaintiffs' proposition that they could have had another fabricator manufacture

16   the chipset is nonsensical.   It is clear from PX-56 that in 2008 the parties did not even

17   contemplate the chipset design being complete until January 2009.  Furthermore, they did not

18   expect the tapeout to be complete until April 2009 and the requisite testing complete until July

19   2009.  PX-56.   So, even accepting Plaintiffs' ludicrous proposition that a fabricator could

20   magically replicate a chip solely from a prototype chip, it is impossible for Plaintiffs to prove

21   harm when it was impossible to have the prototype chip until well after the Amended Agreement

22   was terminated pursuant to Section 1.0.  But even if, *arguendo*, there was no evidence in support

23   of the purportedly improper statement, it had no impact whatsoever, because the contract itself

24   precluded the use of the prototypes for any purpose but testing and verification. (PX-125 at §§ 1.1

25   and 2.4) ("Engineering Prototypes are not intended for use in production and are not authorized

26   for any such use.").   *Id.*   Accordingly, Plaintiffs were not authorized to make use of the

27

28

engineering prototypes as they propose and, therefore, could not possibly have been prejudiced by the statements made by Oki Electric.

Finally, the testimony and documentary evidence support the statement implying the project was similar to "research." The parties were not sure what the product should be so even the specification contained numerous TBDs (Tr. 218:17-20); they did not know how long it would take to make (Tr. 352:17-353:12); they could not guarantee success (Tr. 356:3-6; Tr. 385:2-4; DX-1013); and the cost of the project was unknown (PX-125 at § 2.5.2). It may not have been called "research" in the Amended Agreement, but when a project contains so many unknowns in the most critical areas, it is *de facto* research.

Accordingly, all of Oki Electric's statements during trial were supported by the evidence and any impact on the jury, *if any*, is so minimal as to neither prejudice Plaintiffs, nor warrant disturbing the sanctity of the jury's unanimous verdict. Plaintiffs' motion for a new trial should be denied.

**IV.    The Jury's Verdict Is Not Contrary to the Weight of the Evidence; It Is Fully Supported by the Evidence**

The unanimous jury found that (1) NavCom **did not** prove that Defendant had breached the Original Agreement (Version 19); (2) NavCom **did not** prove that Defendant had breached the Amended Agreement (Version 25); and (3) NavCom **did not** prove that Defendant was contractually obligated to develop the proposed 4-chip RF ASIC design. (Dkt. No. 318). Each of these findings is well-supported by the evidence admitted at trial.

Plaintiffs had the burden of proof, and they premised their case on a series of alleged "broken promises" – each of which was shown to be either baseless or outright false. For example, the alleged "promise" of delivery within 10 months was eviscerated by Dr. Galyean's testimony that there were "no guarantees as to what the time of delivery of anything would be," and that Oki Semiconductor "w[as] not obligated to provide [the chips] in ten months." (Tr. at 352:7-353:12). The "broken promise" with respect to the second set of samples was shown to be another fabrication when Dr. Galyean admitted, in his 30(b)(6) deposition and again at trial, that the second set of samples were never intended to be functional, but instead were diagnostic in

nature. (DX-1271 at 59:12-60:11; Tr. 389:8-14). As such, Plaintiffs and their counsel *knew* their assertion of this "promise" was false. Plaintiffs' empty arguments regarding "broken promises" simply amplified Oki Electric's contradictory evidence and threw a spotlight on the empty stage that remained at the close of Plaintiffs' case.[8]

Thus, the jury not only had sufficient basis to conclude that Plaintiffs failed to meet their burden of proving breach, it had ample affirmative proof that no breach had in fact occurred. As such, the jury's unanimous verdict should not be disturbed and Plaintiffs' motion for a new trial should be denied.

## V. The Clear Weight of the Evidence Supports the Conclusion that Oki Electric Did Not Breach the Agreement

Plaintiffs acknowledge that the Court may only grant a new trial if the jury's verdict is "contrary to the clear weight of the evidence." (Dkt. No. 343 at 4) (citations omitted). That does not mean that the Court can substitute its judgment for the jury's; the "clear weight of the evidence" is a high bar. Yet this is exactly what Plaintiffs now improperly request from this Court.

The first case that Plaintiffs cite in their argument, *U.S. v. 4.0 Acres of Land*, is particularly instructive on this point. In that case, the Ninth Circuit *reversed* the decision of the lower court to grant a new trial under an abuse of discretion standard, despite the fact that the new trial had already occurred. 175 F.3d at 1139-43. The lower court had granted a new trial after the jury awarded total damages lower than *either* party had sought. *Id.* at 1142. But, in the Ninth Circuit's view, a decision to overturn the jury's verdict on those grounds "would discredit the role of the jury and give unbounded discretion to the district judge to override a jury's verdict." *Id.*

---

[8] Despite the fact that it was Plaintiffs' burden to show breach, it was Oki Electric that actually questioned Plaintiffs' witnesses concerning when the alleged breach occurred and what constituted the alleged breach. Plaintiffs' failure to do so reflects their inability to show breach, and their hope instead to either sway the jury otherwise or secure a sound bite for motion practice. The evidence Oki Electric elicited from Plaintiffs' own witnesses, however, proved there was no breach and, as was painfully apparent from Mr. Hansen's cross-examination, there was absolutely no evidence that any proximate harm occurred with respect to any alleged breach.

1    According to *4.0 Acres,* "a district court may not grant or deny a new trial merely because it

2    would have arrived at a different verdict." *Id.* at 1139.  Nor, according to another Ninth Circuit

3    opinion, can the Court "second guess how the jury weighed specific testimony." *Manfred v.*

4    *Superstation*, Inc., 365 Fed. App'x 856, 858 (9th Cir. 2010) (citing *Union Oil Co. of Cal. v.*

5    *Terrible Herbst, Inc.*, 331 F.3d 735, 743 (9th Cir. 2003)).  Thus it is clear that the jury's verdict

6    should stand, even if the Court in its own judgment might have found differently.  Plaintiffs

7    cannot show the jury's verdict here was contrary to the clear weight of the evidence and, as such,

8    their motion for a new trial should be denied.

9            **A.**        **Oki Electric Did Not Breach § 1.0 of the Agreement**

10           Plaintiffs lead off their argument regarding breach of § 1.0 of the agreements with the

11   same tired assertion that the Court should reverse its prior ruling and hold that the termination

12   period under the agreements extended until the end of the then-current period, rather than for

13   three months after the notice was given. (Dkt. Nos. 199 and 231).  At the outset, the interpretation

14   of this clause of the agreement is a legal conclusion, and therefore cannot be the basis for a new

15   trial under Rule 59.  *See Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir.

16   2009) ("This legal matter cannot be appropriately considered on a motion for a new trial, where

17   the issue is whether the jury's verdict is against the clear weight of the evidence.").  Moreover,

18   Oki Electric has refuted this argument numerous times, most recently in response to Plaintiffs'

19   renewed motion under Rule 50(b).  (Dkt. No. 339 at 2-3).  In short, Plaintiffs' proposed

20   construction of § 1.0 ignores the actual language stating that the contract will continue "until

21   Buyer or Seller terminates the Agreement," in favor of an unsupported and inconsistent

22   interpretation that would improperly extend the termination period.  (*Id.*).

23           Additionally, Oki Electric presented evidence sufficient to defeat Plaintiffs' claim and

24   indeed prove that Oki Semiconductor did not breach § 1.0 of the Agreement.  First, Oki

25   Semiconductor provided repeated notice to NavCom that it intended to stop work on the contract

26   and not develop Version 25, and NavCom agreed that that would be the parties' path forward.

27   (Dkt. No. 339 at 3; *see also*, *e.g.*, DX-1169; Tr. at 392:11-393:1; Tr. at 1140:6-13; Tr. at 1069:24-

28

5:12-cv-04175 EJD

13

1070:9; Tr. at 1209:23-1211:25; DX-1065; DX-1055; DX-1051; DX-1053; DX-1054). These

notifications were given more than three months before the Oki Semiconductor stopped work on

the project. (DX-1169; *see* Dkt. No. 339 at 3-4 (addressing this argument in greater depth)).

A second, independent basis also exists for affirming the jury's verdict that there was no

breach of § 1.0 – i.e., there was no harm.[9]   The jury was properly instructed that "To meet its

burden of proving Defendant has committed a breach of contract, NavCom must prove. . . [t]hat

NavCom was harmed. . . ."   (Dkt. No. 314 at 21).   Plaintiffs offered no objection to this

instruction, rather, it requested the instruction.   Plaintiffs cannot now object after waiving any

objection at that time and, in fact, inviting the alleged error.   *Hammer*, 932 F.2d at 847; *Deland*,

758 F.2d at 1337; *see also Larson*, 9 F.3d at 1401 (motion for new trial properly denied under

such circumstances).

At trial, Plaintiffs presented no evidence of harm as a result of Oki Semiconductor's

alleged failure to meet § 1.0, and did not argue to the jury during closing statements that they

were harmed in any specific way by that alleged failure.   (*See, e.g.*, Tr. at 1590:19-1592:7

(arguing only that Plaintiffs can show harm from antecedent breaches prior to the notice); Tr. at

1609:11-22 (alleging only that NavCom was harmed by Oki's alleged failure to use its best

efforts.)).   Only after receiving the jury's verdict did Plaintiffs concoct their far-fetched "tapeout"

argument for their renewed Rule 50 motion, which Oki Electric refuted in its opposition.   (Dkt.

No. 330 at 7-8; Dkt. No. 339 at 9).   In their Rule 59 motion, Plaintiffs now recycle this argument,

asserting that *if* the court reversed its prior determination regarding the length of the notice

period; and *if* the parties had ***beaten*** their estimated schedule as of May 2008 (which was never

finalized or initiated) and *if* Oki delivered a final design and tapeout occurred by December 31,

2008 (even though the evidence they rely upon states the delivery of the final design ***was not***

---

[9]   In their Rule 59 brief, Plaintiffs once again argue that Oki Electric somehow "conceded"
breach of § 1.0 in its closing statement.   (Dkt. No. 343 at 6).   But that is plainly untrue from even
a cursory review of Plaintiffs' transcript citation, Tr. at 1639:1-13, in which Oki Electric makes
the point that regardless of whether the notice period was three months or through the end of the
term, it makes no difference, because Plaintiffs cannot show harm.

1   *expected until late January of 2009 at the earliest*), and *if* the samples ultimately following that

2   tapeout functioned flawlessly (despite the failure of the first samples), *then* Plaintiffs could have

3   shown harm under the agreement. (Dkt. No. 343 at 6).

4        Plaintiffs' newfound argument is not just implausible, it is flatly unsupportable, contrary

5   to the evidence of record, and it cannot possibly meet Plaintiffs' burden of showing that the jury's

6   determination of no breach was against the clear weight of the evidence.   Even a cursory

7   examination of PX-56, the primary document that Plaintiffs' rely upon, reveals that "tapeout" was

8   not expected until late January 2009 at the earliest, and that following tapeout, the parties still

9   faced "fabrication by OKI," "Design Validation By Tahoe RF," "Characterization by OKI," the

10   production of "DV Samples," and then, finally, Engineering Samples, which were not expected

11   until the end of July, 2009.   (PX-56).   These Engineering Samples were the contracted-for

12   materials, not the fact of "tapeout," which is not mentioned in the agreement.   (PX-125).   Not

13   until the testing of engineering samples would the parties even know if the design was successful.

14   Even if "tapeout" were the goal, PX-56 itself recognizes that success on the first tapeout is not

15   certain: item (3) notes that NavCom wanted to ask Oki Semiconductor to "prepare a secondary

16   schedule that shows the impact of a second spin" and "provide an assessment of the probability of

17   success on the first spin."   (PX-56 at NAV0045201; Tr. at 387:19-388:2 (a "spin" is "creating

18   another version of a chip")).   Further, as the evidence at trial showed, and as the jury specifically

19   found in response to Question 3 of the verdict form, the parties never reached an agreement

20   regarding the proposed 4-chip development described in PX-56.   Thus, the facts set forth at trial

21

22

23

24

25

26

27

28

OKI ELECTRIC'S OPPOSITION TO
PLAINTIFFS' RULE 59
MOTION FOR NEW TRIAL

1  proved conclusively that there were no further deliverables expected from Oki Semiconductor

2  until 2009 at the earliest; therefore, Plaintiffs cannot show harm.  (*See, e.g.,* PX-56 at Figure 1).[10]

3          Plaintiffs next argue that they are somehow entitled to **restitution** for Oki Electric's

4  alleged breach of § 1.0 of the contract, and that this entitlement to restitution is the harm on which

5  Plaintiffs base the alleged breach of § 1.0.  (Dkt. No. 343 at 6-7).  But this assertion is a *non*

6  *sequitor.*  First, Plaintiffs are not entitled to restitution unless they can show **breach** and, as

7  discussed above, they cannot show breach unless they can show **harm**.  "Restitution" is not a way

8  to show harm, it is a way to award damages as a **result of** harm.  Like any other damages theory,

9  restitution is unavailable where, as here, Plaintiffs cannot show harm.  Plaintiffs' restitution

10  argument is nothing more than another attempt to bootstrap themselves past their failure to show

11  harm.

12          Second, Plaintiffs do not explain how Oki Electric's alleged failure to give three months'

13  (or six months', in Plaintiffs' view) notice prior to termination could possibly mean, under a

14  restitution theory or any other theory, that they are entitled to a **complete refund of all amounts**

15  **paid under the agreement**.  Plaintiffs have never previously raised any restitution or unjust

16  enrichment argument with regard to § 1.0 of the agreement in any detail, and it is patently unclear

17  how Oki Electric was unjustly enriched in the amount of exactly $420,000 by its alleged failure to

18  give adequate notice prior to termination.

19          Finally, Plaintiffs already sought damages based on these payments, and the Court already

20  found that Plaintiffs are not entitled to these damages because they received the benefit of these

21  payments under the contract.  (Dkt. No. 199 at 18-19 (these payments are "expenditures incurred

22

23  [10]  Plaintiffs' final argument with respect to alleged harm Oki Semiconductor's alleged failure to
   meet its obligations under § 1.0 is that "Oki had previously told NavCom that the design work on
24  the 4-chip ASICs could be finished by November 2008."  (Dkt. No. 343 at 6).  Plaintiffs offer this
   statement without any explanation of its relevance, and it has none.  The prior expectations of
25  NavCom and Oki Semiconductor are meaningless; both parties agree that PX-56 represents the
   parties' expectations as of the time of the alleged breach of § 1.0, **none of which was ever**
26  **finalized** in any agreement or otherwise.  Obviously, there can be no obligation for any party to
   design and develop a design until a specification is prepared and the parties reach an agreement to
27  develop same.

28

5:12-cv-04175 EJD                                              OKI ELECTRIC'S OPPOSITION TO
                                                               PLAINTIFFS' RULE 59
                          16                                   MOTION FOR NEW TRIAL

1  in exchange for Defendant's performance of the actions described in the Agreement, and

2  Defendant did perform those actions.")).  The benefits that Plaintiffs received as a result of these

3  payments came at great cost to Oki Electric which, as the evidence proved at trial, spent over $1.6

4  million pursuing development of these chips prior to exercising its right to terminate.  (Tr. at

5  1212:1-12).  Thus, it is clear that Plaintiffs cannot call upon "restitution" to save themselves from

6  their failure to show harm from the breach of § 1.0 of the agreements.[11]

7        In a final attempt to show harm for the breach of § 1.0, Plaintiffs try to make an end-run

8  around the "harm" requirement of California law and Jury Instruction 21 by alleging that they are

9  entitled to nominal damages because the contract was breached, that nominal damages are

10  sufficient to represent harm, and that because nominal damages represent harm, Plaintiffs have

11  shown breach.  Such a reading would fly in the face of California law, and completely eviscerate

12  the "harm" requirement from the elements of a breach of contract (if all failures to meet an

13  obligation under a contract entitle the obligee to nominal damages, then every such failure would

14  show harm, and the harm requirement would be meaningless).  This is yet another instance of

15  bootstrapping by the Plaintiffs: in their view, they are entitled to nominal damages because there

16  was a breach, and they can show that there was a breach because there were nominal damages.

17  This circular argument cannot form the basis for a determination that the jury's verdict was

18  against the clear weight of the evidence.[12]  Moreover, under California law, a new trial cannot be

19  granted to vindicate a right to nominal damages.  *Martin v. Pritchard*, 52 Cal. App. 720, 727

20  (1921); *Du Zeff's Hollywood, Inc. v. Wald*, 235 Cal. App. 2d 678, 681 (1965).

21

22  ─────────────────

23  [11]   It is difficult to see how Plaintiffs could be entitled to a new trial based on a theory of restitution, when this theory of restitution was not argued at trial.

24  [12]   Oki Electric further addresses Plaintiffs' arguments that they are entitled to a determination of
25  breach despite a failure to show harm in Oki Electric's opposition to Plaintiffs' Rule 50(b)
   motion. (Dkt. No. 339 at 8-10).  In short, under California law and Jury Instruction 21, Plaintiffs
26  must show harm in order to show breach, and there is no entitlement to nominal damages as a
   matter of law absent a showing of breach. (*See Id.* at 8).  Nominal damages are available where
27  the harm cannot be quantified, but not where there is no harm at all.  *Rudgayzer v. Yahoo! Inc.*,
   5:12-CV-01399 EJD, 2012 WL 5471149, at *6-7 (N.D. Cal. Nov. 9, 2012) (Davila, J.).

28

OKI ELECTRIC'S OPPOSITION TO
PLAINTIFFS' RULE 59
MOTION FOR NEW TRIAL

### B.   Oki Electric Did Not Breach § 2.6 of the Agreement

Oki Electric does not dispute that working Engineering Prototypes were not delivered, but that is not enough to show breach of § 2.6 of the Agreement because Oki Semiconductor was not obligated to deliver working Engineering Prototypes at any specific time.  The clear weight of the evidence shows that Oki Semiconductor exercised its right to terminate prior to breaching any obligation to deliver chips under § 2.6 of the Agreement.   As explained in Oki Electric's opposition to Plaintiffs' Rule 50(b) motion, Dkt. No. 339 at 10-11, the agreements contained only an "[e]stimated" engineering prototype time of 10 months from *sign-off*, which Plaintiffs' witness Dr. Galyean confirmed was only an estimate, and was not a guarantee.  (Tr. at 352:7-353:12).  Dr. Galyean admitted that Oki Semiconductor "w[as] not obligated to provide [the chips] in ten months."  (*Id.*).  Absent any contractual obligation for Oki Semiconductor to deliver the chips in 10 months, its failure to do so *cannot* be a breach – and the jury found as much in response to Question 2 of the verdict form.  On that basis alone, it is clear that Plaintiffs cannot show that the jury's verdict that § 2.6 was not breached was against the clear weight of the evidence.

Even if *arguendo* Oki Semiconductor *was* obligated to deliver the Engineering Prototypes in some specific time period, the clear weight of the evidence supports the jury's verdict that such obligation was not breached.  The alleged obligation to deliver Engineering Prototypes time ran from "sign-off" on the specification ("Version 25"), which did not occur until at least November of 2006.  (*See* Dkt. No. 339 at 11; Tr. 363:25-365:10).   The first samples were delivered four months later, and Plaintiffs' own witness confirmed that delivery was not a breach.  (*See id.*; Tr. at 353:7-12).  By March 26, 2008, parties had agreed that a "major redesign" was required, and thereby abandoned the agreement and/or waived the requirement for the contracted-for Version 25 design to be made.  (*See* Dkt. No. 339 at 11; DX-1055).  This evidence supports a determination by the jury that Oki Semiconductor never breached the alleged obligation to deliver

1   prototypes within an estimated 10 months, especially considering the testimony of Plaintiffs' own

2   witnesses that the estimated 10-month period was not an obligation at all.[13]  (Tr. at 352:7-353:12).

3        Additionally, at the time of Oki Semiconductor's termination of its involvement in the

4   project, it had provided its notice of termination, the parties had agreed not to make the Version

5   25 chips, and they had not agreed upon, *inter alia*, a specification for the 4-chip design.  (*See* Dkt.

6   No. 339 at 11-13; DX-1055; Tr. at 427:15-429:18; 1210:1-1211:25).  Plaintiffs' own witness, Dr.

7   Galyean, once again testified that Oki Semiconductor's conduct during this period was not a

8   breach, and that no breach occurred before July of 2008.  (Tr. 413:5-8).  The clear weight of the

9   evidence supports the jury's verdict that no breach of § 2.6 had occurred.  (Dkt. No. 339 at 12-

10  13).

11       Finally, even assuming *arguendo* that Oki Electric *was* obligated to deliver the chips

12  within exactly 10 months, and assuming further that it failed to meet that obligation, Plaintiffs still

13  failed to show any harm proximately caused by that alleged failure.  As described in Oki

14  Electric's opposition to Plaintiffs' Rule 50(b) motion, by July 7, 2007, NavCom had already

15  decided to continue its use of the prior "discrete solution" in its new products rather than using the

16  contracted-for RF ASIC.  (Dkt. No. 339 at 13; *see also*, *e.g.*, DX-1011; DX-1013 at

17  NAV0061764; Tr. at 366:11-367:2).  After Oki Semiconductor terminated, Plaintiffs chose not to

18  pursue another supplier or to employ an alternate chipset that it possessed.  (Dkt. No. 339 at 13;

19  Tr. 352:7-353:12; 454:5-457:1; 950:18-11 951:12).  As the Court previously noted, Plaintiffs

20  cannot show a causal connection between Oki Semiconductor's termination and its alleged harm,

21  which stretches from 2009 to 2015.[14]  (Dkt. No. 199 at 22-23; Dkt. No. 231 at 3-4).

---

[13]   Even if one assumes, *arguendo*, Oki Semiconductor was still obligated to deliver the Version 25 chips that NavCom stated it did not want Oki to produce, the evidence still supports a determination by the jury that that obligation was not breached, based on the testimony described above regarding the nature of the alleged 10-month obligation and the fact that the parties did not consider it a firm deadline.

[14]   Moreover, as a matter of law, Plaintiffs cannot show that harm beyond the notice period was proximately caused by Oki Semiconductor's termination and, as described above, Plaintiffs have failed to show any harm during the notice period.  *Martin v. U-Haul Co. of Fresno*, 204 Cal. App. 3d 396, 409 (1988) (noting the "specific rule that a termination clause limits recoverable damages to the notice period").

As an independent basis for the jury's verdict that Oki Semiconductor did not breach § 2.6, it is clear that the parties abandoned or rescinded the agreement to make Version 25 of the Specification, and that NavCom had voluntarily waived any obligation of Oki Semiconductor to make chips conforming to Version 25.  (See Dkt. No. 339, at 12-15, 21-25).  Section 2.8 of the Amended Agreement (DX-1004) called for a chip conforming to Version 25 of the specification, but the parties mutually agreed that Version 25 would be abandoned, in favor of the 4-chip design.  (Dkt. No. 339 at 3, 11-13, 21-25; *see*, *e.g.*, Tr. 363:25-365:10 (Amended Agreement incorporated Version 25), 392:5-20 (major redesign needed), 408:18-409:7 (Version 25 would not be pursued), 1001:10-1002:17 (4-chip design pursued instead of Version 25); 1140:6-13, 1069:24-1070:9, 1209:23-1211:25;  DX-1065;  DX-1055).    And, at the time of Oki Semiconductor's rightful termination,[15] the parties had agreed to pursue the 4-chip design (DX-1055), but had not yet agreed on a specification for it (Tr. at 1001:10-1002:17 (a new specification was needed for the 4-chip design, but was never prepared)).  In other words, at the time of termination, there was nothing for Oki Semiconductor to build under the agreements.

A finding of abandonment or waiver is supported by the manner in which the jury filled out the verdict form.  Jury Instruction No. 27 stated that if the jury found that NavCom "freely and knowingly gave up its right" to have Oki Semiconductor "produce chips under the Amended Agreement conforming to Version 25," then "Defendant was not required to perform this obligation."  (Dkt. No. 314 at 27).  Jury Instruction No. 21 stated that, to show breach, Plaintiffs must show "[t]hat Defendant failed to do something that the contract required it to do."  (*Id.* at 21).  Thus, if the jury found waiver, then Defendant was not required to make chips conforming to Version 25, and ***could not have breached at all***.  The proper answer to Question 2 on the verdict form was "No," because Defendant was not required to make chips conforming to Version 25 and could not have breached that obligation.  The jury's answer to Question 2 could also be based upon a finding of waiver.  If so, the jury properly omitted answers to the remaining

---

[15]   Dr. Galyean testified at trial that there was no breach of the agreement before July of 2008, when Oki Semiconductor exercised its right to terminate. (Tr. at 534:7-536:4; DX-1022).

questions, including the specific waiver question as instructed on page 3.  (Dkt. No. 318 at 3).

Likewise, Jury Instruction 29 instructs the jury that if the parties "mutually agreed . . . to abandon

the development of the subject matter of the Amended Contract, there can be no breach of

contract."  (D.I. 314 at 29).  Thus, the only logical way for the jury to complete the verdict form if

it found abandonment was to answer, as it did, that Plaintiffs did not prove breach of contract, and

to omit the later answer to the specific question regarding abandonment.

### C.    Oki Electric Did Not Breach § 2.8 of the Agreement

Plaintiffs argue that Oki Electric breached § 2.8 by failing to repair or replace the initial

prototypes that were delivered.  But a breach of § 2.8 of the agreements is contingent upon a

finding of breach of § 2.6 of the agreement which, as described above, was never breached by Oki

Semiconductor.  Even if it were, the agreement sets forth no timeframe for Oki Semiconductor to

repair or replace defective chips, and Oki Semiconductor had a right to terminate which it

properly exercised.  (PX-125).  As described in more detail above, at the point where Oki

Semiconductor exercised its right to terminate, neither party expected that any further deliverables

would occur during the termination period (under either the Court's interpretation of a 3-month

period or under Plaintiffs' erroneous interpretation that the period lasted until December 31,

2008).  (See Section V.a., *supra*).[16]  Further, the parties' mutual abandonment/rescission of the

agreement and waiver of Oki Semiconductor's obligation to make chips conforming to Version

25 of the Specification, as described in the previous section regarding § 2.6, provides an

independent basis for the jury's verdict that Oki Semiconductor did not breach § 2.8.

### D.    Plaintiffs Failed to Prove Their Alleged Lost Profits Damages Were Proximately Caused by Any Alleged Breach

Plaintiffs cannot show any lost profits damages that were proximately caused by any

alleged breach.  Plaintiffs present only speculative arguments regarding what might have

happened had Oki Semiconductor not exercised its right to terminate.  (Dkt. No. 343 at 9-12).  As

---

[16]   Because Plaintiffs do not seek a new trial on § 2.2 grounds, Oki Electric does not respond with regard to those arguments. Oki Electric reserves all rights to respond if those arguments are raised again in the future.

discussed in Oki Electric's response to Plaintiffs' Rule 50(b) motion, Plaintiffs' theories of taking a hypothetical replacement engineering prototype to another foundry to be copied is pure speculation, because of the various conditions that must occur before commercial production. (Dkt. No. 339 at 16).  For example, Oki Electric set forth evidence at trial that the specification itself was subject to frequent change; even if Oki Semiconductor had delivered chips that met the specifications exactly, a significant amount of additional testing and development was necessary before those chips could possibly be used in any NavCom or Deere product.  (*See, e.g.*, Tr. at 645:25-646:21; 670:13-16; 668:14-669:20; PX-56 (describing at least three months of testing of engineering samples before production samples could be made, and noting that "Deere has an extended test cycle" and "need[s] more ES [Engineering Samples] and risk parts than most customers to support this test cycle.").  Plaintiffs' cannot meet their burden to show that the "clear weight of the evidence" supports a reversal of the jury's verdict when their own documents clearly show that the Engineering Prototypes were not the "production ready" designs that their motion relies upon.   Further, the agreements specifically precluded Plaintiffs from using Engineering Prototypes "in production" – no less than ***four*** times, including in § 2.8 itself.  (*See* PX-125 at § 5.0, OKI_LW_008258; *id*. at § 1.1, OKI_LW_008264; *id*. at § 2.4, OKI_LW_008264-5).

        Likewise, as the Court has recognized, Plaintiffs' position that it would have placed a "last time buy" provision of § 10.0 to "stockpile several years' worth of RF ASIC chips" is unsupportable, because there are far too many conditions precedent before such an order could be placed.  (Dkt. No. 343 at 10; Dkt. No. 231 at 4).  These conditions precedent include that the prototypes were accepted by Plaintiffs, that the production phase was reached, that Plaintiffs placed an order according to the terms of the agreements, and that Defendant accepted the order according to the terms of the agreements.  (Dkt. No. 231 at 4).  The "last time buy" provision of § 10.0 only applies once production of the chips has actually begun, which never happened, and offers a chance to buy chips "within three months before the date at which manufacturing of Products ceases."  (PX-125 at OKI_LW_008270).  Plaintiffs have provided ***no*** evidence that Oki

OKI ELECTRIC'S OPPOSITION TO
PLAINTIFFS' RULE 59
MOTION FOR NEW TRIAL

Semiconductor even had the manufacturing capacity to produce **six years' worth** of RF ASIC chips with only three months' notice.[17]

Finally, because Oki Semiconductor had a right to terminate, proximate cause limits Plaintiffs' harm to that which occurred during the notification period of the right to terminate. (Dkt. No. 339 at 18-20). *Martin*, 204 Cal. App. 3d at 409; *Thrifty Payless, Inc. v. Mariners Mile Gateway, LLC*, 185 Cal. App. 4th 1050, 1064 (2010). *See also Citrilite Co., Inc. v. Cott Beverages, Inc.*, No. 1:07-CV-01075, 2011 WL 284915 (E.D. Cal. Jan. 25, 2011); *Citri-Lite Co. v. Cott Beverages, Inc.*, 721 F. Supp. 2d 912, 937 (E.D. Cal. 2010). As discussed above in relation to the alleged breach of § 1.0, Plaintiffs failed to prove at trial that any harm occurred during the notification period.[18] (See Section V.A~~a~~., supra).

## VI. The Jury Instructions and Verdict Form Were Not Confusing and Did Not Prejudice Plaintiffs

### A. The Court Properly Issued Jury Instructions 20, 26, and 30

Plaintiffs argue that a standard instruction of a required element for breach of contract rose to the level of error requiring a new trial. Once more, Plaintiffs have brought this upon themselves. Their entire case, the one and only claim they asserted, was for breach of contract. Thus, Plaintiffs' real complaint is that they were put to the burden of proving their claim—a burden they knew they could not satisfy. That, however, is not a basis for granting a new trial.

The case law could not be more clear. The elements of a cause of action for breach of contract are: **(1) the existence of the contract;** (2) performance by the plaintiff or excuse for nonperformance; (3) breach by the defendant; and (4) damages. *Rockridge Trust v. Wells Fargo NA*, 2014 WL 688124, p. 10 (N.D. Cal., 2014) (*citing First Commercial Mortgage Co. v. Reece*,

---

[17] Further, the language of § 2.8 expressly limits any relief to the "Buyer" and expressly excludes "Buyer's Customers." (*See* Dkt. No. 339 at 18; PX-125, Terms & Conditions § 2.4, OKI_LW_008264-6). The agreement defined NavCom as the "Buyer," and Oki Electric proved that Deere was merely a customer. (Dkt. No. 339 at 18; PX-125 at Preamble, OKI_LW_008257).

[18] Even if Plaintiffs could evade the requirements of *Martin*, 204 Cal. App. 3d at 409, which they cannot, their damages are still precluded as a matter of law under § 16.0, which expressly precludes damages for lost profits.

OKI ELECTRIC'S OPPOSITION TO
PLAINTIFFS' RULE 59
MOTION FOR NEW TRIAL

89 Cal.App.4th 731,  745 (2001)). Indeed, Plaintiffs' own proposed jury instruction number 44 properly included the requirement that they prove a contract was formed ("1. That NavCom and Defendant entered into a contract."). (Dkt. No. 247 at 74). These issues were thoroughly discussed during the charging conference and the Court properly found it was necessary to give the jury the disputed instructions.[19] (Tr. 1434:12-19; 1441:24-1444:11).

Plaintiffs do not assert that the subject instructions or verdict form contain errors of law. The crux of their argument is that contract formation was not in issue so that even a legally correct instruction regarding formation would prejudice Plaintiffs' position. The facts of the case belie this position.  In fact, Plaintiffs' counsel's own statements during the charging conference are contrary to the position they now assert. Despite now asserting the existence of a four chip contract was never in issue, when Defendant suggested stipulating that no four chip contract existed, Plaintiffs' counsel refused. (Tr. 1443:3-10).  The Court questioned Plaintiffs' counsel directly to ensure there was no confusion:

> **MR. LABGOLD:** I think you just said you're not asserting that there was a contract for the four chip. I don't have the realtime up, "but it's undisputed that there was no contract and no negotiation." So if we can have an instruction to the jury that there was no contract for the four chip, then we don't have to worry about whether or not a contract for the four chip was formed.
>
> **THE COURT:** Is that what you were saying?
>
> **MR. SCHUMAN:** It is not what I was saying, your honor....

(Tr. 1443:11-20). Thus, whether a contract for the four chip design was in existence, and therefore was formed, was in issue. Tr. 1260:15-19; 1434:12-19; 1441:24-1444:11. Accordingly, the jury was required to be instructed on the laws relating to formation of a contract and Plaintiffs' motion for a new trial should be denied.

---

[19]  For example, the contract formation instruction was required because if the Defendant was successful in proving abandonment/rescission of the Amended Agreement, the jury would be required to determine whether a new contract was formed with respect to the four chip design. Furthermore, whether the original agreement was replaced by the Amended Agreement by a novation requires a determination whether the Amended Agreement was formed.

OKI ELECTRIC'S OPPOSITION TO PLAINTIFFS' RULE 59 MOTION FOR NEW TRIAL

### B.    The Verdict Form Properly Asked Whether a Breach had Occurred

For the same reasons as discussed in section VI.A. above, it was necessary for the verdict form to address three contracts. In addition, because, as was painfully obvious during trial (*see* footnote 8, *supra*), Plaintiffs could not identify what constituted a breach and when it occurred. If not for Plaintiffs' attempts to mislead and obfuscate, we would have known when the breach occurred and what contract, if any, was in force at that time. But now, after they made yet again another bad decision, they cry foul and seek a do over. Furthermore, the issues of novation and rescission/abandonment required the questions to be asked separately because there was a question whether the "operable" agreement had actually been formed and was in effect so it could be breached. Without specifying the agreement, the jury would have been confused as to which of the contracts it was determining was or was not breached. Thus, the jury's unanimous verdict should not be disturbed and Plaintiffs' motion for a new trial should be denied.

## VII.    Conclusion

For the reasons set forth herein, and advanced during trial and the hearings that occurred therewith, the evidence in this case and the Defendant's prior motions and pleadings, Defendant respectfully requests the Court deny Plaintiffs' Rule 59 motion for a new trial.

Dated:  July 9, 2014

NAGASHIMA & HASHIMOTO

By:  /s/ *Marc R. Labgold*

_____

Marc R. Labgold

*Counsel for Defendant*
*Oki Electric Industry Co., Ltd.*

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew E. Russell, hereby certify that on July 9, 2014, this document was

served on the persons listed below in the manner indicated:

### <u>BY E-MAIL</u>
Brett Michael Schuman
Rachel M. Walsh
Ryan L. Scher
Jeremy N. Lateiner
MORGAN LEWIS & BOCKIUS
One Market, Spear Street Tower
San Francisco, CA 94105
bschuman@morganlewis.com
rwalsh@morganlewis.com
rscher@morganlewis.com
jlateiner@morganlewis.com

*/s/ Andrew E. Russell*
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
*Counsel for Oki Electric Industry Co., Ltd.*