UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NAVCOM TECHONOLOGY, INC, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>OKI ELECTRIC INDUSTRY CO., LTD,<br><br>Defendant. | Case No. 5:12-cv-04175-EJD<br><br>**ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW; DENYING AS MOOT DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Re: Dkt. Nos. 330, 332 |

## I. INTRODUCTION

After a ten day trial, a jury found against Plaintiffs Navcom Technology Inc. and Deere & Company (collectively, "Plaintiffs") on their claim that Defendant Oki Electric Industry Co., Ltd. ("Defendant") breached a written contract for the development and production of a component known as the "RF ASIC." Presently before the court is Plaintiffs' renewed motion for partial judgment as a matter of law under Federal Rule of Civil Procedure 50(b). Dkt. No. 330. Also before the court is Defendant's motion requesting similar relief with regard to issues left undecided by the jury, which it filed "out of an abundance of caution." Dkt. No. 332.

Federal jurisdiction arises pursuant to 28 U.S.C. § 1332. Because the basic facts of this case are well-known to the parties, the court does not recount them here. The court will, however, explain in the memorandum portion of this Order why Plaintiff's Rule 50(b) motion will be denied, and why Defendant's protective motion will be denied as moot.

1
Case No.: 5:12-cv-04175-EJD
ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW; DENYING AS MOOT DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 50 permits a district court to grant judgment as a matter of law when "the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to that of the jury." Estate of Diaz v. City of Anaheim, 840 F.3d 592, 604 (9th Cir. 2016) (internal quotations omitted). The entire record must be reviewed and all reasonable inferences must be drawn in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Functionally, "the court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" Id. at 151 (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 300 (2d ed.1995)). However, the court "may not make credibility determinations or weigh the evidence." Id. at 150.

## III. DISCUSSION

Taking up Plaintiffs' motion, they contend the jury's finding that Section 1.0 of the Development and Purchase Agreement (the "Agreement") was not breached is contrary to the record and unsupported by legally sufficient evidence. Second, they assert there is no legally sufficient evidence to support the jury's finding that Defendant did not breach Sections 2.6 and 2.8 of the Agreement.

These arguments are unconvincing when tested against the record.

### A. The Agreement

The Agreement underlying this action was admitted into evidence and discussed at length by trial witnesses. Dkt. No. 315, Exs. 46, 125. As relevant here, Section 1.0 of the Agreement, entitled "Term," provides as follows:

> The term of this Agreement for purposes of ASIC (Applications Specific Integrated Circuit) development and purchase order placement shall commence with the date first written above and continue until December 31, 2006. This Agreement shall automatically renew for successive one (1) year periods until Buyer or Seller terminates the Agreement with at least three (3) months

2
Case No.: 5:12-cv-04175-EJD
ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW; DENYING AS MOOT DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

written notice prior to any expiration of any then current term.

Section 2.6 of the Terms and Conditions, entitled "Delivery of Engineering Prototypes," states:

> Engineering Prototypes will be delivered after Buyer's written approval in accordance with the Engineering Prototype turnaround time specified in Schedule C. Notwithstanding the foregoing, Engineering Prototypes shall not be delivered unless Seller is in receipt of all NRE payments due up to the point of Engineering Prototype manufacturing.

Section 2.8 of the Agreement's Terms and Conditions, entitled "Warranty on Engineering Prototypes," states:

> Seller warrants that the Engineering Prototypes delivered pursuant to Section 2.0 (Development Phase) of the Terms and Conditions shall, at the time of delivery, be free and clear of all liens and encumbrances and free from defects in materials or workmanship, shall conform to Product Specifications listed in Schedule A, or such other specifications approved in writing by Seller and Buyer.

### B. The Breach of Contract Claim

The Complaint's sole claim for breach of contract is governed by California law. "The standard elements of a claim for breach of contract are '(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damage to plaintiff therefrom.'" Wall St. Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (2008) (quoting Regan Roofing Co. v. Super. Ct., 24 Cal. App. 4th 425, 434-35 (1994)). It was Plaintiff's burden "to prove all the . . . elements necessary to recover on its contract claim." Centex Golden Constr. Co. v. Dale Title Co., 78 Cal. App. 4th 992, 1000 (2000) (citing Cal. Evid. Code § 500).

At trial, the court instructed the jury consistent with the elements of a breach of contract claim and the applicable burden of proof. Final Jury Instruction No. 21 provided as follows:

> To meet its burden of proving Defendant has committed a breach of contract, NavCom must prove all of the following:
>
> 1. That NavCom and Defendant entered into a contract;

3
Case No.: 5:12-cv-04175-EJD
ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW; DENYING AS MOOT DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

> 2. That NavCom did all, or substantially all, of the significant things that the contract required it to do, or that it was excused from doing those things;
>
> 3. That Defendant failed to do something that the contract required it to do or did something that the contract prohibited it from doing; and
>
> 4. That NavCom was harmed by that failure.

Dkt. No. 314, at p. 21; Dkt. No. 319, at 1699:7-16.

### C. The Verdict

Twelve questions were submitted to the jury, of which it answered three. Dkt. No. 318. The jury found that Plaintiff did not prove that Defendant breached the Agreement entered on December 14, 2005, or the Agreement entered on November 29, 2006. The jury also found that Defendant was not contractually obligated to develop a four-chip redesign of the RF ASIC.

### D. Section 1.0

As to Section 1.0, Plaintiffs' challenge to the verdict is primarily based on the following contention: that after Defendant provided notice terminating the Agreement on July 8, 2008, it was obligated to continue working on the RF ASICs through the end of the "then current term," but did not do so. That contention represents one possible evaluation of the evidence and seemingly could support a breach of contract finding. But the jury did not adopt that evaluation, and the record contains legally sufficient evidence supporting the jury's decision.

#### i. The Jury Could Have Found that Plaintiffs Failed to Prove Performance

In proving its breach of contract claim, Plaintiffs were required to present evidence sufficient to "show it did all, or substantially all, of the significant things that the contract required it to do, or that it was excused from doing those things." Wall St. Network, Ltd., 164 Cal. App. 4th at 1178. "A bedrock principle of California contract law is that '[h]e who seeks to enforce a contract must show that he has complied with the conditions and agreements of the contract on his part to be performed.'" Brown v. Dillard's, Inc., 430 F.3d 1004, 1006 (9th Cir. 2005) (quoting Pry Corp. of Am. v. Leach, 177 Cal. App. 2d 632, 639 (1960)). Indeed, "it is elementary that one

4

Case No.: 5:12-cv-04175-EJD
ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW; DENYING AS MOOT DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

party to a contract cannot compel another to perform while he himself is in default." Lewis Publ'g Co. v. Henderson, 103 Cal. App. 425, 429 (1930).

Here, Section 2.6 of the Agreement's Terms and Conditions provided that Defendant would not deliver prototypes to Plaintiff unless it was in receipt of the payments listed in Schedule C of the Agreement. As such, Plaintiff was obligated to make three separate disbursements to ensure Defendant's performance: a $300,000 payment upon signing the Agreement, a $120,000 payment "upon delivery of block specifications, pin assignment and Simulation Results," and a $150,000 payment "upon delivery of Engineering Prototypes." In is undisputed, as John Knight[1] testified, that Defendant delivered to Plaintiffs two prototypes, one set in 2007 and one set in 2008. Dkt. No. 285, at 194:10-16. It is also undisputed, as demonstrated by Paul Galyean's[2] testimony, that Plaintiffs never made the third payment of $150,000 to Defendant, even though it had received the two prototypes. Id. at 280:14-19. Giving credence to this evidence and drawing all reasonable inferences in Defendant's favor, the jury could have found that Plaintiffs failed to prove it did all of significant things it was required to do according to the terms of the Agreement, and thereby failed to satisfy its burden to prove all of the elements for breach of contract.

Plaintiffs' arguments against this conclusion are unconvincing in the context of a Rule 50(b) motion. They first suggest their obligation to make the third payment was excused because the prototypes delivered by Defendant did not function. Plaintiffs do not, however, cite a corresponding provision of the Agreement permitting them to withhold payment under those circumstances. Notably, Section 2.5.3 of the Agreement simply states that "Buyer shall pay to Seller the NRE charges set forth in Schedule C," and that "[p]ayment shall be made in accordance with the terms specified in Schedule C." For its part, and as already described, the only condition imposed on the third payment pursuant to Schedule C is "delivery of Engineering Prototypes,"

---

[1] John Knight is a former manager of Advanced Receiver Development for Plaintiffs. Dkt. No. 285, at 166:25-167:7.

[2] Paul Galyean is a former manager of Advanced Engineering for Plaintiffs. Dkt. No. 285, at 8-11.

which were to be provided to Plaintiffs to verify the design met their specifications. The jury could have reasonably found based on this language that Plaintiffs' obligation to make the third payment was triggered when Defendants delivered the prototypes, regardless of whether they functioned or actually met Plaintiffs' specifications. Consequently, Plaintiffs have not shown their explanation represents the "only one reasonable conclusion" based on the evidence. See Estate of Diaz, 840 F.3d at 604.

Similarly, the fact that Plaintiffs were never invoiced or asked to make the third payment even though Defendant had previously provided invoices does not alter this conclusion. Course of performance evidence may only be used to explain or supplement the terms of a contract (Cal. Civ. Code § 1856(c)); not "to prove a meaning to which the language of the instrument is reasonably susceptible." Cedar Fair, L.P. v. City of Santa Clara, 194 Cal. App. 4th 1150, 1172 (2011) (quoting Pac. Gas & Elec. Co. v. G.W. Thomas Drayage & Rigging Co., 69 Cal. 2d 33, 37 (1968)). It also cannot be used to "vary or contradict the unambiguous terms of a written agreement." Wind Dancer Prod. Grp. v. Walt Disney Pictures, 10 Cal. App. 5th 56, 72 (2017). Since the Agreement's language does not require Defendant to affirmatively request any payment but instead contains detailed instructions on when payments are due, course of conduct evidence cannot be considered as a reason to excuse Plaintiff's non-performance. Moreover, course of conduct evidence could not be used to imply that Defendant waived its contractual right to receive payment when prototypes were delivered, or somehow consented to Plaintiffs' non-payment, because Section 26.0 of the Agreement's terms and conditions contains an anti-waiver provision.[3]

---

[3] Because the course of conduct evidence would be improper for the issue, Plaintiffs' representation they would have sought admission of PX-83 and PX-95 if previously notified of a non-payment argument by Defendant is of no moment. In any event, Plaintiffs' excuse for not admitting that evidence rings hollow. The elements of breach of contract required Plaintiffs to affirmatively prove they performed all substantial duties under the Agreement, or were excused from those duties. Wall St. Network, Ltd., 164 Cal. App. 4th at 1178. Making contractually-specified payments is a substantial duty of which Plaintiffs were obviously aware, given this topic was covered by Galyean on direct examination. Dkt. No. 285, at 280:14-19. Plaintiffs did not need to wait until Defendant raised their failure to make the third payment before admitting any relevant evidence, and indeed should not have waited for Defendant given their burden of proof.

### ii. The Jury Could Have Found Plaintiffs Failed to Prove Harm

Alternatively, the verdict could be supported by a finding that Plaintiffs failed to prove damages arising from any breach of Section 1.0. "Damages are, of course, a necessary element of the breach of contract cause of action." Navellier v. Slatten, 106 Cal. App. 4th 763, 775 (2003).

Plaintiffs argue, based only on allegations from the Complaint and their own interpretation of admitted exhibit PX 56, that the redesigned four-chip RF ASIC was scheduled for delivery in November, 2008, before the end of the "then current term." Thus, under Plaintiffs' theory, they were harmed when Defendants - after providing notice of termination in July, 2008 - neither delivered a four-chip prototype nor completed "important design work that would have allowed Plaintiffs to avoid or minimize their damages from not having Engineering Prototypes."

This argument misses the mark. Alleged facts are not proven facts, and Plaintiffs' reliance on their Complaint as evidence that Defendant promised a November, 2008 "tapeout" date for a four-chip prototype is entirely misplaced at this stage of the litigation. As is Plaintiffs' dependence on their self-serving description of PX 56, given Plaintiffs' witness, Steven Wilson,[4] testified the parties understood a four-chip prototype would not be ready until July, 2009. Dkt. No. 298, at 1003:24-1004:3. Thus, even if the jury accepted Plaintiffs' belief that Defendant was obligated to continue work after it provided notice of termination, it could have also credited Wilson's testimony to find that Plaintiffs did not expect to receive any four-chip prototypes prior to expiration of the "then current term."

Furthermore, Plaintiffs do not cite any evidence in the record permitting the jury to quantify damages arising from Defendant's purported failure to deliver "important design work." Thus, aside from not meeting the standard imposed by Rule 50(b), this unsupported and undefined hypothetical could be properly disregarded as a valid form of harm for breach of contract. See Cal. Civ. Code § 3301 ("No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin.").

---

[4] Steven Wilson is Plaintiffs' Advanced Engineering Group manager. Dkt. No. 297, at 772:5-6.

Plaintiffs' other arguments on this topic fare no better. They state that "[b]ecause it found no breach, the jury did not reach the question on the special verdict form asking whether [Plaintiffs] were harmed by [Defendant's] breach of Section 1.0." Plaintiffs theorize on that basis that "[s]ince the jury did not reach that question, it cannot be implied that the jury's breach finding was based on any finding of lack of harm." The court disagrees. "So long as the special verdict addresses all questions of fact needed to support the entry of judgment, it is harmless error if additional, unnecessary questions are also posed." A.H.D.C. v. City of Fresno, No. Civ-F-97-5498 OWW SMS, 2004 WL 5866233, at *5 (E.D. Cal. Mar. 9, 2004) (citing Fenslage v. Dawkins, 629 F.2d 1107, 1110 (5th Cir. 1980)). Here, the jury's findings on questions A(1) and A(2), as plainly reflected by the verdict form, were that Plaintiffs did not successfully prove breach of either the 2005 or 2006 versions of the Agreement. Since the presence of damages is a prerequisite for a breach of contract claim, it could very well be that the jury based its decision on lack of harm. The later questions calling for findings in relation to Section 1.0 were unnecessary, as indicated by the instruction to the jury to not answer any further questions if it decided against Plaintiffs on the preliminary breach of contract questions.

And Plaintiffs have not demonstrated an entitlement to nominal damages. They can do so only by first establishing the "only reasonable conclusion" based on the record was that Defendant breached Section 1.0. See Sweet v. Johnson, 169 Cal. App. 2d 630, 632-33 (1959). They have not done so for reasons already explained.

In sum, the evidence is not contrary to the verdict with regard to Section 1.0. The jury could have found that Plaintiffs failed to sustain their burden to prove they either performed all duties required by the Agreement or were somehow excused from those duties. The jury could have also found that Plaintiffs failed to prove damages stemming from a breach of that provision. Plaintiffs' arguments are rejected on these bases.

**E. Section 2.6**

Plaintiffs argue the only reasonable conclusion based on the evidence is that Defendant

8

Case No.: 5:12-cv-04175-EJD
ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR PARTIAL JUDGMENT AS A MATTER OF LAW; DENYING AS MOOT DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

breached Section 2.6 of the Agreement. Plaintiffs believe Section 2.6 obligated Defendant to "deliver working prototypes that met the specifications." This argument is unpersuasive.

First, the court has explained why the jury could permissibly find that Plaintiffs failed to do everything required of them under the contract by not tendering the third payment due under Schedule C at the time Defendant delivered the prototype. This finding would equally support the non-breach verdict as to Section 2.6.

Second, the jury could have read the Agreement to exclude a requirement that Engineering Prototypes be "working" prototypes. At the conclusion of evidence, the jury was instructed on how they should interpret the Agreement: they were to consider the entire document, "assume the parties intended the words in their contract to have their usual and ordinary meaning" absent some special meaning, and could "consider how the parties acted after the contract was created but before any disagreement between the parties arose." Dkt. No. 314, at pp. 22, 24-25. Neither Section 2.6 nor the definition of "Engineering Prototypes" contains an explicit requirement that delivered prototypes also be "working" prototypes. To the contrary, "Engineering Prototypes" were intended for "verification that the design meets the agreed upon technical specifications, functional evaluation and for informational and testing purposes only." And Section 2.4 of the Agreement required that Engineering Prototypes be accepted by Plaintiff in some form, otherwise they were deemed rejected. Moreover, the Agreement describes two different phases, a development phase and a production phase. Thus, when the Agreement is considered as a whole according to its plain terms, a natural reading is that Defendant was required to submit prototypes during the development phase which Plaintiffs would then verify did or did not meet the specifications by accepting or rejecting them, but that delivery of a non-conforming prototype would not constitute a breach of the Agreement.

Third, the jury could have concluded that Plaintiffs failed to prove harm from a breach of Section 2.6. Plaintiffs' damages theory, as their counsel stated in closing argument, was that they "suffered damages in the form of increased costs by virtue of not having a working RF ASIC"

1   (Dkt. No. 319, at 1597:12-14), and Plaintiffs' expert calculated damages based on a purported

2   increase in costs to manufacture Plaintiffs' device using different components. The jury could

3   have reasonably rejected these damages, which relate to sales of a completed product, as not

4   proximately caused by a breach of Section 2.6 during the development phase of the Agreement.

5   See Cal. Civ. Code § 3300.

6   For these reasons, Plaintiffs are not entitled to judgment as a matter of law for breach of

7   Section 2.6.

**F.     Section 2.8**

Finally, Plaintiffs argue Defendant breached Section 2.8 of the Agreement because it "never repaired or replaced the non-working prototype chips that did not meet the specifications." In support of this argument, Plaintiffs rely on what they characterize as "undisputed evidence that the four-chip design was [Defendant's] preferred way of repairing or replacing the admittedly non-conforming, three chip prototypes," and the fact that Defendant never tendered a four-chip prototype. The jury, however, found no breach of Section 2.8, and specifically determined that Defendant was not contractually obligated to develop the four-chip design. This is a justifiable view of the evidence.

Galyean testified that after the two versions of the three-chip prototypes were unsuccessful, Plaintiffs agreed with Defendant's assessment that "a significant redesign was going to be required," and that there came a point in time when Plaintiffs agreed to pursue a four-chip prototype. Dkt. No. 286, at 408:18-22; 412:17-23. According to Galyean, the four-chip prototype required a new specification. Id. at 412:24-413:4. A new written specification for a four-chip prototype was never created, however. Id. at 411:7-9. And Galyean did not consider Defendant's statement that it "wanted to make something other" than a three-chip prototype a breach of the Agreement. Id. at 413:5-6.

Based on this evidence, the jury could have found that despite any defects in the three-chip prototypes, the parties had agreed to pursue another design in its place; for that reason, Plaintiffs

1  did not consider any defects in the three-chip prototype to constitute a breach of Section 2.8. The jury could also permissibly find, contrary to Plaintiffs present argument, that Defendant was not obligated to complete the four-chip prototype because a specification for that design was never created.[5]

Accordingly, there is legally sufficient evidence to support the jury's determination that Defendant did not breach Section 2.8.

### G. Remaining Issues

Because Rule 50(b) relief will not be granted to Plaintiffs on the breach of contract claim, the court need not address arguments related to Defendant's affirmative defenses. For similar reasons, Defendant's protective Rule 50(b) motion addressing issues undecided by the jury will be denied as moot.

## IV. ORDER

Plaintiffs' Renewed Motion for Partial Judgment as a Matter of Law (Dkt. No. 330) is DENIED. Defendant's Renewed Motion for Judgment as a Matter of Law (Dkt. No. 332) is DENIED AS MOOT.

**IT IS SO ORDERED.**

Dated: June 16, 2017

EDWARD J. DAVILA
United States District Judge

---

[5] Plaintiffs suggest without explicitly arguing that it was error to submit to the jury the question of whether Defendant was contractually obligated to develop a four-chip prototype. This argument appears waived given Plaintiffs' concession to the question (Dkt. No. 312, at 1545:18-24).