NAGASHIMA, HASHIMOTO &
YASUKUNI
MARC R. LABGOLD (*pro hac vice*)
mlabgold@labgoldlaw.com
PATRICK J. HOEFFNER (*pro hac vice*)
phoeffner@labgoldlaw.com
12005 Sunrise Valley Drive, Suite 203
Reston, Virginia 20191
Telephone:  877-401-8855
Facsimile:  877-401-8855

NAGASHIMA, HASHIMOTO &
YASUKUNI
TAKAAKI NAGASHIMA (*pro hac vice*)
nagashima@nandhlaw.com
Hirakawa-cho, KS Bldg., 2nd Floor
2-4-14, Hirakawa-cho, Chiyoda-ku
Tokyo 102-0098 Japan
Telephone: +81-3-3239-5750
Facsimile:  +81-3-3239-8538

MANNING & KASS
ELLROD, RAMIREZ, TRESTER LLP
MICHAEL L. SMITH (SBN 160305)
mls@manningllp.com
121 Spear Street, Suite 200
San Francisco, California 94105-1582
Telephone: (415) 217-6990
Facsimile: (415) 217-6999

Attorneys for Defendant
Oki Electric Industry Co., Ltd.

MORGAN, LEWIS & BOCKIUS, LLP
BENJAMIN PATRICK SMITH (SBN 197551)
benjamin.smith@morganlewis.com
KURT BENJAMIN OLDENBURG (SBN 287275)
kurt.oldenburg@morganlewis.com
One Market, Spear Street Tower
San Francisco, CA 94105
Telephone:  415-442-1000
Facsimile:    415-442-1001

Attorneys for Plaintiffs
NavCom Technology, Inc.
and Deere & Company

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN JOSE DIVISION

NAVCOM TECHNOLOGY, INC.; and
DEERE & COMPANY,

              Plaintiffs,

       v.

OKI ELECTRIC INDUSTRY CO., LTD.

              Defendant.

Case No. 5:12-cv-04175 EJD

**JOINT STATEMENT PURSUANT TO
COURT'S ORDER DATED
SEPTEMBER 5, 2019 (DKT. NO. 413)**

1    In accordance with the Court's Order dated September 5, 2019 (Dkt. No. 413), the Parties

2    hereby submit this Joint Statement regarding Defendant's attorney's fees claim.

3    In accordance with the process outlined by the Court, Defendant filed and served a revised

4    table that summarized its fees by task on September 27, 2019. (Dkt. No. 419). On October 11, 2019,

5    Plaintiffs provided Defendant with a table indicating its objections and proposed reductions to

6    certain time entries in the revised table of attorney's fees. On October 16, 2019, the Parties met and

7    conferred in person to resolve or narrow the disputes. During the meet and confer, Defendant agreed

8    to withdraw attorney's fees and costs related to the Ninth Circuit appeal, and to withdraw all entries

9    objected to as duplicative.  The parties did not reach agreement with respect to any other objections

10   asserted by Plaintiffs.

11   The Parties now submit the following tables:

12   1.    Exhibit FF is a table of the currently contested fees ("Contested Table"). Defendant

13         claims $3,457,977.00 USD and ¥41,970,300 JPY in attorney fees reflected in this

14         table. Plaintiffs asserted objections and request that the fees be reduced by

15         $1,813,051.01 USD and ¥28,613,836.00 JPY.

16   2.    Exhibit GG is a table of the uncontested fees ("Uncontested Table"). Plaintiffs do

17         not contest or request any reduction of Defendant's claim for $136,646.00 USD and

18         ¥2,414,800 JPY fees reflected in this table.

19   Below, the parties provide a concise summary of each type of objection asserted by

20   Plaintiffs in the Contested Table, and the responses to objections asserted by Defendant. Defendant

21   is the movant and its statement therefore appears first.

22                                  **Defendant's Statement**

23   The total amount in attorney's fees currently claimed by Defendant is $4,026,889.67.[1]

24   **A.    Plaintiffs Object To Nearly All Time Entries**

25   Exhibit HH is a statistical summary of the Plaintiffs' objections to Defendant's attorney's

26   fees table. The Plaintiffs' objections are excessive and *per se* unreasonable.  Plaintiffs objected to

27   _____

28   [1] This amount is the sum total U.S. Dollars and Yen in the Contested Table and Uncontested Table and converted into U.S. Dollars.

1,767 of the 2,077 time entries in Defendant's table (85% of the total), and Plaintiffs made multiple objections to many of those entries. *See* Exs. FF, HH. Plaintiffs asserted more objections than there were time entries (3,194 objections; 2,077 time entries). *Id.* Of the three attorneys that sat at counsel's table throughout the trial (Marc R. Labgold, Patrick J. Hoeffner, and Andrew Russell), Plaintiffs objected to 96%, 95% and 95% of their respective time entries. *See* Ex. HH. The Plaintiffs objected to 100% of the time submitted by 13 of the 36 time-keepers. *Id.* The most frequent objection was "Excessive Time", which was asserted 848 times (*i.e.*, more than 40% of all time entries) with no explanation why any of the time was "excessive." *Id.*

The requested monetary reduction as a whole was likewise extensive. Defendant's attorney's fees claim was $4,370,439.42.  Plaintiffs are requesting reduction to $1,935,369.08—a 55.7% reduction. *See* Exs. FF-HH. Defendant respectfully submits that this is *per se* unreasonable given that (a) the fees and costs are contractually provided for; (b) the Plaintiffs (the losing party on all counts) alleged, without any support, that they were invoiced $3,061,918.76 by their counsel; and (c) the time sought was based on contemporaneous time entries and *actually invoiced to and paid by* the Defendant. *See* Plaintiffs' Comments To Defendant Oki Electric's Chart In Support Of Motion For Attorney's Fees And Costs. (Dkt. No. 407); Labgold Declaration (Dkt. No. 333, Ex. C, at ¶ 12); Labgold Supp. Declaration (Dkt. No. 392, ¶ 21). Plaintiffs cannot explain why they seek to cut Defendant's allowed fees to ***only 44% of what Defendant actually paid***, which would be ***$1,126,549.68 less than what Plaintiffs allege they were invoiced***.

### B. <u>General Responses To Plaintiffs' Objections</u>

Plaintiffs asserted ten different objections. Defendant asserts general and specific responses to Plaintiffs' objections. The General Responses are detailed below and the Specific Responses are detailed in the revised table at Exhibit FF.

1) <u>Clerical Work</u> (*203 of the 3,194 objections*): defined as "Work could have been reasonably performed by a paralegal or other non-attorney".

- General Response: Many of the tasks Plaintiffs object to are not actually "clerical work." For example, "Research re unjust enrichment; review documents; discussion with J. Shaw re unjust enrichment" (*see* Ex. FF, April

4, 2014 entry by Russell); "Discussion with ARussell re motion for attorney fees; legal research re bill of costs; organizing categories of costs; [and] review draft motion" are not clerical, but instead are substantive legal work (*see id.*, May 21, 2014 entry by Labgold). Moreover, Section 25.0 of the contract at issue states that Defendant shall be entitled to its "reasonable attorney's fees." (PX-125 at OKI_LW_008274). There is no carve out for tasks that Plaintiffs deem could possibly have been performed by a paralegal or staff member. (*Id.*). The contract contemplated an award of the fees charged by the prevailing Party's attorneys.

2) <u>Associate Work</u> (*482 of the 3,194 objections*): defined as "Work could have been reasonably performed by less senior attorney."

- General Response: For much of the litigation, the litigation team consisted of just two U.S.-based partners, Labgold and Hoeffner, and no associates. The Shaw Keller firm was brought on just before trial in March 2014. The Ninth Circuit has rejected the idea of cutting a fee request where there were no less-skilled attorneys available to do the work, and has recognized that less-skilled attorneys still require partner supervision, and that a lead counsel—the partners—can "doubtless" complete some jobs more quickly than an associate could. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114-15 (9th Cir. 2008). That is the case here. With respect to the entries after the Shaw Keller firm was added, the Plaintiffs simply make arbitrary objections regarding what tasks are to be completed by partners and what tasks can *only* be performed, in their view, by associates.

3) <u>Vague Litigation Purpose</u> (*557 of the 3,194 objections*): defined as "The task described does not appear reasonably necessary to Oki's legal defense."

- General Response: All of the objected-to entries are sufficiently detailed to determine that the amount spent was reasonable and should be recoverable. The Ninth Circuit, applying California law, has stated that "[w]hile '[s]ome

federal courts require that an attorney maintain and submit 'contemporaneous, complete and standardized time records' . . . ., [i]n California, an attorney need not submit contemporaneous time records in order to recover attorney fees.' . . . 'Testimony of an attorney as to the <u>number of hours worked on a particular case is sufficient evidence to support an award of attorney fees</u>, even in the absence of detailed time records.'" *Winterrowd v. Am. Gen. Annuity Ins. Co*., 556 F.3d 815, 827 (9th Cir. 2009) (emphasis added) (quoting *Martino v. Denevi*, 182 Cal. App. 3d 553, 558-559 (1986)). Likewise, under Ninth Circuit law, "'counsel is not required to record in great detail how each minute of [their] time was expended'" as long as "the attorneys have satisfactorily 'identif[ied] the general subject matter of [the] time expenditures.'" *Pollinator Stewardship Council v. United States EPA*, No. 13-72346, 2017 U.S. App. LEXIS 13343, at *22 (9th Cir. June 27, 2017) (quoting *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000)). In fact, "counsel [seeking fees] can meet his burden - although just barely - by simply listing his hours and 'identifying the general subject matter of his time expenditures.'" *Fischer v. SJB-P.D. Inc*., 214 F.3d 1115, 1121 (9th Cir. 2000) (*quoting Davis v. City of S.F*., 976 F.2d 1536, 1542 (9th Cir. 1992)).

4) <u>Excessive Time</u> (*848 of the 3194 objections*): defined as "The amount of time spent on the task does not appear reasonable for an attorney/professional at this billable rate."

- General Response: Approximately half of Plaintiffs' objections include "excessive time" or "redundant work" as a basis, without further explanation and without any consideration of Plaintiffs' aggressive tactics. *See* Ex. HH. "In challenging attorney fees as excessive because too many hours of work are claimed, it is the burden of the challenging party to point to the specific items challenged, with a sufficient argument and citations to the

evidence." *Lunada Biomedical v. Nunez*, 230 Cal. App. 4th 459, 488 (2014) (*quoting Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guarantee Ass'n*, 163 Cal. App. 4th 550, 564 (2008)). Plaintiffs have failed to offer a sufficient argument and citations to the evidence for each time entry, as required. *Id.* at 488. Further, even though nearly half of its objections included "excessive time" as a basis, Plaintiffs have failed to provide the underlying reasoning for many of these objections (yet refused to withdraw them). Defendant's counsel have not over-billed their client, and none of these time entries are excessive given the scope of the case (where Plaintiffs sought more than $12 million in damages and at least $3 million in attorney's fees) and the nature of the work at issue. (Dkt. No. 407 (Plaintiffs attorney's fees), at 2).

Moreover, the Court should consider the opposing Party's litigation tactics before reducing fees as "excessive." *See Stokus v. Marsh*, 217 Cal. App. 3d 647, 653-54 (1990) ("Parties who litigate with no holds barred in cases such as this, in which the prevailing party is entitled to a fee award, assume the risk they will have to reimburse the excessive expenses they force upon their adversaries."); *see also*, *Ultimo v. City Lights Fin. Express, Inc.*, No. B270329, 2018 Cal. App. Unpub. LEXIS 1009, at *28 (Feb. 13, 2018) ("When, as here, the record contains extensive evidence that the opposing party and its counsel engaged in aggressive litigation tactics, the trial court should consider that factor in assessing the reasonableness of the moving party's request."). The aggressive use of these objections further evidences the position Defendant has asserted all along in support of its fees: this case has been aggressively pursued by Plaintiffs since its inception, and they thoroughly and excessively contested every possible issue. Plaintiffs aggressively reduced Defendant's attorney's fees claim to $1,935,369.08, while at the same time asserting to the Court that Plaintiffs were billed $3,061,918.76—over $1 million more than it asserts Defendant should

5

1  recover. Ex. FF, at 2; Dkt. No. 407. For seven years, Defendant has been on
2  the receiving end of Plaintiffs' aggressive tactics—none of the time
3  expended defending against those tactics was excessive.

4     5)   <u>Block Billed</u> (*275 of the 3,194 objections*): defined as "Block billing of disparate or
5  unrelated subject matters."

6        •   General Response: The time entries contain adequate descriptions of the
7  work performed. The Ninth Circuit has held that block billed time is not *per*
8  *se* objectionable and may be acceptable if the descriptions are adequate. *See,*
9  *e.g.*, *Gilead Scis. v. Merck & Co*, No. 13-cv-04057-BLF, 2017 U.S. Dist.
10  LEXIS 110797, at *31 (N.D. Cal. July 14, 2017) ("While block-billing is
11  less than ideal in providing a complete record to assess reasonableness,
12  adequate descriptions can still make it acceptable. Here, at least some of the
13  descriptions in the block-billed entries reflect itemized statements of the
14  specific tasks counsel undertook. Such detailed information about the
15  timekeeper's activities can be sufficient for the purpose of evaluating
16  whether the total block-billed hours were reasonable as a whole."). Plaintiffs
17  seek a reduction of up to 33% for dozens of entries where the ***only objection***
18  is that the entries are "block billed." In other words, Plaintiffs seeks to cut
19  back these time entries simply because of the fact that they are block billed,
20  absent any objection that any part of the time spent was excessive or
21  otherwise unreasonable. Moreover, even as to the entries where there is
22  some other objection (such as "Block billed; excessive time"), each of the
23  objected-to entries includes enough information to determine that the time
24  spent by Defendant's attorneys was reasonable and should be recoverable.

25     6)   <u>Redundant Work</u> (*597 of the 3,194 objections*): defined as "Task described could
26  have reasonably been performed by fewer timekeepers."

27        •   General Response: *See* "Excessive Time."

28

7)   <u>Duplicate Time Entry</u> (*10 of the 3,194 objections*): defined as "Identical time entry counted twice in fee request."

- General Response: None. These entries were withdrawn.

8)   <u>Transition Work</u> (*25 of the 3,194 objections*): defined as "Fees charged for Oki's choice to substitute counsel and not reasonably necessary to legal defense."

- General Response: The Court already rejected Plaintiffs' assertion that Defendant's retention of four different firms (in an effort to leanly staff the case) warrants a reduction in attorney's fees. (*See* Dkt. No. 345, at 6-7 (objecting to the use of four firms); Dkt. No. 413, at 7 (rejecting objection)). The Court's September 5, 2019 Order (Dkt. No. 413) specifically provided that the attorney's fees for transitioning to a new firm are recoverable. (*See* Order at 7).

9)   <u>Appellate Fees Not Recoverable</u> (*180 of the 3,194 objections*): defined as "Fees for work related to Oki's defense of Ninth Circuit appeal are not recoverable, per September 5, 2019 Order."

- General Response: Defendant agrees to withdraw these at this time, pursuant to the Court's September 5, 2019 and September 12, 2019 Orders (Dkt. Nos. 413, 418), but reserves all of its rights to appellate attorney's fees, including its right to appeal the Court's determination not to award appellate fees.

10)   <u>Interest On Fees Not Recoverable</u> (*17 of the 3,194 objections*): defined as "Fees for work related to Ok's efforts to collect unrecoverable prejudgment interest on attorney fees."

- General Response: The fact that Defendant did not prevail on a specific issue does not render those fees unrecoverable under section 25.0 of the contract. (PX-125 at OKI_LW_008274). Defendant is the "prevailing party" under the contract and is entitled to "reasonable attorneys' fees." (*Id.*). Furthermore, "'where a lawsuit consists of related claims, a plaintiff who has won ***substantial relief*** should not have his [or her] attorney's fee reduced

1   simply because the [trial] court did not adopt each contention raised.' . . .

2   The party seeking fees is ***not required to show the reasonableness of every***

3   ***failed claim***." *Winterrowd v. Am. Gen. Annuity Ins. Co.*, 556 F.3d 815, 827-

4   28 (9th Cir. 2009) (emphasis added, citations omitted).  The Ninth Circuit

5   similarly held entitlement to fees for all issues whether won or

6   lost. *See Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir.

7   2016) (rejecting argument that fee award should be reduced for failure to

8   succeed on some claims, where those claims were "different theories in

9   pursuit of the same objective."); *see also, e.g.*, *Lads Trucking Co. v. Bd. of*

10   *Trs.*, 777 F.2d 1371, 1375-76 (9th Cir. 1985) ("Trust is the prevailing party;

11   it won the ultimate issue; that it did not prevail on each and every sub-issue

12   is not grounds for a piecemeal fees award.").

13   11)   Plaintiffs have objected to the Declaration of Patrick J. Hoeffner in the most recent

14   filing as failing to describe the manner in which the claimed fees records were kept.

15   Defendant followed the procedure set forth by the Court (Dkt. No. 413, at 5-6),

16   summarizing its fees in the table it produced, and remains willing to make its

17   underlying invoices available for *in camera* review.   Defendant has also filed

18   declarations from each law firm detailing the manner in which records were kept

19   and invoices issued. (*See, e.g.*, Dkt. No. 333, Ex. 4; Dkt. No. 352, Exs. 2, 4, and 6).

20   12)   Plaintiffs have applied the wrong exchange rate for Yen to U.S. Dollars. The

21   exchange rate used by Defendant was calculated as of the invoice date as was noted

22   in Exhibit E to the Declaration of Marc R. Labgold In Support Of Oki Electric

23   Industry Co. Ltd.'s Motion For Attorney's Fees And Costs (Dkt. No. 333, Ex. 4).

24   Plaintiffs applied the October 11, 2019 flat rate instead of using the rate at the time

25   the fees were billed and paid.

26

27

28

C.     **Total Amount Of Attorney's Fees Due To Defendant**

Defendant is entitled to recover the amounts detailed in the Contested Table at Exhibit FF and the Uncontested Table at Exhibit GG. The sum total amount in attorney's fees claimed in both tables is $4,026,889.67.

### Plaintiffs' Statement

On September 27, 2019, Defendant filed a table requesting $3,938,172.75 USD and ¥44,835,100.00 JPY in attorney fees. *See* ECF 420-1. On October 11, 2019, Plaintiffs served a table of objections with proposed reductions totaling $2,156,657.01 USD and ¥28,111,911.00 JPY. Plaintiffs' objections have been reproduced in Exhibits FF and GG, which organize the fee requests into contested and uncontested categories. Plaintiffs' objections and reductions align Defendant's request with a reasonable number of hours spent on litigation tasks at a reasonable hourly rate.

All told, Defendant should be awarded a reasonable fee of $1,781,515.74 USD and ¥16,723,189.00 JPY.[2]

A.     **Plaintiffs' Objections and Proposed Reductions to Defendant's Fees**

To facilitate the Court's review of the objections and requested reductions to contested fees in Exhibit FF, Plaintiffs offer the following concise explanations and examples of each type of objection asserted in the table. If the Court desires further argument and authority about the legal merits of Plaintiffs' objections to Defendant's fee requests, Plaintiffs request an opportunity to present such arguments on a proper briefing schedule.

Plaintiffs object to the inclusion of substantive legal argument in Defendant's portion of this joint statement, as well as the statistical analysis submitted by Defendant as Exhibit HH. The parties have already briefed their arguments regarding awards of reasonable attorney fees. The Court's September 5, 2019 Order called for the parties to follow a specific meet and confer process and, in the event items remain in dispute, to file a joint statement that includes "(1) the total amount of fees claimed by Defendant with a table in the format described above; (2) the total amount of

[2] Any award of fees denominated in Japanese Yen should be converted to US dollars at the June 16, 2017 rate of 0.00902 Yen to 1 Dollar—the rate in effect when Defendant became the "prevailing party" for purposes of the attorney fee provision in the contract. *See infra* at Part B.

fees Plaintiffs agree should be awarded; and (3) a description of each specific item in dispute in a table in the format below." *See* ECF 413 at 5-6. Defendant has exceeded the Court's instruction by injecting further argument and authority into this joint statement.

### 1.   Associate Work

Plaintiffs proposed reductions to attorney fees requested for tasks performed by partners which could have been reasonably performed by an associate at a lower billing rate. *For example*, partners charged Defendant fees for legal research (6/17/13), document review (5/7/13), preparing document summaries (3/22/13); preparing initial drafts of discovery responses (6/10/13) and briefs (5/3/14); and searching for record citations (5/9/14). Defendant has not submitted any evidence that it was incapable of hiring a law firm in this district with associates to perform routine litigation tasks at a lower billing rate.

### 2.   Clerical Work

Plaintiffs proposed reductions to attorney fees requested for work which could have been reasonably performed by a paralegal or other non-attorney at a lower billing rate. *For example*, associates and partners charged fees for translating Japanese e-mails to English (9/14/12), "cite-checking" and "proofreading" briefs (6/19/14), organizing binders (9/5/14), and preparing visas for witnesses (5/20/13). Plaintiffs also proposed reductions to paralegal fees requested for work which could have been reasonably performed by a legal assistant or other professional at a lower rate. *For example*, paralegals billed for circulating court filings to attorneys (9/21/12), preparing certificates of service (11/16/12), and "break down war room" (5/30/14).

### 3.   Excessive Time

Plaintiffs proposed reductions where the amount of time spent on a particular task exceeded a reasonable amount of time for the relevant attorney or professional. *For example*, partners recorded 99.50 hours to research and draft a reply brief in support of Defendant's motion for supplemental attorney fees (5/23/19 – 5/30/19); 11 hours for a single entry of "reviewing case files" (9/23/12); and more than 37.45 hours to draft a set of interrogatory responses (6/20/13 – 6/26/13).

1

### 4.     Redundant Work

Plaintiffs proposed reductions where a single task was performed by multiple attorneys, and should have reasonably been performed by fewer timekeepers. *For example*, two partners and one associate to prepared the same witness for deposition (6/21/13 and 6/25/13); partner T. Nagashima submitted flat-rate 10-hour time entries to attend every day of trial—in addition to the three U.S. attorneys who tried the case (4/21/14 – 5/8/14); and five partners worked on the reply brief in support of Defendant's motion for supplemental attorney fees (5/23/19 – 5/30/19).

### 5.     Transition Work

Plaintiffs objected to all fees charged for the process of transferring the case from Latham and Watkins to other U.S. attorneys in March 2013. *See* ECF 420-7 (requesting fees for "Transfer of Case to New Counsel"). *For example*, Defendant requests fees for "Attention to case transition" (3/28/13); "Attention to files in preparation for transfer to new counsel" (3/28/13); and "Discussion … re strategy and transferring case responsibilities." (3/21/13). Unlike the "ramp-up" fees that Defendant paid for *adding* counsel for trial in 2014, these fees for *substituting* counsel early in the case were not reasonably necessary to Defendant's legal defense.

### 6.     Vague Litigation Purpose

Plaintiffs proposed reductions to fees for tasks that, based on the description provided, Defendant failed to establish the work was reasonably necessary to Defendant's legal defense. *For example*, partners charged fees for ten hours of "review trial transcripts" (5/9/14); lengthy "meeting[s] with client" about unspecified topics (9/24/12); "review of files" (3/15/13); and "editing responses" to unspecified requests (9/7/13).

### 7.     Block Billed

Contrary to the Court's specific admonition to "avoid block billing disparate or unrelated subject matters" (ECF 413 at 5), Defendant submitted time entries that mash together multiple unrelated tasks. Plaintiffs proposed reductions because block billing makes it difficult to determine how much time was spent on advanced legal tasks versus more routine tasks (e.g., document review or legal research). *For example*, partners requested fees for:

Drafting RFA's; Navcom document review; reviewing Navcom and Deere responses to interrogatories; Conference call with Asahi-san re his deposition scheduling and general recollection of pertinent facts; Navcom document review; discussions with local counsel re same; legal research re CA law with respect to third party beneficiaries; conference call with Ruben Balbuena; preparing documents for deposition visa (7.5) (5/20/13)

Review email(s) re PGalyean deposition; review Plaintiffs' edits to joint discovery motion; review case law re exclusion of a person from a deposition; review and edit joint discovery motion brief; email(s) with Peregrine's counsel re designation issue; review Navcom's and Deere's RFA responses; call with MLabgold re joint discovery motion (7.75) (7/31/13)

Galyean deposition; privilege issue; legal research; discussion with local counsel re same; finalizing motion for leave to file motion for reconsideration and preparing declaration in support; preparation for Oki 30(b)(6) (9.75) (8/22/13)

For some paralegal fees, Defendant submitted entries that combined hundreds of hours of vague tasks performed over a longer, unspecified period of time, thereby preventing Plaintiffs or the Court from evaluating the reasonableness of the requested fees. For example:

Prepare exhibits; review documents; travel preparations; review documents for organizing evidence by categories provided by partner; assist preparing exhibits re Si motion (57.0) (10/30/13)

Conference calls re trial prep; prepare documents for trial; assist finalizing binders to be submitted to Court; trial preparation; war room set up; set up court room and break out room; prepare and attend daily trial; document prep; daily binder prep (201.75) (4/30/14)

### 8.     Interest on Fees Not Recoverable

Defendant lacked any legal basis for seeking pre-judgment interest (a form of damages) on a post-trial award of attorney fees (costs of suit). The Court agreed that Defendant may not recover pre-judgment interest on fees. *See* ECF 413 at 11-13. Plaintiffs objected to reimbursing Defendant for pursuing this novel and unsupported theory after the contractual dispute had already been decided in litigation and on appeal. *For example*, Defendant requested fees charged by partners for "Legal research on interest issue; continued search for cases having same or similar fact pattern" (4/2/19); and "Legal research re pre-judgment interest; edit supplemental filing for attorney's fees;

1  edit supplemental declaration of MLabgold; discussion with MLabgold re fees motion brief"

2  (4/5/19).

3                      9.     **Appellate Fees**

4          The Court correctly ruled that Defendant failed to request its appellate fees from the Ninth

5  Circuit and cannot belatedly recover those fees now. *See* ECF 413 at 9-11. Plaintiffs objected to

6  Defendant's request for $336,232.25 of appellate fees in the revised table filed on September 27,

7  2019. Defendant has agreed to withdraw its request for these fees.

8                   10.     **Duplicate Time Entry**

9          Defendant has agreed to withdraw certain time entries that appeared twice in the revised

10  table filed on September 27, 2019.

11          **B.**     <u>**Foreign Currency Exchange Rate**</u>

12          To the extent the Court awards any fees denominated in Japanese yen, the corresponding

13  award should be converted to U.S. dollars using the exchange rate in effect on June 16, 2017—the

14  date that the Court denied Plaintiffs' post-trial motions and Defendant became the "prevailing

15  party" for purposes of the attorney fee provision in the contract.[3]

16          Federal courts apply a "breach day" rule for awards of foreign currency based on a

17  contractual obligation performable in the United States. *See Linley Investments v. Jamgotchian*,

18  No. LACV1100724JAKRZX, 2014 WL 12665812, at *4 (C.D. Cal. Apr. 16, 2014), *aff'd*, 670 F.

19  App'x 627 (9th Cir. 2016). Here, the "obligation" is an attorney fee provision in a contract that was

20  litigated in California, denominated contractual payments in U.S. dollars, and explicitly chose

21  California Law. *See* ECF 331-20 at Section 22.0.

22          Under the "breach day" rule, the applicable exchange rate is the one that was in effect on

23  the date that the party breached its obligations to the other. Plaintiffs contend that under this rule,

24  the relevant date for calculating the exchange rate would be June 16, 2017, the date that the Court

25  denied Plaintiffs' Rule 50(b) Motion for Judgment as a Matter of Law and Rule 59 Motion for New

26

27  _____

28  [3] The exchange rate on June 16, 2017 was approximately 0.00902 Japanese yen to 1 US dollar. *See, e.g.,* https://www.x-rates.com/historical/?from=JPY&amount=1&date=2017-06-16.

1    Trial. *See* ECF 377, 378. That was the date Defendant became the "prevailing party" at trial for

2    purposes of Section 25.0 (the fee provision in the contract-in-suit, *see* ECF 331-20).[4]

3        **C.    Defendant's Exhibit HH**

4        Plaintiffs emphasize that Exhibit HH is an advocacy document created by Defendant for

5    purposes of this filing and was not exchanged as part of the meet and confer process outlined in the

6    Court's September 2019 Order.

7        Exhibit HH appears to argue that Plaintiffs' objections are categorically unreasonable based

8    on the frequency of objections. This is both misleading and irrelevant. First, Exhibit HH is

9    misleading because Plaintiffs did not object to 85% of the fees requested, as insinuated in

10   Defendant's joint statement. Rather, Plaintiffs made a case-by-case evaluation of the hours and

11   billing rate for each task, based on Defendant's description, and proposed a reduction to reach a

12   reasonable fee, ranging from 25% to 100% depending on the number and nature of the objection(s)

13   to each entry. Cumulatively, Plaintiffs requested a reduction of approximately 55% of the total

14   $4.35 million requested (inclusive of the appellate fees and duplicate time entries that Defendant

15   has already agreed to withdraw).

16       Second, Exhibit HH is irrelevant because Plaintiffs' objections should be evaluated on their

17   merit, not based on the fact they were raised. From Plaintiffs' perspective, Exhibit HH reflects that

18   Defendant incurred a large amount of unnecessary or otherwise objectionable fees. As noted in

19   previous submissions, Defendant's total request for attorney fees through May 2019

20   ($4,155,743.13) exceeded the gross attorney fees invoiced by Plaintiffs' attorneys to litigate the

21   same case through the same period ($3,061,918.76). *See* ECF 407 at 3; ECF 409. This $1.1 million

22   gap reflects a 36% premium over Plaintiffs' *gross fees*, i.e., Plaintiffs' fees before adjusting to reach

23   the *reasonable* amount for work *reasonably necessary* to litigate the case.

24

25   _____

26   [4] Alternatively, courts apply a "judgment day" rule when determining the exchange rate to
     convert an award of foreign currency into dollars for an obligation performable in a foreign

27   country in the money of that country. *See Linley Investments*, 2014 WL 12665812, at *4.
     Plaintiffs contend the rule is not applicable here because the obligation in controversy is payment

28   of attorney fees for litigation decided in California under a contract governed by California law.

Dated:  November 1, 2019

Nagashima, Hashimoto & Yasukuni

By:  /s/ *Marc R. Labgold*

    Marc R. Labgold

*Counsel for Defendant*
*Oki Electric Industry Co., Ltd.*

Morgan, Lewis & Bockius, LLP

By:  /s/ *Kurt Benjamin Oldenburg*

    Kurt Benjamin Oldenburg

*Attorneys for Plaintiffs*
*NavCom Technology, Inc.*
*and Deere & Company*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### ATTESTATION

I, Andrew E. Russell, the CM/ECF filer of this document, attest that concurrence in the filing of the document has been obtained from each of the other signatories listed above.

I declare under penalty of perjury under the laws of the United States of America that the foregoing attestation is true and correct.


Dated:  November 1, 2019                     SHAW KELLER LLP

                                             By:  /s/ *Andrew E. Russell*
                                                  Andrew E. Russell

                                             *Counsel for Defendant*
                                             *Oki Electric Industry Co., Ltd.*